JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVINA GIBSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION TO DISMISS**<br><br>Date: February 1, 2024<br>Time: 10:00 a.m.<br><br>Judge: Hon. James Donato |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 1, 2023, at 10:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable James Donato, located at 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California 94102, Defendant Planned Parenthood Federation of America, Inc., will and hereby does move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion to Dismiss is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

Planned Parenthood Federation of America, Inc. seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Complaint for failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS

Page

I. STATEMENT OF ISSUES TO BE DECIDED ....... 1

II. SUMMARY OF RELEVANT FACTS ....... 1

III. LEGAL STANDARD ....... 6

IV. LEGAL ARGUMENT ....... 6

A. Plaintiff Fails To State A Claim Under CMIA. ....... 6

1. Plaintiff fails to allege facts showing that PPFA is a "provider of health care." ....... 6

2. Plaintiff fails to allege facts showing that PPFA disclosed her "medical information" to "the Third Parties." ....... 8

B. Plaintiff Fails To State A Claim Under Cal. Penal Code § 631 ....... 9

1. The Complaint fails to state a claim for direct liability under Section 631, because it fails to plead facts showing that PPFA was a third party to Plaintiff's communications. ....... 9

2. The Complaint fails to state a claim for aiding and abetting liability under Section 631 because it fails to plead facts showing that "the Third Parties" acted independently of PPFA. ....... 10

3. The Complaint fails to state a Section 631 claim under any theory for other reasons ....... 11

C. Plaintiff Fails To State A Claim Under Cal. Penal Code § 632 ....... 13

1. Plaintiff fails to allege facts showing that her communications with PPFA were "confidential." ....... 13

2. Plaintiff fails to allege facts showing that her communications with PPFA were captured by a "device." ....... 14

V. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6, 14

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........ 12

*Cody v. Boscov's, Inc.*, 2023 WL 2338302 (C.D. Cal. 2023) ........ 10

*Consolidation Coal Co. v. Federal Mine Safety & Health Review Commission*, 136 F.3d 819 (D.C. Cir. 1998) ........ 15

*De Vries v. Regents of University of California*, 6 Cal. App. 5th 574 (2016) ........ 15

*DeGeorge v. U.S. District Court*, 219 F.3d 930 (9th Cir. 2000) ........ 15

*Eisenhower Medical Center v. Superior Court*, 226 Cal. App. 4th 430 (2014) ........ 8, 9

*Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006) ........ 14

*Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112 (9th Cir. 2014) ........ 6

*In re Arthur J. Gallagher Data Breach Litigation*, 631 F. Supp. 3d 573 (N.D. Ill. 2022) ........ 7

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ........ 10

*In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 11

*In re Vizio, Inc. Consumer Privacy Litigation*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 13

*In re Zynga Privacy Litigation*, 750 F. 3d 1098 (9th Cir. 2014) ........ 11

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ........ 2

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ........ 12

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ........ 15

*Licea v. Cinmar, LLC*, 2023 WL 2415592 (C.D. Cal. 2023) ........ 11, 12

*Lucent Technologies, Inc. v. Board of Equalization*, 241 Cal. App. 4th 19 (2015) ........ 15

*Manzarek v. St. Paul Fire & Marine Insurance Co.*, 519 F.3d 1025 (9th Cir. 2008) ........ 2

*NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938 (N.D. Cal. 2014) ........ 13

*Oddei v. ScanSTAT Technologies, LLC,* 2022 WL 17538747 (9th Cir. 2022) ........ 7

*People v. Robles*, 5 P.3d 176 (Cal. 2000) ........ 15

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. 2019) ........ 14

*Sebastian Brown Products LLC v. Muzooka Inc.*, 2016 WL 949004 (N.D. Cal. 2016) .................... 8

*Shaddox v. Bertani*, 110 Cal. App. 4th 1406 (2003) ............................................................... 6

*Swarts v. Home Depot, Inc.*, 2023 WL 5615453 (N.D. Cal. 2023) ............................................ 14

