Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
William D. Kelly (admitted pro hac vice)
**THE BRUNO LAW FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Tel: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
wk@brunolawus.com

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, California 95825
Tel: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVINA GIBSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date of Filing: January 8, 2024 |

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 1

III. LEGAL STANDARD .......... 2

IV. ARGUMENT…… .......... 2

A. PP violated Section 631(a) of CIPA by aiding the Third Parties' interception of Plaintiff's PHI and other sensitive PII .......... 2

1. Because the Third Parties acted as "eavesdroppers" that independently used Plaintiff's disclosed communications, the direct party exception does not apply .......... 3

2. The Third Parties intercepted Plaintiff's "content" information .......... 4

3. The Third Parties intercepted Plaintiff's communications "in transit." .......... 6

B. PP violated Section 632.7 of CIPA by intentionally using the tracking codes on its Website to record Plaintiff's confidential communications .......... 7

C. Plaintiff states a claim that PP violated CMIA .......... 7

1. PP is a "provider of health care" within CMIA's meaning .......... 8

2. Plaintiff is a "patient" within CMIA's meaning .......... 10

3. PP disclosed Plaintiff's protected "medical information." .......... 10

4. Plaintiff's medical information was transmitted to and viewed by the Third Parties .......... 13

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**


*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 2


**United States Circuit Court of Appeals Cases**


*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ........................ 2

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) ............ 4

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........................................ 4

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510 (7th Cir. 2015) ........................................ 13


**United States District Court Cases**


*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........................ 6,7

*Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .................. 4,11,12,13

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........................ 6

*Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ........................ 2

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................ 6

*In re Google RTB*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................ 2

*In Meta Pixel Healthcare Litig*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................ 4

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........................................ 13

*James v. Walt Disney Co.*, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ........................ 4,5

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................ 3

*Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) ........................ 4

*Licea v. Old Navy*, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ........................ 7

*McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750 (N.D. Cal. Feb. 3, 2014) ........................ 7

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................ 4

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ..............................13

*Tamraz v. Bakotic Pathology Assocs.*, LLC,
2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ..................................................................13

*Tanner v. Acushnet Co*., 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........................................3

**State Court Cases**

*Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*,
132 Cal. App. 4th 1466 (2005) ..........................................................................................11

**Statutes, Regulations & Rules**

California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq* ..............................................1,2

California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq* .........1,7,8,9,10

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2

## I. INTRODUCTION

Defendant Planned Parenthood Federation of America, Inc. ("PP") asks the Court to dismiss this lawsuit because Plaintiff Davina Gibson ("Plaintiff") "conflates" her communications on PP's website with subsequent communications that take place on "other" websites PP directs her to. As a result, PP asserts that Plaintiff fails to allege she communicated medical information on PP's website. In making these assertions, PP ignores what occurs on its *own* website and that *every* activity and communication alleged in the complaint occurred on PP's website. Contrary to PP's contentions, the "other" websites—and communications had on those websites—are irrelevant to the claims. PP's attempt to evade its own responsibility in the unlawful disclosure of its website users' individually identifiable medical information should be rejected.

This case depends on answers to four basic questions about communications on PP's website: (1) *where* do users communicate; (2) *what type* of information do users communicate; (3) *who* does PP disclose users' communications to; and (4) *how* does PP disclose users' communications. Because Plaintiff alleges she communicates her individually identifiable medical information on PP's own website—information that is disclosed to third parties as a result of tracking codes PP installed on its website—the Court should deny PP's motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff filed this action on behalf of herself and all people who use the PP website www.plannedparenthood.org and its related webpages (the "Website") and had their protected health information ("PHI") and other personally identifiable information ("PII") unlawfully disclosed to third parties by PP. Compl. ¶163. Plaintiff alleges PP violated (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a) and 632.7 and (2) the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 et seq. *Id.* ¶1. PP's unlawful disclosure—due to a blatant disregard for obtaining consent—of its Website users' PHI and other PII alarmingly reveals to third parties, including Meta, Google, Microsoft and Yahoo (collectively the "Third Parties"), its Website users' exact identity and specific information regarding their inherently private and personal sexual and reproductive healthcare. *Id.* ¶¶1, 4.

