JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVINA GIBSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Judge: Hon. James Donato |

Defendant Planned Parenthood Federation of America, Inc. ("Planned Parenthood" or "PPFA" or "Defendant"), by and through its undersigned attorneys, for its Answer to Plaintiff's Class Action Complaint ("Complaint"), hereby states as follows:

**ANSWER**

PPFA reserves the right to amend this Answer based on information made available through discovery or further investigation. Unless specifically admitted below, PPFA denies each and every allegation, claim, and prayer for relief contained in the Complaint. Additionally, PPFA denies that any of the headings therein state facts or allegations to which a response is required. To the extent a response is required, PPFA denies any facts set forth in the headings. Further answering the specific allegations in the Complaint, PPFA states:

1. This is a class action lawsuit for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632 and violations of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 *et seq.*, as a result of Planned Parenthood's unlawful disclosure, due to a lack of obtained consent, of its website users' confidential and private healthcare information and other sensitive personally identifiable information ("PII"), such as name, phone number, physical address, email address, Internet Protocol ("IP") address and Facebook ID ("FID"). The information taken together that is unlawfully disclosed, due to a total and blatant disregard for obtaining consent, by Planned Parenthood alarmingly reveals to undisclosed third parties the exact identity of its website users and information regarding their inherently private and personal sexual and reproductive healthcare.

**RESPONSE:** Paragraph 1 contains Plaintiff's characterization of the lawsuit to which no response is required. To the extent a response is required, PPFA admits that Plaintiff has filed a class action complaint based on allegations that PPFA engaged in violations of CIPA and CMIA through unlawful disclosure of its website users' confidential and private healthcare information and other sensitive personally identifiable information. PPFA denies that such a class action complaint will be capable of class certification. On July 2, 2024, the Court dismissed Plaintiff's causes of action under CIPA § 632 and CMIA. *See* Order re

Motion to Dismiss (ECF No. 34) at 1. PPFA denies the remainder of allegations in Paragraph 1.

2. Plaintiff brings this class action against Defendant on behalf of all persons who have accessed and used in the state of California the website www.plannedparenthood.org and its related webpages (the "Website"), which is wholly owned and operated by Defendant.

**RESPONSE:** PPFA admits that Plaintiff has filed a class action complaint on behalf of all persons in the state of California who have accessed and used the website, www.plannedparenthood.org. PPFA denies that such a class action complaint will be capable of class certification. PPFA denies the remainder of allegations in Paragraph 2.

3. While Planned Parenthood has both a Terms of Use and Privacy Policy listed on its Website, neither are enforceable or apply to Plaintiff and class members. Regardless of their enforceability, not only do both fail to provide the required reasonably conspicuous notice to Website users that Planned Parenthood shares their private health information and other PII, but Planned Parenthood does not seek or obtain the required consent or authorization from its Website users before disclosing such information to third parties.

**RESPONSE:** PPFA admits that it has a Terms of Use and Privacy Policy on plannedparenthood.org, which speak for themselves. The remainder of Paragraph 3 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations.

4. Planned Parenthood intentionally and unlawfully aids, employs, agrees and conspires with various third parties, including Meta Platforms, Inc. ("Meta"),[1] Google LLC ("Google"), Microsoft Corporation ("Microsoft") and Yahoo Inc. ("Yahoo") (collectively the "Third Parties"), to intercept communications sent and received by Plaintiff and class members on its Website, including communications containing private and protected sexual and reproductive health information and other highly sensitive PII, all without authorization or consent.

**RESPONSE:** Paragraph 4 contains legal conclusions to which no response is required.

[1] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Unless otherwise indicated, Facebook, Inc. and Meta Platforms, Inc. are referenced collectively as "Meta."

Insofar as a response is required, PPFA denies the allegations.

5. Planned Parenthood has intentionally and knowingly tapped or made an unauthorized connection with Plaintiff's and class members' communications by voluntarily embedding the Third Parties' tracking code ("Tracking Codes"), on its Website to bolster its benefits in various ways, including by using the data gathered by the Third Parties to build profiles for the purpose of retargeting and future marketing. Relatedly and significantly, the Third Parties do not only intercept the communications to provide analytics services for entities like Planned Parenthood, but they also collect, use and store the communications for their own benefit, including to improve their own personalized content delivery, advertising network machine-learning algorithms and ability to identify and target users. The information obtained by the Third Parties is used to identify specific individuals and their communications on the Website. This helps the Third Parties in many ways, and they seek to obtain as much information as possible on any given Internet user

**RESPONSE:** PPFA denies the allegations in Paragraph 5.

6. Plaintiff brings this action for legal and equitable remedies, including, but not limited to, statutorily provided damages of $5,000 for each violation of CIPA and $1,000 for each violation of CMIA, against Planned Parenthood resulting from these unlawful actions.

**RESPONSE:** Paragraph 6 contains Plaintiff's characterization of the lawsuit to which no response is required. To the extent a response is required, PPFA admits that Plaintiff seeks the relief described, but denies that Plaintiff is entitled to such relief.

## PARTIES

7. Plaintiff Davina Gibson is, and has been at all relevant times, a resident and citizen of the State of California.

**RESPONSE:** PPFA lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies the same.

8. Defendant Planned Parenthood Federation of America, Inc. is a corporation organized under the laws of New York with its headquarters in New York City, New York.

Planned Parenthood describes itself as a "trusted health care provider, an informed educator, a passionate advocate, and a global partner helping similar organizations around the world" that "delivers vital reproductive health care, sex education, and information to millions of people worldwide."[2]

**RESPONSE:** PPFA admits that Planned Parenthood Federation of America, Inc. is a corporation organized under the laws of New York and that its headquarters is in New York City, New York. Paragraph 8 contains a quotation from the About Us page of the Planned Parenthood website as of August 1, 2023, which describes the work of multiple independent organizations that operate using the Planned Parenthood brand.

9. Planned Parenthood was established in 1916 and has since grown into a nationwide network of nearly 600 health centers operated by 49 different local affiliates.[3] It offers an extensive array of sexual and reproductive health services, including preventative care such as contraception, testing and treatment for sexually transmitted infections, as well as screenings for cervical and other types of cancers.

**RESPONSE:** In response to the allegations of Paragraph 9 of the Complaint, PPFA admits that the earliest iteration of the organization that became PPFA was established in 1916. PPFA admits that it has 49 independent local affiliates that, as a group, operate approximately 600 health centers throughout the United States. PPFA does not operate heath centers and denies that PPFA offers the services listed in the second sentence of Paragraph 9. Independent local Planned Parenthood affiliates operate health centers, not PPFA.

## JURISDICTION AND VENUE

10. **Jurisdiction**: This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum

---

[2] *See* Planned Parenthood Website, About Us, *available at* https://www.plannedparenthood.org/about-us (last accessed Aug. 1, 2023).

[3] *See* Planned Parenthood Website, Our History, *available at* https://www.plannedparenthood.org/about-us/who-we-are/our-history (last accessed Aug. 1, 2023).

or value of $5,000,000, there are more than 100 putative members of the class defined below and is a class action in which Plaintiff, as well as nearly all members of the class, is a citizen of a state other than the state in which Planned Parenthood is incorporated and has its principal place of business in.

**RESPONSE:** The allegations in Paragraph 10 are legal conclusions to which no response is required. To the extent a response is required, PPFA denies the allegation.

11. This Court has personal jurisdiction over Planned Parenthood because it conducts substantial business in California. Planned Parenthood has dozens of physical health centers located in California, including over 50 in this District alone.[4] As a result, it regularly targets, markets and sells its services in California and this District. Planned Parenthood has sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State through its services offered and marketing within this State to render the exercise of jurisdiction by this Court permissible. This Court's exercise of personal jurisdiction over Planned Parenthood also does not offend traditional notions of fair play and substantial justice.

**RESPONSE:** Whether the Court has personal jurisdiction over Defendant is a legal conclusion to which no response is required. PPFA denies that PPFA has health centers located in California or elsewhere; independent local Planned Parenthood affiliates operate health centers, not PPFA.

12. Planned Parenthood has continuous and systematic contact with California not only through its physical locations in the State, but also through its Website and related services and information offered through it, including telehealth appointments it regularly offers, markets and provides to California residents in this District, as the Website is available for use in California and this District. Planned Parenthood also calls, texts and emails Website users, including Plaintiff and other members of the class, regarding their healthcare and otherwise communicates with users via

---

[4] *See* Planned Parenthood Northern California Website, *available at* https://www.plannedparenthood.org/planned-parenthood-northern-california/get-care/our-health-centers (last accessed Aug. 1, 2023); Planned Parenthood Mar Monte Website, *available at* https://www.plannedparenthood.org/planned-parenthood-mar-monte/campaigns/health-center-maps (last accessed Aug. 1, 2023).

its Website.

**RESPONSE:** Whether the Court has personal jurisdiction over Defendant is a legal conclusion to which no response is required. PPFA denies that PPFA has physical locations in California. PPFA denies that PPFA offers telehealth appointments in California. PPFA admits that the plannedparenthood.org website is available to residents of California and of the District.

13. California and this District also have a strong interest in this lawsuit to ensure that the privacy rights of California citizens are protected, as required by CIPA and CMIA. Plaintiff and other members of the class likewise have a strong interest in safeguarding their California privacy rights and will be able to best obtain effective relief in this jurisdiction, which has heard several CIPA and CMIA lawsuits to date and has several currently pending on its docket.

**RESPONSE:** The allegations in Paragraph 13 are legal conclusions to which no response is required.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), (c) and (d) because a substantial part of the events, acts or omissions giving rise to Plaintiff's claims herein occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Planned Parenthood transacts substantial business in this District. Furthermore, Plaintiff resides in this District, used the Website in this District and received services from Planned Parenthood in this District. Moreover, the majority of the Third Parties are residents of this District.

**RESPONSE:** The first two sentences of Paragraph 14 contain legal conclusions to which no response is required; insofar as a response is required, PPFA admits that it conducts business in California but otherwise denies the allegations. PPFA denies that Plaintiff received services from PPFA; independent local Planned Parenthood affiliates provide health care services, not PPFA. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the final two sentences of Paragraph 14 and therefore denies them.

15. **Divisional Assignment**: This action arises in Alameda County, in that a substantial

part of the events which give rise to the claims asserted herein occurred in Alameda County. Pursuant to L.R. 3-2(e), all civil actions that arise in Alameda County shall be assigned to the San Francisco or Oakland Division.

**RESPONSE:** Paragraph 15 contains a legal conclusion to which no response is required.

## FACTUAL BACKGROUND

### I. Planned Parenthood's Online Website

16. Planned Parenthood offers inpatient, outpatient and specialty healthcare nationwide. With over 100 clinics in California alone that serve nearly a million California residents per year, it is one of California's major healthcare providers.[5] Planned Parenthood offers both in-person and telehealth appointments through its Website.

**RESPONSE:** PPFA denies that PPFA operates clinics or is a healthcare provider anywhere in the United States; independent local Planned Parenthood affiliates operate health centers, not PPFA. PPFA denies that PPFA offers appointments through the plannedparenthood.org website, as appointments are offered by affiliates, not PPFA.

17. Planned Parenthood offers a full range of medical services but specializes in sexual and reproductive healthcare. The services offered through its Website include:

i. abortion services and referral;

ii. birth control;

iii. emergency contraception (morning-after pill);

iv. primary care;

v. HIV services;

vi. transgender hormone therapy;

vii. men's health services (sexual dysfunction, cancer screenings, etc.);

viii. patient sexual and reproductive healthcare education;

ix. pregnancy testing and services;

[5] *See* Young, Samantha, *If feds strip Planned Parenthood's funding, California would be especially hard hit*, Cal Matters, Mar. 2, 2017, *available at* https://calmatters.org/health/2017/03/why-health-care-in-california-could-be-hardest-hit-if-planned-parenthood-loses-federal-funds/ (last accessed Aug 1, 2023).

x. STD testing, treatment and vaccines; and

xi. women's services (pelvic exams, cancer screenings, etc.).

**RESPONSE:** PPFA denies that PPFA provides medical services; independent local Planned Parenthood affiliates provide health care services, not PPFA.

18. The Website is accessible on all web browsers via mobile devices, desktop computers, tablets or similar devices.

**RESPONSE:** Admitted.

19. Website users communicate and input their private and personal sexual and reproductive healthcare information and other sensitive PII in various ways via the Website. The healthcare information users disclose on the Website includes their sexual and reproductive healthcare history, the types of services and treatment they research and seek, when they research and schedule an appointment and prescriptions they research, request and are prescribed. The PII users disclose on the Website includes things like name, phone number, physical address, email address, IP address and FID. Taken together, this information reveals an enormous amount of information related to each specific Website user and their identity.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and therefore denies them.

20. When using the Website, women are required to communicate and convey information to Planned Parenthood related to their own sexual and reproductive health to receive services, including, but not limited to, information regarding their sexual and reproductive health history, including specific and detailed information regarding their menstrual cycle, abortion history and sexually transmitted infection history, as well as information regarding various sexual and reproductive services and treatment they seek and receive from Planned Parenthood ("Women's Services"). Women also are required to provide Planned Parenthood with significant PII that identifies themselves, and Planned Parenthood collects PII from women while they use the Website.

**RESPONSE:** PPFA admits that visitors to plannedparenthood.org can provide certain

information about themselves to PPFA. PPFA denies that individuals seek and receive health care services or treatment from PPFA; independent local Planned Parenthood affiliates provide health care services, not PPFA. PPFA denies all remaining allegations in Paragraph 20.

21. Men also are required to communicate and convey information to Planned Parenthood related to their own sexual and reproductive health to receive services, including, but not limited to, information regarding their sexual and reproductive health history, including specific and detailed information regarding sexual dysfunction, birth control and sexually transmitted infection history, as well as information regarding various sexual and reproductive services and treatment they seek and receive from Planned Parenthood ("Men's Services"). Men are required to provide Planned Parenthood with significant PII that identifies themselves, and Planned Parenthood collects PII from men while they use the Website.

**RESPONSE:** PPFA admits that visitors to plannedparenthood.org can provide certain information about themselves to PPFA. PPFA denies that individuals seek and receive health care services or treatment from PPFA; independent local Planned Parenthood affiliates provide health care services, not PPFA. PPFA denies all remaining allegations in Paragraph 21.

22. The PII provided by Website users and collected by Planned Parenthood along with their healthcare information allows the Third Parties to identify specific users and access their communications on the Website.

**RESPONSE:** PPFA denies the allegations in Paragraph 22.

23. As part of providing sexual and reproductive healthcare, Planned Parenthood also offers prescriptions like birth control,[6] and Planned Parenthood also offers over-the-counter sexual and reproductive healthcare products like condoms.[7]

[6] *See* Birth control now, from your phone to your door, Planned Parenthood, *available at* https://www.plannedparenthood.org/get-care/ppdirect (last accessed Aug. 1, 2023).

[7] *See* How do I get condoms?, Planned Parenthood, *available at* https://www.plannedparenthood.org/learn/birth-control/condom/how-do-i-get-condoms (last accessed Aug. 1, 2023).

**RESPONSE:** PPFA denies that PPFA provides prescriptions or sexual and reproductive health care products; independent local Planned Parenthood affiliates provide health care services, not PPFA.

24. Planned Parenthood knowingly and intentionally incorporates a host of tracking technology, including the Tracking Codes, on its Website for marketing, advertising, analytics and other purposes without full and proper disclosure, let alone obtaining consent, to and from its Website users.

**RESPONSE:** Paragraph 24 contains a legal conclusion to which no response is required; insofar as a response is required, PPFA denies the allegations in Paragraph 24.

25. Planned Parenthood knew at the time it incorporated this software into its Website that it would result in the unlawful disclosure and interception of its Website users' communications on its Website by virtue of how these technologies function and the analytics and insight it receives as a result, yet it still chose not to obtain the proper consent or authorization required for disclosure. The consequences and dangers of these technologies is also becoming ubiquitous, and as one of the biggest healthcare providers in California, Planned Parenthood should especially be aware of the dangers posed by embedding the Tracking Codes on its Website.

