JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:      +1 650 614 7401

Attorneys for Defendant
PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**STIPULATED ORDER REGARDING THE FORMAT OF DOCUMENT PRODUCTIONS ("ESI ORDER")** |

**I.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**II.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**III.    LIASON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.  The parties shall initiate meet-and-confer communications regarding any disputes regarding the terms or application of this ESI protocol within 30 days of service of any request seeking production of ESI, any response to a request seeking ESI, or the production of any ESI, as appropriate.

**IV.    PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that: only ESI created or received between January 1, 2022 and the present will be preserved.

**V.    PRODUCTION FORMATS**

The parties agree to produce documents in TIFF format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of

- 1 -

such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## VI.    PRODUCTION OF HARD COPY/PAPER DOCUMENTS

A.    **TIFFs**. Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

B.    **OCR Text Files**.  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt. OCR text files should be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.  Notwithstanding anything else herein, OCR text files need not be provided for any hard copy document(s) if it would be unduly burdensome to do so.

C.    **Database Load Files/Cross-Reference Files**.  Unless otherwise agreed to by the parties to the Action, produced hard copy documents should be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters.  Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) should be provided in a self-identified "Data" folder.

D.    **Coding Fields**.  Absent undue burden, documents should be produced with at least the following searchable information, if available, in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) Prod Volume, (4) Page Count, (5) BegAttach, (6) EndAttach, (7) Custodians, (8) OCRTextPath, (9) Confidentiality, and (10) Redaction.  Custodians should be identified using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast."  A producing party shall use a uniform description of a particular custodian across productions in the Action.  Multiple custodians in the "Custodian" field shall be separated by a semicolon.

E.    **Bates Numbering**. Each TIFF image should be assigned a Bates number that: (1)

is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

F.  **Parent-Child Relationships**.  If any part of an email or its attachments is responsive, the entire email and attachments will be produced, except that the email or any of its attachments may be withheld or redacted on the basis of privilege (including attorney/client, work product doctrine, or any recognized privilege), and the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child document should be consecutively produced immediately after the parent document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. If an attachment is withheld on the basis of privilege and/or non-responsiveness, the producing party will produce a placeholder (a single-page TIFF slip sheet) indicating that the attachment was withheld on the basis of attorney/client, work product doctrine, or any recognized privilege.

i.  To the extent a producing party produces documents linking other documents (*i.e.*, "linked documents," which are documents accessible via an internal hyperlink, such as Google Documents or the "Share link" option in M365), the Parties agree to meet and confer regarding potential production of such information. The producing party reserves all rights to object to any such potential production on the basis of burden, proportionality, and relevance. Further, a receiving party may request that the producing party identify and/or produce a linked document by providing the Bates number of the document in which the link appears.  To the extent the producing party is reasonably capable of doing so, the producing party shall not unreasonably deny requests, provided the number of requests made is reasonably limited.

G.    **Unitizing of Documents**.  Absent undue burden, a producing party shall, when scanning paper documents, avoid merging distinct documents into a single record, and avoid splitting single documents into multiple records (*i.e.*, paper documents should be logically unitized).

H.    **Previously Produced Documents**.  Hardcopy documents which were previously processed and produced in electronic format in another litigation or in response to governmental or regulatory inquiries or investigations may be produced in the same format as they were produced in that particular litigation, inquiry or investigation, regardless of whether the format complies with the other specifications described herein. For the avoidance of doubt, nothing in this Stipulation obligates a party to produce previously processed and produced hard copy documents.

## VII.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI'')

A.    **TIFFs**.  Documents should be produced in the form of single-page, black and white, Group IV TIFFs at 300 dpi.  Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  TIFF image files should be provided in a self-identified "Images" folder.  Any ".TXT" document that, when converted to a TIFF file, exceeds twenty (20) pages in length shall generally be produced in native format in addition to the format required by this section.

B.    **System Files**.  Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

C.    **De-Duplication**.  To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party should use reasonable, good-faith efforts to avoid the production of duplicate ESI. The parties may utilize standard MD5 or SHA-1 hash values at the document level to reduce the initial document review population.  Should a party use Document Level Deduplication to reduce the initial review population, that party will then review the families of duplicate responsive documents.

In addition, to the extent feasible, the identity of other custodians of de-duplicated items shall be listed in the "Custodians" field of the copy of the single record that is produced.  Custodians

should be identified using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast."  A producing party shall use a uniform description of a particular custodian across productions in the Action.  Multiple custodians in the "Custodians" field shall be separated by a semicolon.  To the extent feasible, parties shall also provide overlays to allow custodian information to be updated with rolling document collections and rolling document productions so that every custodian who was in possession of a particular document, irrespective of de-duplication, is reflected in that document's metadata.

