Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>        *Defendant*. | Case No.: 3:23-cv-04529-JD<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 22, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on January 22, 2026 at 10:00 a.m., or another date and time to be determined by the Court, the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Franscisco, California 94102, and will move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following proposed Damages Class and Injunctive Relief Class:

> All persons who, between September 1, 2022, and July 6, 2023, while in California, (1) searched for any of the following healthcare topics using the plannedparenthood.org website search bar: abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception; or (2) visited any of the following plannedparenthood.org healthcare webpages for services relating to abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception:

https://www.plannedparenthood.org/abortion-access
https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines
https://www.plannedparenthood.org/get-care/our-services/birthcontrol
https://www.plannedparenthood.org/get-care/ourservices/abortion-services
https://www.plannedparenthood.org/get-care/ourservices/pregnancy-testing-services
https://www.plannedparenthood.org/get-care/ourservices/transgender-hormone-therapy
https://www.plannedparenthood.org/get-care/ourservices/emergency-contraceptive

Plaintiffs seek the appointment of Plaintiffs Shirley Hinton and Heather Shipley as Class Representatives, The Bruno Firm as Class Counsel and Benbrook Law, PC as Liaison Counsel.

This Motion is based upon this Notice, the memorandum of law incorporated herein, the declaration of Jamie A. Robinson, all exhibits to such documents, any papers filed in reply, and any argument as may be presented at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs have shown by a preponderance of the evidence that: (1) the Proposed Classes satisfy Rule 23(a)'s requirements; (2) the Injunctive Relief Class meets Rule 23(b)(2)'s requirements; and (3) the Damages Class satisfies Rule 23(b)(3)'s predominance and superiority requirements.

**TABLE OF CONTENTS**

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION ............................................................ 1

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

I.      Tracking Technologies Such as Google Analytics and Meta Pixel Intercept
        Website User Browsing Activity and Identifiers to Link User Online Activity
        to a Particular Person.................................................................................................. 2

II.     PPFA Installed and Configured Google Analytics and Meta Pixel on its Website to
        Enable the Interception of its Website Users' Healthcare Communications and
        Identifying Information ............................................................................................... 3

III.    PPFA Did Not Get Website Users' Consent to Share Their Communications ................... 4

STANDARD OF REVIEW....................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

I.      This Case Satisfies the Four Requirements of Rule 23(a)..................................................... 5

II.     This Damages Class Satisfies the Predominance Requirements of Rule 23(b)(3)............. 8

        A.      California Law Applies to Plaintiffs' and All Class Members' Claims.................. 9

        B.      Common Questions Predominate in Plaintiffs' CIPA Claims ............................... 9

                1.      Google's and Meta's Predicate Violation of CIPA Will Be
                        Determined with Common Evidence ......................................................... 10

                2.      PPFA's Violation of CIPA By Aiding and Abetting Google's and
                        Meta's Interception of Class Members' Communications Can Be
                        Determined with Common Evidence ......................................................... 13

        C.      Meta's and Google's Commercial Exploitation of Data Intercepted from PPFA
                Website Users Can Be Established Through Common Proof.............................. 15

        D.      Damages Can Be Calculated on a Classwide Basis ............................................ 16

III.    A Class Action is the Most Efficient and Superior Method to Adjudicate
        This Controversy ...................................................................................................... 17

IV.     The Proposed Injunctive Relief Class Satisfies the Requirements of Rule 23(b)(2) ........ 18

V.      Class Definitions and Ascertainability............................................................................ 19

CONCLUSION ..................................................................................................................... 22

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................................4

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)..........................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)................................................................9

*Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338 (2011)................................................................4, 6

**United States Circuit Court of Appeals Cases**

*Alcantar v. Hobart Serv.,* 800 F.3d 1047 (9th Cir. 2015) ...............................................................4

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849  (9th Cir. 2022)........................................15

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)............................................19, 21

*Calhoun v. Google LLC*, 113 F.4th 1141 (9th Cir. 2024) ........................................................14, 15

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).........................10, 14

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)...............................................................10

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........................................................14

*Just Film, Inc. v. Bueno*, 847 F.3d 1108 (9th Cir. 2017)............................................................7, 17

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) .......................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
31 F.4th 651 (9th Cir. 2022)..........................................................................................................9

*Parra v. Bashas, Inc.*, 536 F.3d 975 (9th Cir. 2008).....................................................................6

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)....................................................................5

*Walters v. Reno*, 145 F.3d 1032 (9th Cir.1998) ...........................................................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .................................17

**United States District Court Cases**

*AF Holdings LLC v. Does 1-135*,
No. C11-03336 JF HRL, 2011 WL 3359991 (N.D. Cal. Aug. 2, 2011) ....................................12

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................10

*Campbell v. Facebook Inc.*, 315 F.R.D. 250 (N.D. Cal. 2016) ......................................................18

*Castro v. ABM Indus. Inc.*, 325 F.R.D. 332 (N.D. Cal. 2018) ........................................................8

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. Mar. 28, 2024).............................10

*Ellsworth v. U.S. Bank, N.A.*,
No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ..............................................6

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025).....................................7, 14, 15, 18

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
Nos. 04-1511, *et al.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007)..............................................5

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .................................19, 21

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Transactions Act (FACTA) Litig.*,
300 F.R.D. 347 (C.D. Cal. 2013) .................................................................................................16

*In re Woodbridge Invs. Litig.*,
No. CV 18-103-DMG (MRWx), 2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ..........................13

