# Exhibit 7

Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, California 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br><br>**DECLARATION OF JAMIE A. ROBINSON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

I, Jamie A. Robinson, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am an attorney licensed to practice in the State of Illinois and have been admitted to practice in several courts across the country, including being admitted *pro hac vice* in this Court. I am a Partner at The Bruno Firm, LLC ("TBF") and serve as interim lead attorney for Plaintiffs and the proposed classes in this matter. I make this declaration in support of the accompanying Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts in this declaration and could competently testify to them if called as a witness.

## I.    Background of the Litigation

2.  On September 1, 2023, TBF and local counsel Benbrook Law Group, PC ("Benbrook Law") (collectively, "Counsel") filed on behalf of our client, Davina Gibson, a class action complaint against Defendant, Planned Parenthood Federation of America, Inc. ("PPFA"). Thereafter, on November 25, 2024, with leave of Court, Counsel filed an Amended Complaint that (1) removed Plaintiff Davina Gibson as a named plaintiff; (2) added Plaintiffs Shirley Hinton and Heather Shipley as named plaintiffs, including incorporating factual allegations in support of their claims; and (3) removed allegations concerning claims that were previously dismissed by the Court.

3.  To my knowledge, this is the only civil class action proceeding in the country that seeks to recover from PPFA for embedding hidden tracking technologies in its Website[1] that enabled third parties to intercept the content of its Website users'

---

[1] Plaintiffs' First Amended Complaint defines the Website as www.plannedparenthood.org and related pages. Dkt. No. 48 at ¶2.

communications. Since the filing of the class action complaint, Counsel has undertaken all responsibilities necessary to litigate this case for over two years.

4.      This is a class action asserting violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631. This case is brought on behalf of all persons who, between September 1, 2022, and July 6, 2023, while in California, searched for any of the following topics using the search bar on PPFA's Website home page: abortion, STD testing, birth control, pregnancy testing, hormone therapy, or emergency contraception, or who visited specific Website subpages for services relating to those same topics. Plaintiffs allege that: (i) Website users communicate and input their personal sexual and reproductive healthcare information in various ways via the Website, including their sexual and reproductive healthcare concerns; (ii) Website users have a reasonable expectation of privacy in their sensitive health information communicated to PPFA through its Website; (iii) despite this, PPFA knowingly and intentionally incorporates a host of tracking technologies on its Website for marketing, advertising, analytics and other purposes without full and proper disclosure to, or obtaining the consent of, its Website users; and (iv) PPFA knew at the time it incorporated this software onto its Website that it would result in the unlawful interception of its Website users' communications by third parties by virtue of how these technologies function and the analytics and insight PPFA receives as a result. Dkt. No. 48 at ¶¶20-41.

5.      As a result of PPFA's invasion of their privacy rights in violation of CIPA, Plaintiffs and the class members seek statutory damages of $5,000 per violation, declaratory relief, interest, costs and reasonable attorneys' fees.

## II.    TBF Undertook a Lengthy and Comprehensive Investigation to Develop This Class Action Litigation

6.      TBF has taken significant steps to identify and investigate Plaintiffs' claims and coordinate with defense counsel to advance this class litigation efficiently and effectively. Prior to and following our filing of this action, TBF spent many months investigating PPFA's Website and the facts alleged in the complaint. TBF also established a time and expense reporting protocol that it has maintained and continues to follow.

7.      Our firm's investigation included communicating with and interviewing potential class members, including Plaintiffs, and reviewing numerous documents related to PPFA, its affiliates and vendors. In addition, prior to filing this lawsuit, our firm and co-counsel worked in close coordination with a non-testifying consulting expert who performed a detailed forensic investigation of the Website. This investigation led to the discovery of the tracking technologies through which PPFA knowingly permitted the contents of Website users' communications with the Website to be intercepted by the third parties who created the tracking technologies, as alleged in Plaintiffs' complaint. TBF investigated all potential claims and theories of liability in order to develop a litigation strategy.

8.      Since filing the litigation, our firm has worked in collaboration with Plaintiff's testifying expert witness to understand and analyze the technical details

of PPFA's placement of the tracking technologies on the Website and the interaction of Website users' web browsers with the Website and tracking technologies including an in-depth review of relevant articles, studies, reports, statutes and case law.

