JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: April 2, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 2, 2026 at 11:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, Defendant Planned Parenthood Federation of America, Inc. will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order entering summary judgment in its favor on Plaintiffs' First Amended Complaint.

This Motion is based on this Notice of Motion and Motion for Summary Judgment; the accompanying Memorandum of Points and Authorities; the Declaration of Jacob M. Heath, and exhibits attached thereto; as well as the pleadings, records, and files in this case, any matter as to which the Court takes judicial notice, and upon such other, further oral and documentary evidence that may be presented at or before hearing on this matter.

DATED: February 19, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *_/s/ Jacob M. Heath_*

Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.

# TABLE OF CONTENTS

Page


I. BACKGROUND ..... 3

A. Like Thousands Of Websites, PPFA's Uses Analytics Technologies To Provide Information On Website Use And Security. ..... 3

B. Plaintiffs Have No Evidence That Private Information About Their Purported Visits To PPFA's Website Was Transmitted To Meta. ..... 4

1. There is no evidence that Plaintiffs visited the PPFA Website ..... 5

2. There is no evidence that any information identifying Plaintiffs was sent to Meta. ..... 7

3. There is no evidence that Plaintiffs suffered a privacy injury. ..... 8

II. LEGAL STANDARD ..... 9

III. ARGUMENT ..... 10

A. PPFA Is Entitled To Summary Judgment Because The Undisputed Evidence Makes Clear That Plaintiffs Have Not Suffered A Legally Cognizable Injury ..... 10

B. PPFA Is Entitled To Summary Judgment Because Plaintiffs Have No Evidence That Meta Intercepted Their Communications In Real Time. ..... 14

C. PPFA Is Entitled To Summary Judgment Because The Undisputed Evidence Makes Clear That Plaintiffs Consented To PPFA Sharing Data With Meta. ..... 16

D. PPFA Is Entitled To Summary Judgment As To All Other "Third Parties" Mentioned In The First Amended Complaint. ..... 18

E. PPFA Is Entitled To Summary Judgment As To Plaintiffs' Request For Injunctive Relief Because They Have No Evidence of Any Future Threat of Harm ..... 20

IV. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 10

*B.D. v. Blizzard Entertainment, Inc.*,
76 Cal. App. 5th 931 (2022) .......... 17, 18

*Bastidas v. Good Samaritan Hospital LP*,
2016 WL 6834139 (N.D. Cal. 2016) .......... 9, 10, 11

*Casillas v. Six Flags Entertainment Corp.*,
2025 WL 3684543 (C.D. Cal. 2025) .......... 10

*Circle Click Media LLC v. Regus Management Group LLC*,
2016 WL 3879028 (N.D. Cal. 2016) .......... 20

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. 2025) .......... 14, 15, 16

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. 2025) .......... 11, 19

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 17, 18

*Lanovaz v. Twinings North America, Inc.*,
2016 WL 4585819 (N.D. Cal. 2016) .......... 20

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. 2022) .......... 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 14, 15

*Matsushita Electric Industrial. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 10

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. 2025) .......... 11

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 14

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) .................................................. 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .................................................. 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................. 10

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. 2021) .................................................. 16, 18

*SourceAmerica v. SourceAmerca*,
2018 WL 2193261 (S.D. Cal. 2018) .................................................. 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................. 10, 11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .................................................. 15

*United States v. $133,420.00 in U.S. Currency*,
672 F.3d 629 (9th Cir. 2012) .................................................. 10

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) .................................................. 20

*Winsor v. Sequoia Benefits & Insurance Services, LLC*,
62 F.4th 517 (9th Cir. 2023) .................................................. 10

**Statutes**

California Penal Code § 631 .................................................. 2, 14, 15, 16

California Penal Code § 637.2 .................................................. 10

**Rules**

Federal Rule of Civil Procedure 56 .................................................. 9

Discovery has revealed that the basic premise underlying Plaintiffs' lawsuit is simply untrue. Plaintiffs allege that when they visited a website owned and operated by Planned Parenthood Federation of America, Inc. ("PPFA"), information about those visits was transmitted to Meta, Google, Microsoft, and Yahoo!, and associated with their real-world identities. First Amended Complaint ("FAC"), ECF No. 48 ¶ 4. According to Plaintiffs, this constitutes a criminal wiretap under the California Invasion of Privacy Act ("CIPA"), which PPFA (by allowing) unlawfully aided and abetted. But despite approximately a year of extensive discovery, Plaintiffs have no evidence at all about Google, Microsoft, or Yahoo!. And their evidence as to Meta makes clear only that Meta ***did not*** associate Plaintiffs with any activity on PPFA's website. In fact, it indicates that Plaintiffs likely did not visit PPFA's website at all, much less in a way that would have allowed Meta to identify them; and that even if they had, Meta did not take the additional steps that would have been required to associate those website visits with Plaintiffs. Plaintiffs' lawsuit is thus based on a fiction. For multiple reasons, PPFA is entitled to summary judgment.