*Underhill v. Kornblum*, 2017 WL 2869734 (S.D. Cal. 2017) ..................................................... 13

*Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181 (N.D. Cal. 2023) ....................... 13

*Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. 2022) .................................. 10

*Wilson v. RATER8, LLC*, 2021 WL 4865930 (S.D. Cal. 2021) ................................................. 8, 9

**Statutes**

18 U.S.C. § 2510 ...................................................................................................................... 15

18 U.S.C. § 2512 ...................................................................................................................... 15

Cal. Penal Code § 632 ............................................................................................................... 15

Cal. Penal Code. § 632 .............................................................................................................. 14

California Civil Code § 56.05 ................................................................................................. 7, 8

California Civil Code § 56.06 ..................................................................................................... 7

California Penal Code § 631 ................................................................................................. 9, 12

California Penal Code § 635 ...................................................................................................... 15

**Treatises**

Webster's Third New International Dictionary of the English Language Unabridged (2002)........ 15

**Regulations**

45 C.F.R. § 160.103 ..................................................................................................................... 7

The theory at the heart of Plaintiff Davina Gibson's lawsuit is that when she supposedly scheduled medical appointments with, and sought and received prescriptions from, Defendant Planned Parenthood Federation of America, Inc. ("PPFA") through its website, information about those interactions was collected by third parties in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, and the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.* Plaintiff's allegations are flawed at their core, as they imply she used PPFA's website in a way that she cannot and did not do. Indeed, even a cursory review of the website itself (which is incorporated into the Complaint, and so fairly considered on a motion to dismiss) shows that it cannot be used to schedule appointments or provide healthcare (including prescriptions) as Plaintiff suggests. Those activities take place on separate websites, which are neither owned nor operated by PPFA. Plaintiff's CIPA claims thus rest on nothing more than a sleight of hand that conflates separate websites—one where the information collection supposedly occurred, and others where the information at issue was actually provided. Plaintiff's CMIA claim similarly elides the distinction between PPFA, which does not provide health care, and other legally separate entities, which do. As a result, there are no facts in the Complaint that establish PPFA itself is covered by CMIA, and once stripped of Plaintiff's oversimplifications, nothing remains of her causes of action. Her lawsuit should thus be dismissed in its entirety.

## I. STATEMENT OF ISSUES TO BE DECIDED

PPFA seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the suit in its entirety for failure to state a claim.

## II. SUMMARY OF RELEVANT FACTS

PPFA is a registered 501(c)(3) nonprofit organization that provides support for 49 separate local affiliates, all of which are legally distinct from PPFA. *See* Compl. ¶ 9. Those independent affiliates—not PPFA itself—collectively operate nearly 600 separate health centers, which provide healthcare to more than 2 million people each year. *See id.*; *see also* Compl. ¶ 11 n.4. As part of the support it provides affiliates, PPFA operates an informational website at www.plannedparenthood.org. Compl. ¶ 2.

Although this lawsuit is based entirely on that website, the Complaint's description of it is incomplete and inaccurate. Plaintiff claims, for instance, to have used the website "to schedule appointments and research Women's Services and other healthcare information," Compl. ¶ 136. She alleges that in so doing she conveyed unidentified information about "the specialty and names of the providers with whom she seeks treatment," and "prescriptions she researches, seeks and is provided," Compl. ¶ 140, which was then transmitted without her knowledge to Google, Meta, Yahoo, and Microsoft (whom she refers to collectively as "the Third Parties"). The website itself, however, belies those very claims.[1] Even a cursory navigation of PPFA's website reveals that many of the interactions that Plaintiff describes, including, critically, those relating to scheduling and receiving medical care, occur ***outside of***—i.e., not on—PPFA's website.

For instance, the Complaint gives the example (at ¶¶ 112-13) of seeking care around zip code 90001 using PPFA's homepage (https://www.plannedparenthood.org), pictured below:




Note that the visitor is only required to enter a zip code, city, or state for their search, though they have the option to filter for particular services using the "SERVICE" dropdown. Pressing the "SEARCH" button, after entering the "90001" zip code and filter for the "Women's Health Care"

---

[1] Because the Complaint "depends on the contents of" the website, "the incorporation by reference doctrine" allows the court, when evaluating a motion to dismiss, to consider that "website" in full. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (where plaintiff's allegations are "contradicted by documents referred to in the complaint," the documents control for purposes of a motion to dismiss).