PP *aids* the Third Parties in unlawfully intercepting communications on its Website by voluntarily embedding the Third Parties' tracking codes on its Website in a mutually beneficial relationship that bolsters profits for all. *Id*. ¶¶4, 5, 26. At all times, Website users' had a reasonable expectation of privacy in their communications on the Website. *Id*. ¶30. Instead of respecting Website users' expectation of privacy—or obtaining consent—PP unlawfully disclosed to various Third Parties its Website users' communications in violation of CIPA and CMIA.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. But a dismissal under Rule 12 is improper where the complaint pleads "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *2 (N.D. Cal. Sept. 7, 2023).

## IV. ARGUMENT

### A. PP violated Section 631(a) of CIPA by aiding the Third Parties' interception of Plaintiff's PHI and other sensitive PII.

CIPA protects peoples' privacy rights when communications are recorded without knowledge or consent. This includes Section 631(a), which prohibits someone from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Penal Code § 631(a); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607 (9th Cir. 2020). A claim lies not only against the interceptor but also against a party "who aids, agrees with, employs, or conspires with" the interceptor. *Id*.

PP asserts—without merit—that Plaintiff does not plausibly state a derivative claim under Section 631(a) because (1) the direct party exception applies, (2) the "contents" of Plaintiff's communications were purportedly not disclosed and (3) Plaintiff's communications were supposedly not intercepted "in transit" by the Third Parties. *See* Def. MTD at 10-13. Plaintiff

sufficiently alleges PP violated Cal. Penal Code § 631(a), though, because (1) the direct party exception does not apply since the Third Parties acted as "eavesdroppers" that independently used Plaintiff's communications on the Website, (2) the Third Parties intercepted Plaintiff's "content" information and (3) Plaintiff's communications were intercepted "in transit" by the Third Parties.

**1. *Because the Third Parties acted as "eavesdroppers" that independently used Plaintiff's disclosed communications, the direct party exception does not apply.***

Courts have recognized a direct party exception in Section 631(a), meaning a party cannot wiretap or eavesdrop on its own conversation. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897-901 (N.D. Cal. 2023). If third parties act as mere extensions of a website provider, a plaintiff's claim may fail under this exception. *Id*. When analyzing the direct party exception in derivative CIPA actions, some courts distinguish between the third parties acting as "eavesdroppers" as opposed to "recorders."[1] *Id*. If the third parties act as "eavesdroppers"—which requires that the third parties independently use the disclosed communications—they are not extensions of the website provider and the direct party exception will not apply. *Id*.

Regardless of whether this Court requires allegations that the Third Parties are "eavesdroppers" that make independent use of the communications at issue,[2] Plaintiff has met that burden. PP misses the mark by focusing on its own—rather than the Third Parties'—use of Website users' communications. *See* Def. MTD at 10-11. Plaintiff's complaint describes in detail how the Third Parties independently use the intercepted communications for their own benefit:

- The Third Parties "collect, use and store the communications for their own benefit, including to improve their own personalized content delivery, advertising network machine-learning algorithms and ability to identify and target users. The information obtained by the Third Parties is used to identify specific individuals

---

[1] At least some courts find problems with this distinction. *See e.g., id.* at 900 ("relying on this distinction arguably reads a 'use' requirement into the second prong of § 631 that does not exist."); *Tanner v. Acushnet Co*., 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023) ("Nothing in the statutory language . . . suggests an intent to limit the liability to those who *use* the intercepted information.").

[2] *See Tanner*, 2023 WL 8152104, at *4-5 (some courts "have acknowledged this [CIPA] distinction requires plaintiffs to allege facts indicating that the third party is recording the customers' information 'for some use or potential future use beyond simply supplying this information back to Defendant.'").

and their communications on the Website. This helps the Third Parties in many ways ….” Compl. ¶5;

- The Third Parties use the disclosed communications “for advertising, analytics and other purposes.” *Id.* ¶¶58, 80, 98, 104; and
- “[T]he Third Parties used [Plaintiff’s] unlawfully collected data to improve their own products, services and algorithms, and the Third Parties improperly viewed and used her PHI and other sensitive PII in connection with targeted marketing to bolster profits.” *Id.* ¶149.