**RESPONSE:** PPFA denies the allegations in Paragraph 25.

26. The Third Parties allow website developers, like Planned Parenthood, to use the Tracking Codes in a mutually beneficial relationship in which both have full access to the data collected. As part of their symbiotic relationship, the Third Parties also provide Planned Parenthood with tools and analytics to leverage the information to reach individuals through advertisements. Planned Parenthood was fully aware of the sensitive nature of the data that it unlawfully disclosed and aided the Third Parties to intercept.

**RESPONSE:** PPFA denies the allegations in Paragraph 26.

27. Despite this, Planned Parenthood intentionally chose and continues to incorporate the Third Parties' technologies into its Website to reap their benefit, including by increasing its overall revenue through advertisements and by improving the functionality of its website.

**RESPONSE:** PPFA denies the allegations in Paragraph 25.

28. Planned Parenthood failed to obtain consent or proper authorization to disclose and assist in the interception of its Website users' private communications on its Website, and it did not fully inform or disclose to its Website users that it was sharing their inherently private and personal health information and other sensitive PII.

**RESPONSE:** Paragraph 28 contains a legal conclusion to which no response is required; insofar as a response is required, PPFA denies the allegations in Paragraph 28.

29. Planned Parenthood leaves Website users not only unaware that it reveals their identity and private healthcare information to the Third Parties, but it leaves them further unaware the disclosure of this information allows the Third Parties to benefit off the unlawfully disclosed information.

**RESPONSE:** PPFA denies the allegations in Paragraph 29.

## II. Plaintiff and Class Members Have a Reasonable Expectation of Privacy in Their Private and Personal Sexual and Reproductive Health Information and Other Sensitive PII

30. Plaintiff and Class members have a reasonable expectation of privacy in their personal data and information communicated to Planned Parenthood through its Website, which includes private and personal sexual and reproductive health information and other sensitive PII, often dealing with Women's Services and Men's Services.

**RESPONSE:** Paragraph 30 contains legal conclusions to which no response is required. To the extend a response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore denies them.

31. Planned Parenthood is a covered entity under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1302, *et seq.* ("HIPAA"), which sets minimum federal standards for privacy and security of protected health information ("PHI"). PHI includes Women's Services and Men's Services.

**RESPONSE:** Paragraph 31 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

32. HIPAA defines “protected health information” as “individually identifiable health information” that is “transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium.” 45 C.F.R. § 160.103.

**RESPONSE:** Paragraph 32 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the language quoted in Paragraph 32 appears in the referenced statute, 45 C.F.R. § 160.103.

33. Under 45 C.F.R. § 160.103, HIPAA defines “individually identifiable information” as a “subset of health information, including demographic information collected from an individual” that is:

i. created or received by a healthcare provider;

ii. relates to the past, present or future physical or mental health or condition of an individual; the provision or health care to an individual; or the past, present or future payment for the provision of health care to an individual; and

ii. either identifies the individual or there is a reasonable basis to believe the information can be used to identify the individual.

**RESPONSE:** Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the language quoted in Paragraph 33 appears in the referenced statute, 45 C.F.R. § 160.103. PPFA denies all other allegations in Paragraph 33.

34. HIPAA requires Planned Parenthood to:

i. ensure the confidentiality, integrity and availability of all electronic PHI it creates, receives, maintains or transmits;

ii. identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI;

iii. protect against reasonably anticipated impermissible uses or disclosures of the PHI; and

iv. ensure compliance by its workforce to satisfy HIPAA’s security requirements.

45 C.F.R. § 164.102, *et seq.*

**RESPONSE:** Paragraph 34 contains legal conclusions to which no response is required;

insofar as a response is required, PPFA denies these allegations.

35. HIPAA further prohibits a healthcare provider from disclosing PHI to third parties except when an individual has expressly consented in advance to the disclosure or under certain HIPAA-compliant contracts. 45 C.F.R. §§ 164.502 & 164.508.

**RESPONSE:** Paragraph 35 contains legal conclusions to which no response is required.

36. Neither Planned Parenthood nor any of the Third Parties obtained Plaintiff's and class members' express consent to share or intercept their PHI, nor have Planned Parenthood or the Third Parties entered into a HIPAA-compliant contract that would permit sharing such health information.

**RESPONSE:** Paragraph 36 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations as to PPFA. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 regarding the Third Parties and therefore denies them.

37. In order to access care through the Website, Plaintiff and class members must not only disclose PHI, but they must disclose the most sensitive PHI a person has, namely, PHI related to personal sexual and reproductive health. Plaintiff and class members are required to provide this information in order to receive services from Planned Parenthood on its Website, and they provide this protected, personal and extremely private information with the understanding that Planned Parenthood is prohibited by HIPAA from disclosing it.

**RESPONSE:** PPFA admits that visitors to plannedparenthood.org can provide certain information about themselves to PPFA. PPFA denies that individuals receive health care services from PPFA; independent local Planned Parenthood affiliates provide health care services, not PPFA. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the final clause of Paragraph 37 and therefore denies them. PPFA denies all remaining allegations in Paragraph 37.

38. The extremely sensitive and private nature of personal sexual and reproductive health information is evidenced by the fact that there are many laws that give additional special

protections related to sexual and reproductive health on top of the protections already given to PHI generally.[8] As the FTC recently noted, "the exposure of health information and medical conditions, *especially data related to sexual activity or reproductive health*, may subject people to discrimination, stigma, mental anguish, or other serious harms."[9]

**RESPONSE:** Paragraph 38 contains a quotation from an FTC publication, which speaks for itself. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore denies them.

39. Unlike other forms of PMI, the unlawful disclosure of personal sexual and reproductive healthcare may expose people to political, religious and familial controversy,[10] and public or third party knowledge of an individual's sexual and reproductive history may place them at risk of stigmatization.[11] Additionally, poor privacy and confidentiality practices regarding someone's use of contraceptives and other forms of birth control are believed to especially put at risk adolescents and young adults, including in the healthcare service quality they receive.[12]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore denies them.

40. Planned Parenthood's legal obligations as a covered entity under HIPAA, in addition to the express and implied assurances of confidentiality it makes on its Website, create a

---

[8] *See* Recommendations Regarding Sensitive Health Information, National Committee on Vital and Health Statistics, Nov. 10, 2010, *available at* https://ncvhs.hhs.gov/wp-content/uploads/2014/05/101110lt.pdf (last accessed Aug. 1, 2023).

[9] *See* Cohen, Kristin, *Location, health and other sensitive information: FTC committed to fully enforcing the law against illegal use and sharing of highly sensitive data*, Federal Trade Commission, July 11, 2022, *available at* https://www.ftc.gov/business-guidance/blog/2022/07/location-health-and-other-sensitive-information-ftc-committ ed-fully-enforcing-law-against-illegal (emphasis added) (last accessed Aug. 1, 2023).

[10] *See* Recommendations, *supra* footnote 8*; See also* Religious Liberty and Access to Reproductive Health Care, American Bar Association, *available at* https://www.americanbar.org/groups/crsj/publications/human_rights_magazine_home/intersection-of-lgbtq-rights-and-religious-freedom/religious-liberty-and-access-toreproductive-health-care/ (last accessed Aug. 1, 2023).

[11] *See* Recommendations, *supra* footnote 8.

[12] Tchounwou, Paul, *Exploring and Monitoring Privacy, Confidentiality, and Provider Bias in Sexual and Reproductive Health Service Provision to Young People: A Narrative Review*, International Journal of Environmental Research and Public Health, May 27, 2022, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9 180733/ (last accessed Aug. 1, 2023).

reasonable expectation in Website users that their communications on the Website, which include their PHI, will remain private and confidential and not be shared with undisclosed third parties, including Meta, Google, Microsoft and Yahoo.

**<u>RESPONSE:</u>** Paragraph 40 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies the allegations.

### III. Plaintiff and Class Members Did Not Consent to Planned Parenthood's Collection and/or Use of Their Data

41. Plaintiff and class members have no idea that the Third Parties, at Planned Parenthood's direction, unlawfully collect, use and store their PHI and other sensitive PII that reveals their identity when they interact with the Website.

**<u>RESPONSE:</u>** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies them.

42. There is no indication, let alone proper and full disclosure, that the Tracking Codes are embedded on the Website to collect users' PHI and other sensitive PII that identifies Website users.

**<u>RESPONSE:</u>** PPFA denies the allegations in Paragraph 42.

43. While Planned Parenthood has both a Terms of Use[13] and Privacy Policy[14] (collectively the "Policies") listed on its Website, neither are enforceable or apply to Plaintiff and class members. They are both in the form of what is known as a browse-wrap agreement.

**<u>RESPONSE:</u>** Paragraph 43 contains legal conclusions to which no response is required; insofar as a response is required, PPFA admits that it maintains a Terms of Use and Privacy Policy at the URLs cited in the footnote of Paragraph 43, but PPFA denies the remainder of the allegations in Paragraph 43.

44. Website users who enter the Website are not made aware of Planned Parenthood's

---

[13] *See* Planned Parenthood' Terms of Use, *available at* https://www.plannedparenthood.org/terms-use (last accessed Aug. 1, 2023).

[14] *See* Planned Parenthood's Privacy Policy, last updated June 7, 2021, *available at* https://www.plannedparenthood.org/privacy-policy (last accessed Aug. 1, 2023).

Policies because they are located in small letters at the very bottom of the Website's homepage among many other links. The first screenshot below is a highly zoomed in depiction of where the links for Planned Parenthood's Policies are located at the bottom of the Website's homepage. The second screenshot below is a depiction of the Website's entire homepage, which shows how hidden and buried the Policies are and how much "scrolling" is required by a Website user to finally reach the Policies' links at the bottom of the webpage. As evidenced by the first screenshot, the font for Planned Parenthood's policies is the same white font used throughout much of the Website without any distinguishing features. The size of the font for the links is some of the smallest on the entire page, and there is no indication that you can click on either the Terms of Use or Privacy Policy or that either are hyperlinked. They are not in a different color and not underlined.




[15]

---

[15] Screenshot taken on May 18-19, 2023 via Chrome web browser.



[16]

**RESPONSE:** Paragraph 44 contains images that purport to show portions of plannedparenthood.org, which images speak for themselves. PPFA denies the allegations in Paragraph 44.

---

[16] Screenshot taken on August 24, 2023 via Chrome web browser.

45. Throughout the entire process of Website users using the Website for healthcare services, including conducting searches for different medical conditions and scheduling appointments, users are never presented with the Website's Terms of Use or Privacy Policy. When searching for medical conditions and scheduling appointments, there is absolutely no need, requirement or reason for a Website user to scroll to the very bottom of the webpage in order to receive services or otherwise use the Website.

**RESPONSE:** PPFA denies the allegations in Paragraph 45.

46. As the Ninth Circuit recently held, for website agreement terms to be held enforceable: 1) they must be "reasonably conspicuous," and 2) users must "manifest unambiguous assent." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). Planned Parenthood's Policies are not enforceable because they fail both requirements.

**RESPONSE:** Paragraph 46 contains legal conclusions to which no response is required; insofar as a response is required, the Ninth Circuit's opinion in *Berman v. Feedom Financial Network, LLC* speaks for itself and PPFA denies the remaining allegations in Paragraph 46.

47. First, reasonably conspicuous notice requires notice that is so obvious that there can be no doubt of the user's knowledge of the terms. *See id.* Plaintiff and class members had no reason to scroll to the bottom of the Website when searching for and scheduling medical appointments, and even if they did, there is no indication that the Terms of Use and Privacy Policy are hyperlinked (this only becomes known after a Website user hovers the computer, tablet, phone or similar pointer, clicker or mouse over the words). Second, Plaintiff and class members also never manifested unambiguous assent because it requires a user to unequivocally agree to the policy. *Id.* Not only did Plaintiff never see the Policies, but she was never asked to accept or consent to them, whether when first entering the Website with a pop-up, by checking a consent box, by clicking a button on the Website or in any other manner at any point during the healthcare researching and appointment scheduling process.

**RESPONSE:** The first and third sentences of Paragraph 47 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies the

allegations. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 and therefore denies them.

48. Even if the Terms of Use were to be found enforceable, which Plaintiff denies, Plaintiff and class members do not have reasonably conspicuous notice from the policy that Planned Parenthood shares its Website users' PHI in combination with other PII that reveals their identity and private sexual and reproductive health information. In its Terms of Use, Planned Parenthood has a section titled, "What Information Do We Collect," and the following, which includes all language from this section, is the only language the Terms of Use has on information that Planned Parenthood collects and shares:

> When using the Online Services you may be asked if you would like to share certain personal health information collected by Apple's HealthKit with Planned Parenthood. By clicking on "SYNC" you are authorizing Planned Parenthood to collect such information. Sharing this information is voluntary; you do not have to click "SYNC" in order to use the Service.[17]

**<u>RESPONSE:</u>** PPFA denies the allegations in the first sentence of Paragraph 48. Paragraph 48 contains a quotation from the Terms of Use page of the Planned Parenthood website as of August 1, 2023, which speaks for itself.

49. The Apple HealthKit is not associated with the healthcare researching and scheduling feature of the Website and has its own separate consent procedure. Therefore, nowhere in the Terms of Use does Planned Parenthood disclose that it is sharing its Website users' PHI in combination with other sensitive PII that reveals their identity and inherently private sexual and reproductive health information when they interact with the Website to research healthcare and schedule appointments. Because of this, Plaintiff and other class members could never, and never did, manifest unambiguous consent to the disclosure of such information.

**<u>RESPONSE:</u>** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 49 and therefore denies them. PPFA denies the allegations in the second sentence of Paragraph 49. The third sentence of Paragraph 49 contains legal conclusions to which no response is required; insofar as a

[17] *See* Terms of Use, *supra* footnote 13.

response is required, PPFA denies the allegations.

50. Likewise, even if its Privacy Policy were to be found enforceable, which Plaintiff denies, Plaintiff and class members do not have reasonably conspicuous notice from it that Planned Parenthood shares its Website users' PHI in combination with other PII that reveals their identity and private sexual and reproductive health information. The Privacy Policy acknowledges the use of Google trackers and offers a link for a user to opt-out, but it hides significant information related to the Google tracking codes' true use and all of the information it is actually collecting.[18] There is no mention of any of the other Third Parties.[19] While the Privacy Policy acknowledges the possibility of disclosing information to service providers working on its behalf, it explicitly states that it does not apply to information shared by users in connection with healthcare services received online or through in-person visits at Planned Parenthood facilities, as such information is protected by state and federal law.[20] Since Plaintiff alleges that the information being unlawfully disclosed by Planned Parenthood to the Third Parties constitutes information in connection with healthcare services received online, the Privacy Policy does not provide reasonably conspicuous notice that Planned Parenthood shares its Website users' PHI in combination with other PII that reveals their identity. Consequently, Plaintiff and other class members could never, and never did, manifest unambiguous consent to the disclosure of this information.

**RESPONSE:** The allegations in the first, fifth, and sixth sentences of Paragraph 50 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies the allegations. The allegations in the second through fourth sentences of Paragraph 50 contains Plaintiff's characterization of the Privacy Policy on the Planned Parenthood website as of August 1, 2023, which speaks for itself. PPFA denies all remaining allegations in Paragraph 50.

51. The only other time a Website user is presented with the Terms of Use and Privacy Policy in a different location then at the bottom of the Website depicted in footnotes 15 and 16 is

---

[18] *See* Privacy Policy, *supra* footnote 14.