D.     **Email Threading**.  In order to reduce the volume of entirely duplicative content within email threads, a producing party will generally use "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by (1) producing the most recent email containing the thread of all emails, as well as the attachments to that particular email, and (2) excluding emails constituting exact duplicates of emails within the produced string.  If an email thread splits, a producing party must produce all of the most recent emails (as well as all attachments thereto, if any) required to fully produce the related email threads.  For the avoidance of doubt, any email with attachments not removed due to de-duplication described above in Paragraph VII.C shall be produced separately, with those attachments.  The parties reserve their rights to depart from email thread suppression if, in the course of its review, a producing party determines that there is a good reason to produce a specific email that would otherwise be suppressed under the foregoing.  Each thread suppressed pursuant to this subdivision need not be reflected on a party's privilege log.  The Parties may utilize commercially available "email thread suppression" tools to reduce the volume of entirely duplicative content within email threads.

E.     **Parent-Child Relationships**.   Parent-child relationships (*i.e.*, the association between an attachment and its parent document) should be preserved to the extent possible.

F.     **Metadata Fields and Processing**.  Each of the metadata and coding fields set forth in Appendix I that can be extracted from an electronic document shall be produced for that document. To the extent that metadata does not exist, is not reasonably accessible or available,

would be unduly burdensome to collect, the parties are not obligated to populate manually any of the fields in Appendix I, with the exception of the following: (1) BegBates, (2) EndBates, (3) Prod Volume, (4) Page Count, (5) BegAttach, (6) EndAttach; (7) Custodians, (8) NativeLink, (9) Confidentiality, (10) Redaction, (11) Data Source, and (12) Parent ID fields (which may be populated by the party or the party's vendor).

G.    **Extracted Text Files**.  For each document (other than multimedia or graphic files), an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the BegBates value stamped on the first imaged page of its corresponding document, followed by .txt.  File names should not contain any special characters or embedded spaces.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

H.    **Database Load Files/Cross-Reference Files**.  Unless otherwise agreed to by the parties to the Action, each production should include (i) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (ii) an image load file in Opticon format (.OPT file).  Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) should be provided in a self-identified "Data" folder.

I.    **Native Files**.  Absent special circumstances, source code, large diagrams, Excel files, and/or .csv files should be produced in native format ("Native Files"), unless they have redactions. Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production.  A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in Paragraphs VII.F, VII.G, and VII.H. Redacted documents may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Any metadata fields for redacted

documents that would reveal privileged information shall be excluded. Each producing party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and ensures that redacted Native Files will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "########".)

J.      **Structured Data**.   To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included.  The parties to the Action shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

K.      **Audio and Video Files**.  Audio and video files, to the extent their contents can be determined to be responsive, will be produced in a reasonably usable form as may be agreed upon by the parties to the Action.

L.      **Requests for Other Native Files**.  Other than as specifically set forth above, a producing party need not produce documents in native format.  If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each Native File on the production media and all extracted text (other than for multimedia or graphic files) and applicable metadata fields set forth in Appendix I.

M.      **Confidentiality Designations**.   If a party reduces Native Files or other ESI designated "Confidential" or "Attorneys' Eyes Only" to hardcopy form, it shall mark the hardcopy with the appropriate designation.  The failure of a party to mark such hardcopy document with the

appropriate designation shall not affect such document's designation as "Confidential" or "Attorneys' Eyes Only."

N.    **Color**.  Documents containing color need not be produced in color in the first instance.  However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color for-mat; and (2) an explanation of the need for production in color format.  The producing party shall not unreasonably deny such requests but need not make such production until the parties to the Action reach agreement regarding the additional costs associated with the production of documents in color.

O.    **Previously Produced Documents**.  Electronically stored information which was previously processed and produced in another litigation or in response to governmental or regulatory inquiries or investigations may be produced in the same format as it was produced in that particular litigation, inquiry, or investigation regardless of whether the format complies with the other specifications described herein. Other than with respect to format, the production of these previously produced documents will otherwise comply with the specifications of this ESI Order, but nothing in this ESI Order shall be interpreted to require the producing party to populate fields that are required under the specifications of this ESI Order but do not already exist in the previously produced documents. For the avoidance of doubt, nothing in this Stipulation obligates a party to produce previously processed and produced electronically stored information.

P.    **Version History.** Upon a reasonable, good faith request, a producing party will meet and confer regarding the availability of alternate versions of a specific document identified by the Requesting Party, including whether other responsive, non-privileged versions exist and are potentially retrievable.