*In re Yahoo Mail Litig.,* 308 F.R.D. 577 (N.D. Cal. 2015) ...................................................7, 18, 19

*James v. Uber Techs.*, 338 F.R.D. 123 (N.D. Cal. 2021)...............................................................19

*Jancik v. WEDMB, LLC*,
No. 22-cv-00644-TWT (N.D. Ga. June 27, 2024) .......................................................................20

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)..............................................9

*Kellman v. Spokeo, Inc.*,
No. 21-CV-08976-WHO, 2024 WL 2788418 (N.D. Cal. May 29, 2024) ....................................16

*Kumar v. Salov N. Am. Corp.*,
No. 14-cv-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)..........................................21

*Lilly v. Jamba Juice Co.,* 308 F.R.D. 231 (N.D. Cal. Sept. 18, 2014) .........................................21

*Miner v. ITT Educ. Servs.,*
No. 3:16-cv-04827-VC, 2020 WL 13612357 (N.D. Cal., Oct. 15, 2020)......................................8

*Palana v. Mission Bay, Inc.*,
No. 13-cv-05235-SI, 2015 WL 4110432 (N.D. Cal. July 7, 2015)...............................................18

*Romero v. Securus Techs.*, 331 F.R.D. 391 (S.D. Cal. 2018) .......................................................17

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012)......................................19

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024)...................................................11

*Zaklit v. Nationstar Mortgage LLC*,
No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901 (C.D. Cal. July 24, 2017) .........................5, 17

**Statutes & Rules**

Cal. Pen. Code § 631(a)........................................................................................................9, 13

Cal. Pen. Code § 637.2(a) & (c) ...................................................................................................16

Cal. Penal Code § 7(b)(1)..............................................................................................................12

FED. R. CIV. P. 23 ............................................................................................................................4

FED. R. CIV. P. 23(a)(1) ..................................................................................................................5

FED. R. CIV. P. 23(a)(2) ..................................................................................................................6

FED. R. CIV. P. 23(a)(3) ..................................................................................................................7

FED. R. CIV. P. 23(a)(4) ..................................................................................................................7

FED. R. CIV. P. 23(b)(2) ................................................................................................................18

FED. R. CIV. P. 23(b)(3)(A-D) ......................................................................................................17

FED. R. CIV. P. 23(b)(3)(A-D) ......................................................................................................17

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002) .......................................................................5

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

This case is about Planned Parenthood Federation of America Inc.'s ("PPFA") unauthorized sharing of its website users' sensitive sexual and reproductive healthcare communications with advertising and analytics giants Google and Meta without users' consent. The PPFA website www.plannedparenthood.org (the "Website") offers website users a place to learn about and find services for birth control, pregnancy testing, emergency contraception, abortion, transgender hormone therapy, testing for sexually transmitted diseases and other sexual and reproductive healthcare concerns. The Website features a search bar where users can enter search terms, such as "emergency contraception" and navigate to subpages of the Website that address how to get emergency contraceptive care. Unbeknownst to Website users, PPFA made Google and Meta parties to these communications with PPFA. PPFA installed and configured Google and Meta tracking pixels on the PPFA Website, enabling them to intercept Website users' searches and the PPFA Website pages they viewed in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631.

Plaintiffs' claims raise common questions that can be resolved with common evidence, including: whether or not PPFA installed Google and Meta tracking pixels on its Website, whether or not PPFA's configuration of the tracking pixels on its Website enabled Google and Meta to learn the contents of PPFA Website users' communications while in transit, and whether or not PPFA's privacy policy was enforceable to obtain Website users' consent to the interception. PPFA's configuration of the Google and Meta tracking pixels was constant throughout the entire Class Period, allowing the interception of the same types of information for Plaintiffs as for every member of the class. Plaintiffs seek certification of a damages class under Rule 23(b)(3) because Plaintiffs were injured—just as tens of thousands of other Website users in California were—when their private sexual and reproductive healthcare communications were intercepted by Google and Meta, resulting in the same statutory damages. Plaintiffs also seek to certify a class under Rule 23(b)(2) for injunctive and declaratory relief to prevent PPFA from continuing to enable interception of class

members' private reproductive healthcare communications without obtaining their affirmative consent. The Court should grant Plaintiffs' motion in its entirety.

FACTUAL BACKGROUND

**I.    Tracking Technologies Such as Google Analytics and Meta Pixel Intercept Website User Browsing Activity and Identifiers to Link User Online Activity to a Particular Person.**

"Tracking technology" or "tracking pixel" is a general term for pieces of code (JavaScript or HTML, for example) or images that track internet users' browsing activity on the web. Ex. 1, Shafiq Report at ¶28. Google Analytics and Meta Pixel are two prominent examples of this technology. *Id.* at ¶¶39-40. Website owners can install tracking technologies in two ways: by embedding the tracking pixel source code in the website's code or through a tag management tool. *Id.* at ¶42. Google Tag Manager is a commonly used tag management tool that website owners use to install not just Google Analytics, but also Meta Pixel and other third-party tracking pixels. *Id.* Google Tag Manager supports two architectures for sharing user data with trackers: client-side (where data flows directly from the user's browser to the tracker) and server-side (where data flows from the user's browser to the container server and then to the tracker). *Id.* at ¶43.