9.      Our firm's 63-page complaint provides elaborate detail and reflects the thorough factual and legal investigation performed by TBF in preparation of filing this case. The complaint states in intricate detail the underlying facts of the case, including how and what Website users communicate with PPFA through the Website, the legal principles that undergird their expectation of privacy in those communications, and the technical operation of the tracking technologies through which the content of Website users' communications with PPFA through the Website, together with their PII, were disclosed to third parties.

10.      The complaint is the original work of Counsel. As the first and only filed action, the complaint is not knowingly duplicative or derivative of any other complaint in similar litigation. To date, Counsel has committed hundreds of hours of work to develop this case, and Counsel will continue to coordinate and collaborate with Defendant's counsel to advance this litigation efficiently and effectively.

11.      TBF has worked on all aspects of the litigation, including but not limited to, investigating claims, preparing pleadings and other filings, reviewing discovery comprised of thousands of pages of documents and of millions of other data points, engaging in motion practice to resolve discovery disputes, attending court proceedings, and preparing for and taking depositions.

12.    TBF has propounded written discovery on numerous third parties, including Meta Platforms Inc. ("Meta"), the technology provider of the Meta Pixel, and Google LLC ("Google"), the technology provider of Google Analytics.

13.    Based on my firm's expert's investigation and experience, publicly available information and our conversations with Meta's representatives, we have learned that Meta has the ability to match event data that was transmitted from PPFA website users during the class period to known Meta account holders.

14.    In early 2025, Plaintiffs' counsel served a Rule 45 subpoena on Meta requesting various documents and information relating to PPFA website user event data that was transmitted to Meta through PPFA's use and configuration of the Meta Pixel 6452 tracking technology in addition to the identities of PPFA website users who were matched to known Meta account holders. Meta's counsel has refused to produce either the totality of user data related to Meta Pixel 6452 or the matching of such data to known Meta account holders until a class has been certified.

15.    Accordingly, for class identification purposes, once the proposed classes are certified, Plaintiffs' counsel proposes that Meta be compelled to produce all event data from PPFA's Meta Pixel 6452 within the class period and match the event data to known Meta account holders. Plaintiffs' counsel reasonably believes that this process will provide the identities and email addresses for a large majority of class members.

16.    Plaintiffs' counsel also served a Rule 45 subpoena on Google requesting documents and information relating to PPFA's Google Analytics data as well as

6

Google's marketing pixels installed on the PPFA Website that would reflect website user event data that was transmitted to Google during the class period. Google maintained that PPFA's Google Analytics data was in PPFA's possession or control and that Google did not retain the requested PPFA website user event data from the class period.

17. In light of Google's data retention policies, for class identification purposes, once the proposed classes are certified, Plaintiffs' counsel proposes that potential class members be permitted to submit declarations or affidavits that support their claims that they visited www.plannedparenthood.org healthcare webpages for services relating to abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception, or searched for any the following healthcare topics using the www.plannedparenthood.org website search bar: abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception.

18. We believe our firms are well suited to serve as lead and liaison counsel in this litigation. As proposed interim lead counsel, TBF has extensive experience in successfully prosecuting class actions and other complex litigation nationwide, including data privacy cases. As proposed liaison counsel, Benbrook Law has extensive knowledge of the Northern District of California Local Rules and significant experience litigating numerous class action proceedings in this District.

19. Our firms have and will continue to execute all duties and responsibilities to resolve this litigation vigorously and effectively. These duties and

responsibilities comport with the standards in the Manual for Complex Litigation. *See* Manual § 10.221.

### III.    TBF Attorneys Have Extensive Class Action and Complex Litigation Experience

20.    TBF has a proven track record showing its ability to successfully prosecute class actions and other complex civil litigation.

21.    TBF is a highly successful Chicago law firm with over 25 years of experience effectively prosecuting complex litigation and class action cases, including data privacy cases.

22.    TBF has served in leadership positions (lead counsel, co-lead counsel and members of steering and executive committees) and has represented class action plaintiffs in state and federal district courts throughout the United States. As part of this work, TBF handles all phases of litigation and has significant experience in electronic discovery matters. A representative selection of these cases is supplied in TBF's resume attached hereto as Exhibit A.