*First*, Plaintiffs lack standing under both Article III and California Penal Code 637.2, because neither suffered a legally cognizable injury. Article III standing requires Plaintiffs to show that they suffered a concrete and particularized injury-in-fact. Cal. Penal Code § 637.2 provides a cause of action only to a person who has "been injured by a violation of this chapter." Plaintiffs' theory of injury here is that Meta used the information transmitted by PPFA to "identify each" Plaintiff with their "actions and communications" on PPFA's website. *See* FAC ¶¶ 73, 80, 207. But the undisputed evidence—*i.e.*, Plaintiffs' own documents and testimony and internal data subpoenaed from Meta—makes clear that Meta did no such thing. And it reveals several reasons why: For one thing, Plaintiffs cannot even prove that they visited PPFA's website at all—much less that they visited the website with their devices and browsers configured in the specific way necessary for Meta to have received identifying information about their website activities. What is more, Plaintiffs themselves have admitted that even where "Meta has the ability" to identify individuals like Plaintiffs with their activities on a website, "they don't actually do" so as a general matter. Ex. 1 (Nov. 17, 2025 H'rg

Tr.) at 5:1–3.[1] The testimonial and documentary evidence all points in the same direction—and confirms that Meta did not, in fact, identify either Plaintiff with her purported actions on PPFA's website during the Class Period (*i.e.*, September 1, 2022 to July 6, 2023). As a result, Plaintiffs did not suffer the injury on which they base their suit, and do not have standing to maintain this action. This alone is reason to grant summary judgment to PPFA.

*Second*, Plaintiffs have failed to adduce evidence to sustain their claim on the merits. To prove a violation of CIPA, Plaintiffs must show—at a minimum—that Meta read (or attempted to read) the contents of their communications with PPFA's website in real time. Cal. Penal Code § 631. But Plaintiffs offer no evidence that any data was even transmitted to Meta while Plaintiffs' communications were "in transit," as § 631 demands. Nor can Plaintiffs show that Meta attempted to read such data during that time. These evidentiary gaps are no accident: as another court in this District recently concluded—when considering an evidentiary record substantially more fulsome than what Plaintiffs have here—the Meta Pixel does not transmit communication data to Meta until ***after*** it has reached the underlying website, and Meta could not possibly attempt to read or learn the data's meaning until later still. And without any underlying violation by Meta, PPFA cannot be held liable for aiding and abetting under California Penal Code § 631(a).

*Third*, even if Plaintiffs could overcome these fatal flaws, Plaintiffs' claim still fails because Plaintiffs consented to exactly the same data sharing with Meta about which they now complain. *See* Cal. Penal Code § 631 (outlawing only activity undertaken "without …consent"). [redacted] Facebook's Privacy Policy, in turn, specifically discloses that Meta can receive "information that advertisers, businesses and other partners provide [it] about [users'] activity off Meta Company Products," and that it can "associate[]" that information with users. Exs. 26 & 27 (Facebook Privacy

[1] All exhibit references herein shall refer to exhibits to the Declaration of Jacob M. Heath filed concurrently with this Motion.

Policy). [redacted] Plaintiffs cannot have had a reasonable expectation of privacy that their activities on PPFA's Website would not be shared with Meta. Accordingly, they cannot sustain a claim under § 631.

*Fourth*, the record is devoid of any evidence as to a number of other third-party analytics tools mentioned in the First Amended Complaint, and summary judgment is warranted as to these other third parties as well.

*Finally*, Plaintiffs' request for injunctive relief independently fails because Plaintiffs do not even try to show that PPFA's website is currently configured in a way that is likely to cause imminent harm. To the contrary, Plaintiffs have conspicuously structured their case specifically to *avoid* adducing any evidence about PPFA's website as it stands currently—or at any time since 2023. *See* ECF No. 93 at 19. Plaintiffs have constructed their case, in other words, to be entirely backward-looking, focusing solely on a years-old version of PPFA's website. That is their choice to make, but it means that as a result Plaintiffs cannot establish entitlement to an injunction—a form of relief that is exclusively prospective.

Discovery has thus thoroughly debunked the faulty premises on which Plaintiffs have based their lawsuit. No reasonable jury could find for Plaintiffs in light of the undisputed evidence. Summary judgment should be awarded in PPFA's favor.

## I. BACKGROUND

### A. Like Thousands Of Websites, PPFA's Uses Analytics Technologies To Provide Information On Website Use And Security.