Service that Plaintiff claims to have scheduled,[2] returns the following page (plannedparenthood.org/health-center?location=90001&service=womanshealthservice&channel=any):




As can be seen from the beginning of the page's URL (https://www.plannedparenthood.org...) listed above, this webpage is a part of PPFA's website. Like the homepage, it too does not require the entry of any personal information in order to proceed.

To book an appointment at the Huntington Park Health Center (or at any other of the 580 distinct health centers that result from the prior search), one clicks the blue "BOOK ONLINE" button, in the lower left of the image above. Doing so opens a new webpage (https://ppla-self.radixhealth.com/dash/self/#/schedule/group/32/search), shown below:




[2] As noted below, although the example given at Compl. ¶¶ 112-13 involves a search for abortion care, Plaintiff herself does not claim to have searched for or scheduled such care. Accordingly, the flow shown here reflects a search for the care that Plaintiff claims to have sought—and hence reflects the entry of information (or lack thereof) involved in Plaintiff's actual use of the website. In any event, the userflow described here, including the redirection to a separate website to schedule any appointment, is the same regardless of which type of services are sought.

Note that unlike the prior button click, this one ***does not*** result in a navigation to a new page of the PPFA website. Rather it directs the user to an entirely new page on an entirely different website. This is indicated in at least four separate ways. First, the URL of the webpage no longer begins with "https://www.plannedparenthood.org..." like all pages on the PPFA website, but instead begins with "https://ppla-self.radixhealth.com...." Second, the form and the style of this webpage—the fonts, colors, layout—are very different than on the PPFA website. (Notice also the logo at the upper left is for the separate entity "Planned Parenthood Los Angeles," not for "Planned Parenthood" as on the PPFA website.) Third, the Terms of Use—which are hyperlinked along the bottom of the page, and to which the user must affirmatively agree by checking a box before proceeding—make clear that "the operator of the site" is an entity called "Relatient," not PPFA. *See* https://www.relatient.com/terms-of-use/. Only by first reading and accepting those Terms of Use (as well as Relatient's Privacy Policy and HIPAA Authorization) can the website visitor submit their visit reason, zip code, and age; and only after reading and accepting those Terms of Use is the website visitor able to even enter (much less submit) further "Patient Information" (such as name, birthdate, gender, phone number, and email), "Insurance Information," or "Clinical Details." Finally, the bottom of the website itself states explicitly that it is "powered by Dash by Relatient."

That is all to say that the vast majority of information—and certainly all personally identifying information—in this user flow is entered and submitted only after the visitor leaves PPFA's website, not on PPFA's website. Nowhere in the workflow that Plaintiff offers in her Complaint does PPFA ever ask for or require the user's name; all that is required is the kind of data that someone would put into a search engine to locate the same information. That makes sense: PPFA ***does not*** schedule appointments, solicit or fulfill prescription requests, or deliver healthcare, and so its website does not (and could not) receive the personal information to do those things that Plaintiff alleges was captured without her consent.

Nevertheless, Plaintiff filed this lawsuit on the theory that analytics software supplied by "the Third Parties" (for the purpose of helping PPFA to understand and improve the effects of its advertising) resulted in the transmission to "the Third Parties" of private medical information that

she allegedly entered on PPFA's website—including, supposedly, information about "prescriptions she researches, seeks and is provided" and "appointments for Women's Services" that she "schedules." Compl. ¶ 140; *see also id.* ¶ 4. But, the Complaint artfully avoids any specifics about how or where Plaintiff supposedly entered any such information on PPFA's website, and consequently does not show that such information was transmitted to any of "the Third Parties." In fact, allegations of the Plaintiff's specific experience do not begin until Paragraph 134, and then are limited to highly generalized allegations of how she personally used PPFA's informational website without any linkage to the Complaint's series of stylized "illustrations" of how a hypothetical website visitor might interact with PPFA's website in a way that Plaintiff herself does not claim to have done. *See* Compl. ¶¶ 111-22.