Accordingly, Plaintiff sufficiently alleges that the direct party exception does not apply because the Third Parties acted as “eavesdroppers” that independently used the acquired communications.

**2. *The Third Parties intercepted Plaintiff’s “content” information.***

CIPA requires that Plaintiff allege the “content” of her communications was intercepted. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). ‘“[C]ontents’ refers to the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated during the communication.” *Id.* Record information and content “are not mutually exclusive categories.” *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015). Information otherwise considered “record information” constitutes the “content” of a communication when the user enters information on a website. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021). Further, the post-domain name portion of website address Uniform Resource Locators (“URLs”)—which is everything after “.com”—constitutes “content” under CIPA when it includes information entered by the user. *See Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *5 (S.D. Cal. Nov. 17, 2023) (finding URLs containing the same type of user-entered information at issue like PHI and other PII is “content” under CIPA); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *4 (N.D. Cal. Oct. 3, 2023) (“to the extent Plaintiffs’ CIPA claim avers referrer URLs and data into forms are ‘content,’ Plaintiffs have met their burden ….”); *In Meta Pixel Healthcare Litig*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (post-domain name portions of URLs are “content because they concern the substance of a communication.”). Notably, “there is no requirement that [Plaintiff] specifically allege the exact contents of her communications with

[PP]" to state a valid CIPA claim. *James v. Walt Disney Co.*, 2023 WL 7392285, at *11 (N.D. Cal. Nov. 8, 2023).

PP contends Plaintiff's complaint does not specify the "contents" of any information intercepted by the Third Parties. Def. MTD at 11-12. But Plaintiff unequivocally alleges the type of "content" information communicated on the Website, as well as the "content" information the Third Parties intercepted and how such information was intercepted.

First, Plaintiff sufficiently alleges the type of "content" intercepted by the Third Parties from user-entered and user-specific communications on the Website, which includes PP's "website users' confidential and private healthcare information and other sensitive personally identifiable information …." Compl. ¶1. Plaintiff also specifically alleges that users' communications include "content" like: "sexual and reproductive healthcare history," any "information communicated . . . through the search bar[,]" "the types of services and treatment [users] research and seek," the "types of prescriptions [users] research" and seek, users' "IP address and FID[3]" and "when individuals searched for doctors with particular specialties." *Id.* ¶¶19-21, 121, 191. Plaintiff also alleges that her own specific "content" information was intercepted while using the Website—including from "us[ing] the search bar on the Website" (*id.* ¶138)—and she disclosed "significant healthcare and other personal information on the Website, including research related to Women's Services [as defined in ¶20 of complaint] . . . the types of medical treatment she seeks through Planned Parenthood, the specialty and names of the providers with whom she seeks treatment with . . . and prescriptions she researches, seeks and is provided." *Id.* ¶140. She also "simultaneously communicated considerable PII alongside this information, including, but not limited to, her IP address and FID." *Id.*

Second, Plaintiff sufficiently alleges the Third Parties intercepted the "content" of users' communications—including her own. *See e.g.*, *id.* ¶¶4, 111-122, 142-143, 183, 188.

---

[3] Also known as a Facebook ID. *See* Compl. ¶1. An FID "is a unique and persistent identifier that Meta assigns to each of its users" that is used to identify people. *Id.* ¶74. Non-Facebook users without an FID still have "shadow profiles" and have their data retained in a similar manner as Facebook users. *Id.* ¶75.

Third, Plaintiff alleges the Third Parties intercepted most of the "content" information through PP's disclosure of the post-domain name portion of URLs that include specific communications entered by Website users, including Plaintiff. *Id.* at ¶¶111-122.

Importantly—contrary to PP's assertions—this all occurs on PP's Website. *See e.g., id.* ¶¶2, 19-21, 24-27, 111-122, 135-140, 182-83. As a result, Plaintiff sufficiently alleges the Third Parties intercepted the "content" of communications—including Plaintiff's—on the Website. *See e.g., id.* ¶¶5, 26, 79, 84, 97, 103, 110, 138, 140, 142-144, 147-149, 183-184, 187-188, 191.