[19] *Id.*

[20] *Id.*

when a Website user tries to donate to Planned Parenthood, as evidenced in the below screenshot. However, under the same analysis as in Berman, the Policies are not enforceable against Planned Parenthood donators because the notice is still not reasonably conspicuous and donators cannot, and do not, manifest unambiguous assent to the Policies. While the Policies are noticeably hyperlinked in a different color unlike on the Website's other pages, they are still in some of the smallest font on the webpage, they are not underlined, the notice of the Policies is located under, rather than above, the button a user needs to click to make a donation, the print is faint and set against a background lacking significant contrast and the user is not required to click the hyperlinks or otherwise read the Policies to proceed or otherwise affirmatively indicate that they agree to the Policies.



[21]

**RESPONSE:** The allegations in the second sentence of Paragraph 51 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies the allegations. Paragraph 51 contains Plaintiffs' characterization of the donation page on

---

[21] Screenshot taken on May 18-19, 2023 via Chrome web browser.

plannedparenthood.org, which speaks for itself. Paragraph 51 contains an image that purports to show portions of plannedparenthood.org, which speaks for itself.

52. Therefore, the Website does not have any enforceable terms of use, user agreement, privacy policy or any other provision that permits the disclosure of its Website users' PHI and other sensitive PII to the Third Parties.

**RESPONSE:** Paragraph 52 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

53. While using the Website, Plaintiff and class members had no reason to visit the Third Parties' websites to review their separate terms of use and/or privacy policies because they were unaware that Planned Parenthood shared their PHI and other sensitive PII with the Third Parties. Plaintiff and class members also had no reason to know that the Third Parties were using their private communications for their own analytics and advertising purposes.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and therefore denies them.

54. Notwithstanding its unenforceable disclosures, Planned Parenthood does not have an unlimited right to share Plaintiff's and class members' health data. Planned Parenthood is a covered entity under HIPAA, which protects all electronic PHI Planned Parenthood "creates, receives, maintains, or transmits" in electronic form. *See* 45 C.F.R. § 160.103.

**RESPONSE:** Paragraph 54 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

55. Further, HIPAA does not permit the use or disclosure of PHI to the Third Parties for use in targeted advertising without Plaintiff's and class members' express consent unless Planned Parenthood and the Third Parties entered into a HIPAA-approved contract with Planned Parenthood's Website users. *See* 45 C.F.R. §§ 164.502 & 164.508.

**RESPONSE:** Paragraph 55 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

56. Neither Planned Parenthood nor the Third Parties obtained Plaintiff's and class

members' express consent to share their PHI, nor have Planned Parenthood or the Third Parties entered into a HIPAA-compliant contract that would permit such sharing.

**RESPONSE:** Paragraph 56 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

57. Thus, Planned Parenthood did not obtain consent to collect, use, store and assist in the interception of Plaintiff's and class members' PHI and other sensitive PII that identifies Website users.

**RESPONSE:** Paragraph 57 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations.

## IV. Planned Parenthood Shares Information With Third Parties

### a. Meta

58. Planned Parenthood is unlawfully disclosing, due to a lack of obtained consent, to Meta its Website users' private and personal health information and other PII. This information reveals each Website user's specific identity that Meta then uses for advertising, analytics and other purposes.

**RESPONSE:** PPFA denies the allegations in Paragraph 58.

59. Meta is one of the largest advertising companies in the county. Its advertising business began back in 2007 with the creation of "Facebook Ads," which was marketed as a completely new way of advertising online that would allow advertisers to deliver more tailored and relevant ads.[22]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies them.

60. Facebook describes itself as a "real identity platform,"[23] meaning users are allowed

[22] Facebook Unveils Facebook Ads, Meta, Nov. 6, 2007, *available at* https://about.fb.com/news/2007/11/facebook-unveils-facebook-ads/ (last accessed Aug. 1, 2023).

[23] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, Wall. St. J., Oct. 21, 2021, *available at* https://www.wsj.com/articles/how-many-users-does-facebook-have-the-company-struggles-to-figure-it-out-11634846701# (last accessed Aug. 1, 2023).

only one account and must share "the name they go by in everyday life."[24] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[25]

**RESPONSE:** Paragraph 60 contains quotations from publications by Wall Street Journal and Facebook.com, which speak for themselves. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and therefore denies them.

61. In 2021, Meta generated over $117 billion in revenue,[26] and substantially all of Meta's revenue is generated by selling advertising space.[27]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies them.

62. Meta sells advertising space by highlighting its ability to target users.[28] Meta can target users effectively because it has access to user activity both on and off its site.[29] This allows Meta to make inferences about users beyond what they explicitly disclose, like their "interests" and "behavior."[30] Meta compiles this information into a generalized dataset called "Core Audiences," which allows advertisers to reach precise audiences based on specified targeting types.[31]

---

[24] Facebook, Community Standards, Part IV, Integrity And Authenticity, *available at* https://www.facebook.com/communitystandards/integrityauthenticity (last accessed Aug. 1, 2023).

[25] Facebook, Sign Up, *available at* https://www.facebook.com (last accessed Aug. 1, 2023).

[26] Facebook, Meta Annual Report 2021, *available at* https://s21.q4cdn.com/399680738/files/doc_financials/annual_reports/2023/2021-Annual-Report.pdf (last accessed Aug. 1, 2023).

[27] *See id.*

[28] Why advertise On Facebook, Instagram And Other Meta technologies, Facebook, *available at* https://www.facebook.com/business/help/205029060038706 (last accessed Aug. 1, 2023).

[29] About Meta Pixel, Facebook, *available at* https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last accessed Aug. 1, 2023).

[30] Audience ad targeting, Facebook, *available at* https://www.facebook.com/business/ads/ad-targeting (last accessed Aug. 1, 2023).

[31] Core Audiences, Facebook, *available at* https://www.facebook.com/business/news/Core-Audiences (last accessed Aug. 1, 2023).

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and therefore denies them.

63. Advertisers can also build "Custom Audiences."[32] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[33]

**RESPONSE:** Paragraph 63 contains quotations from publications by Facebook.com, which speak for themselves. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore denies them.

64. With Custom Audiences, advertisers can target existing customers directly, and they can also build "Lookalike Audiences," which "leverages information such as demographics, interests and behaviors from your source audience to find new people who share similar qualities."[34]

**RESPONSE:** Paragraph 63 contains a quotation from a publication by Facebook.com, which speaks for itself. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore denies them.

65. Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Meta with the underlying data. They can do so through two mechanisms: by manually uploading customers' contact information or by utilizing Meta's "Business Tools."[35]

---

[32] About Custom Audiences, Facebook, *available at* https://www.facebook.com/business/help/744354708981227?id=2469097953376494 (last accessed Aug. 1, 2023).

[33] *See* Audience Ad Targeting, *supra* footnote 30.

[34] About lookalike audiences, Facebook, *available at* https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last accessed Aug. 1, 2023).

[35] *See* Create a customer list custom audience, Facebook, *available at* https://www.facebook.com/business/help/170456843145568?id=2469097953376494 (last accessed Aug. 1, 2023); Create a website custom audience, Facebook, *available at*

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 and therefore denies them.

66. The Meta Business Tools "help website owners and publishers, app developers, and business partners, including advertisers and others, integrate with [Facebook], understand and measure their products and services, and better reach and serve people who use or might be interested in their products and services."[36] Put more succinctly, Meta's Business Tools are bits of code that advertisers can integrate into their platforms, thereby enabling Meta to intercept and collect user activity on those platforms, and they are automatically configured to capture certain data.[37]

**RESPONSE:** Paragraph 66 contains a quotation from a publication by Facebook.com, which speaks for itself. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 and therefore denies them.

67. Meta's Business Tools can also track other events. Meta offers a menu of "standard events" from which advertisers can choose from, including what content a visitor views or purchases.[38] Advertisers can even create their own tracking parameters by building a "custom event."[39]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the

---

https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last accessed Aug. 1, 2023).

[36] The Meta Business Tools, Facebook, *available at* https://www.facebook.com/help/331509497253087 (last accessed Aug. 1, 2023).

[37] *See* Advanced, Meta for Developers, *available at* https://developers.facebook.com/docs/meta-pixel/advanced/ (last accessed Aug. 1, 2023); *see also* Best practices for Meta Pixel setup, Facebook, *available at* https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last accessed Aug. 1, 2023); App Events API, Meta for Developers, *available at* https://developers.facebook.com/docs/marketing-api/app-event-api/ (last accessed Aug. 1, 2023).

[38] Specifications for Meta Pixel standard events, Facebook, *available at* https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (last accessed Aug. 1, 2023).

[39] About standard and custom website events, Facebook, *available at* https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (last accessed Aug. 1, 2023); *see also* App Events API, *supra* footnote 37.

truth of the allegations in Paragraph 67 and therefore denies them.

68. One such Meta Business Tool advertisers, including Planned Parenthood, integrate into their platforms is the Meta Pixel, formerly known as the Facebook Pixel, which launched in 2015. The Meta Pixel "tracks the people and the types of actions they take,"[40] and Meta touted the Meta Pixel as a new way to report and optimize for conversions, build audiences and get rich insights about how people use websites.

**RESPONSE:** Paragraph 68 contains a quotation from a publication by Facebook.com, which speaks for itself. Insofar as a further response is required, PPFA admits that the Meta Pixel has at certain times appeared on certain pages of plannedparenthood.org. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 68 and therefore denies them.

69. When a user accesses a website hosting the Meta Pixel, Meta's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Meta's servers. This second secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Meta Pixel is configured to collect.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and therefore denies them.

70. This transmission is initiated by Meta code, written in JavaScript, and concurrent with communications with the host website. At relevant times, two sets of code are thus automatically run as part of the browser's attempt to load and read websites: the host website's own code and Meta's embedded code.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies them.

71. Take, for example, an individual who navigates to the Website and clicks on a link for emergency contraception information. When that link is clicked, the Website user's browser sends a GET request to Planned Parenthood's server requesting that server to load the particular

---

[40] Retargeting, Facebook, *available at* https://www.facebook.com/business/goals/retargeting (last accessed Aug. 1, 2023).

webpage, and as a result of Planned Parenthood's use of the Meta Pixel, also sends secret instructions back to the individual's browser without alerting the individual that this was happening. Meta's tracking code caused the browser to secretly duplicate the communication with Planned Parenthood, transmitting it to Meta's servers alongside additional information that transcribed the communication's content and the Website user's identity.

**RESPONSE:** PPFA denies the allegations in Paragraph 71.

72. Taken together, Meta uses the information that Planned Parenthood unlawfully discloses to it in order to identify a specific person and their actions and communications on the Website. Meta, like the other Third Parties, uses this information for advertising, analytics and other purposes.

**RESPONSE:** PPFA denies the allegations in Paragraph 72.

73. After collecting and intercepting the information described in the preceding paragraph, Meta processes it, analyzes it and assimilates it into datasets like Core Audiences and Custom Audiences.

**RESPONSE:** PPFA denies the allegations in Paragraph 73.

74. Planned Parenthood, without its Website users ever communicating their FID on the Website, also discloses its Website's users' FID to Meta as a result of the Meta Pixel embedded on its Website. An FID, which is also a form of PII, is a unique and persistent identifier that Meta assigns to each of its users. With it, any ordinary person can look up the user's Facebook profile and name. Notably, while Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person.[41] If a Website user has an FID, the Meta Pixel was specifically designed for Meta to receive that Website user's FID from Planned Parenthood alongside other information when the user otherwise communicates on the Website and discloses personal and private information.

**RESPONSE:** PPFA denies the allegations in the first sentence of Paragraph 74. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the remaining

---

[41] *See, e.g.,* How usernames and user IDs are used on Facebook Profiles, Facebook, *available at* https://www.facebook.com/help/211813265517027# (last accessed Aug. 1, 2023).

allegations in Paragraph 74 and therefore denies them.

75. Importantly, if Meta Pixel collects data, from Planned Parenthood or other websites, about a non-Facebook user, Meta still retains and uses the data collected in its analytics and advertising services. These non-users are referred to as having "shadow profiles."[42]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore denies them.

76. Therefore, the Meta Pixel embedded on the Website unlawfully collects data from the communications of all users on the Website, not just those with Facebook profiles. However, if a Website user has a Facebook profile, Meta is able to utilize the user's information in more ways, especially if the user does not log out of their Facebook account on the browser they access and use the Website on.

**RESPONSE:** The allegations in the first sentence of Paragraph 76 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 76 and therefore denies them.

77. Still, regardless of whether a Planned Parenthood Website user has a Facebook profile or has ever even visited the Facebook or Meta websites, the Meta Pixel Planned Parenthood has embedded on its website unlawfully discloses communications from *all* of Planned Parenthood's Website users on its Website done via web browsers to Meta. This information includes private and personal healthcare information and other sensitive PII that allows Meta to identify the Website users and connect them and their communications with other information.

**RESPONSE:** The allegations in the first sentence of Paragraph 77 contains legal conclusions to which no response is required; insofar as a response is required, PPFA denies these allegations. PPFA denies the allegations in the second sentence of Paragraph 77.

---

[42] Butler, Sydney, *What are Facebook Shadow Profiles, and Should You Be Worried?*, How-To Geek, Dec. 10, 2021, *available at* https://www.howtogeek.com/768652/whatare-facebook-shadow-profiles-and-should-you-be-worried/ (last accessed Aug. 1, 2023).

78. In addition to using the intercepted data to provide analytics services, Meta uses it to improve its personalized content delivery, advertising network, machine-learning algorithms and its ability to identify and target users.

**RESPONSE:** PPFA denies the allegations in Paragraph 78.

79. Planned Parenthood knowingly and intentionally uses the Meta Pixel and tracking technology on its Website. As a result, Planned Parenthood unlawfully discloses, due to a lack of obtained consent, and aids in Meta's interception of Planned Parenthood's Website users' communications on its Website, which includes private and personal health information and other sensitive PII. The effect of Planned Parenthood's actions is that Meta is able to identify each specific individual Planned Parenthood Website user and access the information they provide on the Website.

**RESPONSE:** The allegations in the first two sentences of Paragraph 79 contain legal conclusions to which no response is required; insofar as a response is required, PPFA admits that the Meta Pixel has at certain times appeared on certain pages of plannedparenthood.org and denies the remaining allegations. PPFA denies the allegations in the third sentence of Paragraph 79.

**b. Google**

80. Planned Parenthood also is unlawfully disclosing, due to a lack of obtained consent, to Google its Website users' private and personal health information and other PII. This information reveals each Website user's specific identity that Google then uses for advertising, analytics and other purposes.

**RESPONSE:** The allegations in the first sentence of Paragraph 80 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations. PPFA denies the allegations in the second sentence of Paragraph 80.

81. Google is one of the most valuable publicly traded companies in the world with a market capitalization of over $1.5 trillion dollars.[43] At its core, Google is an advertising company

[43] Alphabet Inc. (GOOG), Yahoo! Finance, *available at* https://finance.yahoo.com/quote/GOOG/ (last accessed Aug. 1, 2023).

and "make[s] money" from "advertising products [that] deliver relevant ads at just the right time," generating "revenues primarily by delivering both performance advertising and brand advertising."[44] In 2020, Google generated $146.9 billion in advertising revenue, which amounted to more than 80 percent of Google's total revenues for the year.[45]

**RESPONSE:** Paragraph 81 contains quotations and information from publications by Yahoo! Finance, SEC.gov, and Statista, which speaks for themselves. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 and therefore denies them.

82. The Website sends users' private and personal health information and other sensitive PII that identifies each specific Website user to Google using Google Analytics, a web analytics service that allows website owners to track site visitors' actions through tracking pixels and other technology in order to target such visitors with personalized advertisements.

**RESPONSE:** PPFA denies the allegations in Paragraph 82.

83. Google touts Google Analytics as a marketing platform that offers "a complete understanding of your customers across devices and platforms..."[46] It allows companies and advertisers that utilize it the ability to "[u]nderstand how your customers interact across your sites and apps, throughout their entire lifestyle," "[u]ncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data," "[t]ake action to optimize marketing performance with integrations across Google's advertising and publisher tools" and "[q]uickly analyze your data and collaborate with an easy-to-use interface and shareable reports."[47]

---

[44] Alphabet Inc. Annual Report Form 10-K, United States Securities and Exchange Commission, *available at* https://www.sec.gov/Archives/edgar/data/1652044/000165204421000010/goog20201231.htm (last accessed Aug. 1, 2023).