## VIII.    PROCESSING OF THIRD-PARTY DOCUMENTS

A.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.  If a party issued a non-party subpoena prior to the execution

of this Stipulation, that party shall promptly forward a copy of this Stipulation to the non-party and request that the non-party produce documents in accordance with the specifications set forth herein.

B.    The Issuing Party shall timely notify other parties when it receives non-party productions and is responsible for producing to all other parties to the Action any documents obtained pursuant to a subpoena.  If a non-party refuses to produce documents in accordance with the specifications set forth herein, the parties shall meet and confer regarding the format of production to the requesting party.  Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

## IX.    MISCELLANEOUS PROVISIONS

A.    This Stipulation is intended solely to address the format of document productions. Nothing in this Stipulation is intended to affect the rights of any party to object to any requests or demand for production.  Nothing in this Stipulation shall constitute, or operate as, a waiver of any rights of any party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, applicable state law or state procedural rules, rules of court, local rules, or any other applicable law, rule, or order.  Nor shall anything in this Stipulation be interpreted as barring or limiting a producing party's sole discretion in selecting the manner and method to search and review its own documents.

B.    Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery in the Action or as to the relevance or admissibility of any document.  Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hardcopy documents and ESI.

C.    The parties to the Action shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance

with such material aspect would be unreasonable, such party shall inform the receiving party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.  No party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with the other parties to the Action.

D.      Generally, each Party shall bear its own costs of producing relevant ESI in its possession, custody, or control in the format established in this ESI Order. Nothing in this Stipulation, however, shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI.  That the Court has so-ordered this Stipulation shall not be construed to indicate that the Court has made any finding regarding whether there is any basis for shifting of costs.

E.      All ESI produced by a producing party in the Action shall be normalized to a single time zone of that producing party's choosing.  The producing party shall disclose to the other parties in the Action the time zone to which its ESI has been normalized.

F.      Nothing herein is intended to, nor shall be construed to, diminish, or otherwise affect any party's discovery obligations.

G.      Any application to the Court under or regarding this Order shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law, rule, or order.

H.      The Court will not retain jurisdiction after conclusion of the Action for enforcement of this Order with respect to the Action.

## X.   MODIFCATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.


**IT IS SO STIPULATED**, through Counsel of Record.

Dated:     December 26, 2024        _____

Counsel for Plaintiffs

Dated:    January 10    , 2025

_____
Counsel for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:    _____, 2025

_____
Honorable James Donato
United States District Judge

**APPENDIX I: ESI Metadata and Coding Fields**

| Field Name | Field Description |
|---|---|
| BegBates | Beginning documents number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| Custodian | Individual from whom the document originated |
| All_Custodians | List of all individuals from whom the document originated accounting for deduplication |
| Data Source | The source or platform from which the document was collected, e.g., Email Server, O365 Cloud, Local HDD, Department X Share Drive, DropBox, Slack, Teams, etc. |
| AttachmentCount | Number of attached documents |
| PageCount | Number of pages in the document |
| Author | Author field extracted from the metadata of the native file. |
| To | All recipients that were included on the "To" line of the email message |
| From | Sender of the email message |
| CC | All recipients that were included on the "CC" line of the email message |
| BCC | All recipients that were included on the "BCC" line of the email message |
| Importance | Email importance flag |
| Date Created | Date Created |
| Subject | Subject field extracted from the metadata of the native file |
| MD5[1] | The MD5 hash value. |
| SHA-1[2] | The SHA-1 hash value. |
| Sent Date | Date the email message was sent |
| Sent Time | Time the email message was sent (including the applicable time zone) |
| File Type | Mail or attachment or individual file |
| File Extension | File extension of the document |
| FileName | Name of original file |
| Title | Any value populated in the Title field of the document properties |
| Modified Date | File system last modified date |
| Modified Time | File system last modified time |
| Create Date | File system create date |
| Create Time | File system create time |
| Parent Date | The date parent email of child attachment was sent |
| Parent ID | Document identifier of an attachment's parent email or document |
| HiddenText | Documents has hidden text (<yes> or <no>) |
| Nativelink | Relative file path to each native file on the production media |

---

[1] Each producing party must produce either MD5 hash or SHA-1 hash metadata but not both. Each producing party must consistently produce the same hash value field throughout its productions in this action. For the avoidance of doubt, absent undue burden, a producing party may not produce some documents with MD5 hash metadata and other documents with SHA-1 hash metadata.

[2] *See* note 1, *supra*.

| Field Name | Field Description |
|---|---|
| Text Path | Relative file path to the text associated with the file on the production media |
| Confidentiality | Confidential or High Confidential designations |
| Redaction | Whether the document contains any redactions |