When a website owner, such as PPFA, installs Google Analytics or Meta Pixel on its website, it enables Google and Meta to intercept two types of data from users of its website: 1) data about how the user interacted with the website (browsing activity); and 2) data identifying the user (identifiers). *Id.* at ¶¶29-30. Third parties like Google and Meta use identifiers intercepted via the installation of their tracking technologies on websites such as the PPFA Website, together with their own or other identity services, to match intercepted communications to a particular person, a process called "fingerprinting." *Id.* at ¶¶113-127. Both the scientific community and industry quantify

identifiability in terms of bits of entropy, with 32 bits of entropy recognized as an identifiability threshold. *Id.* at ¶¶123-127.

**II.    PPFA Installed and Configured Google Analytics and Meta Pixel on its Website to Enable the Interception of its Website Users' Healthcare Communications and Identifying Information.**

Throughout the period from September 1, 2022 through July 6, 2023 ("Class Period"), PPFA used ██████████████████████████████████ on its Website.[1] *Id.* at ¶¶52, 55. ████████████████████████████████

████████████████████████████████████████

███████████████████████ *Id.* at ¶63.

PPFA enabled Google and Meta to intercept PPFA Website users' sexual and reproductive health communications through the installation of Google Analytics and Meta Pixel. In PPFA's configuration of Google Analytics during the Class Period, ████████████████████████ ███████████████████████ *Id.* at ¶¶55-56. During the entire Class Period, PPFA also installed and configured Meta Pixel to share directly with Meta ████████████████ ██████████████████████████████████████████ *Id.* at ¶¶55, 57-58. Through PPFA's installation of Google Analytics and Meta Pixel, ████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████. *Id.* at ¶¶93-97, 105. Additionally, Website users' interactions with PPFA's ████████████████████████████████████████ ████████████████████████████ *Id.* at ¶¶102-103, 105. ████ ████████████████████████ were unchanged throughout the Class Period. *Id.* at ¶59.

PPFA's installation of Google Analytics and Meta Pixel also shared identifying information about Website users with Google and Meta. For the entire Class Period, ████████████

---

[1] ████████████████████████████████████████ ████████████ Reference to Google Analytics for purposes of this motion will be in reference to UA. See Ex. 1, Shafiq Report at ¶62.

████████████████████████████████████ *Id.* at ¶56; Ex. 2, Shafiq Decl. at ¶17. Google and Meta also intercepted other pieces of Website users' identifying information because of PPFA's installation of their tracking technologies. Ex. 1, Shafiq Report at ¶107, 109-110. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████. *Id.* at ¶¶129-133. Thus, when Google Analytics or Meta Pixel intercept a communication of a PPFA Website user, Google and Meta can also identify the user. *Id.*

### III.     PPFA Did Not Get Website Users' Consent to Share Their Communications.

During the Class Period, PPFA placed the link to its privacy policy at the bottom of the PPFA Website. Ex. 3, PPFA Responses and Objections to Plaintiffs' Second Set of Interrogatories, Response No. 13; Ex. 4, PPFA-Hinton_000039150 (March 14, 2023 screenshot of PPFA Website)). However, there is no evidence that PPFA obtained Website users' consent to share their communications in real time with third parties.

### STANDARD OF REVIEW

The Court should certify a case for class treatment when all four prerequisites under Rule 23(a) and at least one basis for certification under Rule 23(b). FED. R. CIV. P. 23; *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Courts must perform a "rigorous analysis" before granting a motion for class certification. *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 351 (2011) (citation omitted). Merits questions should be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Alcantar v. Hobart Serv.,* 800 F.3d 1047, 1053 (9th Cir. 2015). "[W]hether class members could actually prevail on the merits of their claims" is not a proper inquiry in determining the propriety of class certification. *Id*. (citation omitted).

### ARGUMENT

### I.     This Case Satisfies the Four Requirements of Rule 23(a).

**Numerosity**. Rule 23(a) is satisfied when the "class is so numerous that joinder of all its members is impracticable." FED. R. CIV. P. 23(a)(1). The numerosity factor is presumed to be

"satisfied when a class includes at least 40 members." *See, e.g., Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Courts do not require evidence of the exact class size or the identities of class members to satisfy numerosity under Rule 23(a)(1). *Zaklit v. Nationstar Mortgage LLC*, No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901, at *12 (C.D. Cal. July 24, 2017) (citation omitted).

Analytics data produced by PPFA confirms that during the Class Period, ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶3, 66-67, 74, 78, 80, 100, 104. ████  ████  ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ Ex. 1, Shafiq Report at ¶¶104-05; Ex. 2, Shafiq Decl. at ¶¶6, 12.[3] With class membership in at least the tens of thousands, joinder is impracticable and numerosity is satisfied. *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. 04-1511, *et al.*, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (citing NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002)) (numerosity satisfied where "exact size" of class is unknown but general knowledge and common sense indicate that class size is sufficiently "large").

**Commonality**. Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Rule 23(a)(2) does not require a party to show that each class member's claim is based on identical factual and legal issues. *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953, at *14 (N.D. Cal. June 13, 2014). Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient" to satisfy commonality under Rule

---

[2] ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶99-100.

[3] ████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶104-05; Ex. 2, Shafiq Decl. at ¶¶6-9.

23(a)(2). *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (citation omitted). The United States Supreme Court has recognized that commonality is met when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Dukes*, 564 U.S. at 350, 359 (quotation omitted).

Plaintiffs readily meet Rule 23(a)(2)'s low bar for commonality for their CIPA Section 631 claim. The classes share common questions of fact and law, including: (i) whether PPFA allowed Meta and Google to intercept Website users' private communications containing sensitive health information while they were in transit; (ii) whether Meta and Google acted willfully in attempting to learn the contents of PPFA Website users' communications; (iii) whether the sensitive healthcare information intercepted by Meta and Google— ██████████████████████████████ ████████████████████████ —constitutes "content" under CIPA; (iv) whether PPFA obtained the requisite consent from PPFA Website users to disclose their sensitive health information to Meta and Google; and (v) whether PPFA aided or abetted Meta's and Google's unlawful interception of PPFA website users' sensitive health information by embedding the Meta Pixel and Google Analytics on the PPFA Website.