23.    TBF was recently appointed lead counsel another privacy class action against a medical provider for unlawfully sharing patients' and website users' private medical information without consent in violation of state privacy laws. *Muraski, et al. v. Penn Highlands Healthcare, Inc.*, No. 3:23-cv-00135 (W.D. Pa.), Dkt. No. 32. TBF also represents plaintiffs in several multi-district litigations, including *In re Local TV Advertising Antitrust Litig.*, MDL No. 2867 (N.D. Ill.) and *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, MDL No. 2977 (E.D. Okla.). Additionally,

attorneys from TBF have led several data privacy class and individual actions in courts and arbitral forums throughout the country.

24.    TBF has successfully negotiated numerous class action settlements for class members by developing a detailed understanding of the various issues surrounding class litigation in light of the substantial risks presented. Attorneys from TBF led a team who were able to achieve a $1.087 billion settlement for a class of investors in life and viatical settlements and successfully defended the settlement in the Fifth Circuit. *Matter of Life Partners*, 708 Fed. Appx. 831 (5th Cir. 2017). The *Life Partners* case is widely acknowledged as the largest settlement of a case involving the sale of unregistered securities.

## IV.    TBF Attorneys Have Extensive Knowledge of Class Actions and Complex Litigation, Including Data Privacy Law

25.    For over 25 years, attorneys from TBF have represented plaintiffs in class actions and complex litigation, including matters involving data privacy. As described above and in our firm resume attached as Exhibit A, TBF has served as lead or co-lead counsel in numerous class actions nationwide.

26.    Prior to the creation of TBF, some of the firms' attorneys worked for premier national plaintiffs' class action and complex litigation law firms that are recognized as some of the best in the country. The attorneys at TBF have worked on dozens of state and federal class action cases and other complex litigation filed in various jurisdictions across the country, including data privacy cases. Its attorneys have prosecuted class action cases and other complex litigation from their inception through resolution, handling all phases of litigation.

9

## V.   TBF Has the Resources and Capacity to Manage this Case Effectively and Efficiently and is Committed to its Successful Resolution

27.    TBF has decades of experience prosecuting and self-funding complex class action litigation. As demonstrated by the representative cases cited herein and provided in its firm resume, TBF has routinely litigated against the largest defendants, represented by the best defense firms in the country, to achieve significant results.

28.    TBF has advanced millions of dollars to fund expenses in cases, demonstrating a commitment to providing the resources and staffing needed to successfully prosecute class actions. The best proof of the firm's resources and capabilities is in its track record of consistently advancing litigation costs in other matters of equal or greater size than the present case, and in doing so, have successfully litigated matters through settlements, trials and appeals.

29.    TBF has never used litigation financing and intends to continue to self-fund its involvement in this case. It does not have agreements with a third party litigation funder in this case or any other case.

30.    It is not just the amount of resources devoted but also how those resources are used. Here, TBF has and will continue to use proven methodologies to monitor billing, control costs, review assignments and avoid duplication of effort. TBF will appropriately staff this action and communicate effectively to avoid duplicative or unnecessary work. These tactics will ensure that the class receives the best representation while avoiding unnecessary work or costs.

31.     Our background, experience, and extensive commitment of time and resources to this case give our firm a solid foundation to continue to prosecute this case efficiently and expeditiously.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 21, 2025, in Chicago, Illinois.


_/s/ Jamie A. Robinson_____

11

# Exhibit A

**THE BRUNO FIRM
205 N. MICHIGAN AVENUE
SUITE 810
CHICAGO, ILLINOIS 60601
TELEPHONE: 312.321.6481
www.brunollc.com**

### THE BRUNO FIRM RESUME

In 2013, Klint Bruno established The Bruno Firm with the aim of creating a law firm that litigates complex civil and class action cases to champion the rights of people who have been taken advantage of financially. For the decade prior to forming the firm, Mr. Bruno handled state and federal class action cases for Korein Tillery – a law firm with a national reputation for complex civil and class action litigation. The formation of The Bruno Firm was the culmination of Mr. Bruno's experience representing class action plaintiffs in the areas of securities fraud, antitrust, ERISA and pension benefits law, environmental and toxic torts, federal income tax issues and consumer fraud.