PPFA is a 501(c)(3) nonprofit corporation and membership organization. PPFA has nearly four dozen members, each of which is an independently incorporated and operated non-profit health care provider. *See* Ex. 4 at 1; *see also* Ex. 5 at 13–19. PPFA does not itself provide health care services. Instead, it provides a variety of support services to its local member affiliates, who collectively operate approximately 550 separate health centers across the country, which provide healthcare to more than 2 million people each year. Ex. 4 at 1; Ex. 6 at 1. PPFA's work in support of sexual and reproductive health care includes operating an informational website at

www.plannedparenthood.org, where it posts information about various health-related topics. Ex. 4 at 1–2. PPFA's Website—*i.e.*, "www.plannedparenthood.org and its related webpages … wholly owned and operated by [PPFA]," (the "Website") FAC ¶ 2—is distinct from websites associated with the affiliates and their health centers, which (unlike PPFA's Website) are run by the affiliates, not by PPFA. Ex. 4 at 1–2. It is only on affiliates' websites—and not on PPFA's Website itself—that a website visitor can create (and enter the contact information necessary to book) an appointment. Ex. 5 at 13–19.

Like many websites—including the Northern District of California's—PPFA's Website uses analytics technologies to help PPFA understand how visitors to the Website interact with it. *See* Ex. 8 (Vint Report) ¶¶ 30–32. These technologies provide website operators like PPFA (as well as this Court, and innumerable others) with aggregated information—*i.e.*, information about website visitors as a whole, as opposed to information connected to any particular visitor—on topics like (a) website traffic (*e.g.*, number of unique visits to a webpage, how visitors land on the website, number of purchases), (b) marketing campaign efficacy (*e.g.*, percentage of visits that led to purchases), and (c) website security (*e.g.*, classification of visitors as humans rather than bots or malicious attackers). *See id.* ¶ 32.

### B. Plaintiffs Have No Evidence That Private Information About Their Purported Visits To PPFA's Website Was Transmitted To Meta.

Plaintiffs claim that when they visited PPFA's Website during the Class Period, a particular analytics technology employed there—the Meta Pixel—automatically transmitted information to Meta, including information that "Meta use[d]" to "identify" Plaintiffs "and their actions on [PPFA's] Website." *See, e.g.*, FAC ¶ 73. Plaintiffs allege that because this transmission supposedly occurred and allowed for communications to be read by Meta in real time, it constituted a violation of CIPA's prohibition on illegal wiretapping. *Id.* ¶ 208. But despite approximately a year of extensive discovery, Plaintiffs have no evidence showing that any information about their visits to PPFA's Website was transmitted to Meta (or, indeed, to anyone else, *see infra* § III.D), read in real time, and associated with their real-world identities.

**1. There is no evidence that Plaintiffs visited the PPFA Website**

As a threshold matter, the evidence reveals that Plaintiffs do not know whether they actually visited PPFA's Website and have no corroborating evidence that they did. [redacted]

8. [redacted]

But it is not just Plaintiffs' statements that cast doubt on their claims that they visited PPFA's Website; their own documents betray them. [redacted] That makes sense, as it is actually ***impossible*** to use PPFA's Website to schedule the kinds of appointments that Plaintiffs claim to have booked. Ex. 5 at 19 (Third Supp. Resp. to Rog. 3); *see also* Ex. 11 (PPFA-Hinton_000026343) (PPOSBC home page instructing "Call Us" to make appointments).

Plaintiffs' other documentary evidence—scant as it is—is much the same, as it too includes no reference to the PPFA Website that Plaintiffs claim to have visited, and instead refers only to the [redacted] *See* Exs. 12–14. In fact, Plaintiffs have produced *no* evidence of *any* visit to PPFA's Website. PPFA sought discovery from Plaintiffs

including a forensic investigation of Plaintiffs' devices, their browser histories, and any other evidence that may exist that would reflect such a visit. ECF No. 60. Plaintiffs told PPFA and this Court that they had no such evidence from the Class Period and their searches of their devices "yielded nothing" regarding visits to PPFA's Website. ECF No. 63 at 1. The Court took them at their word and denied PPFA's request for forensic examination of those devices, but reminded Plaintiffs that they "bear the burden of proof and production of evidence for their claims, and will be held to that representation." ECF No. 64. That is a burden that Plaintiffs have not carried.

Nor does PPFA itself have any record of Plaintiffs visiting its Website. Experts for PPFA and Plaintiffs alike both examined the data contained in the export of visit-related information from PPFA's analytics data repository, and were unable to match any information there to either Plaintiff. Ex. 15 (Cohen Report) ¶ 130; Ex. 16 (Shafiq Dep. Tr.) at 99:14–100:4 (testifying that he did not look for "specific transmissions . . . in the Google Analytics log files").