But even those "illustrations" fail to show what Plaintiff suggests. For instance, the Complaint hypothesizes a visitor who clicks a button on an information page on PPFA's website to "learn more" about "transgender hormone therapy." Compl. ¶ 119. According to Plaintiff, doing so will cause the analytics software to "explicitly reveal[]" to "the Third Parties" that "the Website user clicked on, and wanted to learn more about, 'transgender hormone therapy,'" *id.*, which Plaintiff suggests "discloses … individually identifiable information … relating to Website users' medical histories," Compl. ¶ 221. But that stretches too far. Nothing about the mere fact that someone wanted to "learn more" about "transgender hormone therapy," shows anything about their medical history—or indeed, any other private information about them. Merely seeking to "learn more" about "transgender hormone therapy" says nothing about an individual's need for, or intent to receive, such treatment. So too, the fact that a user—who was not at any time required to provide their identity—searches for information on "HIV," does not show that such person has, or is seeking treatment for, that condition. Compl. ¶ 121. Accordingly, even Plaintiff's hypothetical "illustration[s]" fail to demonstrate what she insinuates throughout her Complaint—that PPFA's website disclosed confidential, individually identifiable medical information to "the Third Parties."

Ultimately, the Complaint fails because it overarchingly rests on a sleight of hand:

- It attributes to PPFA the collection of certain information, which does not in fact

occur on PPFA's website, where the analytics software supposedly collected information entered by users.

- It omits crucial details about Plaintiff's own alleged experience on the website (such as what information she entered, where, and whether she believes it was transmitted to "the Third Parties").
- And it resorts to contrived "illustrations" of how a hypothetical website user might interact with PPFA's website that ultimately shows nothing remotely like the disclosure of individually identifiable medical information that Plaintiff suggests.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While in general a court must accept all material factual allegations as true, it is not required to accept as true any allegations that are contradicted by matters that are subject to judicial notice, exhibits to the complaint, or incorporated by reference in a complaint. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

## IV. LEGAL ARGUMENT

### A. Plaintiff Fails To State A Claim Under CMIA.

CMIA "establishes the general principle that a patient's medical information shall not be disclosed by health care providers." *Shaddox v. Bertani*, 110 Cal. App. 4th 1406, 1408 (2003). Thus, to state a CMIA claim, Plaintiff must allege facts establishing, at a minimum, that (1) the defendant is a "provider of health care," and (2) it disclosed "medical information," as those terms are defined in CMIA. The Complaint fails to establish either.

#### 1. Plaintiff fails to allege facts showing that PPFA is a "provider of health care."

CMIA defines a "[p]rovider of health care" to mean (as relevant here) (a) "a person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code," Cal. Civ. Code § 56.05(o), or (b) a "business organized for the purpose of maintaining

medical information"—or that "offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information"—"in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage their information, or for the diagnosis and treatment of the individual," Cal. Civ. Code § 56.06(a)-(b).

As courts have repeatedly made clear, to state a claim under CMIA a complaint must do more than simply parrot that statutory language; instead, it must plead facts showing that the defendant falls into one of those categories. *See, e.g.*, *Oddei v. ScanSTAT Techs., LLC,* 2022 WL 17538747, at *1 (9th Cir. 2022). CMIA claims will thus be dismissed where they "include[] only the conclusory statement that [the defendant] provides 'software or hardware' for consumers" and "no allegation that [the defendant] was organized for the purpose of maintaining medical information." *Id.*; *see also, e.g.*, *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 595 (N.D. Ill. 2022) (dismissing CMIA claim "devoid of any allegation that [the] Defendant is organized for the purpose of maintaining medical information").