**3. *The Third Parties intercepted Plaintiff's communications "in transit."***

Section 631(a) applies to "communications" intercepted "in transit." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). The Ninth Circuit has acknowledged that a plaintiff's "allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case." *See e.g., Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023). At the pleadings stage, "a plaintiff is not expected to prove or even know how and when its communications were captured." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Otherwise plaintiffs would have to "engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and [third parties]." *Id.*

PP mistakenly claims that Plaintiff did not sufficiently plead that the Third Parties intercepted her communications while "in transit." Def. MTD at 12-13. PP ignores Plaintiff's express allegations that PP installed tracking codes on its Website, which shared communications with the Third Parties in real time and while "in transit," including:

- How communications on the Website are "automatically and simultaneously sent directly to all of the Third Parties …." Compl. ¶113;
- "Planned Parenthood allowed the Third Parties to have real-time access to [Plaintiff's] communications on the Website …." *Id.* ¶142; and
- PP "facilitated the interception and simultaneous transmission to the Third Parties and others of Plaintiff's and Class members' PHI and other sensitive PII while the information was 'in transit' and in real time. As a result of the Tracking Codes Planned Parenthood embedded on its Website, when users interacted with the Website, their communications were simultaneously redirected to the Third Parties while they were still on their way to Planned Parenthood." *Id.* ¶188.

As shown above, Plaintiff sufficiently alleges her communications were intercepted "in transit" under CIPA. Accordingly, Plaintiff sufficiently alleges PP violated Section 631(a) of CIPA by aiding the Third Parties' interception of Plaintiff's PHI and other sensitive PII.

**B. PP violated Section 632.7 of CIPA by intentionally using the tracking codes on its Website to record Plaintiff's confidential communications.**

Like its counterpart discussed above, Section 632.7 of CIPA—when appropriately applied to modern technology—plays a vital role in protecting peoples' privacy rights. "[C]ourts applying § 632.7 have characterized the statute as prohibiting the intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless phone." *McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014). Although PP contends Plaintiff's claim should be dismissed because Plaintiff does not plead PP recorded (1) a "confidential communication" (2) using a "recording device" (Def. MTD at 13-15), Plaintiff plausibly alleges PP violated Section 632.7 because her confidential communications were recorded as a result of PP installing tracking codes on its Website.

Plaintiff pleads PP "record[ed] the confidential communications of Plaintiff and Class members" and further alleges *why* "Plaintiff and Class members had an objectively reasonable expectation of privacy" in their communications on the Website. Compl. ¶¶30-40, 201-203. Plaintiff further alleges the use of a "recording device." *Id*. ¶¶202, 205. While district courts are split on the interpretation of Section 632.7, this Court should construe the term "telephone"—which is undefined—functionally as encompassing computer equipment (*see id.*; *Licea v. Old Navy*, 2023 WL 3012527, at *4 (C.D. Cal. Apr. 19, 2023)) because "there is no requirement that [a plaintiff] allege the type of telephonic device used by [defendant]." *Byars*, 654 F. Supp. 3d at 1028. As a result, Plaintiff plausibly alleges PP violated Section 632.7 of CIPA by intentionally using the tracking codes on its Website to record Plaintiff's confidential communications.

**C. Plaintiff states a claim that PP violated CMIA.**

CMIA also protects privacy rights by regulating the disclosure of medical information. CMIA states a "provider of health care . . . shall not disclose medical information regarding a

patient of the provider . . . without first obtaining an authorization ….” Cal. Civ. Code § 56.10(a). PP contends that CMIA does not apply because it is not a "provider of health care," but even if it does, Plaintiff fails to allege PP disclosed her "medical information." Def. MTD at 6. Contrary to PP's assertions, Plaintiff sufficiently alleges PP violated CMIA because PP admits it is a "provider of health care" and otherwise falls under CMIA's definition, and Plaintiff is also a PP "patient" under PP's own use of the term and CMIA's definition. Further, Plaintiff adequately alleges that PP disclosed Plaintiff's "medical information," which was transmitted to and viewed by the Third Parties.