[45] *See* Advertising revenue of Google from 2001 to 2022, Statista, *available at* https://www.statista.com/statistics/266249/advertising-revenue-of-google/ (last accessed Aug. 1, 2023).

[46] Marketing Platform Analytics, Google, *available at* https://marketingplatform.google.com/about/analytics/ (last accessed Aug. 1, 2023).

[47] *Id.*

**RESPONSE:** Paragraph 83 contains quotations from a publication by Google.com, which speaks for itself. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 and therefore denies them.

84. Google Analytics is incorporated into Planned Parenthood's website by addition of small pieces of JavaScript measurement. This code immediately intercepts a user's interaction with the webpage every time the user visits it.

**RESPONSE:** PPFA admits that the Google Analytics tag has at certain times appeared on certain pages of plannedparenthood.org. PPFA denies the remaining allegations in Paragraph 84.

85. Google Analytics also collects the IP addresses of individual Internet users in order to facilitate and track Internet communications.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 and therefore denies them.

86. Taken together, Google can use the information that Planned Parenthood unlawfully discloses to it in order to identify a specific Website user's actions and communications on the Website.

**RESPONSE:** The allegations in Paragraph 86 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations.

87. Regardless of whether a Planned Parenthood Website user has a Google account or has ever even visited the Google website, the Google tracking codes Planned Parenthood has embedded on its Website unlawfully disclose communications from *all* of Planned Parenthood's Website users on its Website done via web browsers to Google. This information includes private and personal healthcare information and other sensitive PII that allows Google to identify the Website users and connect them and their communications with other information.

**RESPONSE:** The allegations in the first sentence of Paragraph 87 contain legal conclusions to which no response is required; insofar as a response is required, PPFA admits

that the Google Analytics tag has at certain times appeared on certain pages of plannedparenthood.org and denies the remaining allegations. PPFA denies the allegations in the second sentence of Paragraph 87.

88. Google Analytics offers website owners an opt-in IP anonymization feature. This feature is designed to help website owners comply with their own privacy policies and the recommendations of data protection authorities.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and therefore denies them.

89. If the IP anonymization feature is enabled by the website owner, an additional parameter is added to the communication between website visitors' computers and the Google Analytics server, defined as aip: 1 and depicted below.



48

**RESPONSE:** Paragraph 89 contains an image that purports to show portions of Google Analytics, which speaks for itself. PPFA lacks knowledge or information sufficient to form

[48] Screenshot taken on May 18-19, 2023 via Chrome web browser.

a belief as to the truth of the allegations in Paragraph 89 and therefore denies them.

90. Accordingly, when the "aip" parameter does not appear, the IP address is not anonymized, thus enabling Google to identify website users' IP addresses and their online actions.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and therefore denies them.

91. Planned Parenthood does not enable the IP anonymization feature on its Website. This is demonstrated by the absence of the "aip" parameter in the Website's code. As a result, Google can identify each Planned Parenthood Website user's identity and their specific communications on the Website.

```
    Host: www.google-analytics.com
    Path: /collect

PARAMETERS
       z: 1684399436906
       v: 1
     tid: UA-8867852-25
     cid: 1684399436906 832
       t: event
      dp: /abortion-access
      dh: www.plannedparenthood.org
      dl: https://www.plannedparenthood.org/abortion-access?age=22
          &location=Los%20Angeles%2C%20CA%2090001&noDate=null&mont
          h=04&day=26&year=2023&entryForm=hc%20search%20results
      pa: purchase
      ta: www.plannedparenthood.org
      ec: gtm_monitor
      ea: hc card click book online
      ti: 1684399436906
      el: 1684399421607;911;false;GA1.2.318740178.1684307308
   pr1id: 2152
   pr1nm: UA - Event - ASL - HC Book Online
   pr1va: success
```
[49]

[49] Screenshot taken on May 18-19, 2023 via Chrome web browser.

**RESPONSE:** Paragraph 89 contains an image that purports to show portions of Google Analytics code, which speaks for itself. PPFA denies the allegations in Paragraph 91.

92. Once Google's code collects the data, it packages the information and sends it to Google Analytics for processing. Google Analytics also allows the company to customize the processing of the data, such as applying filters. Once the data is processed, it is stored on a Google Analytics' database and cannot be changed.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 and therefore denies them

93. Google then uses this data to generate reports for Planned Parenthood to help analyze the data. These include reports on acquisition (e.g., information about where your traffic originates, the methods by which users arrive at your platform and the marketing efforts you use to drive traffic), engagement (e.g., measure user engagement by the events and conversion events that users trigger and the web pages and application screens that users visit) and demographics (e.g., classify your users by age, location, language and gender along with interests they express through their online browsing and purchase activities).

**RESPONSE:** PPFA denies the allegations in Paragraph 93.

94. In addition to using the data collected through Google Analytics to provide marketing and analytics services, Planned Parenthood also uses the data to improve its advertisement targeting capabilities and data points on users and consumers.

**RESPONSE:** PPFA denies the allegations in Paragraph 94.

95. Planned Parenthood is also unlawfully disclosing and sharing information with DoubleClick, a "Google Ads" conversion tracking product.

**RESPONSE:** Paragraph 95 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations.

96. When a user visits a website or interacts with an application that displays Google Ads, Google's advertising platform, their browser sends a request to googleads.g.doublock.net to fetch the advertising content. This domain handles the advertising serving infrastructure, including

tracking impressions, clicks and conversions.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 and therefore denies them.

97. Planned Parenthood knowingly and intentionally uses Google's tracking pixels and other technology on its Website via Google Analytics and DoubleClick. As a result, Planned Parenthood unlawfully discloses, due to a lack of obtained consent, and aids in Google's unlawful interception of Planned Parenthood's Website users' communications on its Website, which includes private and personal health information and other sensitive PII. The effect is that Google is able to identify each specific individual Planned Parenthood Website user and access the information they provide on the Website.

**RESPONSE:** The allegations in the first two sentences of Paragraph 97 contain legal conclusions to which no response is required; insofar as a response is required, PPFA admits that the Google Analytics and DoubleClick tags have at certain times appeared on certain pages of plannedparenthood.org and denies the remaining allegations. PPFA denies the allegations in the third sentence of Paragraph 97.

**c. Microsoft**

98. Planned Parenthood also is unlawfully disclosing, due to a lack of obtained consent, to Microsoft its Website users' private and personal health information and other PII. This information reveals each Website user's specific identity that Microsoft then uses for advertising, analytics and other purposes.

**RESPONSE:** The allegations in the first sentence of Paragraph 98 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations. PPFA denies the allegations in the second sentence of Paragraph 98.

99. Planned Parenthood is unlawfully sharing information with Microsoft through bat.bing.com ("Bing Ads"), which is a domain owned and operated by Microsoft and used for tracking and analytics purposes, and which is used on the Website.

**RESPONSE:** The allegations in the first sentence of Paragraph 99 contain legal

conclusions to which no response is required; insofar as a response is required, PPFA denies the allegations in Paragraph 99.

100. When a website user interacts with Bing Ads, which is also known as Microsoft Ads and is Microsoft's advertising platform, Bing Ads is responsible for collecting certain information and setting cookies on the website user's browsers.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and therefore denies them.

101. These cookies help track and analyze website user behavior, measure the effectiveness of advertising campaigns and provide relevant advertisements based on the website user's interests and browsing history.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and therefore denies them.

102. Regardless of whether a Planned Parenthood Website user has a Microsoft account or has ever even visited the Microsoft website, the Microsoft tracking codes Planned Parenthood has embedded on its Website unlawfully disclose communications from *all* of Planned Parenthood's Website users on its Website done via web browsers to Microsoft. This information includes private and personal healthcare information and other sensitive PII that allows Microsoft to identify the Website users and connect them and their communications with other information.

**RESPONSE:** The allegations in the first sentence of Paragraph 102 contain legal conclusions to which no response is required; insofar as a response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 and therefore denies them. PPFA denies the allegations in the second sentence of Paragraph 102.

103. Planned Parenthood knowingly and intentionally uses Microsoft's code on its Website. As a result, Planned Parenthood unlawfully discloses, due to a lack of obtained consent, and aids in Microsoft's unlawful interception of Planned Parenthood's Website users' communications on its Website, which includes private and personal health information and other

sensitive PII. The effect is that Microsoft is able to identify each specific individual Planned Parenthood Website user and access the information they provide on the Website.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and therefore denies them. The allegations in the second sentence of Paragraph 103 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations.

**d. Yahoo**

104. Planned Parenthood is also unlawfully disclosing, due to a lack of obtained consent, to Yahoo its Website users' private and personal health information and other PII. This information reveals each Website user's specific identity that Yahoo then uses for advertising, analytics and other purposes.

**RESPONSE:** The allegations in the first sentence of Paragraph 104 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations. PPFA denies the allegations in the second sentence of Paragraph 104.

105. The Website sends its users' private and personal sexual and reproductive health information and other sensitive PII to Yahoo using Yahoo Analytics, which Planned Parenthood has embedded into its Website.

**RESPONSE:** PPFA denies the allegations in Paragraph 105.

106. Yahoo Analytics enables website owners to track various metrics, such as page views, unique visitors, bounce rates and conversion rates.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 and therefore denies them.

107. Yahoo Analytics uses a variety of tools, including "IP addresses, web beacons, SDKs, cookies, and similar technologies to recognize, associate, and collect data about visitors to Yahoo's and our customer's sites, apps, products, brands and services."[50]

**RESPONSE:** Paragraph 107 contains a quotation from a publication by Yahoo, which

[50] Privacy Center – Yahoo Analytics, Yahoo!, *available at* https://legal.yahoo.com/us/en/yahoo/privacy/topics/analytics/index.html (last accessed Aug. 1, 2023).

speaks for itself. Insofar as a further response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 and therefore denies them.

108. Regardless of whether a Planned Parenthood Website user has a Yahoo account or has ever even visited the Yahoo website, the Yahoo tracking codes Planned Parenthood has embedded on its Website unlawfully disclose communications from *all* of Planned Parenthood's Website users on its Website done via web browsers to Yahoo. This information includes private and personal healthcare information and other sensitive PII that allows Yahoo to identify the Website users and connect them and their communications with other information.

**RESPONSE:** The allegations in the first sentence of Paragraph 108 contain legal conclusions to which no response is required; insofar as a response is required, PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 and therefore denies them.

109. Taken together, Yahoo uses the information that Planned Parenthood unlawfully discloses to it in order to identify a specific Website user and their actions and communications on the Website.

**RESPONSE:** The allegations in the first sentence of Paragraph 109 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations.

110. Planned Parenthood knowingly and intentionally uses Yahoo's code on its Website. As a result, Planned Parenthood unlawfully discloses, due to a lack of obtained consent, and aids in Yahoo's unlawful interception of Planned Parenthood's Website users' communications on its Website, which includes private and personal health information and other sensitive PII. The effect is that Yahoo is able to identify each specific individual Planned Parenthood Website user and access the information they provide on the Website.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110 and therefore denies them. The allegations in the second

sentence of Paragraph 110 contain legal conclusions to which no response is required; insofar as a response is required, PPFA denies those allegations.

## V. Planned Parenthood Unlawfully Disclosed Plaintiff's and Class Members' Private and Personal Sexual and Reproductive Health Information and Other Sensitive PII to the Third Parties and Assisted the Third Parties with the Unlawful Interception of Communications Containing Such Information

### a. Illustration of How Planned Parenthood Unlawfully Discloses and Aids in the Interception of Plaintiff's and Class Members' Private and Protected Personal Information

111. Upon entering the Website's homepage, Website users are able to search for a Planned Parenthood health center by location and service, and they can filter results by telehealth and/or in-person appointments.



[51]

**<u>RESPONSE:</u>** Paragraph 111 contains Plaintiff's characterization of plannedparenthood.org and an image that purports to show portions of plannedparenthood.org. That website and image speak for themselves.

112. Depending on what service the Website users select, they may be required to provide additional information. For example, when a Planned Parenthood Website user specifically searches for abortion services, they encounter an additional requirement. In order to proceed, they

[51] Screenshot taken on May 18-19, 2023 via Chrome web browser.

are prompted to provide their age and the first day of their last menstrual period.



[52]

**RESPONSE:** Paragraph 112 contains Plaintiff's characterization of plannedparenthood.org and an image that purports to show portions of plannedparenthood.org. That website and image speak for themselves.

113. Once Website users submit their information in the above described scenario for abortion services (or for whatever other treatment they may be seeking), the information is automatically and simultaneously sent directly to all of the Third Parties, as evidenced in the below six screenshots. Specifically, Planned Parenthood transmitted the following information during this process involving communications with a Website user: that the user searched for an abortion clinic around zip code 90001, that she is 22 years old and that the first day of her last period was on April 26, 2023. It even estimated how far along the user was in her pregnancy. Importantly, it also communicated various PII in this scenario, including, but not limited to, the person's IP address and FID.

[52] Screenshot taken on May 18-19, 2023 via Chrome web browser.




53



URL

```
+ https://www.facebook.com/tr/?id=433242851216452&ev=PageView&dl=https%3A%2F%2Fwww.plannedparenthood.org%2F&rl=https%3A%2F%2Fwww.plannedparenthood.org%2Fabortion-access%3Fage%3D22%26month%3D4%26day%3D26%26year%3D2023%26location%3D90001%26entryForm%3D&if=false&ts=1684408567881&sw=1920&sh=1080&v=2.9.104&r=stable&ec=0&o=29&fbp=fb.1.1684307320145.687633086&it=1684408567830&coo=false&dpo=&tm=1&rqm=GET
```

HEADERS

```
+ accept:             image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ cookie:             sb=kOBlZJeVAFdU7pQ1e95Q-s62; datr=kOBlZPmhpe-kqAnemdQf6j7O;
                      locale=en_US; dpr=1; c_user=1212          xs=26%3A-2evcb-0dm_p-
                      A%3A2%3A1684399194%3A-1%3A15165;
                      fr=0i6WZZzQyQCkUb07J.AWUd63xxrIjdt3l0sZKNUd0VDCY.BkZeCQ.wn.AAA.
                      0.0.BkZeRc.AWUzh4HGWbA
+ host:               www.facebook.com
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113", "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:   ?0
  sec-ch-ua-platform: "Windows"
```

54

[53] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[54] Screenshot taken on May 18-19, 2023 via Chrome web browser.

```
URL

+ https://www.google-analytics.com/collect?z=1684399436906&v=1&ti
d=UA-8867852-25&cid=1684399436906%20832&t=event&dp=%2Fabortion-ac
cess&dh=www.plannedparenthood.org&dl=https%3A%2F%2Fwww.plannedpar
enthood.org%2Fabortion-access%3Fage%3D22%26location%3DLos%2520Ang
eles%252C%2520CA%252090001%26noDate%3Dnull%26month%3D04%26day%3D2
6%26year%3D2023%26entryForm%3Dhc%2520search%2520results&pa=purcha
se&ta=www.plannedparenthood.org&ec=gtm_monitor&ea=hc%20card%20cli
ck%20book%20online&ti=1684399436906&el=1684399421607;911;false;GA
1.2.318740178.1684307308&pr1id=2152&pr1nm=UA%20-%20Event%20-%20AS
L%20-%20HC%20Book%20Online&pr1va=success&pr1ca=hc%20card%20click%
20book%20online&pr1br=%2Fabortion-access&pr1qt=1&pr1pr=6.00&pr2id
=2507&pr2nm=unnamed%20tag%20with%20ID%3A%202507&pr2va=success&pr2
ca=hc%20card%20click%20book%20online&pr2br=%2Fabortion-access&pr2
qt=1&pr2pr=85.00&pr3id=2274&pr3nm=unnamed%20tag%20with%20ID%3A%20
2274&pr3va=success&pr3ca=hc%20card%20click%20book%20online&pr3br
=%2Fabortion-access&pr3qt=1&pr3pr=2.00&tr=3.00&ev=3

HEADERS

+ accept:            image/avif,image/webp,image/apng,image/svg+
                     xml,image/*,*/*;q=0.8
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ host:              www.google-analytics.com
+ referer:           https://www.plannedparenthood.org/
  sec-ch-ua:         "Google Chrome";v="113",
                     "Chromium";v="113", "Not-A.Brand";v="24"
```