All class members' claims allege the same violation, implicate the same California law and will be proven based on common evidence. Proof of the elements of CIPA is necessarily common because it will focus on PPFA's uniform conduct, including how Meta's and Google's tracking pixels functioned once PPFA installed them on its Website. Further, even the issue of Plaintiffs' lack of consent to PPFA's conduct will focus on common proof; namely, PPFA's failure to procure express consent from any PPFA Website user. As common evidence relating to these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," commonality is met under Rule 23(a)(2). *Dukes*, 564 U.S. at 350.

**Typicality**. Rule 23(a)(3) is satisfied when the claims or defenses of the representative parties are typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative "aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted). The requirement is permissive;

representative claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id*. Measures of typicality include "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct." *Id*.

Plaintiffs' claims are typical because they arise, as all class members' claims arise out of PPFA's installation and use of third-party tracking technologies on its Website, which aided and abetted third parties to intercept Website users' private communications containing sensitive health information in violation of Section 631 of CIPA. Accordingly, Rule 23(a)(3)'s typicality requirement is met. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025) (typicality met where all class members used an app that unlawfully intercepted and disclosed sensitive health information without their consent in violation of CIPA).

**Adequacy**. Rule 23(a)(4) permits the certification of a class action when the representative parties "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Plaintiffs and their counsel satisfy the adequacy requirement because they have no conflicts of interest with other class members and will vigorously prosecute the litigation on behalf of the classes. *See In re Yahoo Mail Litig.,* 308 F.R.D. 577, 595 (N.D. Cal. 2015) (citation omitted).

Plaintiffs are adequate class representatives under Rule 23(a)(4) because their interests are consistent with the interests of all other class members. Plaintiffs, like all class members, were damaged by PPFA's placement of tracking technologies on its Website which enabled third parties to intercept Plaintiffs' sensitive communications about their reproductive health without their consent. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 5, Shipley Tr. 38:4-7; 38:18-22; Ex. 6, Hinton Tr. 74:9-19. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 5, Shipley Tr. 67:18-68:8; 76:22-77:15; 78:14-19; 80:2-15. ▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 6, Hinton Tr. 97:16-98:7. ▓▓▓▓ (Ex. 5, Shipley Tr. 68:22-69:14; Ex. 6, Hinton 80:24-81:2) ▓▓▓▓

██████████████████████████████████ Ex. 5, Shipley Tr. 39:10-40:5; Ex. 6, Hinton Tr. 219:1-12. Neither Plaintiff was aware of a privacy policy on the PPFA website. Ex. 5, Shipley Tr. 117:15-118:20; Ex. 6, Hinton Tr. 172:1-7.

The named Plaintiffs have diligently fulfilled their duties to the classes by actively participating in the litigation and assisting counsel. Both Plaintiffs have responded to multiple rounds of written discovery, provided testimony in depositions and will continue to vigorously prosecute this action on behalf of the classes. Because the Plaintiffs "have been active participants in the litigation," they satisfy Rule 23(a)(4)'s adequacy requirement. *Castro v. ABM Indus. Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018).

Plaintiffs also are represented by counsel that have extensive experience in prosecuting class actions, including those involving breaches of federal and state privacy statutes. Ex. 7, Robinson Decl. at ¶¶22-24, 26. Plaintiffs' counsel have successfully litigated numerous class action cases and have served in leadership positions (e.g., lead counsel, co-lead counsel, members of steering and executive committees) in complex class action cases throughout the country. *Id*. at ¶¶22-23. Plaintiffs' counsel have vigorously prosecuted this action for over two years and will continue to do so on behalf of the class. *Id*. at ¶¶3, 6-12. Therefore, adequacy of representation is satisfied under Rule 23(a)(4). *Miner v. ITT Educ. Servs.,* 3:16-cv-04827-VC*,* 2020 WL 13612357, *2 (N.D. Cal., Oct. 15, 2020). Accordingly, Plaintiffs' counsel respectfully request that the firm's diligent efforts in this litigation to date justify their appointment as class counsel under Rule 23(g).

## II.   The Damages Class Satisfies the Predominance Requirements of Rule 23(b)(3).

Plaintiffs' claims satisfy Federal Rule of Civil Procedure 23(b) under the predominance provision of Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement asks "whether the common, aggregation-enabling, issues in the case are more prevalent or more important than the non-common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 664 (9th Cir. 2022) (en banc)). Rule 23(b)(3) certification is permissible where "one or more of the central issues in the action are common to the class and can be said to predominate" even if "other important matters will have to be tried separately, such as damages or

some affirmative defenses particular to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

### A.    California Law Applies to Plaintiffs' and All Class Members' Claims.

Plaintiffs' sole claim arises under Section 631 of CIPA. Plaintiffs seek to represent a class of people who used the PPFA Website while they were in the state of California.

### B.    Common Questions Predominate in Plaintiffs' CIPA Claims.

Common evidence will show that PPFA violated Section 631 of CIPA by installing and configuring Google Analytics and Meta Pixel on its Website. Section 631 declares it unlawful:

> where a person "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [the state of California]" and

> where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts of things mentioned above in this section."