The Bruno Firm strives to apply the substantial expertise of complex civil and class action litigators to vindicate the rights of victims of financial wrongdoing. Perhaps the most dramatic example of The Bruno Firm's dedication to its class plaintiffs and perseverance on their behalf is Mr. Bruno's recent representation of a class of investors in life and viatical settlements and successful defense of the class's $1.087 billion settlement in the Fifth Circuit. *Matter of Life Partners, Inc.*, 708 Fed. Appx. 831 (5th Cir. 2017). The Life Partners case is widely acknowledged as the largest settlement of a case involving the sale of unregistered securities, and with benefits to the class valued at over a billion dollars ranks among the largest settlements of any securities lawsuit in history.

The Bruno Firm's attorneys have successfully prosecuted numerous other class action cases and served in leadership positions (lead counsel, co-lead counsel, members of steering and executive committees) in complex class action cases throughout the

country. A representative selection of these cases is supplied in The Bruno Firm attorney profiles.

**ATTORNEY PROFILES**

**KLINT L. BRUNO**

Klint L. Bruno is a trial lawyer who has focused his entire career on complex civil cases. Before creating The Bruno Firm, Mr. Bruno was a Partner in a firm that was recognized five times by the National Law Journal as one of the country's top ten plaintiff's civil litigation firms. He practices primarily in the areas of complex civil litigation and class actions. His focus includes financial and securities litigation involving federal and various states' securities laws, ERISA, and advising government entities and institutional investors with respect to cost recovery actions.

Mr. Bruno has represented class action plaintiffs in state and federal district courts throughout the United States; he also has represented them in the Federal Courts of Appeal for the Fourth, Fifth, Seventh and Eighth Circuits. Mr. Bruno was part of a three-lawyer team that prevailed before the United States Supreme Court in a case he handled from its inception that was part of the "market timing" scandal which resulted in losses of tens of billions of dollars for tens of millions of mutual fund shareholders. That case was pivotal in interpreting the jurisdictional boundaries of the Securities Litigation Uniform Standards Act. The following is a list of published decisions related to the prosecution of those cases:

*Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006);

*Kircher v. Putnam Funds Trust,* 403 F.3d 478 (7th Cir. 2005), vacated and remanded, 547 U.S. 633, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006);

*Brockway v. Evergreen Int'l Trust,* 496 F. Appx 357 (4th Cir. 2012);

*In re Mutual Funds Inv. Litig.*, 2009 WL 225931 (4th Cir. 2009);

*In re Mutual Funds Investment Litigation,* 309 Fed. Appx. 722 (4th Cir. 2009);

*In re Mut. Fund Mkt.-Timing Litig.*, 495 F.3d 366 (7th Cir. 2007);

*In re Mut. Fund Mkt.-Timing Litig.*, 468 F.3d 439 (7th Cir. 2006);

*Kircher v. Putnam Funds Trust*, 922 N.E.2d 1164 (Ill. App. Ct. 2010);

*Jackson v. Van Kampen Series Fund, Inc.*, 2007 WL 2068343 (S.D. Ill. 2007);

*Jackson v. Van Kampen Series Fund, Inc.*, 2007 WL 1532090 (S.D. Ill. 2007);

*Kircher v. Putnam Funds Trust,* 2007 WL 1532116 (S.D. Ill. 2007);

*Potter v. Janus Inv. Fund*, 483 F.Supp.2d 692 (S.D. Ill. 2007);

*Spurgeon v. Pacific Life Ins. Co.*, 2007 WL 685943 (S.D. Ill. 2007);

*Bradfisch v. Templeton Funds, Inc.*, 2006 WL 3370171 (S.D. Ill. 2006);

*Bradfisch v. Templeton Funds, Inc.*, 2005 WL 1653798 (S.D. Ill. 2005);

*Potter v. Janus Inv. Fund*, 2004 WL 1173201 (S.D. Ill. 2004);

*Parthasarthy v. T. Rowe Price Int'l Funds*, 2004 WL 5190017 (S.D. Ill. 2004);

*Bradfisch v. Templeton Funds, Inc.*, 319 F.Supp.2d 897 (S.D. Ill. 2004).