**2. There is no evidence that any information identifying Plaintiffs was sent to Meta.**

What is more, even if Plaintiffs did visit PPFA's Website, they have no evidence that they did so in circumstances in which identifying information about them would have been sent to Meta. While the Meta Pixel can, in certain circumstances, convey to Meta a "Facebook account identifier" associated with a particular PPFA Website visitor, Ex. 17 (Shafiq Report) ¶ 40(d), those circumstances are highly circumscribed. Ex. 8 (Vint Report) ¶¶ 95–135. The Facebook account identifier—the "c_user cookie" with an associated "c_user value"—will be conveyed to Meta only if at least four separate conditions are all simultaneously satisfied: (1) the visitor had a Facebook account; (2) the visitor was signed into their Facebook account when they visited PPFA's Website; (3) the visitor used the same device and browser to sign into their Facebook account and visit PPFA's Website; and (4) the visitor's browser was not configured either by default (as, *e.g.*, Safari is) or manually (*e.g.*, via Firefox's Facebook Container) to block third-party cookies. *Id.*

Here, Plaintiffs have no evidence showing that these highly specific conditions were met. To the contrary, Plaintiffs concede that their respective devices contain *no* evidence that would

substantiate any of their claims. *See* ECF No. 63 at 1 (Plaintiffs conceding that "Plaintiffs' search of their devices for information regarding visits to PPFA's website yielded nothing"); ECF No. 64 (Court ordering that Plaintiffs "will be held to that representation"). And Plaintiffs' testimony does nothing to fill in the gaps. Nor does it contradict the evidence produced by Plaintiffs and by Meta (discussed below), showing that Meta did not associate any activity on the PPFA Website with Plaintiffs in the Class Period. [redacted] Plaintiffs have accordingly failed to show that identifying information about them was transmitted to Meta—and so have in turn failed to show that Meta used that information to associate their PPFA Website visits with their real-world identities.

**3. There is no evidence that Plaintiffs suffered a privacy injury.**

In any event, even assuming that Plaintiffs did visit PPFA's Website, and in circumstances where identifying information would have been transmitted, the evidence separately shows that they did not suffer the harm on which they base their claim—*i.e.*, that information was transmitted to Meta which it used "to identify" them and "their actions and communications on [PPFA's] Website." FAC ¶¶ 73, 80, 207. [redacted]

[redacted]

The evidence in this case thus makes it overwhelmingly clear that the basic premise of Plaintiffs' suit—that they visited PPFA's Website, and had information about those visits associated by Meta with their real-world identities—is simply untrue. [redacted] No reasonable jury could find for them on this record.

## II. LEGAL STANDARD

A defendant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[2] A Facebook user's Off Meta Activity Report will contain a complete list of all of that user's "off Facebook/Meta activity, or the sites they visited which run the Facebook Pixel" for which Meta has a record connected to the user. Ex. 8 (Vint Report) ¶ 52. A Facebook user can generate such a report by accessing their Facebook profile dashboard, [redacted] *Id.*; Exs. 20–21.

Once the moving party has met its "initial burden of demonstrating the absence of a genuine issue of material fact," the "burden shifts to the nonmoving party to 'set forth … specific facts showing that there is a genuine issue for trial.'" *Bastidas v. Good Samaritan Hosp. LP*, 2016 WL 6834139, at *3 (N.D. Cal. 2016) (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Similarly, "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Bastidas*, 2016 WL 6834139, at *3.

## III. ARGUMENT

### A. PPFA Is Entitled To Summary Judgment Because The Undisputed Evidence Makes Clear That Plaintiffs Have Not Suffered A Legally Cognizable Injury.

"[T]o withstand a motion for summary judgment," Article III requires a plaintiff to "set forth by affidavit or other evidence specific facts" from which "a fair-minded jury could find that the [plaintiff] had standing." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (internal quotation marks and citations omitted). This requires a plaintiff to adduce evidence establishing (among other things) that she suffered a concrete, particularized, and actual or imminent injury. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). California Penal Code § 637.2—which provides the cause of action under which Plaintiffs seek to proceed here, FAC ¶ 214—imposes a similar requirement. That provision limits a private right of action only to a "person who has been *injured* by a violation" of § 631. Cal. Penal Code § 637.2(a) (emphasis added). In so doing, it imposes—as a matter of statutory standing—a requirement analogous to Article III's constitutional injury-in-fact minimum. *See Casillas v. Six Flags Ent. Corp.*, 2025 WL 3684543, at *9 (C.D. Cal. 2025) (treating statutory and Article III standing interchangeably); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) ("address[ing] both [Article III and § 637.2] arguments

together" because they are "interrelated"). Either way, to show the requisite injury, a plaintiff cannot merely point to a statutory right to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016); *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (rejecting contention that where "legislature enacted a statute protecting a substantive privacy right," plaintiffs may "satisfy Article III" merely by "alleging a violation of that statute"). Instead, she must show that there has been a "concrete and particularized" invasion of a legally protected interest. *Spokeo*, 578 U.S. at 340; *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *2 (C.D. Cal. 2025).