All the Complaint here offers, however, is the conclusory allegation that PPFA "is a health facility licensed pursuant to Division 2 of the Health and Safety Code," "maintains medical information … for the purposes of allowing its Website users to manage their information or make the information available to a healthcare provider, or for the diagnoses, treatment or management of a medical condition," and "offers software to consumers that is designed to maintain medical information" for those same purposes. Compl. ¶ 213.[3] As an initial matter, the allegation that PPFA is licensed pursuant to Division 2 of California's Health and Safety Code is plainly wrong—as can be seen by simply searching the Department of Public Health's database at https://www.cdph.ca.gov/Programs/CHCQ/LCP/CalHealthFind/Pages/SearchResult.aspx. *See also Sebastian Brown Prods. LLC v. Muzooka Inc.*, 2016 WL 949004, at *5 (N.D. Cal. 2016) (on Rule 12(b)(6) motion, court may take judicial notice of items in government "database" as "matters of

[3] Allegations that PPFA is a "covered entity under the Health Insurance Portability and Accountability Act," (HIPAA) *e.g.*, Compl. ¶ 31, are irrelevant here, as the two statutes have different scopes. *Compare* 45 C.F.R. § 160.103, *with* Cal. Civ. Code § 56.06.

public record”). In any case, the allegations in the Complaint simply parrot the words of the statute—and are thus indistinguishable from the allegations in the cases cited above—and so can be disregarded for that reason alone. Plaintiff's CIMA claim therefore should be dismissed.

**2. Plaintiff fails to allege facts showing she was a “patient” of PPFA or that PPFA disclosed her “medical information” to “the Third Parties.”**

CMIA defines “medical information” to mean “any individually identifiable information … regarding a patient's medical history, mental or physical condition, or treatment.” Cal. Civ. Code § 56.05(j). As an initial matter, Plaintiff does not allege facts that establish she was a “patient”; *i.e.*, that she “received health care” from PPFA. Nor could she as PPFA does not provide such services.

What is more, Plaintiff does not allege facts showing that any of her “medical information” was at issue. Indeed, that term's scope is exceptionally limited: “[M]edical information cannot mean just any patient-related information held by a health care provider, but must be ‘individually identifiable information’ and also include ‘a patient's medical history, mental or physical condition, or treatment.’” *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 435 (2014). That means, for instance, that the mere fact that an individual was seen “by doctor X or clinic Y” does not constitute medical information under CMIA. In other words, even for a person who (unlike Plaintiff) was a patient, the mere fact that such a person received *some treatment* from a doctor or clinic does not disclose *what treatment* the person received (or what condition that person had). *Id.* The same is true of “treating physician names, medical treatment appointment information, and medical treatment discharge dates and times,” because knowing that information—even about someone who (again, unlike Plaintiff) is a “patient”—does not reveal individually identifiable information about their medical condition, history, or treatment. *Wilson v. RATER8, LLC*, 2021 WL 4865930, at *4-5 (S.D. Cal. 2021).

The Complaint fails to plead facts showing that PPFA disclosed to “the Third Parties” any information that qualifies as “medical information.” As noted above, the Complaint does not make any allegation about what of Plaintiff's information, if any, she provided to PPFA or what was transmitted by PPFA to “the Third Parties” (as opposed to what Plaintiff herself transmitted to

PPFA). Nor does it say whether and how such information was individually identifiable. So, it necessarily fails to plead facts showing that PPFA disclosed "medical information." *See supra* § IV.A.3.b; Compl. ¶ 140. For that reason alone, her CMIA claim fails. What is more, because courts have held that information about appointments that *actually* occurred is not "medical information," *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435; *Wilson*, 2021 WL 4865930, at *4-5, the same is necessarily true of the "appointments," "names of the providers," and "locations of … facilities *she wishes to go to*," Compl. ¶ 140, that Plaintiff alleges to be at issue here. And the data about "medical treatment" and "prescriptions" she allegedly "seeks and is provided," that Plaintiff claims to have sent to PPFA, Compl. ¶ 140, in fact does not appear to have been sent to PPFA at all, but rather to some other entity through some other website. Because Plaintiff has failed, multiple times over, to plead facts showing that she is a "patient" of PPFA who disclosed her "medical information" to "the Third Parties," her CMIA claim must be dismissed.