**1. *PP is a "provider of health care" within CMIA's meaning.***

Significantly, PP publicly advertises on its Website that it is a provider of health care. The Website contains an entire webpage exclaiming, "Planned Parenthood is Health Care."[4] But PP is also a "provider of health care" under CMIA, which defines it as:

> (1) "[a]ny business organized for the purpose of maintaining medical information …." Cal. Civ. Code § 56.06(a);
>
> (2) "[a]ny business that offers software or hardware to consumers . . . that is designed to maintain medical information . . . for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition …." *Id*. § 56.06(b); or
>
> (3) "[a]ny business that offers a reproductive or sexual health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual …." *Id*. § 56.06(e).

Recognizing it is a "provider of health care" under all three definitions, PP attempts to evade this fact by making multiple substantial changes to its Website's privacy policy after the complaint's filing—trying to distance itself from its affiliates.[5] But its efforts are futile.

---

[4] *See* Planned Parenthood is Health Care, PP Website, *available at* https://www.plannedparenthood.org/this-is-health-care (last accessed Jan. 8, 2024). The webpage contains a video titled the same.

[5] PP has had in place three privacy policies during the relevant time period: the First Privacy Policy (in place during the relevant statutory period from 6/7/21 through 10/29/23), the Second Privacy Policy (in place from 10/30/23 through 12/17/23) and the Third Privacy Policy (in place from 12/18/23 through current). The First Privacy Policy defines PP and its local organizations and affiliates collectively as the same entity—Planned Parenthood—and even refers to them collectively as "we," "our" and "us." The First Privacy Policy also details how PP (1) maintains

As an initial matter, PP was organized to maintain medical information, and it does "maintain[] medical information." Compl. ¶¶213, 226. PP "describes itself as a 'trusted health care provider' . . . that 'delivers vital reproductive health care . . . to millions of people worldwide.'" *Id*. ¶8. The complaint alleges in detail how PP collects, *maintains* and uses medical information. *See id*. ¶¶1, 3, 5, 16-29, 41, 111-122, 140, 146, 213-235.

In addition, PP offers software to consumers designed to allow a patient to manage the diagnosis and treatment of a medical condition. *Id*. ¶213. PP's Website's homepage highlights the Direct app.[6] Per its own admission, this app allows users to manage "reproductive health care anytime, anywhere …."[7] Certainly, this software—not to mention the Website, which acts as software—allows people to manage medical conditions.

Finally, PP offers a reproductive or sexual health digital service to consumers not only through the Direct app, but its entire Website is devoted to providing digital reproductive and sexual health services to consumers. *See id*. ¶¶16-29. PP provides *actual* reproductive and sexual health care, in addition to other reproductive and sexual digital services—including *education* and *information*—that is used to manage medical conditions. *See id*.

Further, while a "provider of health care" can also be a "health facility licensed pursuant to Division 2 of the Health and Safety Code," a provider of health care under CMIA is not strictly limited to those entities. *See* Cal. Civ. Code § 56.05(o); Def. MTD at 7-8. Notably, all PP facilities in California are licensed pursuant to Division 2 of the Health and Safety Code.[8] Accordingly, CMIA applies to PP because it is a "provider of health care" under all four applicable definitions.

---

information, (2) offers software to consumers to manage medical conditions and (3) offers reproductive and sexual health digital services.

[6] *See* Homepage, PP Website, *available at* https://www.plannedparenthood.org/ (last accessed Jan. 8, 2024).

[7] *Id*.

[8] *See* Cal Health Find Database, California Department of Public Health Website, *available at* https://www.cdph.ca.gov/Programs/CHCQ/LCP/CalHealthFind/Pages/SearchResult.aspx (last accessed Jan. 8, 2024).

**2. *Plaintiff is a "patient" within CMIA's meaning.***

PP's Website also contradicts its contention that Plaintiff is not a "patient" (Def. MTD at 8), as it contains *thousands* of blog posts and press releases referencing PP's "patients"[9] and dedicates a section to "Patient Education."[10] Plaintiff also sufficiently alleges she is a "patient" within CMIA. Under CMIA, a "'patient' means a natural person . . . who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(l). Plaintiff conveys her patient status in various ways, including:

- Plaintiff "used the Website for Women's Services [as defined in ¶20 of the complaint] and other personal healthcare …." Compl. ¶136;
- Plaintiff "conveyed significant healthcare and other personal information on the Website …." *Id.* ¶140;
- "Plaintiff and Class members are patients within the meaning of [CMIA]." *Id.* ¶214; and
- PP "requires its Website users to convey their [patient] status through its platform." *Id.* ¶221.