[55]

```
+ https://googleads.g.doubleclick.net/pagead/viewthroughconversio
n/644728173/?random=1684408565860&cv=11&fst=1684408565860&bg=ffff
ff&guid=ON&async=1&gtm=45He35a0&u_w=1920&u_h=1080&url=https%3A%2
F%2Fwww.plannedparenthood.org%2F&ref=https%3A%2F%2Fwww.plannedpar
enthood.org%2Fabortion-access%3Fage%3D22%26month%3D4%26day%3D26%2
6year%3D2023%26location%3D90001%26entryForm%3D&hn=www.googleadser
vices.com&frm=0&tiba=Planned%20Parenthood%20%7C%20Official%20Site
&auid=524117785.1684307308&uaa=x86&uab=64&uafvl=Google%2520Chrom
e%3B113.0.5672.127%7CChromium%3B113.0.5672.127%7CNot-A.Brand%3B2
4.0.0.0&uamb=0&uap=Windows&uapv=15.0.0&uaw=0&rfmt=3&fmt=4

HEADERS

+ accept:            */*
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ cookie:            IDE=AHWqTUnrxWMmpcMobMYKo8kicuEic2cijc1tJWx
                     tMSqLU80Sz8vDpALRINassz06gqU
+ host:              googleads.g.doubleclick.net
+ referer:           https://www.plannedparenthood.org/
  sec-ch-ua:         "Google Chrome";v="113",
                     "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:  ?0
  sec-ch-ua-         "Windows"
  platform:
```

[56]

---

[55] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[56] Screenshot taken on May 18-19, 2023 via Chrome web browser.

```
+ https://bat.bing.com/action/0?ti=5061699&tm=gtm002&Ver=2&mid=4e
8c989b-1368-4523-86fb-911c286744d1&sid=a07d7840f48111eda413b5a45a
aa7bb1&vid=a07d88a0f48111eda8fe034b7465f171&vids=0&msclkid=N&uach
=pv%3D15.0.0&pi=918639831&lg=en-US&sw=1920&sh=1080&sc=24&tl=Plann
ed%20Parenthood%20%7C%20Official%20Site&p=https%3A%2F%2Fwww.plann
edparenthood.org%2F&r=https%3A%2F%2Fwww.plannedparenthood.org%2Fa
bortion-access%3Fage%3D22%26month%3D4%26day%3D26%26year%3D2023%26
location%3D90001%26entryForm%3D&lt=519&evt=pageLoad&sv=1&rn=37066
3

HEADERS

+ accept:             image/avif,image/webp,image/apng,image/svg+
                      xml,image/*,*/*;q=0.8
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ cookie:             MUID=341FB0B564746B1B1D98A3A165F06A68; MR=0
+ host:               bat.bing.com
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113",
                      "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:   ?0
  sec-ch-ua-          "Windows"
```
[57]

```
+ https://sp.analytics.yahoo.com/sp.pl?a=10000&d=Thu%2C%2018%20Ma
y%202023%2011%3A16%3A06%20GMT&n=-3d&b=Planned%20Parenthood%20%7C%
20Official%20Site&.yp=10095773&f=https%3A%2F%2Fwww.plannedparenth
ood.org%2F&e=https%3A%2F%2Fwww.plannedparenthood.org%2Fabortion-a
ccess%3Fage%3D22%26month%3D4%26day%3D26%26year%3D2023%26location%
3D90001%26entryForm%3D&enc=UTF-8&yv=1.14.0&tagmgr=gtm

HEADERS

+ accept:             image/avif,image/webp,image/apng,image/svg+
                      xml,image/*,*/*;q=0.8
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ cookie:             A3=d=AQABBHJ9ZGQCEJ1vjeo203iNX6oQ4VI4-
                      5gFEgEBAQHOZWRuZNwr0iMA_eMAAA&S=AQAAAkBCNiI
                      SkJMTZrsC3djXl_c; IDSYNC=1769~2bov
+ host:               sp.analytics.yahoo.com
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113",
                      "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:   ?0
  sec-ch-ua-          "Windows"
```
[58]

**RESPONSE:** Paragraph 113 contains Plaintiff's characterization of plannedparenthood.org and images that purport to show portions of portions of plannedparenthood.org and code

[57] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[58] Screenshot taken on May 18-19, 2023 via Chrome web browser.

from plannedparenthood.org. That website and those images speak for itself.

114. After submitting their information, regardless of the service they select, Website users are directed to the search results page, where they can choose a clinic and book an appointment. This information, along with PII, is shared with at least Google once a user clicks the "book online" button.



[59]



```
https://www.google-analytics.com/collect?z=1684313280128&v=1&ti
d=UA-8867852-25&cid=1684313280128%20291&t=event&dp=%2Fabortion-ac
cess&dh=www.plannedparenthood.org&dl=https%3A%2F%2Fwww.plannedpar
enthood.org%2Fabortion-access%3Fage%3D22%26month%3D4%26day%3D26%2
6year%3D2023%26location%3DLos%2520Angeles%252C%2520CA%252090001%2
6entryForm%3D&pa=purchase&ta=www.plannedparenthood.org&ec=gtm_mon
itor&ea=hc%20card%20click%20book%20online&ti=1684313280128&el=168
4313264401;753;false;GA1.2.318740178.1684307308&pr1id=2152&pr1nm=
UA%20-%20Event%20-%20ASL%20-%20HC%20Book%20Online&pr1va=success&p
r1ca=hc%20card%20click%20book%20online&pr1br=%2Fabortion-access&p
r1qt=1&pr1pr=5.00&pr2id=2507&pr2nm=unnamed%20tag%20with%20ID%3A%2
02507&pr2va=success&pr2ca=hc%20card%20click%20book%20online&pr2br
=%2Fabortion-access&pr2qt=1&pr2pr=80.00&pr3id=2274&pr3nm=unnamed%
20tag%20with%20ID%3A%202274&pr3va=success&pr3ca=hc%20card%20clic
k%20book%20online&pr3br=%2Fabortion-access&pr3qt=1&pr3pr=1.00&tr=
3.00&ev=3
```
[60]

**<u>RESPONSE:</u>** Paragraph 114 contains Plaintiff's characterization of plannedparenthood.org and an image that purports to show portions of

[59] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[60] Screenshot taken on May 18-19, 2023 via Chrome web browser.

plannedparenthood.org and portions of code from plannedparenthood.org. That website and those images speak for themselves.

115. Plaintiff never consented, agreed, authorized or otherwise permitted Planned Parenthood to disclose her private and personal sexual and reproductive health information and other sensitive PII that she communicated to Planned Parenthood on a web browser via the Website. This information allows the Third Parties to identify each specific individual Planned Parenthood Website user and access the communications they provide.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 115 and therefore denies them. PPFA denies the remainder of the allegations in Paragraph 115.

116. Plaintiff was never provided any full and proper written notice that Planned Parenthood disclosed her protected sexual and reproductive health information and other sensitive PII that revealed her identity when she used the Website, nor was she provided any means of opting out of all such disclosures. Planned Parenthood nonetheless knowingly and intentionally disclosed Plaintiff's private and personal sexual and reproductive health information and other sensitive PII to the Third Parties.

**RESPONSE:** PPFA denies the allegations in Paragraph 116.

117. By law, Plaintiff is entitled to privacy in her private and personal sexual and reproductive health information and confidential communications. Planned Parenthood deprived Plaintiff and other members of the Class of their privacy rights when it:

(1) implemented a system that surreptitiously tracked, recorded and disclosed Plaintiff's and other Website users' confidential interactions, communications, protected health information and other sensitive PII via the Website;

(2) disclosed Website users' protected health information and other sensitive PII communicated on the Website to numerous Third Parties, who are all unauthorized eavesdroppers; and

(3) undertook this pattern of conduct without notifying Plaintiff and other Website users and without obtaining their express written consent. Plaintiff did not discover that Planned Parenthood disclosed and assisted the Third Parties in intercepting her private and personal health information and other sensitive PII until July 2023.

**RESPONSE:** Paragraph 117 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations in Paragraph 117.

**b. Illustration of the Types of Information Planned Parenthood Unlawfully Discloses and Aids Third Parties to Intercept**

118. Planned Parenthood offers Website users a variety of Women's Services and Men's Services, and users may hover over the "get care" tab on the Website's homepage and choose the "our services" button to see the various services offered. Once the Website users are presented with a list of the Planned Parenthood services offered to them, they can also click the "learn more" tab to learn more about each service offered on the Website by Planned Parenthood.




[61]




[62]

**RESPONSE:** Paragraph 118 contains Plaintiff's characterization of

---

[61] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[62] Screenshot taken on May 18-19, 2023 via Chrome web browser.

plannedparenthood.org and images that purport to show portions of plannedparenthood.org and portions of code from plannedparenthood.org. That website and those images speak for themselves.

119. Upon selecting a service to "learn more" about, the chosen service's name is shared with multiple third parties, explicitly revealing in this illustration that the Website user clicked on, and wanted to learn more about, "transgender hormone therapy." Additionally, and at the same time, the user's PII was disclosed to the Third Parties, including their IP address and FID.



63



64

---

[63] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[64] Screenshot taken on May 18-19, 2023 via Chrome web browser.



```
+ https://googleads.g.doubleclick.net/pagead/viewthroughconversion/952276156/?random=16844
22471046&cv=11&fst=1684422471046&bg=ffffff&guid=ON&async=1&gtm=45He35a0&u_w=1920&u_h=1080&
url=https%3A%2F%2Fwww.plannedparenthood.org%2Fget-care%2Four-services%2Ftransgender-hormon
e-therapy&ref=https%3A%2F%2Fwww.plannedparenthood.org%2Fget-care%2Four-services&hn=www.goo
gleadservices.com&frm=0&tiba=LGBT%20Services%20%7C%20Education%2C%20Support%20%26%20Healt
h%20Services&auid=524117785.1684307308&uaa=x86&uab=64&uafvl=Google%2520Chrome%3B113.0.567
2.127%7CChromium%3B113.0.5672.127%7CNot-A.Brand%3B24.0.0.0&uamb=0&uap=Windows&uapv=15.0.0&
uaw=0&rfmt=3&fmt=4

HEADERS
+ accept:             */*
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ cookie:             IDE=AHWqTUnrxWMmpcMobMYKo8kicuEic2cijc1tJWxtMSqLU80Sz8vDpALRINassz06
                      gqU
+ host:               googleads.g.doubleclick.net
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113", "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:   ?0
  sec-ch-ua-platform: "Windows"
+ sec-fetch-dest:     script
```

[65]

**RESPONSE:** Paragraph 119 contains Plaintiff's characterization of plannedparenthood.org and images that purport to show portions of plannedparenthood.org and portions of code from plannedparenthood.org. That website and those images speak for themselves.

120. Additionally, the "transgender hormone therapy" page, as well as the pages for other services, enables Website users to explore Planned Parenthood clinics that offer the service within their desired zip code and schedule appointments. When a user clicks the "search" button, both their search location and their request for an appointment regarding LGBT services are shared with some third parties, including, but not limited to, Google. PII that reveals the Website user's individual identity is also disclosed simultaneously.

[65] Screenshot taken on May 18-19, 2023 via Chrome web browser.



[66]

[66] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[67] Screenshot taken on May 18-19, 2023 via Chrome web browser.

```
+ https://www.google-analytics.com/collect?z=1684424663266&v=1&tid=UA-8867852-25&cid=16844
24663266%20249&t=event&dp=%2Fhealth-center&dh=www.plannedparenthood.org&dl=https%3A%2F%2Fw
ww.plannedparenthood.org%2Fhealth-center%3Flocation%3DLos%2BAngeles%252C%2BCA%2B90001%26se
rvice%3Dlgbtservice%26channel%3Dany%26page%3D1&pa=purchase&ta=www.plannedparenthood.org&ec
=gtm_monitor&ea=gtm.linkClick&ti=1684424663266&el=1684423339270;727;false;GA1.2.318740178.
1684307308&pr1id=99&pr1nm=unnamed%20tag%20with%20ID%3A%2099&pr1va=success&pr1ca=gtm.linkCl
ick&pr1br=%2Fhealth-center&pr1qt=1&pr1pr=272.00&pr2id=421&pr2nm=unnamed%20tag%20with%20ID%
3A%20421&pr2va=success&pr2ca=gtm.linkClick&pr2br=%2Fhealth-center&pr2qt=1&pr2pr=7.00&pr3id
=461&pr3nm=UA%20-%20Event%20-%20HC%20Search%20Results%20-%20Request%20An%20Appointment&pr3
va=success&pr3ca=gtm.linkClick&pr3br=%2Fhealth-center&pr3qt=1&pr3pr=9.00&pr4id=2507&pr4nm=
unnamed%20tag%20with%20ID%3A%202507&pr4va=success&pr4ca=gtm.linkClick&pr4br=%2Fhealth-cent
er&pr4qt=1&pr4pr=242.00&tr=4.00&ev=4

HEADERS
+ accept:             image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ host:               www.google-analytics.com
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113", "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:   ?0
  sec-ch-ua-platform: "Windows"
+ sec-fetch-dest:     image
+ sec-fetch-mode:     no-cors
+ sec-fetch-site:     cross-site
```

[67]

**RESPONSE:** Paragraph 120 contains Plaintiff's characterization of plannedparenthood.org and images that purport to show portions of plannedparenthood.org and portions of code from plannedparenthood.org. That website and those images speak for themselves.

121. Furthermore, as previously alleged, information communicated and shared by Website users through the search bar on the Website is also unlawfully disclosed to the Third Parties. Notably, users can input anything into the search bar, so there is a seemingly endless amount of private and personal information that is unlawfully disclosed by Planned Parenthood to the Third Parties via its search bar. The example below shows what is transmitted to the Third Parties when a Website user searches for information and services related to HIV. The transmitted information includes PII that reveals the Website user's identity to the Third Parties, along with all of the other inherently sensitive information that the user communicated on the Website when searching for information and services related to HIV.

---

[67] Screenshot taken on May 18-19, 2023 via Chrome web browser.