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631(a)).  Here, the only reason that Google and Meta were able to attempt to learn the contents of PPFA Website users' communications in violation of Section 631 was that PPFA permitted them to do so through the affirmative act of installing Google Analytics and Meta Pixel on the PPFA Website. Ex. 2, Shafiq Decl. at ¶15-17. Both the predicate violation by Google and Meta and PPFA's role in abetting it can only be resolved through common proof of what Google, Meta and PPFA did.

#### 1.    Google's and Meta's Predicate Violation of CIPA Will Be Determined with Common Evidence.

There is common evidence that Google and Meta—with PPFA's assistance—violated CIPA by (1) reading or attempting to read or learn the contents of Plaintiffs' and class members' communications on the PPFA Website while they were (2) in transit (3) to or from a place in California (4) willfully and (5) without their consent.

*First*, whether Google and Meta read, attempted to read or learn the "contents" of Plaintiffs' and class members' communications is a question common to all class members that will be resolved with common evidence. "Contents" refers to "the intended message conveyed by the

communications" as opposed to record information regarding the characteristics of the message that is generated to effectuate the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Full-string detailed URLs can divulge a user's personal interests, queries and constitute "contents" of a "communication" within the context of invasion of privacy under the California Constitution. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) (same).

During the Class Period, Google Analytics and the Meta Pixel ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶63, 66-67, 74, 77-86. ██████████████████████████████████████████ ████████████████████████████████████████████████████████████. *Id.* at ¶¶59. Accordingly, every class member unknowingly shared with ████████████ ████████████████████████████████████████████████████████████ ██████████████████████ If these URLs constitute the "contents" of communications for one class member, then they are the "contents" for all class members.

*Second*, the question of whether Google and Meta intercepted the contents of communications of PPFA Website users while "in transit" can only be determined with common proof. CIPA Section 631(a)'s prohibition against the interception of the contents of a communication while "in transit" applies to "internet communications." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. Mar. 28, 2024). Communications are intercepted by a third party while "in transit" when the third party receives the communications either before or simultaneously with the intended recipients. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953 (N.D. Cal. 2024).

Common evidence shows that Google and Meta intercepted class members' communications simultaneous with, if not prior to, PPFA's receipt of them because of how tracking technologies work and how PPFA configured them. Ex. 1, Shafiq Report at ¶¶28-44, 52-63; Ex. 2, Shafiq Decl. at ¶¶11-13. ████████████████████████████████████████████████ ████████████████████████████████ Ex. 1, Shafiq Report at ¶63; Ex. 2, Shafiq Decl. at ¶11. In client-side tagging, tracking tags run in the user's browser and the data flows directly from

the user's browser to the tracker's server without any intermediary. Ex. 1, Shafiq Report at ¶¶43-44, 62-63; Ex. 2, Shafiq Decl. at ¶¶11-13. This means that Website users' communications are being transmitted to Google and Meta at the same time as the user's browser is requesting the webpage from PPFA. Ex. 1, Shafiq Report at ¶¶35, 43-44; Ex. 2, Shafiq Decl. at ¶¶11-14. The actions of individual class members are irrelevant to this sequencing. If Google and Meta intercepted one class member's communications simultaneously with PPFA's receipt of them, they did for all. Therefore, the "in transit" element of CIPA is an issue that will be decided with common evidence.

*Third*, the common question of whether PPFA aided and abetted the interception of the contents of communications of PPFA Website users while they were in transit to or from a place in California can be established through classwide proof contained in PPFA's records. ██████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶99, 104. ██████████████████████████████████████████ ██████████████████████████████████████ Ex. 1, Shafiq Report at ¶105. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. Ex. 1, Shafiq Report at ¶¶107, 109-110 ████████████████████████████████████ ██████ Website users' IP addresses identify their approximate geolocation at the time they communicated with PPFA through its Website. *Id*. at ¶34 n.51 (stating that "IP address also encodes information about the location of a user" and "[t]here are numerous IP geolocation services that can estimate the country, state, city, postal code and even approximate longitude and latitude from IP address"); *AF Holdings LLC v. Does 1-135*, No. C11-03336 JF HRL, 2011 WL 3359991, at *3 (N.D. Cal. Aug. 2, 2011) (where plaintiff used geolocation technology to trace defendants' IP addresses to a point of origin in California, court considered evidence persuasive in establishing personal jurisdiction over defendants). ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶104-05.

*Fourth*, whether Google and Meta acted willfully in attempting to learn the contents of Website users' communications can only be determined on a classwide basis with classwide evidence. CIPA Section 631 imposes liability on any person who "willfully and without the consent of all parties to the communication, or in any other unauthorized manner" attempts to learn the contents of meaning of any communication. Cal. Pen. Code § 631(a). CIPA does not define "willfully," however the California Penal Code provides that:

> "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate the law, to injure another or to acquire an advantage.

Cal. Penal Code §7(b)(1) (2024).

Google's and Meta's "willingness to commit the act" of intercepting website user communications through the installation and configuration of tracking technologies on their customers' websites is revealed in their marketing materials. Google explains that after a website owner places Google Analytics on its website: "Whenever someone loads a page of your website or their browser history state is changed by the active site, an enhanced measurement event called page_view is sent from your website to Google Analytics." Ex. 1, Shafiq Report at ¶39.[4] Similarly, Meta states that "[e]ach time the [Meta] Pixel loads, it automatically calls fbq ('track', "PageView') to track a PageView standard event. PageView standard events record the referrer URL of the page that triggered the function call." *Id.* at ¶40.[5] This is common evidence of Google's and Meta's intent that does not vary from class member to class member. If Google and Meta acted willfully under CIPA for one class member, they acted willfully for all.