Mr. Bruno also has prosecuted cases on behalf of trustees of retirement plans against a number of 401(k) plan providers for taking undisclosed payments from money managers in exchange for inclusion in the plan's offerings. The payments themselves were never disclosed to the plan trustees and were in violation of ERISA. Those cases include:

*Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013);

*Leimkuehler v. Am. United Life Ins. Co.,* 2012 WL 28608 (S.D. Ind. 2012);

- 3 -

*Leimkuehler v. Am. United Life Ins. Co.,* 2012 WL 1969052 (S.D. Ind. 2012);

*Ruppert v. Principal Life Ins. Co.*, 134 S. Ct. 152, 187 L. Ed. 2d 39 (2013);

*Ruppert v. Principal Life Insurance Co.*, 705 F.3d 839 (8th Cir. 2013);

*Ruppert v. Principal Life Ins. Co.*, 2007 WL 2025233 (S.D. Ill. 2007);

*Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488 (S.D. Iowa 2008);

*Ruppert v. Principal Life Ins. Co.*, 796 F. Supp. 2d 959 (S.D. Iowa 2010);

*Ruppert v. Principal Life Ins. Co.*, 813 F. Supp. 2d 1089 (S.D. Iowa 2010);

*Ruppert v. Principal Life Ins. Co.*, 2011 WL 13285741 (S.D. Iowa 2011);

Most recently, Mr. Bruno represented a class of investors in life and viatical settlements and defended the class's $1.087 billion settlement in the Fifth Circuit. *Matter of Life Partners, Inc.*, 708 Fed. Appx. 831 (5th Cir. 2017). The Life Partners case ranks among the largest settlements in the history of securities litigation. He also currently represents a local television advertising buyer in a national price-fixing antitrust class action pending in the United States District Court for the Northern District of Illinois. *In re Local TV Advertising Antitrust Litig.*, MDL No. 2867 (N.D. Ill.).

### MICHAEL L. SILVERMAN

Mr. Silverman is a Partner at The Bruno Firm and a trial lawyer handling civil cases. His practice is focused on complex and commercial litigation, with an emphasis on class action litigation involving antitrust, securities, consumer fraud, and contract law. Before joining The Bruno Firm, Michael Silverman practiced law at Freed Kanner London & Millen, LLC, a premier class action litigation firm. During the five years he spent at that firm, Mr. Silverman worked on dozens of state and federal class action cases.

- 4 -

Mr. Silverman has handled all phases of pre-trial litigation, including drafting and arguing dispositive motions, taking and defending depositions, propounding and responding to written discovery, and preparing fact and expert witnesses for deposition and trial. He also has extensive experience in electronic discovery matters including electronic document preservation, spoliation, production, and computer forensics. His efforts have assisted in the recovery of billions of dollars for the class members he has represented.

Mr. Silverman was recently appointed as lead counsel in a privacy class action against a medical provider for unlawfully sharing patients' and website users' private medical information without consent in violation of state privacy laws. *Muraski, et al. v. Penn Highlands Healthcare, Inc.*, No. 3:23-cv-00135 (W.D. Pa.), Dkt. No. 32. He also has represented plaintiffs in numerous state and federal courts in antitrust, consumer fraud and privacy class action cases. The following is a list of published decisions related to the prosecution of those cases:

*In re Broiler Chicken Grower Antitrust Litig.*, 2024 WL 2117359 (E.D. Okla. 2024);

*Hanney, et al v. Epic Aircraft, LLC*, 2024 WL 708865 (D. Or. 2024), adopted in full by 2024 WL 2106210 (D. Or. 2024);

*Solis v. Latium Network, Inc.*, 2018 WL 6445543 (D.N.J. 2018);

*Matter of Life Partners, Inc.*, 708 Fed. Appx. 831 (5th Cir. 2017);

*In re Steel Antitrust Litig.*, 2015 WL 5304629 (N.D. Ill. 2015);

*In re Automotive Parts Antitrust Litig.*, 2014 WL 3846095 (E.D. Mich. 2014);

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013);

*In re Prograf Antitrust Litig.*, 2013 WL 2395083 (D. Mass. 2013).

Other litigations in which Mr. Silverman played a significant role include:

*Northbrook Park District v. Mr. David's Flooring International, LLC, et al.*, 1:20-cv-07538 (N.D. Ill.)