To make that showing in a case like this, where Plaintiffs claim to have suffered a privacy injury because their website activities allegedly were disclosed to third parties, Plaintiffs must introduce evidence showing that the third party *actually linked* their activities on the website to their real-world identities. *Heiting*, 2025 WL 736594, at *3 (explaining that standing exists only where plaintiffs are "indeed de-anonymized"). The mere fact that a third party "may be capable" of doing so is insufficient. *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *7 (C.D. Cal. 2025). That is because Article III injury-in-fact requires a harm that is "real" and "actually exist[s]," not one that is merely hypothetical. *Id.* Accordingly, to give rise to a cognizable privacy harm, Plaintiffs must show that "third parties" "actually" associated their activities on PPFA's website with their identities—not just that they "could." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012).

Plaintiffs have no such evidence. The only third party about which they have obtained any relevant evidence whatsoever is Meta. *See infra* § III.D; *see also Bastidas*, 2016 WL 6834139, at *3 (summary judgment appropriate where plaintiff fails to "set forth … specific facts showing that there is a genuine issue for trial"). And the undisputed evidence establishes—in two separate ways—that Meta ***did not*** link Plaintiffs with their activities on PPFA's Website during the Class Period. [redacted]

[redacted] But it does not, meaning Plaintiffs have no evidence that either of them suffered any injury.

That is hardly surprising, as other evidence in the case points to several explanations for why Meta did not associate Plaintiffs with their activities on PPFA's Website.

*First*, the evidence indicates that Plaintiffs may never have even visited PPFA's Website during the Class Period. As discussed above, *supra* § I.B.1, [redacted] In fact, the undisputed evidence is clear that it is ***impossible*** to use PPFA's Website to schedule the kinds of appointments that Plaintiffs claim to have booked. *See* Ex. 5 at 13–19. What is more, the documentary evidence likewise includes no indication that Plaintiffs visited PPFA's Website. [redacted] And PPFA's records include no data that either Plaintiffs' expert or PPFA's expert could match with any visit by Plaintiffs. Ex. 15 ¶ 130; Ex. 16 at 99:14–100:4; 40:21-4. Without any evidence that they were even on PPFA's Website, it is impossible for Plaintiffs to prove any interception by Meta of their communications by any tool on the Website—much less any resulting injury.

*Second*, even if Plaintiffs had visited PPFA's Website, there is no evidence the Plaintiffs did so in such a way that would have resulted in Meta receiving data that would have allowed it to associate those visits with Plaintiffs. As explained above, *supra* § I.B.2, information conveying to Meta a "Facebook account identifier" associated with a PPFA Website visitor, Ex. 17 (Shafiq Report) ¶ 40(d), will be transmitted only in the limited circumstances where: (1) the visitor had a

Facebook account; (2) the visitor was signed into their Facebook account when they visited PPFA's Website; (3) the visitor used the same device and browser to sign into their Facebook account and visit PPFA's website; and (4) the visitor's browser was not configured either by default (as, *e.g.*, Safari is) or manually (*e.g.*, via Firefox's Facebook Container) to block third-party cookies. Ex. 8 ¶¶ 95–135. Plaintiffs do not even try to make each of those showings. They concede that their respective devices contain no evidence that would substantiate any of their claims. *See* ECF No. 63 at 1. [redacted] Plaintiffs have accordingly failed to show that identifying information about them was transmitted to Meta—and so cannot show that Meta used that information to associate their PPFA Website visits with their real-world identities.

*Third*, even if Plaintiffs had visited PPFA's Website and had done so under conditions that allowed for transmission of identifying information about them, there is no evidence that Meta used that information to actually identify them (*i.e.*, associate them with their real-world identities). Plaintiffs themselves have admitted that—even in situations where Meta receives information that would allow them to match a website visitor's activities to their real-world identity—"[w]hile Meta has the ability to do the matching, they don't actually do the matching" as a general matter. Ex. 1 (Nov. 17, 2025 H'rg Tr.) at 5:1–3. Rather, Meta has "to take another step to do that," through "a separate process," which it does not do as a matter of course. *Id.* at 5:3–5. And as Plaintiffs themselves admit, there is no evidence that Meta took that additional step as to Plaintiffs. *Id.* at 5:14–22. To the contrary, the only evidence in the record on this point indicates that Meta did not. As noted above, Meta only produced a single document in this case—[redacted]—and Plaintiffs did not seek to depose Meta or move to compel production of any other information in response to their subpoena. Plaintiffs are thus left, at best, with rank speculation about what Meta may have done (and at worst, with evidence that directly contradicts their allegations)—which is

plainly insufficient to carry their burden of proof or to create a genuine dispute of material fact sufficient to warrant a trial.

Ultimately, it does not matter why Meta did not identify Plaintiffs with their purported activities on PPFA's Website. For purposes of this motion, all that matters is that Plaintiffs have no evidence that Meta (or any other company, *see infra* § III.D) associated them with their activities on PPFA's Website. Plaintiffs therefore cannot show a legally cognizable privacy injury, and accordingly have not shown that they have standing to maintain this lawsuit. For this reason alone, summary judgment should be granted in PPFA's favor.