### B. Plaintiff Fails To State A Claim Under Cal. Penal Code § 631.

Under Section 631, it is unlawful to (1) "intentionally tap[] … any telegraph or telephone wire, line, cable, or instrument"; to (2) "willfully and without the consent of all parties to the communication … read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; or (3) to "aid[], agree[] with, employ[], or conspire[] with any person" to do either of those things. Cal. Penal Code § 631(a). Said otherwise, Section 631 creates two forms of direct liability (under clauses (1) and (2) above) and one form of aiding-and-abetting liability (under clause (3) above). Plaintiff has failed to allege a violation of Section 631 under any of those theories.

#### 1. The Complaint fails to state a claim for direct liability under Section 631, because it fails to plead facts showing that PPFA was a third party to Plaintiff's communications.

The law is clear that Section 631's first two clauses "'apply only to eavesdropping by a third party.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)). They do not cover "a participant" in the communication—even one who "record[s]" it. *Id.* Here, Plaintiff admits that her "communications

[were] with [PPFA].” Compl. ¶ 144. As a participant, PPFA cannot be liable for eavesdropping on its own communications with Plaintiff.

**2. The Complaint fails to state a claim for aiding-and-abetting liability under Section 631 because it fails to plead facts showing that “the Third Parties” acted independently of PPFA.**

Plaintiff’s only remaining theory is that PPFA violated Section 631’s third clause because it “aided, agreed with and conspired” with “the Third Parties” to “track and intercept Plaintiff’s and Class members’ PHI and other sensitive PII while they accessed the Website.” Compl. ¶ 183. But in order to establish a Section 631 violation by “the Third Parties,” Plaintiff must (among other things) “provide facts suggesting that [“the Third Parties” were] recording [PPFA’s website visitors’] information for some use or potential future use beyond simply supplying this information back to [PPFA].” *Cody v. Boscov’s, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. 2023). That is because if the Third Parties do not make their own, independent use of the information, then they are not (notwithstanding the label Plaintiff tags them with) “independent third part[ies]” to the communications any more than PPFA is—but are merely agents, or extensions, of PPFA itself (and thus just as incapable of committing a wiretap). *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. 2022). Said otherwise, without an allegation of independent use, all the Complaint establishes is that “the Third Parties” provided “software [that] was merely a tool that [PPFA] used to record its own communications with plaintiff”—which, of course, is entirely lawful. *Id.*

Here, the Complaint provides no such factual allegations. To the contrary, it makes clear that the analytics software supplied by “the Third Parties” operates for PPFA’s own use (meaning that it does not run afoul of the wiretapping laws). With respect to Google, for instance, the Complaint alleges that the relevant technology “allows ***website owners*** to track site visitors’ actions through tracking pixels and other technology in order to target such visitors with personalized advertisements.” Compl. ¶ 82 (emphasis added). In other words, the technology operates for PPFA’s benefit—not for Google’s. And Google is not an outlier; the allegations as to the other “Third Parties” are similar. *See, e.g.*, Compl. ¶ 66 (Meta’s technology “helps website operators …

understand and measure their products and services, and better reach and serve people who use or might be interested in their products and services"); *id.* ¶ 100 (Microsoft's technology "help[s] track and analyze website user behavior, measure the effectiveness of advertising campaigns and provide relevant advertisements based on the website user's interests and browsing history"); *id.* ¶ 106 (Yahoo's technology "enables website owners to track various metrics, such as page views, unique visitors, bounce rates and conversion rates").

Plaintiff thus alleges nothing more than "that the "third party … harvest[s] valuable data from such communications ***for the benefit of its clients***." *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. 2023) (emphasis in original). That is exactly the kind of allegation that courts have held not to show "independent" use as is required to state a Section 631 aiding-and-abetting claim. *See id.* For this reason alone, Plaintiff's aiding-and-abetting theory fails.