In light of the health care services Plaintiff alleges she received from PP, in addition to other allegations conveying her "patient" status, Plaintiff is a PP "patient" under CMIA.

**3. *PP disclosed Plaintiff's protected "medical information."***

Under CMIA, "'[m]edical information' means any individually identifiable information, in electronic or physical form . . . regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). "'Individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual." *Id.* The information can be used "alone or in combination with other publicly available information [that] reveal[s] the identity of the individual." *Id.* Plaintiff alleges that her "medical information" is disclosed to the Third Parties when she

---

[9] *See* Search Results for Patient, PP Website, *available at* https://www.plannedparenthood.org/search?q=patient (last accessed Jan. 8, 2024).

[10] *See* Our Services, PP Website, *available at* https://www.plannedparenthood.org/get-care/our-services (last accessed Jan. 8, 2024).

communicates PHI in combination with other PII, like her IP address and FID, to PP. This reveals her exact identity and her specific communications. *See* Compl. ¶¶1, 19, 22, 111-122, 143, 222.

To invoke CMIA protections, the "medical information" disclosed must be individually identifiable information that has a "substantive" medical treatment nexus. *See e.g., Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (2005). Whether a person is a patient at a particular facility may not fall under the "medical information" definition, but communications revealing the *nature* of a person's medical *condition* and *treatment* do. *See Cousin*, 2023 WL 8007350, at *4. The information PP unlawfully discloses is much more intrusive than the fact a person visits a webpage. Plaintiff sufficiently alleges "medical information" is conveyed, including:

- "When using the Website, women are required to communicate and convey information . . . related to their own sexual and reproductive health to receive services, including . . . their . . . health history, including . . . information regarding their menstrual cycle, abortion history and sexually transmitted infection history, as well as information regarding various . . . services and treatment they seek and receive from" PP. Compl. ¶20;
- "Men also are required to communicate and convey information . . . related to their own sexual and reproductive health to receive services, including . . . their . . . health history, including . . . information regarding sexual dysfunction, birth control and sexually transmitted infection history, as well as information regarding various . . . services and treatment they seek and receive from" PP. *Id.* ¶21;
- Plaintiff "used the Website for Women's Services and other personal healthcare . . . including to schedule appointments and research Women's Services and other healthcare information." *Id.* ¶136. She "used the search bar on the Website . . . searching for information and appointments related to Women's Services and other healthcare." *Id.* ¶138. Plaintiff "conveyed significant healthcare and other personal information on the Website, including research related to Women's Services . . . the types of medical treatment she seeks through Planned Parenthood, the specialty and names of the providers with whom she seeks treatment with, the locations of the Planned Parenthood facilities she wishes to go to and prescriptions she researches, seeks and is provided." *Id.* ¶140; and
- PP collects "medical information because it is individually identifiable information . . . relating to Website users' medical histories, which includes . . . conditions, treatments . . . and prescriptions" information. *Id.* ¶221.

In addition to disclosing PHI, PP also simultaneously sends to the Third Parties other PII:

- "The PII users disclose on the Website includes things like name, phone number, physical address, email address, IP address and FID" (*id.* ¶19) that "identifies themselves." *Id.* ¶¶20-21; and

- Plaintiff "simultaneously communicated considerable PII . . . including, but not limited to, her IP address and FID." *Id.* ¶140.

Plaintiff alleges that the disclosure of these two categories of information *combined* satisfy CMIA's "medical information" disclosure requirement. *See id.* ¶¶1, 19, 22, 111-122, 143, 222. For example, the disclosure of "Gibson's sensitive PHI, which includes information related to Women's Services, and other PII . . . taken *together* reveals [Gibson's] specific identity and specific communications on the Website …." *Id.* ¶143. (emphasis added).