[68]

[68] Screenshot taken on May 18-19, 2023 via Chrome web browser.

```
+ https://www.facebook.com/tr/?id=4332428512164526ev=PageView&dl=htt
ps%3A%2F%2Fwww.plannedparenthood.org%2Fsearch%3Fq%3DHIV%2B&rl=https%
3A%2F%2Fwww.plannedparenthood.org%2F&if=false&ts=1684477278248&sw=19
20&sh=1080&v=2.9.104&r=stable&ec=0&o=29&fbp=fb.1.1684307320145.68763
3086&it=1684477278195&coo=false&dpo=&tm=1&rqm=GET

HEADERS

+ accept:             image/avif,image/webp,image/apng,image/svg+xml
                      ,image/*,*/*;q=0.8
+ accept-encoding:    gzip, deflate, br
+ accept-language:    en-US,en;q=0.9
+ connection:         keep-alive
+ cookie:             sb=kOBlZJeVAFdU7pQ1e95Q-s62; datr=kOBlZPmhpe-
                      kqAnemdQf6j7Q; locale=en_US; dpr=1;
                      c_user=1212[redacted]s=26%3A-2evcb-0dm_p-
                      A%3A2%3A1684399194%3A-1%3A15165;
                      fr=0i6WZZzQyQCkUb07J.AWUd63xxrIjdt3l0sZKNUd0VD
                      CY.BkZeCQ.wn.AAA.0.0.BkZeRc.AWUzh4HGWbA
+ host:               www.facebook.com
+ referer:            https://www.plannedparenthood.org/
  sec-ch-ua:          "Google Chrome";v="113", "Chromium";v="113",
                      "Not-A.Brand";v="24"
```
[69]

```
+ https://googleads.g.doubleclick.net/pagead/viewthroughconversion/792381940/?random=16844
77272584&cv=11&fst=1684477272584&bg=ffffff&guid=ON&async=1&gtm=45He35h0&u_w=1920&u_h=1080&
url=https%3A%2F%2Fwww.plannedparenthood.org%2Fsearch%3Fq%3DHIV%2B&ref=https%3A%2F%2Fwww.pl
annedparenthood.org%2F&hn=www.googleadservices.com&frm=0&tiba=Search%20Results&auid=524117
785.1684307308&uaa=x86&uab=64&uafvl=Google%2520Chrome%3B113.0.5672.127%7CChromium%3B113.0.
5672.127%7CNot-A.Brand%3B24.0.0.0&uamb=0&uap=Windows&uapv=15.0.0&uaw=0&rfmt=3&fmt=4

HEADERS

+ accept:               */*
+ accept-encoding:      gzip, deflate, br
+ accept-language:      en-US,en;q=0.9
+ connection:           keep-alive
+ cookie:               IDE=AHWqTUk88j4lEyoBSxnBLCIjFAgQqoTJvMV3b-MDGGJNSLPesb51-
                        GRZxQyOjqghOl8
+ host:                 googleads.g.doubleclick.net
+ referer:              https://www.plannedparenthood.org/
  sec-ch-ua:            "Google Chrome";v="113", "Chromium";v="113", "Not-A.Brand";v="24"
  sec-ch-ua-mobile:     ?0
  sec-ch-ua-platform:   "Windows"
+ sec-fetch-dest:       script
+ sec-fetch-mode:       no-cors
```
[70]

[69] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[70] Screenshot taken on May 18-19, 2023 via Chrome web browser.

```
+ https://bat.bing.com/action/0?ti=5061699&tm=gtm002&Ver=2&mid=55d79
7ab-4b17-400a-9df0-4cdeec748672&sid=a07d7840f48111eda413b5a45aaa7bb1
&vid=a07d88a0f48111eda8fe034b7465f171&vids=0&msclkid=N&uach=pv%3D15.
0.0&pi=918639831&lg=en-US&sw=1920&sh=1080&sc=24&tl=Search%20Results&
p=https%3A%2F%2Fwww.plannedparenthood.org%2Fsearch%3Fq%3DHIV%2B&r=ht
tps%3A%2F%2Fwww.plannedparenthood.org%2F&lt=5135&evt=pageLoad&sv=1&r
n=536071

HEADERS

+ accept:               image/avif,image/webp,image/apng,image/svg+xml
                        ,image/*,*/*;q=0.8
+ accept-encoding:      gzip, deflate, br
+ accept-language:      en-US,en;q=0.9
+ connection:           keep-alive
+ cookie:               MUID=341FB0B564746B1B1D98A3A165F06A68; MR=0
+ host:                 bat.bing.com
+ referer:              https://www.plannedparenthood.org/
  sec-ch-ua:            "Google Chrome";v="113", "Chromium";v="113",
                        "Not-A.Brand";v="24"
  sec-ch-ua-mobile:     ?0
```
[71]

```
+ https://sp.analytics.yahoo.com/sp.pl?a=10000&d=Fri%2C%2019%20May%2
02023%2006%3A21%3A12%20GMT&n=-3d&b=Search%20Results&.yp=10095773&f=h
ttps%3A%2F%2Fwww.plannedparenthood.org%2Fsearch%3Fq%3DHIV%2B&e=http
s%3A%2F%2Fwww.plannedparenthood.org%2F&enc=UTF-8&yv=1.14.0&tagmgr=gt
m

HEADERS

+ accept:               image/avif,image/webp,image/apng,image/svg+xml
                        ,image/*,*/*;q=0.8
+ accept-encoding:      gzip, deflate, br
+ accept-language:      en-US,en;q=0.9
+ connection:           keep-alive
+ cookie:               A3=d=AQABBHJ9ZGQCEJ1vjeo203iNX6oQ4VI4-
                        5gFEgEBAQHOZWRuZNwr0iMA_eMAAA&S=AQAAAkBCNiISkJ
                        MTZrsC3djXl_c; IDSYNC=1769~2bov
+ host:                 sp.analytics.yahoo.com
+ referer:              https://www.plannedparenthood.org/
  sec-ch-ua:            "Google Chrome";v="113", "Chromium";v="113",
                        "Not-A.Brand";v="24"
  sec-ch-ua-mobile:     ?0
```
[72]

**RESPONSE:** The allegations in Paragraph 121 contain legal conclusions to which no response is required. Insofar as a response is required, PPFA states that Paragraph 121

[71] Screenshot taken on May 18-19, 2023 via Chrome web browser.

[72] Screenshot taken on May 18-19, 2023 via Chrome web browser.

contains Plaintiff's characterization of plannedparenthood.org and images that purport to show portions of plannedparenthood.org and portions of code from plannedparenthood.org. That website and those images speak for themselves. PPFA denies the remainder of the allegations in Paragraph 121.

122. The above illustrations highlight just some of the vast information Planned Parenthood unlawfully discloses to the Third Parties and unlawfully aids the Third Parties to intercept. Taken together, this information reveals not only the identity of Planned Parenthood Website users, but it also gives the Third Parties access to their inherently sensitive and private healthcare information.

**RESPONSE:** The allegations in Paragraph 122 contain legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations in Paragraph 122.

### VI. Planned Parenthood is Aware that Plaintiff's and Class Members' Communications They Unlawfully Disclose Include PHI and Other Sensitive PII

123. By design of the Tracking Codes Planned Parenthood chooses to utilize on its Website, it was well aware that placing the Tracking Codes on its Website would result in the unlawful disclosure and use of Plaintiff's and class members' PHI and other sensitive PII that reveals a person's identity to the Third Parties.

**RESPONSE:** The allegations in Paragraph 123 contain legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations in Paragraph 123.

124. Further, as a covered entity under HIPAA, Planned Parenthood is required by law to know the types of information it collects and how it is supposed to preserve and maintain it.

**RESPONSE:** The allegations in Paragraph 124 contain legal conclusions to which no response is required. To the extent a response is required, PPFA denies the allegations.

### VII. Plaintiff and Other Class Members Suffered Great Harm as a Result of the Unlawful Disclosure of Their PHI and Other Sensitive PII

125. Businesses have been built around the collection of personal data as "data is widely

considered to be among the world's most valuable resources" because of the potential revenue and business value it can provide. Personal data has been recognized as "a valuable commodity, similar to commodities like oil and gold."[73]

**RESPONSE:** Paragraph 125 contains quotations from a publication by KD Nuggets, which speaks for itself. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125 and therefore denies them.

126. The Federal Trade Commission ("FTC") has identified data collected about a person's precise location and information about their health as the most sensitive categories of data collected. Standing alone, these data points "pose an incalculable risk to personal privacy," but when technology companies collect the data, combine it and sell or monetize it, this amounts to an "unprecedented intrusion" and creates a "new frontier of potential harms to consumers."[74]

**RESPONSE:** Paragraph 126 contains quotations from an FTC publication, which speaks for itself. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126 and therefore denies them.

127. For example, the FTC recently settled a lawsuit against Flo Health, alleging that the company shared sensitive health information with Google and Meta collected from its period and fertility tracking app, despite promising to keep this information private. The FTC warns that the misuse of such health information, including reproductive health data, exposes consumers to significant harm because: (i) criminals can use the health data to facilitate phishing scams or commit identity theft; (ii) stalkers or other criminals can use the data to inflict physical and emotional injury; and (iii) the exposure of health information and medical conditions can subject people to discrimination, stigma, mental anguish and other serious harms.[75]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 and therefore denies them.

---

[73] *See* Cherukuri, Vijay, *Data: The Most Valuable Commodity for Business*, KD Nuggets, Mar. 1, 2022, *available at* https://www.kdnuggets.com/2022/03/datavaluable-commodity-businesses.html (last accessed Aug. 1, 2023).

[74] *See* Location, *supra* footnote 9.

[75] *Id.*

128. Chris Bowen, the Chief Privacy and Security Officer for ClearData, explained that health information is so valuable because "[y]ou can build [an] entire human persona around a health record. You can create or seek medical treatment, abuse drugs, or get prescriptions."[76] This is part of the reason why healthcare data may be valued at up to $250 per record on the black market.[77]

**<u>RESPONSE:</u>** Paragraph 128 contains quotations from a Dmagazine publication, which speaks for itself. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 and therefore denies them.

129. However, personal data is not just valuable to criminals. It is common knowledge that there is an economic market for consumers' personal data, including the PHI and other sensitive PII Planned Parenthood collects from Plaintiff and other class members.

**<u>RESPONSE:</u>** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129 and therefore denies them.

130. Healthcare providers, such as Planned Parenthood, "sit on treasure troves: a stockpile of patient health data stored as electronic medical records."[78] These "files show what people are sick with, how they were treated, and what happened next."[79] Taken together, "they're hugely valuable resources for medical discovery."[80]

**<u>RESPONSE:</u>** Paragraph 130 contains quotations from a publication by The Verge, which speaks for itself. PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 and therefore denies them.

---

[76] Maddox, Will, *Why Medical Data is 50 Times More Valuable Than a Credit Card*, DMagazine, Oct. 15, 2019, *available at* https://www.dmagazine.com/healthcarebusiness/2019/10/why-medical-data-is-50-times-more-valuable-than-a-credit-card/ (last accessed Aug. 1, 2023).

[77] Hackers, Breaches, and the Value of Healthcare Data, imprivata, June 30, 2021, *available at* https://www.imprivata.com/blog/healthcare-data-new-prize-hackers (last accessed Aug. 1, 2023).

[78] Westman, Nicole, *Hospitals are selling treasure troves of medical data – what could go wrong?*, The Verge, June 23, 2021, *available at* https://www.theverge.com/2021/6/23/22547397/medical-records-health-data-hospitals-research (last accessed Aug. 1, 2023).

[79] *Id.*

[80] *Id.*

131. Even when healthcare providers de-identify records by removing identifying information such as names, locations and phone numbers, healthcare providers can still sell the data to partners for research.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 and therefore denies them.

132. Unsurprisingly, healthcare groups have taken advantage of de-identifying medical records. For instance, the Mayo Clinic in Rochester, Minnesota is working with a startup company to develop algorithms in order to diagnose and manage conditions based on health data.[81]

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 and therefore denies them.

133. Given the significant monetary value of PHI, Planned Parenthood has deprived Plaintiff and the class members of the economic value of their PHI by acquiring and disclosing such data without providing proper consideration for their property.

**RESPONSE:** PPFA denies the allegations in Paragraph 133.

**VIII. Plaintiff Davina Gibson's Experience with the Website**

134. Davina Gibson is an adult California resident and visited Planned Parenthood's Website on numerous occasions over the one year prior to filing this action.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134 and therefore denies them.

135. She first started using the Website in 2016, and she has used it as recently as July 2023.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135 and therefore denies them.

136. She has used the Website for Women's Services and other personal healthcare during the relevant time period, including to schedule appointments and research Women's Services and other healthcare information.

---

[81] *Id.*

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 and therefore denies them.

137. As part of obtaining Women's Services from Planned Parenthood, she receives various communications from Planned Parenthood including by phone call, text message and email. She has also seen advertisements for Planned Parenthood while residing in California, and it is always one of the first names to appear when conducting an Internet search on a browser via a search engine, like Google, for sexual and reproductive healthcare services in California.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 and therefore denies them.

138. Ms. Gibson has also used the search bar on the Website during the relevant time period searching for information and appointments related to Women's Services and other healthcare.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 and therefore denies them.

139. She primarily accesses and uses the Website on a browser through her cellphone.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 and therefore denies them.

140. Over the past year, Ms. Gibson conveyed significant healthcare and other personal information on the Website, including research related to Women's Services, when and where she schedules appointments for Women's Services, the types of medical treatment she seeks through Planned Parenthood, the specialty and names of the providers with whom she seeks treatment with, the locations of the Planned Parenthood facilities she wishes to go to and prescriptions she researches, seeks and is provided. She also has simultaneously communicated considerable PII alongside this information, including, but not limited to, her IP address and FID.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 and therefore denies them.

141. While using the Website, including to research and schedule appointments,

Ms. Gibson not only never agreed or consented to Planned Parenthood's Privacy Policy or Terms of Service, but she never even saw its Privacy Policy or Terms of Service. She also never consented in any way to the disclosure of her PHI and other PII that revealed her identity.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 and therefore denies them.

142. Unbeknownst to Ms. Gibson, Planned Parenthood allowed the Third Parties to have real-time access to her communications on the Website because she accessed the Website, embedded with all of the Tracking Codes, on various web browsers on her mobile phone and computer.

**RESPONSE:** PPFA denies the allegations in Paragraph 142.

143. The Third Parties utilized this access to surreptitiously gather Ms. Gibson's sensitive PHI, which includes information related to Women's Services, and other PII. This information taken together reveals her specific identity and specific communications on the Website to the Third Parties.

**RESPONSE:** PPFA denies the allegations in Paragraph 143.

144. Ms. Gibson did not consent to the disclosure or interception of her electronic communications with Planned Parenthood to the Third Parties, and she never provided a signed authorization for the release of her medical information.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144 and therefore denies them.

145. Ms. Gibson never visited the Third Parties' websites to review their separate terms of use and/or privacy policies because she was unaware that Planned Parenthood shared her PHI and other sensitive PII that revealed her identity with the Third Parties. She was not even aware that the Tracking Codes were embedded on the Website.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 and therefore denies them.

146. Ms. Gibson provided her PHI and other sensitive PII with the reasonable expectation

that Planned Parenthood is prohibited from disclosing it as a covered entity under HIPAA, in addition to the express and implied assurances of confidentiality it makes on its Website.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 and therefore denies them.

147. When she accessed the Website, the Third Parties collected her PHI and other sensitive PII from Planned Parenthood and had already collected some or all of her personal information from other websites in their wiretap networks.

**RESPONSE:** PPFA denies the allegations in Paragraph 147.

148. Thus, the Third Parties were able to link Ms. Gibson's previous browsing activity on other websites with her intercepted activity on the Website, revealing and connecting an enormous amount of private information about herself.

**RESPONSE:** PPFA denies the allegations in Paragraph 148.

149. As a result, the Third Parties used her unlawfully collected data to improve their own products, services and algorithms, and the Third Parties improperly viewed and used her PHI and other sensitive PII in connection with targeted marketing to bolster profits.

**RESPONSE:** PPFA denies the allegations in Paragraph 149.

150. In order to receive the best care from Planned Parenthood and its healthcare providers, Ms. Gibson is required to use the Website because it is the only centralized location where she can research the various treatment options and providers offered by Planned Parenthood and book appointments related to her specific healthcare needs, including for Women's Services.

**RESPONSE:** PPFA denies the allegations in Paragraph 150.

151. Ms. Gibson has never donated to Planned Parenthood.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151 and therefore denies them.

152. Ms. Gibson has had a Facebook account since 2018, which she uses every day. She does not explicitly log out of Facebook when she is done using it.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 152 and therefore denies them.

**TOLLING, CONCEALMENT AND ESTOPPEL**

153. The applicable statutes of limitation have been tolled as a result of Planned Parenthood's knowing and active concealment and denial of the facts alleged herein.

**RESPONSE:** Paragraph 153 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations.

154. Planned Parenthood has secretly incorporated the Tracking Codes into its Website, providing no indication to Website users researching healthcare and scheduling appointments that they were interacting with a Website that shares their data, which includes highly private and personal sexual and reproductive health information and other sensitive PII that reveals their specific identity, with the Third Parties.