**2. PPFA's Violation of CIPA by Aiding and Abetting Google's and Meta's Interception of Class Members' Communications Can Be Determined with Common Evidence.**

PPFA's liability for aiding and abetting Google's and Meta's unlawful interception of class members' communications on the PPFA Website also presents common questions that can be resolved with common evidence. Liability attaches under Section 631(a) of CIPA where a person

---

[4] Citing https://developers.google.com/analytics/devguides/collection/ga4/views.

[5] Citing https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking/.

"aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this [Section 631(a)] section." Cal. Penal Code. § 631(a). Under California law, a defendant is liable for aiding and abetting when it "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act" or "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, considered separately, constitutes a breach of duty to the third person." *In re Woodbridge Invs. Litig.*, No. CV 18-103-DMG (MRWx), 2020 WL 4529739, at *5 (C.D. Cal. Aug. 5, 2020).

PPFA's substantial assistance to Google and Meta is straight-forward and common to all class members: PPFA controlled its own Website and installed both Google Analytics and Meta Pixel on the Website. ███████████████████████████████████████████████████████████. Ex. 8, 4/30/25 Brian Kim Tr. 33:6-15. ████████████████████████████████████████████████████████████████████████████ *Id.* at 31:9-14; 31:25-32:18; 36:23-37:15. This is confirmed by Plaintiffs' expert. Ex. 1, Shafiq Report at ¶¶54-57; Ex. 2, Shafiq Decl. at 15-16. Without PPFA's affirmative act, there could be no violation of CIPA by either Google or Meta.

PPFA's knowledge of Google and Meta's interception of Website users' ██████████████████████████████████████████████████████ is also a matter of common evidence. █████████████████████████████████████████████████████████████████████████ Ex. 1, Shafiq Report at ¶¶98-100. ████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* at ¶105. ██████████████████████████████████████ they are common evidence of what PPFA knew about the data that it had enabled Google and Meta to intercept. ███████████████████ also demonstrates that PPFA knew the nature of the contents it was sharing. Ex. 9, 9/11/25 Kim 30(b)(6) Tr. 232:23-233:15; 293:9-17.

Finally, lack of consent to PPFA's practices will be established through common proof. CIPA Section 631 "prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (quoting Cal. Pen. Code § 631(a)). Section 631 requires "prior consent of all parties to a communication." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). Consent "is only effective if the person alleging harm consented to the particular conduct, or substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent." *Frasco*, 349 F.R.D. at 575 (quoting *Calhoun v. Google LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)). Common evidence will show that PPFA failed to obtain consent from Plaintiffs and class members to disclose PPFA Website users' private communications with any third parties, whether by pop-up box, clicking on a button or any other manner. Ex. 10, 9/3/25 Williams 30(b)(6) Tr. 21:14-22:5; 23:7-24. ███████████ ████████████████████████████████████ ███████████████████████ (Ex. 3, PPFA Responses and Objections to Plaintiffs' Second Set of Interrogatories, Response No. 13; Ex. 4, PPFA-Hinton_000039150 (March 14, 2023 screenshot of PPFA Website)), but it never took any affirmative steps to present the privacy policy to Website users. Ex. 10, 9/3/25 Williams 30(b)(6) Tr. 21:14-22:5; 23:7-24.

To establish actual consent, the disclosures must "explicitly notify" users of the conduct at issue. *Calhoun*, 113 F.4th at 1147. Absent any evidence that PPFA's privacy policy was "reasonably conspicuous" and Website users "unambiguously manifested their assent," the privacy policy constitutes a browsewrap agreement and is not enforceable. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). As PPFA did not obtain prior consent or sufficiently disclose "the particular conduct, or substantially the same conduct"[6], the issue of consent is a common question and will not vary among class members. *See Frasco*, 349 F.R.D. at 576 (finding that evidence of defendant's privacy disclosures was common to class and would permit jury to conclude in "one fell swoop" whether reasonable person would have been on notice of or consented to alleged conduct).

---

[6] *Calhoun*, 113 F.4th at 1147 (citation omitted).

Whether Google's and Meta's interception of Plaintiffs' and class members' communications on the PPFA Website violated CIPA can only be determined by evaluating how the Google and Meta pixels functioned once PPFA installed them on the PPFA website. Likewise, PPFA's liability for aiding and abetting Google and Meta depends exclusively on what PPFA did to assist Google and Meta and what PPFA knew. Either Google and Meta violated CIPA for all class members or it violated CIPA for none of them. Likewise, PPFA either aided and abetted that violation for all class members or for none. Nothing any individual class member did will have any bearing on deciding those issues. Accordingly, predominance under Rule 23(b)(3) is satisfied and Plaintiffs' CIPA claim is appropriate for class certification.

### C. Meta's and Google's Commercial Exploitation of the Data Intercepted from PPFA Website Users Can Be Established Through Common Proof.

Common evidence shows that Google and Meta commercially exploit the voluminous information they intercept through the use of tracking technologies to generate highly profitable targeted advertising. Meta's Business Tool Terms disclose that Meta uses "event" data intercepted from unsuspecting website users in furtherance of its "ad targeting" and "ad delivery" businesses.[7] Specifically, Meta uses website user event data "to personalize the features and content (including ads and recommendations) that we show people on and off our Meta Company Products."[8] Similarly, Google Analytics is "a platform that collects data from your websites and apps to create reports that provide insights into your business."[9] The information Google collects from websites embedded with Google Analytics is used to create custom audiences and target users for advertising purposes.[10]

### D. Damages Can Be Calculated on a Classwide Basis.

To satisfy predominance under Rule 23(b)(3), Plaintiffs must show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

---

[7] *Meta Business Tool Terms*, META https://www.facebook.com/legal/technology_terms (last visited Nov. 21, 2025).