*Muraski, et al. v. Penn Highlands Healthcare, Inc.*, 3:23-cv-00135 (W.D. Pa.)

*In re Local TV Advertising Antitrust Litig.*, MDL No. 2867 (N.D. Ill.);

*Byerson v. FabFitFun, Inc., et al.*, 16-CH-13306 (Cir. Ct. Cook Cnty. Ill.);

*Lewert v. P.F. Chang's China Bistro*, 14-CV-04787 (N.D. Ill.);

*In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, MDL 2492 (N.D. Ill.);

*In re Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.);

*Kleen Products, Inc. et al. v. Packaging Corp. of America, et al.*, 10-CV-5711 (N.D. Ill.);

*In re Optical Disk Drive (ODD) Antitrust Litigation*, MDL 2143 (N.D. Cal.);

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 4:09-CV-1967 (N.D. Cal.)

*In re Aftermarket Filters Antitrust Litig.*, MDL 1957 (N.D. Ill.);

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1917 (N.D. Cal.);

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal.).

Mr. Silverman graduated *cum laude* from DePaul University College of Law, receiving his Juris Doctor degree in 2008. While in law school, Mr. Silverman served as an Editor for the Journal of Contemporary Moral Issues as well as a Legal Writing Teaching Assistant for first-year law students. Mr. Silverman has been selected as an Illinois Rising Star, an honor awarded to only 2.5% of Illinois attorneys.

<u>**JAMIE ROBINSON**</u>

Ms. Robinson has over 25 years of experience litigating cases in state and federal courts around the country. She has served as lead counsel to several corporate clients, typically managing a team of lawyers, and has extensive experience trying cases before both judges and juries, including successfully first chairing a fifty-million-dollar jury trial in 2021. She has taken cases from their inception through trial and the appellate process, giving her a global view on how to frame issues and strategically position her clients to be successful throughout the litigation process. Ms. Robinson has historically focused on complex commercial litigation, including business torts, contract law, employment law, and land use law. She has also been involved with and led her clients through alternatives to dispute resolution, including mediation and arbitration.

Ms. Robinson's background, like some of her colleagues, allows her to bring a defense-oriented perspective to The Bruno Firm and its clients because she spent most of her career representing corporate clients on the defense side of civil cases. As a result, she can readily navigate and advise clients of the pitfalls facing unwary plaintiffs who are not familiar with nor accustomed to the litigation process. Ms. Robinson's transition to primarily plaintiffs' litigation allows her to focus on cases she is passionate about and that have greater personal stakes. Ms. Robinson is a member of the Northern District of Illinois District Court's Trial Bar.

ADAM J. FEUER

Adam J. Feuer is a dedicated trial attorney whose career has been devoted to fighting for his individual and business clients in the state and federal courts and arbitral forums of Illinois. His experience includes both supporting and first-chair roles in complex consumer and employment law cases, real property and secured transaction disputes, insurance coverage litigation, and catastrophic injury and wrongful death cases on behalf of plaintiffs. Mr. Feuer has recovered millions of dollars for his clients through settlements and verdicts in jury and bench trials.

Mr. Feuer has significant experience litigating data privacy matters. Before joining the Bruno Firm in 2025, Mr. Feuer co-led a team of attorneys prosecuting a data privacy case alleging that a hospital system configured tracking pixels on its website to cause patient PII and PHI to be shared with dozens of third parties, including Meta, without their consent. He also served as lead counsel on more than 15 data privacy cases brought under the Illinois Biometric Information Privacy Act by employees against their current or former employers.

In addition to his trial work, Mr. Feuer has managed teams of attorneys, both as the supervising attorney a Texas-based plaintiffs' firm's Chicago office, and as an attorney leading complex electronic discovery reviews for national litigation support companies. He draws on his deep experience managing all phases of complex civil litigation in his current practice concentrated on federal and state law privacy class actions brought in the federal courts of Illinois and around the country. Mr. Feuer is a member of the Northern District of Illinois District Court's Trial Bar, a distinction only afforded to lawyers who have significant first-chair trial experience. He received his law

degree from the University of Illinois Chicago John Marshall Law School in 2012, where he was a Staff Editor of the John Marshall Law Review and a Teaching Assistant for first year legal writing students.