**B. PPFA Is Entitled To Summary Judgment Because Plaintiffs Have No Evidence That Meta Intercepted Their Communications In Real Time.**

PPFA is separately entitled to summary judgment on the merits because Plaintiffs have no evidence that Meta attempted to "read" or "learn the contents or meaning of any … communication while the same is in transit," as § 631(a) demands. Cal. Penal Code § 631(a). Because Plaintiffs cannot establish a direct violation by Meta (or anyone else, *see infra* § III.D), PPFA cannot be liable for facilitating such a violation. *See id.*; ECF No. 34 at 3 ("The parties agree that PPFA, as a participant in the communications, may be liable only on an aiding-and-abetting theory for third-party access and use of disclosed data.").

It is well-established that a communication is "in transit" under § 631(a) only while it is passing "from the person sending the communication" (here, Plaintiffs) "to its intended recipient" (here, PPFA's Website). *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. 2025); *accord, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (communication was in transit only "before it reached its intended recipient"). Accordingly, there can only be a violation of § 631 if Meta [1] read or learned the contents of Plaintiffs' communications (or attempted to do so) [2] during an exceptionally "narrow window" of time—the "milli-seconds before" a website input made on Plaintiffs' devices reached PPFA's system. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014) (citation omitted). Plaintiffs have no evidence that Meta intercepted their communications within that narrow timeframe (or at all).

Even assuming Plaintiffs were on PPFA's Website, there is no evidence that any communications they may have had there were transmitted to Meta in the milli-seconds before those communications reached PPFA's systems (and so were no longer "in transit"). With good reason: that simply is not how the Meta Pixel works. As another court recently explained when dismissing similar claims based on this same technology at the summary judgment stage: "[E]vent data is transmitted to Meta about 0.2 seconds ***after*** the visitor's action is transmitted to the website." *Doe*, 2025 WL 2971090, at *5 (emphasis added). As a result, Judge Chhabria explained, Meta had performed no interception of the website visitors' communications while they were "in transit from the person sending the communication to its intended recipient." *Id.*

The same result must obtain here. Faced with this fundamental flaw in their case, Plaintiffs have simply ignored the timing of transmissions to Meta entirely and developed no affirmative record that would allow them to satisfy § 631(a)'s timing requirement. PPFA's expert Jim Vint, however, has explained that "transmissions" travel to "a third party" like Meta only after a website user's "browser makes a request of the PPFA web server," "the web server responds by sending packets of data back to the browser," and "those packets are reassembled." Ex. 8 (Vint Report) ¶ 143. Plaintiffs' lack of evidence on this critical point (especially in light of PPFA's affirmative evidence to the contrary) dooms their claim. *Doe*, 2025 WL 2971090, at *5; *see also, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (dismissing CIPA claim where plaintiffs did not even allege that "the interception occurs" before a communication "reaches" the website at issue); *Mastel*, 549 F. Supp. 3d at 1137 (similar).

Additionally, Plaintiffs offer no evidence that Meta read the contents of their communications (or even attempted to do so) before they reached PPFA. As Judge Chhabria explained, a person "[r]eads[] or learn[s] the contents of a communication" only if they make "'some effort at understanding the substantive meaning' of the communication." *Doe*, 2025 WL 2971090, at *5 (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)). And because § 631 requires that the reading or learning occur "while the [communication] is in transit," the statute can be violated only if the effort at substantive understanding occurs before "the

communication has already traveled from the website visitor to the website operator." *Id.* Thus, even if Plaintiffs had been able to show that information traveled to Meta while their communications were still in transit—which they did not—they ***separately*** would have been required to show that Meta ***contemporaneously*** attempted to "read" or "learn the contents or meaning of" that "information." Cal. Penal Code § 631(a).

Once more, there is no such evidence. Nor could there be. As *Doe* emphasized, "event data is encrypted while being sent to Meta." 2025 WL 2971090, at *5. The whole point of encryption is to make reading impossible, since "[e]ncrypted data is sent in packets that have to be reassembled before anything can be done with the data." *Id.*; *see* Ex. 8 (Vint Report) ¶ 143 (transmitted data functional only after "packets are reassembled"). Such reassembly necessarily takes place later on, after communications have arrived at their intended destination and are no longer in transit. *See Doe*, 2025 WL 2971090, at *5 (Meta's "filtering of the data necessarily happens after" communications are in transit); Ex. 8 ¶ 143. So any purported effort by Meta to read or learn the contents of Plaintiffs' communications would have occurred too late to be actionable under § 631(a). For this separate reason, PPFA is entitled to summary judgment on Plaintiffs' CIPA claim.