**3. The Complaint fails to state a Section 631 claim under any theory for other reasons.**

**a. Plaintiff fails to plead facts showing that the "contents" of any communication were at issue.**

As with the federal Wiretap Act, Section 631 does not make it a crime to access any information passed between two parties, but rather only the substantive "contents" of a communication—i.e., "the intended message conveyed by the communication." *See In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1106 (9th Cir. 2014). Thus, to show a violation of Section 631, two things must be true: (1) a plaintiff must have intended to convey a substantive message, and (2) an unauthorized party must have accessed (or attempted to access) that substance, and not mere "record information," like a person's name or address. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012).

Here, Plaintiff does not specify what information was supposedly intercepted. Instead, Plaintiff merely describes the information she supposedly sent to PPFA—namely, "healthcare and other personal information … including research related to Women's Services, when and where she schedules appointments for Women's Services, the types of medical treatment she seeks through Planned Parenthood, the specialty and names of the providers with whom she seeks treatment with

[sic], the locations of the Planned Parenthood facilities she wishes to go to and prescriptions she researches, seeks and is provided." Compl. ¶ 140. But that allegation suffers from at least two problems. First, as noted above, much of what Plaintiff describes—including appointment booking and the seeking and provision of prescriptions—does not occur on the PPFA website at all, meaning that it also cannot be intercepted on that website. *See supra* § II. Second, Plaintiff's allegation speaks solely to the information that she supposedly sent *to PPFA*; it says nothing at all about the information that was supposedly intercepted by "the Third Parties." As discussed above, the only information that the Complaint actually alleges being sent to any "Third Party" solely concerns an imaginary website visitor hypothesized solely for "illustration" purposes. *See supra* § II. For this reason, too, Plaintiff's Section 631 claim fails.

**b. Plaintiff fails to plead facts showing that anyone intercepted a communication "in transit."**

Section 631(a) liability attaches only when a defendant (or someone aided and abetted by the defendant) has committed "the interception of an electronic communication." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050-51 (N.D. Cal. 2018). Per the statute's text, this means that the communication must be unlawfully accessed while it is "in transit." Cal. Penal Code § 631(a). "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly," *Cinmar*, 2023 WL 2415592, at *9, as requiring "acquisition contemporaneous with transmission," *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that the "narrow" definition of "intercept" means "acquisition of contemporaneous with transmission").

To survive a motion to dismiss, the Section 631 claim must allege facts showing that "the Third Parties" acquired the content of Plaintiff's communication while the communication was en route to its destination—not before it left or after it arrived. *See Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017) (dismissing claim because plaintiff had not pled facts demonstrating that defendant acquired the communications contemporaneously with their transmission). Conclusory assertions that merely recite that the communications were acquired "during transmission" or "in real time" are insufficient. *See In re Vizio, Inc. Consumer Privacy Litig.*, 238

F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing Section 631(a) claim because allegations that defendant "intercepted their communications … 'during transmission'" were too conclusory). Rather, the Complaint must "articulate[] with sufficient clarity when [defendant] supposedly intercepted their communications." *See id.*; *see also Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *5 (N.D. Cal. 2023) (similar). That requirement is especially important in cases like this, because where (as here) the communication occurs over the internet, it is difficult for true "interception" to occur. After all, "[t]here is only a narrow window" during which an interception of an internet-based communication may occur—"the seconds or miliseconds before which a newly composed message is saved to any temporary location following a send command." *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014). So "unless [the complaint alleges that] some type of automatic routing software is used," "interception" of such messages "is virtually impossible." *Id.*

Here, what few allegations the Complaint includes on this score affirmatively refute any suggestion that any data is captured while "in transit." Plaintiff's basic theory is that the tracking technology exists on her browser, *see, e.g.*, Compl. ¶ 70 ("At relevant times, two sets of code are thus automatically run as part of the browser's attempt to load and read websites: the host website's own code and Meta's embedded code.")—which means that it operates ***before*** the data is transmitted (i.e., before it has left the browser on Plaintiff's computer), not while it is in transit on the wires (or their wireless equivalent) between Plaintiff's computer and the server hosting PPFA's website. For this separate reason, too, Plaintiff's claim fails.