Ignoring Plaintiff's explicit allegation that PP unlawfully discloses users' "medical information" on its *own* Website, PP attempts to shift the focus from activities that occur on its Website by describing activities that take place on other websites *after* the unlawful disclosure and interception of the information described in the complaint. Def. MTD at 1-6, 9, 12. What happens on other websites, however, is irrelevant to the claims asserted in this lawsuit. Every allegation in the complaint focuses on Website users' communications on the Website *before* they are taken to the other websites PP discusses in its motion to dismiss. All 27 screenshots in the complaint are either of PP's Website (Footnote Nos. 15-16, 21, 51-53, 59, 61-63, 66, 68) or the result of communications on PP's Website (Footnote Nos. 48-49, 54-58, 60, 64-65, 67, 69-72).

On December 1, 2022, the Department of Health and Human Services ("HHS") affirmed that healthcare providers' public facing websites which either address specific symptoms of health conditions or permit individuals to search for doctors *do* share protected medical information when tracking technologies also collect PII, like an email or IP address (as is the case here).[11]

*Cousin v. Sharp Healthcare* is similar and instructive. In *Cousin*, just like here, plaintiffs alleged defendant, a non-profit provider, unlawfully disclosed—through the use of third party

[11] Press Release on Tracking Technologies, U.S. Dept. of Health & Human Services, *available at* https://www.hhs.gov/about/news/2022/12/01/hhs-office-for-civil-rights-issues-bulletin-on-requirements-under-hipaa-for-online-tracking-technologies.html (last accessed Jan. 8, 2024). The HHS provided additional guidance on July 20, 2023. Second Press Release on Tracking Technologies, U.S. Dept. of Health & Human Services, *available at* https://www.hhs.gov/about/news/2023/07/20/hhs-office-civil-rights-federal-trade-commission-warn-hospital-systems-telehealth-providers-privacy-security-risks-online-tracking-technologies.html (last accessed Jan. 8, 2024). The protections apply outside a secure patient portal. *Id.*

tracking technology embedded on its website—patients' health information communicated by them on unauthenticated webpages. *Cousin*, 2023 WL 8007350, at *1. The court found that plaintiffs' communications, which included searching for physicians and providing information related to their conditions, symptoms and treatment, "plausibly involve PHI" (*id*. at *3), and as a result, denied defendant's motion to dismiss the CMIA claim. *See id*. at *4.

Similar to *Cousin*, PP discloses its patients' "medical information." This information is "individually identifiable" because it is linked to PII, including IP addresses and FIDs. Compl. ¶¶1, 19, 136, 138, 140, 143, 148, 220-221. Thus, the information's combined and simultaneous disclosure meets the requirement of "substantive" medical information. *See id.; Tamraz v. Bakotic Pathology Assocs.*, LLC, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022).

#### 4. *Plaintiff's medical information was transmitted to and viewed by the Third Parties.*

Plaintiff needs only to allege facts that "give rise to the inference that [her] medical information has been viewed by an unauthorized third party." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) (finding an increase in spam emails and phone calls sufficient to infer medical information was viewed). And it can be reasonably inferred that any information posted on the internet is viewed. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020). On a motion to dismiss, Plaintiff's technology description must be accepted as true as long as the allegations "include enough details about the subject-matter of the case to present a story that holds together. At this pleading stage, we do not ask whether these things actually happened; instead, the proper question to ask is still *could* these things have happened." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (citation omitted). Because the complaint alleges in detail (1) the Third Parties' business models and (2) how the Third Parties' tracking technologies work, Plaintiff sufficiently alleges her medical information was transmitted to and viewed by the Third Parties.

This Court can reasonably infer from Plaintiff's allegations that medical information was transmitted to and viewed by the Third Parties because Plaintiff explicitly alleges that after using the Website, she saw "advertisements" for PP and "it is always one of the first names to appear when conducting an Internet search on a browser via a search engine …." Compl. ¶137. Further, the complaint alleges in detail the Third Parties' business models and how their technologies work (*id.* ¶¶5, 24, 26, 58-122, 142-143, 147-149, 222, 229), both of which help establish that Plaintiff's medical information was transmitted to and viewed by the Third Parties. At this stage, Plaintiff has alleged sufficient facts to state a claim under CMIA.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied in its entirety.

Dated: January 8, 2024

Respectfully submitted,

By: */s/ Jamie A. Robinson*

Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
William D. Kelly (admitted pro hac vice)
**THE BRUNO LAW FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Tel: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
wk@brunolawus.com

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, California 95825
Tel: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Attorneys for Plaintiff and the Proposed Class*