**RESPONSE:** PPFA denies the allegations in Paragraph 154.

155. Planned Parenthood had exclusive knowledge that its Website incorporated all of the Tracking Codes, yet it failed to disclose that fact to its Website users. It also failed to properly disclose to Plaintiff and class members that by interacting with the Website, their PHI, including private and personal sexual and reproductive health information, and other sensitive PII would be disclosed to and intercepted by the Third Parties, revealing not only their identity but also a significant amount of healthcare information about themselves.

**RESPONSE:** PPFA denies the allegations in Paragraph 155.

156. Plaintiff and class members could not with due diligence have discovered the full scope of Planned Parenthood's and the Third Parties' conduct because it is highly technical and there were no disclosures or other indications that would inform a reasonable consumer that Planned Parenthood was disclosing, and assisting the Third Parties in intercepting, their Website users' PHI and other sensitive PII from the Website.

**RESPONSE:** PPFA denies the allegations in Paragraph 156.

157. The earliest Plaintiff and class members could have known about Planned Parenthood's conduct was shortly before the filing of this Complaint.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157 and therefore denies them.

158. Planned Parenthood was under a duty to disclose the nature and significance of its data collection practices but did not do so. It is therefore estopped from relying on any statute of limitations under the discovery rule.

**RESPONSE:** Paragraph 158 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations.

159. Additionally, Planned Parenthood engaged in fraudulent conduct to prevent Plaintiff and class members from discovering the disclosure and interception of their PHI and other sensitive PII. Planned Parenthood misled Plaintiff and class members to believe their data, which includes incredibly private and personal sexual and reproductive health information as well as PII revealing their identity, would not be disclosed or intercepted.

**RESPONSE:** PPFA denies the allegations in Paragraph 159.

160. Plaintiff and class members were not aware that Planned Parenthood disclosed and assisted in the interception of their data, which includes PHI and other sensitive PII that revealed their identities.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 and therefore denies them.

161. Plaintiff and class members exercised due diligence to uncover the facts alleged herein and did not have actual or constructive knowledge of Planned Parenthood's misconduct by virtue of its fraudulent concealment.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 and therefore denies them.

162. Accordingly, all statutes of limitation are tolled under the doctrine of fraudulent concealment.

**RESPONSE:** Paragraph 162 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations.

## CLASS ALLEGATIONS

163. Plaintiff brings this action both on behalf of herself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). The Class is defined as follows:

> All natural persons who, during the class period, used the Planned Parenthood Website in California and had their private medical information or other sensitive personal or personally identifiable information unlawfully disclosed to third parties.
>
> Specifically excluded from this Class are Defendant, its officers, directors or employees, any entity in which Defendant has a controlling interest and any affiliate, legal representative, heir or assign of Defendant. Also excluded from this Class are any judicial officers presiding over this action, the members of the judicial officer's immediate family and staff and any juror assigned to this action.

**RESPONSE:** Paragraph 163 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA admits that Plaintiffs purport to bring a class action on behalf of a California class but denies that class treatment is appropriate and denies the remaining allegations in Paragraph 163.

164. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**RESPONSE:** Paragraph 164 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

165. Class Identity: The Class is readily identifiable and one for which adequate records exist.

**RESPONSE:** Paragraph 165 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

166. Numerosity: The members of the Class are so numerous that their individual joinder is impractical, and the Class is reasonably believed to include hundreds of thousands of persons. Further, the size and relatively modest value of the claims of individual Class members renders

joinder impractical. The precise number or identification of Class members is presently unknown to Plaintiff but may be ascertained from Planned Parenthood's and third parties' records. Class members may be notified of the pendency of this action by mail, email, Internet postings and publication.

**RESPONSE:** Paragraph 166 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

167. Typicality: Plaintiff's claims are typical of the claims of the Class members because Plaintiff is an individual who had her PHI and other sensitive PII unlawfully disclosed, collected, captured, received or otherwise obtained and/or used and stored by various third parties without her knowledge or consent. Plaintiff's claims arise from the same common course of conduct, give rise to the same claims of injury and seek the same relief as those of the other Class members.

**RESPONSE:** Paragraph 167 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

168. Common Questions Predominate: Questions of law and fact common to the Class, which generate common answers, include, but are not limited to:

a. Whether Planned Parenthood's Terms of Use and/or Privacy Policy applies to Plaintiff and Class members;

b. Whether Planned Parenthood provided adequate and proper notice to Plaintiff and Class members that it discloses their PHI and other sensitive PII that reveals their identity;

c. Whether Planned Parenthood received the required consent from Plaintiff and Class members needed in order to disclose their PHI and other sensitive PII that reveals their identity; and

d. Whether Plaintiff and Class members are entitled to damages under CIPA, CMIA or any other relevant statute.

**RESPONSE:** Paragraph 168 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

169. These and other questions of law and fact common to all members of the Class predominate over questions affecting only individual members of the Class.

**RESPONSE:** Paragraph 169 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

170. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff's interests are aligned with, and are not antagonistic to, those of the other Class members. Plaintiff has retained counsel competent and experienced in the prosecution of complex and class action litigation to represent herself and the Class.

**RESPONSE:** Paragraph 170 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

171. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons: (i) individual joinder of all Class members is impractical; (ii) prosecution as a class action will eliminate the possibility of duplicative litigation; (iii) prosecution of separate actions by individual Class members would create the risk of inconsistent or varying decisions and adjudications, creating uncertain and potentially incompatible standards for adjudicating the claims and defenses asserted in this action; (iv) the relatively small amount of damages suffered by individual Class members, when compared to the expense and burden of individual prosecution of their individual claims, preclude feasible and practical individual actions to seek redress for the violations alleged; and (v) individual litigation would greatly magnify the delay and expense to all parties and to the court system. For these reasons, a class action will reduce case management difficulties and provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

**RESPONSE:** Paragraph 171 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

172. In addition, Planned Parenthood has acted on grounds generally applicable to the Class, making final injunctive relief appropriate for the Class as a whole.

**<u>RESPONSE:</u>** Paragraph 172 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

**<u>CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS</u>**

173. California substantive law applies to Plaintiff and every member of the Class. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the other members of the Class under the Due Process Clause, 14th Amend. § 1 and the Full Faith and Credit Clause, Art. IV § of the United States Constitution.

**<u>RESPONSE:</u>** Paragraph 173 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

174. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

**<u>RESPONSE:</u>** Paragraph 174 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

175. As aforementioned, Planned Parenthood conducts substantial business in California such that California has an interest in regulating Planned Parenthood's conduct under its laws.

**<u>RESPONSE:</u>** PPFA admits that it conducts business in California but otherwise denies the allegations in Paragraph 175 and denies that class treatment is appropriate.

176. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest than any other interested state in applying its laws here given Planned Parenthood's facilities throughout California and the location of the

conduct at issue.

**RESPONSE:** Paragraph 176 contains legal conclusions to which no response is required. Insofar as a response is required, PPFA denies the allegations and denies that class treatment is appropriate.

**COUNT I**

**Violation of the California Invasion of Privacy Act**

**Cal. Penal Code § 631**

**(On Behalf of Plaintiff and the Class)**

177. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

**RESPONSE:** PPFA incorporates its responses to the preceding paragraphs as if fully set forth herein.

178. The CIPA is codified at Cal. Penal Code §§ 630 to 638. CIPA begins with its statement of purpose that it is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630.

**RESPONSE:** Paragraph 178 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the quoted language in Paragraph 178 appears in the referenced statute, Cal. Penal Code § 630. PPFA denies all other allegations in Paragraph 178.

179. Cal. Penal Code § 631 imposes liability on any person who "by means of any machine, instrument, contrivance, or in any other manner":

(1) "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument;"

(2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or

received at any place within [the state of California];"

(3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained;" or

(4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts of things mentioned above in this section."

Cal. Penal Code § 631(a).

**RESPONSE:** Paragraph 179 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the quoted language in Paragraph 179 appears in the referenced statute, Cal. Penal Code § 631(a). PPFA denies all other allegations in Paragraph 179.

180. Planned Parenthood is a person for purposes of Cal. Penal Code § 631.

**RESPONSE:** Paragraph 180 contains a legal conclusion to which no response is required.

181. To avoid liability under Cal. Penal Code § 631(a), a defendant must show it had the consent of *all* parties to a communication.

**RESPONSE:** Paragraph 181 contains a legal conclusion to which no response is required.

182. At all relevant times, Planned Parenthood intentionally tapped or made an unauthorized connection with respect to Plaintiff's and Class members' communications on its Website, which include PHI and other sensitive PII, by placing various Tracking Codes on its Website without the authorization and consent of Plaintiff and the Class members, thereby violating CIPA. Planned Parenthood intentionally procured the Tracking Codes from the Third Parties and embedded and installed them on its Website.

**RESPONSE:** Paragraph 182 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

183. At all relevant times, Planned Parenthood also aided, agreed with and conspired with the Third Parties to track and intercept Plaintiff's and Class members' PHI and other sensitive PII while they accessed the Website. These communications were intercepted without the authorization and consent of Plaintiff and Class members, thereby violating CIPA.

**RESPONSE:** Paragraph 183 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

184. Planned Parenthood, when aiding and assisting the Third Parties' wiretapping of its Website users' communications and interactions on its Website, intended to provide benefit to the Third Parties and for the Third Parties to learn some meaning of the content intercepted.

**RESPONSE:** PPFA denies the allegations in Paragraph 184.

185. Section 631(a)'s applicability is not limited to phone lines but also applies to "new technologies" such as computers, the Internet and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

**RESPONSE:** Paragraph 185 contains a legal conclusion to which no response is required.

186. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, which Plaintiff denies, the Tracking Codes fall under the broad catch-all category of "any other manner":

i. The computer codes and programs the Third Parties use to track Plaintiff's and Class members' interactions and communications while they navigate the Website;

ii. Plaintiff's and Class members' browsers;

iii. Plaintiff's and Class members' computing and mobile devices;

iv. Third Parties' web and advertisement servers; and

v. The plans the Third Parties carried out to effectuate their tracking and interception of Plaintiff's and Class members' communications while they were using a web browser or mobile application to access the Website.

**RESPONSE:** Paragraph 186 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

187. The healthcare communication information that Planned Parenthood transmitted using the Tracking Codes, such as personal sexual and reproductive health and doctor appointment booking information, constituted PHI. Website users also communicate significant PII on the Website that Planned Parenthood simultaneously transmitted using the Tracking Codes. Taken together, the Third Parties can use the information that Planned Parenthood unlawfully discloses to it to identify a specific person and their actions and communications on the Website.

**RESPONSE:** The allegations in the first sentence of Paragraph 187 contain legal conclusions to which no response is required. To the extent a response is required, PPFA denies the allegations. PPFA denies the remaining allegations in Paragraph 187.

188. Planned Parenthood facilitated the interception and simultaneous transmission to the Third Parties and others of Plaintiff's and Class members' PHI and other sensitive PII while the information was "in transit" and in real time. As a result of the Tracking Codes Planned Parenthood embedded on its Website, when users interacted with the Website, their communications were simultaneously redirected to the Third Parties while they were still on their way to Planned Parenthood.

**RESPONSE:** The allegations in the first sentence of Paragraph 188 contain a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegations. PPFA denies the remaining allegations in Paragraph 188.

189. The information communicated between Plaintiff and Class members, Planned Parenthood and the Third Parties was transmitted to and/or from the state of California.

**RESPONSE:** PPFA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 and therefore denies them.

190. Redirection of data as a result of tracking coding before that data reaches its originally intended recipient (here, Planned Parenthood) does not constitute a separate communication for the purposes of exclusion from CIPA.

**RESPONSE:** Paragraph 190 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

191. Planned Parenthood enabled non-parties to the communications to "read" the communications for the purposes of CIPA. For example, the Third Parties can see when individuals searched for doctors with particular specialties, what conditions they researched, when and where they made appointments and information they communicated related to Women's Services and Men's Services.

**RESPONSE:** PPFA denies the allegations in Paragraph 191.

192. As demonstrated hereinabove, Planned Parenthood violated CIPA by:

(1) intentionally tapping or making an unauthorized connection with respect to Plaintiff's and Class members' communications, which include PHI and other sensitive PII, by placing various Tracking Codes on its Website, all without their Website users' authorization or consent; and

(2) aiding and permitting the Third Parties to receive its Website users' interactions and communications on the Website without their authorization or consent.

*See* Cal. Penal Code § 631.

**RESPONSE:** Paragraph 192 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

193. Cal. Penal Code § 637.2(a) provides:

> Any person who has been injured by a violation of this chapter [including Penal Code § 631] may bring an action against the person who committed the violation for the greater of the following amounts:
>
> (1) Five thousand dollars ($5,000) per violation;
>
> (2) Three times the amount of actual damages, if any, sustained by the plaintiff.

**RESPONSE:** Paragraph 193 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the quoted language in Paragraph 193 appears in the referenced statute, Cal. Penal Code § 637.2(a).

194. Cal. Penal Code § 637.2(b) provides that [a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

**RESPONSE:** Paragraph 194 contains legal conclusions to which no response is required.

To the extent a response is required, PPFA admits that the quoted language in Paragraph 194 appears in the referenced statute, Cal. Penal Code § 637.2(b).

195. Additionally, Cal. Penal Code § 637.2(c) states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

**RESPONSE:** Paragraph 195 contains legal conclusions to which no response is required. To the extent a response is required, PPFA admits that the quoted language in Paragraph 195 appears in the referenced statute, Cal. Penal Code § 637.2(c).

196. Therefore, Defendant is liable to Plaintiff and the Class members for, at a minimum, statutory damages of $5,000 per violation.

**RESPONSE:** Paragraph 196 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

197. Plaintiff and Class members are also entitled to injunctive relief, as they have suffered irreparable injury from the unauthorized and unlawful acts discussed herein, as their PHI, which includes personal sexual and reproductive health information, and other sensitive PII revealing their identity has been unlawfully collected, viewed, accessed and stored and poses an ongoing risk and threat of injury.

**RESPONSE:** Paragraph 196 contains a legal conclusion to which no response is required. To the extent a response is required, PPFA denies the allegation.

**COUNT II**

**Violation of the California Invasion of Privacy Act**

**Cal. Penal Code § 632**

**(On Behalf of Plaintiff and the Class)**

198. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

**RESPONSE:** PPFA incorporates its responses to the preceding allegations by reference as if fully set forth herein. On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2

and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

199. CIPA § 632(a) prohibits an entity from:

> [I]ntentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

200. As used in the statute, "confidential communication" means "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . .". *Id.*

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

201. Plaintiff's and Class members' communications to and with Planned Parenthood on its Website, which includes PHI, including information about sexual and reproductive healthcare symptoms, conditions and prescriptions, and other sensitive PII that reveals a person's identity were confidential communications for purposes of Cal. Penal Code § 632 because Plaintiff and Class members had an objectively reasonable expectation of privacy in this data.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

202. The Tracking Codes are all electronic amplifying or recording devices for purposes of Cal. Penal Code § 632.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to

respond to this paragraph.