[8] *Id.*

[9] *How Google Analytics Work*, GOOGLE, https://support.google.com/analytics/answer/12159447 (last visited Nov. 21, 2025).

[10] *Enable Remarketing with Google Analytics Data*, GOOGLE ANALYTICS HELP, https://support.google.com/analytics/answer/9313634 (last visited Nov. 21, 2025).

At the class certification stage, Plaintiffs need only propose a valid method for calculating classwide damages such that the trier of fact could accurately calculate damages. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). A damages model should be consistent with Plaintiffs' theories of liability. *Comcast*, 569 U.S. at 35.

Common issues predominate with respect to class members' damages because they can be easily calculated on a classwide basis and are consistent with Plaintiffs' theory of liability. CIPA provides for statutory damages in the amount of $5,000 upon proof of a privacy violation, and there is no requirement to submit evidence of actual damages. Cal. Penal. Code § 637.2(a)(1) & (c). In this case, damages can be calculated formulaically and on a classwide basis by multiplying the number of CIPA violations proven by $5,000[11].

Where statutory damages are calculated as prescribed by a statute, damages present a common question of law and satisfy predominance under Rule 23(b)(3). *See, e.g., Kellman v. Spokeo, Inc.*, No. 21-CV-08976-WHO, 2024 WL 2788418, at *11 (N.D. Cal. May 29, 2024); *In re Toys R Us-Delaware, Inc.—Fair & Accurate Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages."). ██████████ ██████████ Ex. 1, Shafiq Report at ¶¶104-05; Ex. 2, Shafiq Decl. at ¶¶6-9. Determining classwide damages is a simple matter of multiplication. Consequently, common issues predominate under Rule 23(b)(3) for the Classes' CIPA claims with respect to calculating statutory damages. *See Romero v. Securus Techs.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (holding predominance met in part because plaintiffs sought statutory damages under CIPA Section 637.2).

**III.    A Class Action is the Most Efficient and Superior Method to Adjudicate This Controversy.**

Class certification is proper if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolution.

---

[11] Plaintiffs and class members do not seek actual damages. Am. Compl., Dkt No. 48 at ¶216.

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotation omitted). When determining superiority under Rule 23(b)(3), courts generally consider the following non-exclusive factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A-D). All of these factors weigh in favor of finding that a class action is superior to other methods of resolution.

Courts consistently find superiority met where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims." *Just Film*, 847 F.3d at 1123 (internal citation omitted). In this matter, class members individual damages pale in comparison to the cost of litigation. *Zaklit*, 2017 WL 3174901, at *10 (finding superiority satisfied in CIPA class action, noting that "the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues') (citation omitted).

No class member has shown any interest in controlling the prosecution of separate actions or pursuing individual litigation. Other than this class action, Plaintiffs' counsel are not aware of any other similar or related lawsuits involving the CIPA privacy claims against PPFA asserted in the present case. Ex. 7, Robinson Decl. at ¶3.

The class is comprised of PPFA Website users who are located throughout California. Concentrating their CIPA claims in a single class action in this forum promotes judicial economy. Resolution of all claims on a classwide basis will promote efficiency, bypass the need to relitigate identical questions and conduct nearly identical discovery in parallel litigations and reduce the strain on judicial resources posed by individual suits. *Frasco*, 349 F.R.D. at 587 (citation omitted).

Finally, all class members' claims arise out of the same alleged wrongful conduct, are based on the same legal theories under the same California law and will require the same types of evidence to prove. In light of the substantial benefits of proceeding as a class action and resolving numerous common issues on a classwide basis in a single trial, class treatment is the superior method of

adjudication for this controversy. *Palana v. Mission Bay, Inc.*, No. 13-cv-05235-SI, 2015 WL 4110432, at *8 (N.D. Cal. July 7, 2015).

## IV.    The Proposed Injunctive Relief Class Satisfies the Requirements of Rule 23(b)(2).

Plaintiffs also seek to certify a class under Rule 23(b)(2) for injunctive and declaratory relief. To certify a class under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). The predominance and superiority requirements of Rule 23(b)(3) do not apply to Rule 23(b)(2) classes. *Campbell v. Facebook Inc*., 315 F.R.D. 250, 269 (N.D. Cal. 2016). Instead, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id.* (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998)).

PPFA's unlawful aiding and abetting of the interception of PPFA Website users' private communications by third parties without users' consent affects all class members uniformly and violated class members' privacy rights in an identical manner. As such, Plaintiffs challenge a "pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047; *see also In re Yahoo Mail Litig.*, 308 F.R.D. at 598 (certifying Rule 23(b)(2) class where "[p]laintiffs contend that all emails sent from and to Yahoo Mail subscribers are subject to same interception and scanning processes"). Moreover, the relief sought—the cessation of the unlawful practice of permitting the interception of PPFA Website users' private communications by third parties without consent along with a declaration that such conduct violates CIPA—would benefit the class as a whole. *In re Yahoo Mail Litig.*, 308 F.R.D. at 598.