### C. PPFA Is Entitled To Summary Judgment Because The Undisputed Evidence Makes Clear That Plaintiffs Consented To PPFA Sharing Data With Meta.

Plaintiffs' CIPA claim independently fails because the undisputed evidence is clear that Plaintiffs consented to the very data collection about which they now complain. As the text of § 631(a) says explicitly, an interception violates the statute only if it occurs "without the consent of all parties to the communication." Cal. Penal Code § 631(a); *see also Silver v. Stripe, Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. 2021). As Plaintiffs themselves acknowledge, the only parties to the "communications" here were Plaintiffs and PPFA. FAC ¶ 4. And PPFA obviously consented to the collection of analytics data by Meta, as PPFA was the one who "voluntarily embedded" the Meta Pixel that collected it. FAC ¶ 5. Thus, as long as Plaintiffs also consented, there is no violation of Section 631(a).

The undisputed evidence establishes that Plaintiffs did exactly that. In particular, the record makes clear that both Plaintiffs registered for, and regularly used, Facebook accounts when any "reasonably prudent user would have been aware" that doing so constituted acknowledgment of Facebook's "privacy policy." *Silver*, 2021 WL 3191752, at *4. That privacy policy specifically discloses both that Meta receives "information that advertisers, businesses and other partners provide us about [users'] activity off Meta Company Products," "whether or not [the user is] logged in or ha[s] an account on our Products," and that Meta can "associate[]" that information with users, Ex. 26; Ex. 27 (Facebook Privacy Policy). As courts have recognized, that kind of clear disclosure means that individuals who choose to register for and make use of Facebook accounts have "no reasonable expectation of privacy" that data they generate via their visits to other websites will not be shared with Meta. *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. 2022).

That is exactly the case with Plaintiffs here. [redacted] There is accordingly no doubt that Facebook's privacy policy was presented to Plaintiffs "in a manner that made it apparent [Plaintiffs were] assenting to those very terms" by using their Facebook accounts. *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 944 (2022).

That conclusion is amplified by the fact that, in signing up for a Facebook account, Plaintiffs were knowingly entering into an ongoing relationship with Meta. As courts have explained, in

transactions like this, in which "a consumer [is] signing up for an ongoing account," it is "reasonable to expect that the typical consumer … contemplates entering into a continuing, forward-looking relationship governed by terms and conditions." *Blizzard*, 76 Cal. App. 5th at 951 (citation omitted); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1016 (9th Cir. 2024). In other words, when someone like Plaintiffs (or at least a reasonable person in their position) decides to sign up for a Facebook account, they *expect* that they are agreeing to various terms and conditions with Meta to govern that account membership.

Unsurprisingly, courts routinely find this kind of "sign-in wrap" presentation—*i.e.*, where the website "does not require users to review the Terms" of Use prior to continuing (*e.g.*, with an interface that ensures that user scrolls through them), but nevertheless "require[s] [users] to advance through a sign-in screen which states" that by continuing they "agree to the Terms"— sufficient to put a reasonable consumer on notice. *See e.g.*, *Keebaugh*, 100 F.4th at 1014; *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023) (inquiry notice satisfied where user proceeded past page stating "By continuing past this page, you agree to the Terms of Use"); *Blizzard*, 76 Cal. App. 5th at 954 (inquiry notice satisfied by notice that "by clicking on the 'Continue' button," the user "would be agreeing to all of the terms"). And as Judge Gonzalez Rogers explained, because "[c]ourts consistently hold that terms of service and privacy policies … can establish consent to the alleged conduct challenged under various [the] wiretapping statutes," including § 631, when the user of a service is presented with a privacy policy through a "sign-in wrap" mechanism (as Plaintiffs were here), that is sufficient to defeat a claim under § 631. *Silver*, 2021 WL 3191752, at *4.

For this independent reason, the undisputed evidence makes clear that no reasonable jury could find for Plaintiffs on their CIPA claim.

**D. PPFA Is Entitled To Summary Judgment As To All Other "Third Parties" Mentioned In The First Amended Complaint.**

For all the reasons discussed above, PPFA is entitled to summary judgment as to Plaintiffs' claims involving Meta, the only company about which Plaintiffs have even tried to make a case. While Plaintiffs have occasionally gestured at the existence of other third-party analytics

technologies, *see, e.g.*, FAC ¶ 4 (mentioning Google, Microsoft, and Yahoo!); Ex. 17 at ¶ 61 (briefly mentioning TikTok, Snap, Hotjar, and the Trade Desk), they have adduced no evidence as to any of them—either as to standing or on the merits.