### C. Plaintiff Fails To State A Claim Under Cal. Penal Code § 632.

To state a Section 632 claim, a plaintiff must plead facts showing (among other things) that the defendant recorded (1) a "confidential communication" (2) using a "recording device." Cal. Penal Code. § 632. The Complaint fails to plead facts establishing either element.

#### 1. Plaintiff fails to allege facts showing that her communications with PPFA were "confidential."

A communication qualifies as "confidential" under Section 632 only if a party 'has an

objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. 2023) (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021)). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. 2019) (collecting cases). Here, however, all Plaintiff alleges is internet communications. Specifically, the Complaint alleges that Plaintiff's "communications ***to and with PPFA*** on its Website" constituted the "confidential communications for purposes of Cal. Penal Code § 632." Compl. ¶ 201 (emphasis added). That is not just indistinguishable from the situation described in *Campbell*, it tracks it exactly: Plaintiff's entire theory is that the recipient of her internet-based communications (i.e., PPFA), shared them with others. *Campbell* thus applies with full force here, and commands that Plaintiff's Section 632 claim must be dismissed.

### 2. Plaintiff fails to allege facts showing that her communications with PPFA were captured by a "device."

Plaintiff's Section 632 claim is separately premised on the assumption that the computer code supplied by "the Third Parties'" qualifies as a "recording device[] for purposes of Cal. Penal Code § 632." Compl. ¶ 202. But the "proper definition" of a statutory term is a "[p]urely legal question." *Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006). Although the Complaint alleges that code is a "device," Compl. ¶ 202, this is immaterial; it is a legal matter for this Court to decide. *Iqbal*, 556 U.S. at 678-79 (even at the motion-to-dismiss stage, courts "are not bound to accept … a legal conclusion" as true). Here, statutory text and context both make clear that Section 632 uses the term "device" in a way that connotes a physical object, and hence excludes code.

By using the term "device" without specifically defining it, Section 632 directs courts to apply its ordinary meaning. *DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 936 (9th Cir. 2000); *accord, e.g.*, *De Vries v. Regents of Univ. of Cal.*, 6 Cal. App. 5th 574, 591 (2016). And a "device," in common parlance, is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Webster's Third New International Dictionary of the English Language

Unabridged 618 (2002); *see also Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 136 F.3d 819, 822 (D.C. Cir. 1998). That definition—and particularly, its references to "equipment" or "a mechanism"—connotes a physical object.

That straightforward reading is confirmed by the context in which the term "device" appears. Both CIPA and the analogous federal act make it unlawful to (among other things) "manufacture[]," or "assemble[]," a "device" that is primarily used for wiretapping. Cal. Penal Code § 635 (also making it unlawful to "transport[]," or "import[]" a device); 18 U.S.C. § 2512(1)(b). While one could readily do all of those things to physical objects, it would be odd and inappropriate word choice—and in some cases, impossible—to apply those verbs to intangible software code. Similarly, Section 632, just like the federal Wiretap Act on which it is based, includes an express carveout that prevents liability from attaching to a "hearing aid or similar device" or telephone "equipment"—indicating that the term "device" would otherwise (i.e., absent this carveout) target physical objects like hearing aids and telephone equipment. Cal. Penal Code § 632(e)-(f); 18 U.S.C. § 2510(5).

The plain language thus compels the conclusion that "device" does not include intangible computer code. And because the "plain text" is clear, that ends the matter. *See Lucent Techs., Inc. v. Bd. of Equalization*, 241 Cal. App. 4th 19, 38 (2015). But even if ambiguity as to Section 632's scope remained, because it is a criminal statute, the rule of lenity would require that ambiguity to be resolved in favor of a narrower reading—i.e., one that excludes code. *People v. Robles*, 5 P.3d 176, 182 (Cal. 2000); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (lenity applies to noncriminal applications of a criminal statute). For this reason, too, Plaintiff's Section 632 claim fails.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

DATED: November 24, 2023

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.