203. At all relevant times, Planned Parenthood intentionally used the Tracking Codes on its Website to record the confidential communications of Plaintiff and Class members in violation of Cal. Penal Code § 632.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

204. Planned Parenthood intentionally procured the Tracking Codes from the Third Parties and embedded and installed them on its Website, and as a result, facilitated the interception and simultaneous transmission to the Third Parties and others of Plaintiff's and Class members' PHI and other sensitive PII while the information was "in transit" and in real time. The Third Parties use the information that Planned Parenthood unlawfully discloses to it in order to identify specific people and their communications on the Website and for their own benefit.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

205. Plaintiff and Class members did not consent to any of Planned Parenthood's actions, nor has Plaintiff and Class members consented to Planned Parenthood's intentional use of an electronic amplifying or recording device to eavesdrop upon and record their confidential communications on the Website.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

206. Cal. Penal Code § 637.2(a) provides:

> Any person who has been injured by a violation of this chapter [including Penal Code § 632] may bring an action against the person who committed the violation for the greater of the following amounts:
>
> (1) Five thousand dollars ($5,000) per violation;

(2) Three times the amount of actual damages, if any, sustained by the plaintiff.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

207. Cal. Penal Code § 637.2(b) provides that [a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

208. Additionally, Cal. Penal Code § 637.2(c) states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

209. Therefore, Planned Parenthood is liable to Plaintiff and the Class members for, at a minimum, statutory damages of $5,000 per violation.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

210. Plaintiff and Class members are also entitled to injunctive relief, as they have suffered irreparable injury from the unauthorized acts discussed herein, as their PHI, which includes personal sexual and reproductive health information, and other sensitive PII has been collected, viewed, accessed, used and stored and poses an ongoing risk and threat of injury.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to

respond to this paragraph.

**COUNT III**

**Violation of the California Confidentiality of Medical Information Act**

**Cal. Civ. Code § 56, *et seq.***

**(On Behalf of Plaintiff and the Class)**

211. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

**RESPONSE:** PPFA incorporates its responses to the preceding allegations by reference as if fully set forth herein. On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

212. Under the CMIA, a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a).[82]

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

213. Planned Parenthood is a provider of healthcare under Cal. Civ. Code §§ 56.05(o) and 56.06 (a)-(b) because Plaintiff Parenthood is a health facility licensed pursuant to Division 2 of the Health and Safety Code, maintains medical information and offers software to consumers that is designed to maintain medical information for the purposes of allowing its Website users to manage their information or make the information available to a healthcare provider, or for the diagnoses, treatment or management of a medical condition.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3.

[82] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, Defendant could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3) and 56.10(b)(6).

*See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

214. Plaintiff and Class members are patients within the meaning of Cal. Civ. Code § 56.05(l).

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

215. Cal. Civ. Code § 56.101(a) requires that every provider of healthcare "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

216. Any healthcare provider who "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to remedies and penalties provided under subdivisions (b) and (c) of Section 56.36[.]" Cal. Civ. Code § 56.101(a).

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

217. At all relevant times, Planned Parenthood obtained medical information from its Website users through its Website.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

218. Planned Parenthood is therefore subject to the requirements of the CMIA and obligated under Cal. Civ. Code § 56.06(e) to maintain the same standards of confidentiality required of a provider of healthcare with respect to medical information that it maintains on behalf

of users

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

219. The CMIA defines medical information as:

> [A]ny individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.

Cal. Civ. Code § 56.05(i).

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

220. The information Planned Parenthood maintained and unlawfully disclosed to the Third Parties is individually identifiable because the medical information disclosed and intercepted includes or contains *many* "element[s] of personal identifying information sufficient to allow identification of the individual," including the Website user's name, address, FID address, electronic mail address, telephone number and other information that, alone or in combination with other publicly available information, reveals the identity of the individual.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

221. Further, the individually identifiable information Planned Parenthood maintains in its possession and unlawfully discloses to the Third Parties is medical information because it is individually identifiable information, often in electronic form, relating to Website users' medical histories, which includes sensitive and personal Women's Services and Men's Services

information, booking and appointment history, past and current mental and physical conditions, treatments they have researched, requested and received and prescriptions, including various forms of birth control, they have researched, requested and received. Planned Parenthood requires its Website users to convey their status throughout its platform.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

222. The Tracking Codes made possible the linking of a Website user, their medical information and their identity. The information exchanged, including the contents of Website searches, the act and substance of making appointments with doctors, information relating to Website users' past and current medical histories, which often includes sensitive and personal Women's Services and Men's Services information, past and current mental and physical conditions, treatments and prescriptions reveals information about Website users' "physical condition or history."

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

223. As a provider of healthcare, Planned Parenthood is required by CMIA to ensure that medical information regarding Website users is not disclosed, disseminated or released without their authorization and to protect and preserve the confidentiality of the medical information regarding a Website user under Cal. Civ. Code §§ 56.10, 56.13, 56.245, 56.26, 56.101 and 56.36.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

224. "An authorization for the release of medical information . . . shall be valid if it:

i. Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type;

ii. Is clearly separate from any other language present on the same page and is

executed by a signature which serves no other purpose than to execute the authorization;

iii. Is signed and dated . . . ;

iv. States the specific uses and limitations on the types of medical information to be disclosed;

v. States the name or functions of the provider of health care, health care service plan, pharmaceutical company or contractor that may disclose the medical information;

vi. States the name or functions of the persons or entities authorized to receive the medical information;

vii. States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information;

viii. States a specific date after which the provider of health care, health care service plan, pharmaceutical company or contractor is no longer authorized to disclose the medical information; and

ix. Advises the person signing the authorization of the right to receive a copy of the authorization."

Cal. Civ. Code § 56.11.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

225. As a provider of healthcare, Planned Parenthood is required by the CMIA to create, maintain, preserve and store medical records in a manner that preserves the confidentiality of the information contained therein under Cal. Civ. Code § 56.101.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

226. At all relevant times, Planned Parenthood maintains medical information.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

227. Plaintiff and Class members provided their medical information, which is often very

personalized, to Planned Parenthood.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

228. As a result of the Tracking Codes installed or embedded on its Website, Planned Parenthood has released, disclosed and/or negligently allowed the Third Parties to access and view Plaintiff's and Class members' medical information without their written authorization. After the disclosure of the medical information, the Third Parties improperly viewed or otherwise accessed this information. Not only did Planned Parenthood unlawfully disclose its Website users' medical information, but they disclosed their highly sensitive personal and private sexual and reproductive healthcare information.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

229. The Third Parties, all whose primary business includes selling advertisements, analytics or other insights based on the data they obtain about individuals, used the data to improve their products, services and algorithms. Specifically, the Third Parties improperly viewed and used the Plaintiff's and Class members' medical information in connection with targeted marketing.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

230. As a further result of Planned Parenthood's actions, the confidential nature of Plaintiff's and Class members' medical information was breached due to Planned Parenthood, as it failed to maintain, preserve and store medical information in a manner that preserves the confidentiality of the information contained therein because it disclosed to the Third Parties Plaintiff's and Class members' medical information.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3.

*See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

231. Planned Parenthood's release and/or disclosure of medical information regarding Plaintiff and the Class members constitutes a violation of Cal. Civ. Code §§ 56.06, 56.10, 56.11, 56.13, 56.26, 56.36, 56.101 and 56.245.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

232. By disclosing Plaintiff's and Class members' medical information without their written authorization, Planned Parenthood violated the CMIA and its legal duty to protect the confidentiality of such information.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

233. Planned Parenthood knowingly and willfully disclosed Plaintiff's and Class members' medical information without consent to the Third Parties for financial gain, including to sell more products, advertise, obtain analytics and improve its Website, all in violation of the CMIA. Planned Parenthood's conduct was knowing and willful as it was aware that the Third Parties would obtain all of its Website users' actions and data input while using its Website, yet they still intentionally embedded the Third Parties' code on its Website anyways.

**RESPONSE:** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

234. At the very least, Planned Parenthood negligently disclosed medical information to the Third Parties in violation of the CMIA. A healthcare provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act, such as implementing a system that records and discloses online Website users'

sensitive and protected sexual and reproductive health information and personally identifiable information.

**<u>RESPONSE:</u>** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

235. As a direct and proximate result of Planned Parenthood's wrongful actions, inaction, omissions and want of ordinary care that directly and proximately caused its violations of the CMIA, Plaintiff and Class members are entitled to and hereby seek:

i. Nominal damages of $1,000 for each violation under Cal. Civ. Code § 56.36(b)(1);

ii. Actual damages, in an amount to be determined at trial, for each violation under Cal. Civ. Code § 56.36(b)(2);

iii. Punitive damages not to exceed $3,000 for each violation under Cal. Civ. Code § 56.35; and

iv. Reasonable attorneys' fees and other litigation costs and expenses incurred under Cal. Civ. Code § 56.35.

**<u>RESPONSE:</u>** On July 2, 2024, the Court dismissed Plaintiff's Causes of Action 2 and 3. *See* Order re Motion to Dismiss (ECF No. 34) at 1. As a result, PPFA has no obligation to respond to this paragraph.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and the Proposed Class, respectfully prays for relief and judgment as follows:

A. For a determination that this action is a proper class action;

B. For an order certifying the Class, naming Plaintiff as representative of the Class and naming Plaintiff's attorneys as Class Counsel to represent the Class;

C. For an order declaring that Planned Parenthood's conduct violated the statutes referenced herein;

D. For an order finding in favor of Plaintiff and the Class members on all counts asserted herein;

E. For an award of compensatory damages, including statutory damages where available, to Plaintiff and the Class members against Planned Parenthood for all damages sustained as a result of Planned Parenthood's wrongdoing, in an amount to be proven at trial;

F. For punitive damages, as warranted, in an amount to be determined at trial;

G. Ordering Defendant to disgorge revenues and benefits wrongfully obtained;

H. For prejudgment interest on all amounts awarded;

I. For injunctive relief as pleaded or as the Court may deem proper;

J. For an order awarding Plaintiff and the Class members their reasonable attorneys' fees and expenses and costs of suit; and

K. For an order granting Plaintiff and Class members such further relief as the Court deems appropriate.

**RESPONSE:** PPFA admits that Plaintiff seeks the relief listed above. PPFA denies that Plaintiff is entitled to any relief, including the relief listed above. PPFA denies any remaining allegations in the above Prayer for Relief section.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

**RESPONSE:** PPFA admits that Plaintiff has demanded a trial by jury on all the claims asserted in the Complaint.

## DEFENDANT'S AFFIRMATIVE DEFENSES

PPFA alleges the following separate and additional defenses. By alleging these separate and additional defenses, PPFA is not in any way conceding that it bears the burden of proof or persuasion on any of these issues. PPFA reserves the right to supplement, amend, or modify these affirmative defenses, as appropriate, based on information obtained during the course of this litigation.

**FIRST AFFIRMATIVE DEFENSE**

**(Conformance with Laws)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because PPFA conformed to all applicable laws, regulations, and industry standards.

**SECOND AFFIRMATIVE DEFENSE**

**(Unjust and Excessive Statutory Damages)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because the damages sought against PPFA would be unjust, arbitrary, oppressive, or confiscatory in light of the nature of the alleged conduct. Section 637.2(a) of the California Penal Code provides that any person who has been injured may seek the greater of either $5,000 per violation or three times the amount of actual damages the plaintiff sustained. Plaintiff purports to bring her claim for violation of the California Invasion of Privacy Act ("CIPA") as a class action. PPFA contends that this suit should not be properly maintained as a class action. However, to the extent that this suit is maintained as a class action, the damages awarded pursuant to Section 637.2(a) would be unjust and excessive, including in violation of the Eighth Amendment of the United States Constitution, because they are unrelated to and disproportionate to the actual harm, if any, that Plaintiff and the putative class purportedly incurred due to the alleged violation of CIPA and, thus, it would be unjust to impose those damages here.

**THIRD AFFIRMATIVE DEFENSE**

**(Due Process)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because the damages sought against PPFA would violate its due process rights under the United States Constitution and California Constitution. Section 637.2(a) of the California Penal Code provides that any person who has been injured may seek the greater of either $5,000 per violation or three times the amount of actual damages the plaintiff sustained. Plaintiff purports to bring her claim for violation of CIPA as a class action. PPFA contends that this suit should not be properly maintained as a class action. However, to the extent that this suit is maintained as a class action,

the damages awarded pursuant to Section 637.2(a) would be unjust and excessive because they are unrelated to and disproportionate to the actual harm, if any, that Plaintiff and the putative class purportedly incurred due to the alleged violation of CIPA and, thus, it would be unjust to impose those damages here. And as such, said damages would violate PFFA's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I § 7 of the California Constitution and would violate the Eighth Amendment of the United States Constitution because it would be unconstitutional to impose said damages here, as the statute would permit random, arbitrary, capricious, and excessive punishment. A reasonable opportunity for further investigation and discovery will show, *inter alia*, that the purported damages pursuant to Section 637.2(a) would be unrelated to and disproportionate to the actual harm, if any, that Plaintiff purportedly incurred due to the alleged violation of CIPA.

**FOURTH AFFIRMATIVE DEFENSE**

**(Void for Vagueness)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because the statute under which Plaintiff brings claims is unconstitutionally vague.

**FIFTH AFFIRMATIVE DEFENSE**

**(Rule of Lenity)**

Cal. Penal Code §§ 630 *et seq.* are ambiguous. Because Cal. Penal Code §§ 630 *et seq.* are penal statutes, the rule of lenity requires that any ambiguity be resolved in favor of PPFA.

**SIXTH AFFIRMATIVE DEFENSE**

**(Waiver/Consent/Release)**

The Complaint, and each of its purported causes of action, is barred in whole or in part by waiver, consent, and/or release, including, but not only, because Plaintiff was aware of PPFA's disclosures regarding collection of information related to customer's interactions with PPFA's website.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Knowledge)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because Plaintiff had prior knowledge of any alleged recording, intercepting, monitoring, analysis, or use of her interactions with PPFA's website.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

Under Section 340(a) of the California Code of Civil Procedure, a claim for an alleged violation of CIPA must be brought within one year of the purported violation. Plaintiff purports to bring her claim for violation of CIPA as a class action. PPFA contends that this suit should not be properly maintained as a class action. Notwithstanding, Plaintiff's claims and the claims of each putative class member, in whole or in part, are barred by the one-year statute of limitation applicable to CIPA to the extent Plaintiff or a putative class member alleges a violation of CIPA based on a purported visit to the plannedparenthood.org website more than one year prior to the filing of the Complaint. A reasonable opportunity for further investigation and discovery will show, *inter alia*, that there is no basis to toll the statute of limitations.

**NINTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

The Complaint, and each of its purported causes of action, is barred in whole or in part by the doctrine of estoppel. Upon information and belief, Plaintiff was aware of PPFA's disclosures regarding the purported collection of information related to website users' interactions with the plannedparenthood.org website. Upon further information and belief, Plaintiff had prior knowledge of any alleged recording, intercepting, monitoring, analysis, or use of her interactions with the plannedparenthood.org website. A reasonable opportunity for further investigation and discovery will show, *inter alia*, that Plaintiff was aware of PFFA's disclosure regarding the purported collection of information related to users' interactions with the plannedparenthood.org website.

**TENTH AFFIRMATIVE DEFENSE**

**(Laches)**

The Complaint, and each of its purported causes of action, is barred in whole or in part by the doctrine of laches to the extent that Plaintiff and any putative class members did not timely assert their rights and waited an unfair period of time to bring this action despite having prior knowledge of any alleged recording, intercepting, monitoring, analysis, or use of their interactions with the plannedparenthood.org website.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

The Complaint, and each of its purported causes of action, is barred in whole or in part because Plaintiff would be unjustly enriched if permitted to recover on the Complaint. Section 637.2(a) of the California Penal Code provides that any person who has been injured may seek the greater of either $5,000 per violation or three times the amount of actual damages the plaintiff sustained. Plaintiff purports to bring her claim for violation of CIPA as a class action. PPFA contends that this suit should not be properly maintained as a class action. However, to the extent that this suit is maintained as a class action, the damages awarded pursuant to Section 637.2(a) would be unjust and excessive because they are unrelated to and disproportionate to the actual harm, if any, that Plaintiff and the putative class purportedly incurred due to the alleged violation of CIPA and, thus, it would provide an unjust windfall to Plaintiff to award such damages here.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Affirmative Defenses Against Class Members)**

If the Court certifies a class in this action, then PPFA asserts the affirmative defenses set forth herein against each and every member of the certified class.

Dated: September 26, 2024

JACOB HEATH
Orrick, Herrington & Sutcliffe LLP

By: *_/s/ Jacob M. Heath_*
JACOB M. HEATH
Attorneys for Defendant