## V.    Class Definitions and Ascertainability.

The Ninth Circuit has declined to adopt an "ascertainability" requirement for class certification under Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). Nonetheless, when analyzing class certification, courts consider whether a proposed class is ascertainable. *James v. Uber Techs.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021). A class is ascertainable when it is based on objective criteria that allow potential class members to determine whether they

are included in the class. *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017) (citation omitted). The Rule 23(b)(3) Damages Class and Rule 23(b)(2) Injunctive Relief Class Plaintiffs seek to certify are sufficiently defined and ascertainable because they rely on a common set of characteristics that allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description. *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012).

Plaintiffs seek certification of a Damages Class under Rules 23(a) and 23(b)(3) and an Injunctive Relief Class under Rules 23(a) and 23(b)(2) for PPFA's invasion of their privacy rights protected under CIPA using the following definition:

All persons who, between September 1, 2022, and July 6, 2023, while in California, (1) searched for any of the following healthcare topics using the plannedparenthood.org website search bar: abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception; or (2) visited any of the following plannedparenthood.org healthcare webpages for services relating to abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception:

https://www.plannedparenthood.org/abortion-access
https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines
https://www.plannedparenthood.org/get-care/our-services/birthcontrol
https://www.plannedparenthood.org/get-care/ourservices/abortion-services
https://www.plannedparenthood.org/get-care/ourservices/pregnancy-testing-services
https://www.plannedparenthood.org/get-care/ourservices/transgender-hormone-therapy
https://www.plannedparenthood.org/get-care/ourservices/emergency-contraceptive

Excluded from the Class are Defendant, and any person or entity related to or affiliated with Defendant. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

In addition to enabling the interception of the content of PPFA Website users' communications, ███████████████████████████████████████████████████ ████████████████████████████████████████. Ex. 1, Shafiq Report at ¶107. ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████. *Id.* at ¶¶107, 110, 117, 132.

Using these pieces of identifying information, among others, Meta can match PPFA website users whose private communications were intercepted by Meta with known Meta account holders. Ex. 1, Shafiq Report at ¶¶40, 117; Ex. 11, *Jancik v. WEDMB, LLC*, No. 22-cv-00644-TWT (N.D. Ga. June 27, 2024), Dkt. No. 83-4 (declaration from Meta's software engineer describing that when the Meta Pixel is triggered and collects "event" data representing users' interactions with a website, "Meta attempts to match the Events it receives to Meta users"). Plaintiffs served a Rule 45 subpoena on Meta requesting documents relating to PPFA Website user data and the identities of potential class members, but Meta refused to produce either the totality of user data related to Meta Pixel 6452 or the matching of such data to known Meta account holders until a class is certified. Ex. 7, Robinson Decl. at ¶14. Plaintiffs propose that once the classes are certified, Meta be compelled to produce all event data from PPFA's Meta Pixel 6452 within the Class Period and match the event data to Meta account holders. *Id.* at ¶15.

As described above, PPFA also installed, configured and used Google Analytics tracking technologies on its Website during the Class Period, which caused the interception and of PPFA Website users' private communications by Google. Plaintiffs' counsel served a Rule 45 subpoena on Google seeking the same types of records as it did for Meta, but Google does not retain the requested PPFA Website user event data from the Class Period. Ex. 7, Robinson Decl. at ¶16. Thus, there are potential class members whose private communications were intercepted by Google during the Class Period, but that data was not retained for matching purposes.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████. Ex. 1, Shafiq Report ¶¶39, 77-86, 107.

Accordingly, Plaintiffs propose that potential class members be permitted to submit declarations or affidavits that support their claims that they visited the PPFA website during the Class Period and navigated to these healthcare webpages or searched for these healthcare topics using the Website's search bar. *See, e.g., Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (finding class members ascertainable although class members would have to self-identify and provide other purchase-related information). The fact that class members may have to self-identify does not mean that they are not ascertainable for class certification. *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *25 (citation omitted); *see also Briseno*, 844 F.3d at 1129.

Here, the proposed Damages Class and Injunctive Relief Class are properly defined and ascertainable, as the definitions are precise and class membership can be determined by objective means. Class members can be identified through a manageable process, using Meta's records or class members' supporting declarations or affidavits. Accordingly, the proposed Classes satisfy any implicit ascertainability requirement. *See Lilly v. Jamba Juice Co.,* 308 F.R.D. 231, 236-240 (N.D. Cal. Sept. 18, 2014) (ascertainability met where class members were objectively identifiable, even where class membership could not necessarily be determined from class members' own records or those of defendant).

## CONCLUSION

This case turns on common factual and legal issues which will be proven or disproven by common evidence. Accordingly, Plaintiffs' Damages Class and Injunctive Relief Class should be certified; Plaintiffs Hinton and Shipley should be appointed as class representatives; The Bruno Firm, LLC should be appointed as class counsel and Benbrook Law, PC should be appointed as liaison counsel.

Dated: November 21, 2025                    Respectfully submitted,

                                            By:    /s/ Jamie A. Robinson

                                            Klint L. Bruno (admitted pro hac vice)
                                            Michael L. Silverman (admitted pro hac vice)
                                            Jamie A. Robinson (admitted pro hac vice)
                                            Adam J. Feuer (admitted pro hac vice)
                                            **THE BRUNO LAW FIRM, LLC**


                                             By: /s/ Bradley A. Benbrook


                                            Bradley A. Benbrook
                                            Stephen M. Duvernay
                                            BENBROOK LAW GROUP, PC
                                            Attorneys for Plaintiffs and the Proposed Class

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was filed this 21st day of November 2025 via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

*/s/ Jamie A. Robinson*
Jamie A. Robinson