As discussed above, *supra* § III.A, to establish standing at this stage of the litigation, Plaintiffs must point to evidence that the third party at issue *actually linked* their activities on PPFA's Website to their real-world identities. *Heiting*, 2025 WL 736594. Plaintiffs, however, do not have a shred of evidence showing that any company other than Meta did any such thing (and, as discussed above, they also lack such evidence as to Meta). As Plaintiffs admit, Google responded to their subpoena by informing Plaintiffs that it did not have "the requested PPFA website user event data from the class period." Robinson Decl. ¶ 16. Plaintiffs served subpoenas on Yahoo! and Microsoft as well and likewise received no evidence to substantiate their claims regarding the tools created by either of those companies. Plaintiffs' evidence as to the other third parties is anemic at best and cannot sustain a CIPA claim. As a result, all they have to offer is a statement from their expert that PPFA "installed tracking technologies from third parties such as … TikTok Pixel, Microsoft/Bing Universal Event Tracking (UET), Snap Pixel, Hotjar, Yahoo! Analytics, and The Trade Desk tracking tag." Ex. 17 (Shafiq Report) at ¶ 61. But the operative question for standing is not whether PPFA installed those technologies, but rather whether any of those companies actually linked Plaintiffs with their activities on PPFA's Website. And on that critical question, Plaintiffs and their expert offer nothing at all. Accordingly, Plaintiffs have failed to demonstrate standing as to any of these other third parties.

The merits analysis is no different. As discussed above, *supra* § III.B, to survive summary judgment on their CIPA claim, Plaintiffs must point to evidence showing that each third party intercepted their communications while they were in transit. That, in turn, requires a detailed factual analysis of the precise mechanisms by which each company's analytics technology works—with a particular focus on the timing of those functions. Plaintiffs come nowhere near making such a showing. As shown above, their evidence as to Meta entirely fails to show that any supposed interception occurred in real time. *Supra* § III.B. And their evidence with respect to Google is no

better. Their expert—whose opinions they rely on for this point—analyzes Google's technology and Meta's together, with the exact same discussion. Ex. 17 (Shafiq Report) at ¶¶ 66–97. And Plaintiffs do not even try to introduce any evidence regarding Microsoft or Yahoo! on this topic. (Their expert, for instance, exclusively focuses his analysis on Meta's and Google's technologies. *See id.*) As a result, Plaintiffs have failed to show that any other third-party technologies intercepted their communications while in transit. For this separate reason, too, PPFA is entitled to summary judgment as to all other third parties mentioned in the FAC.

### E. PPFA Is Entitled To Summary Judgment As To Plaintiffs' Request For Injunctive Relief Because They Have No Evidence of Any Future Threat of Harm.

Plaintiffs assert that they are entitled to unidentified injunctive relief. FAC ¶ 217. However, to have standing to pursue injunctive relief, they must prove that they face a threat of injury that is "actual and imminent, not conjectural or hypothetical" and that there is "a sufficient likelihood" that they "will again be wronged in a similar way" that they claim has happened in the past. *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (citation omitted) (dismissing injunctive relief claim for lack of allegations of future potential harm). Where, as here, Plaintiffs have "the ultimate burden of proof," PPFA is entitled to summary judgment if it can establish Plaintiffs' "failure 'to make a showing sufficient to establish the existence of an element essential to'" Plaintiffs' claim. *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL 3879028, at *2 (N.D. Cal. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Plaintiffs must "offer and cite evidence demonstrating that a genuine issue exists as to whether the alleged wrongdoing will occur in the future," but they have no such evidence. *SourceAmerica v. SourceAmerca*, 2018 WL 2193261, at *6 (S.D. Cal. 2018) (granting summary judgment to defendant where plaintiff "points to no evidence at all" of threat of future harm); *see also Lanovaz v. Twinings N. Am., Inc.*, 2016 WL 4585819, at *3 (N.D. Cal. 2016) (granting summary judgment to defendant where "plaintiff cites no evidence that defendant is likely to" commit alleged violation in the future and thus "the court finds no material dispute of fact as to the threat of future injury").

There is no evidence in the record regarding the current state of the PPFA Website, including whether the Meta Pixel is still in use, how it may or may not be configured, and what it may or may not be collecting.[3] PPFA implemented a cookie banner and consent mechanism in March 2024 that remains in place today. *See* Ex. 25 at 14–16; *see also* www.plannedparenthood.org. Just as there is no evidence about what Meta did with information in 2022 or 2023, Plaintiffs have adduced no evidence about what Meta is doing in 2026. [redacted] If Plaintiffs cannot prove that they intend to visit the Website again and what will happen if they do—including whether any tool will collect information without their consent and what will be done with any information that may be collected—they cannot obtain prospective relief.

## IV. CONCLUSION

For the foregoing reasons, PPFA respectfully requests that the Court grant summary judgment in its favor.

DATED: February 19, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.

[3] Plaintiffs themselves limited the factual record on that front, affirmatively seeking discovery only through the date of the filing of the original Complaint and resisting PPFA's attempts to obtain discovery from them about any activity after September 1, 2023. *See* ECF No. 65 (discovery brief seeking to compel production of post-complaint information).