JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION TO EXCLUDE TESTIMONY OF DR. ZUBAIR SHAFIQ**<br><br>Date: April 2, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 2, 2026 at 11:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, Defendant Planned Parenthood Federation of America, Inc. will and hereby does move this Court for an order excluding certain testimony of Plaintiff's expert witness, Dr. Zubair Shafiq.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Jacob M. Heath, and exhibits attached thereto; as well as the pleadings, records, and files in this case, any matter as to which the Court takes judicial notice, and upon such other, further oral and documentary evidence that may be presented at or before hearing on this matter.

DATED: February 19, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *_/s/ Jacob M. Heath_*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................2

A. Dr. Shafiq's Opinion That Google And Meta *Actually* Linked Visitors' Activities On PPFA's Website To Their Identities Is Inadmissible Because It Was Not Disclosed In His Expert Report. ....................................................................................2

B. Dr. Shafiq's Opinion That Google And Meta *Actually* Linked Visitors' Activities On PPFA's Website To Their Identities Would Be Inadmissible Even If It Had Been Timely Disclosed. ....................................................................................5

1. Dr. Shafiq's opinion is inadmissible because it is unreliable. ............................ 5

2. Dr. Shafiq's opinion is inadmissible because he has failed to establish that experts in the field rely upon the type of document that Dr. Shafiq did............. 9

3. Dr. Shafiq's opinion is inadmissible because it merely offers lay characterization of documents. ........................................................... 10

III. CONCLUSION .......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Electronics Co.*, 2013 WL 6073326 (N.D. Cal. 2013) .......... 2

*Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506 (6th Cir. 2014) .......... 5, 8, 9

*Black v. M & W Gear Co.*, 269 F.3d 1220 (10th Cir. 2001) .......... 8

*Carnegie Mellon University v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024 (N.D. Cal. 1999) .......... 9, 10

*Cotton ex rel. McClure v. v. City of Eureka*, 2011 WL 4047490 (N.D. Cal. 2011) .......... 2

*Cummins v. Lyle Industries*, 93 F.3d 362 (7th Cir. 1996) .......... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .......... 5

*Diamond X Ranch, LLC v. Atl. Richfield Co.*, 2018 WL 1684288 (D. Nev. 2018) .......... 2

*Holley v. Gilead Sciences, Inc.*, 2023 WL 2469632 (N.D. Cal. 2023) .......... 10

*In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 3116763 (S.D.N.Y. 2023) .......... 7

*Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127 (N.D. Ill. 2014) .......... 8

*Stein v. Pacific Bell*, 2007 WL 831750 (N.D. Cal. 2007) .......... 11

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) .......... 9

*United States v. Pacific Gas & Electric Co.*, 2016 WL 1640462 (N.D. Cal. 2016) .......... 10

*Waymo LLC v. Uber Technologies, Inc.*, 2017 WL 5148390 (N.D. Cal. 2017) .......... 10, 11

**Rules**

Federal Rule of Civil Procedure 26 .................... 2
Federal Rule of Civil Procedure 37 .................... 2, 3
Federal Rule of Evidence 702 .................... 11
Federal Rule of Evidence 703 .................... 9

## I. INTRODUCTION

Plaintiffs are scrambling to fix a fundamental flaw in their lawsuit. For most of this litigation, Plaintiffs have built their case around their contention that "third parties" like Meta and Google, who receive information from Planned Parenthood Federation of America, Inc. ("PPFA") about activity on its Website (*i.e.*, "www.plannedparenthood.org and its related webpages … wholly owned and operated by [PPFA]," FAC ¶ 2), "***can*** link or associate this information with a particular individual or household." Ex. 1 (Shafiq Report) ¶ 16 (emphasis added). But as PPFA explained in its Opposition to Plaintiffs' Motion for Class Certification ("Class Cert. Opp."), ECF No. 104, merely showing that a company like Meta "may be capable" of using the information it collects "to identify website visitors," is insufficient to establish a legally cognizable injury. *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *1, *6–*7 (C.D. Cal. 2025); *see also* Class Cert. Opp. 16–17 (collecting cases). Plaintiffs wisely did not dispute that well-established point of law; instead, they sharply pivoted, suddenly arguing—for the first time in their Reply in Support of their Motion for Class Certification, ECF No. 105 at 5—that Meta and Google *actually* identified specific individuals with their actions on PPFA's Website. And they tried to support that new contention (which they arrived at only after discovery had closed) with a similarly new opinion from Dr. Zubair Shafiq—an expert whose report in a similar case (based on information sent to TikTok, instead of Meta or Google) was recently found to have such "numerous serious problems" that it was affirmatively "disclaim[ed]" by the plaintiffs. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *3 (C.D. Cal. Dec. 2024). Dr. Shafiq's opinion here is similarly problematic, and hence inadmissible, for multiple reasons.

As a threshold matter, Dr. Shafiq's opinion was not disclosed in his expert report. Although Dr. Shafiq listed the three opinions that his report disclosed multiple times, the claim that Meta actually linked Plaintiffs' identities with their supposed activity on the PPFA Website is not one of them. To the contrary, Dr. Shafiq opined that "third parties ***can*** link or associate [identifying] information with a particular individual or household," Ex. 1 (Shafiq Report) ¶ 16 (emphasis added),

while carefully avoiding any assertion that they ***actually*** did so here. Those are fundamentally different claims, and Dr. Shafiq's new, undisclosed opinion should be excluded.

Just as important, the new opinion that Plaintiffs seek to elicit from Dr. Shafiq is demonstrably unreliable. *First*, the sole document that Dr. Shafiq relies on does not, in fact, support his claim—which is unsurprising, given that Dr. Shafiq's new opinion is affirmatively contradicted by other evidence in this case. *Second*, Dr. Shafiq's reliance on that single, publicly available document separately runs afoul of the prohibition on hearsay, and does not qualify for Rule 703's hearsay exception, because Dr. Shafiq has failed to show that experts in the field ordinarily rely on the kinds of document he invokes here. *Finally*, Dr. Shafiq's opinion is based not on any expertise that he claims to possess, but rather on mere lay characterization of a single, publicly available document.

Plaintiffs thus should be barred from offering Dr. Shafiq's undisclosed and unreliable opinion that "Meta and Google ***actually*** linked class members' PPFA Website searches and page views … to their specific identities." ECF No. 107 at 5.

## II. ARGUMENT

### A. Dr. Shafiq's Opinion That Google And Meta *Actually* Linked Visitors' Activities On PPFA's Website To Their Identities Is Inadmissible Because It Was Not Disclosed In His Expert Report.

It is an elementary rule that expert opinions not disclosed in expert reports "are inadmissible at trial." *Cotton ex rel. McClure v. v. City of Eureka*, 2011 WL 4047490, at *4 (N.D. Cal. 2011). That is because Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose in an expert report "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). If a party fails to disclose opinions in an expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *see also, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 6073326, at *1 (N.D. Cal. 2013) (prohibiting party from relying on expert opinion not disclosed in expert report); *Diamond X Ranch, LLC v. Atl. Richfield Co.*, 2018 WL 1684288, at *7 (D. Nev. 2018)

(excluding opinion which "expert did not timely" disclose as "required by Federal Rule 26"). The Court "may impose other appropriate sanctions" as well, including "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1).

Here, Plaintiffs attempt to use Dr. Shafiq's testimony in a way that runs directly afoul of that basic rule. Dr. Shafiq's report states explicitly—in multiple places—the three opinions that it is disclosing (reproduced here in full):

> **Opinion #1**: During the Class Period, Planned Parenthood installed tracking technologies to share information about the content of communications (e.g., full-string URLs, including search terms) of users who visited Planned Parenthood's Website with third parties. Specifically, Planned Parenthood shared with Google the search terms entered by its Website users to research reproductive health services and the full-string URLs of every page on the Website that users viewed. With Meta, Planned Parenthood shared all the same information that it shared with Google, with the exception of URLs containing certain blocked terms. Planned Parenthood also shared similar information with other third parties, such as Snapchat, TikTok, Microsoft, Yahoo, and The Trade Desk.
>
> **Opinion #2**: In addition to sharing the content of users' Website communications, Planned Parenthood disclosed identifying information—including cookies, IP addresses, and user agents—to Google, Meta, and other third parties. These third parties ***can*** link or associate this information with a particular individual or household.
>
> **Opinion #3**: Planned Parenthood shared information about plaintiffs Heather Shipley's and Shirley Hinton's communications on its Website with third parties by means of tracking technologies during the Class Period. I reviewed the interrogatory responses and deposition testimony of both plaintiffs. [redacted]

Ex. 1 ¶ 16 (emphasis added); *id.* ¶ 3; *see also* Ex. 2 at 34:8-25, 39:16-25 (limiting opinions to the three offered in his report).

None of those opinions purports to offer the view that Plaintiffs now seek to have Dr. Shafiq offer—that "Meta and Google ***actually*** linked class members' PPFA Website searches and page views … to their specific identities." ECF No. 107 at 5; *see also* Ex. 2 at 40:21-41:4 (admitting he was not asked to opine on injury suffered by Plaintiffs).

The closest that Dr. Shafiq's report comes to disclosing such an opinion is its disclosure of Dr. Shafiq's view that "third parties ***can*** link or associate this information with a particular individual or household." Ex. 1 ¶ 16 (emphasis added); *id.* ¶ 3. As Plaintiffs themselves recognize, however, there is a crucial difference between saying that Meta and Google "*could*" link activities on a website to visitors' identities and saying that they "*did*" actually do so. ECF No. 107 at 5 (emphasis Plaintiffs'). To use Plaintiffs' words, the former is merely a statement of "hypothetical ability to identify a [person] who researched, for example, STD testing on the PPFA website," whereas the latter is a statement of what Google or Meta "actually does." *Id.* at 5–6. And Dr. Shafiq's report discloses an opinion only as to the former. *See, e.g.*, Ex. 1 ¶¶ 3, 16.

To be clear, this is no mere cherry-picking of Dr. Shafiq's report. Rather, his report uniformly frames his opinion exclusively in terms of what Google and Meta *could do*—and never in terms of what they *did* do. *See also, e.g.*, Ex. 1 ¶ 115 ("Google ***can*** link the Google account identifier it receives in the SID cookies from Planned Parenthood website."), ¶ 116 ("Meta ***can*** trivially link the Meta account identifier it receives in the c_user cookie from Planned Parenthood Website."), ¶ 117 ("Google and Meta ***can*** use all of the available identifiers, including those that are shared by Planned Parenthood when a user is not logged into their Google or Facebook account, to match the information shared by Planned Parenthood to a user's Google or Facebook account, respectively."); ¶ 117 ("[T]hird-parties ***can*** use the aforementioned identifiers such as IP address, user agent, and cookies that are shared regardless of the login status to match website visitors to their account holders."); ¶ 137 ("[I]t is my opinion that Google and Meta ***can*** link or associate this information to the named plaintiffs.") (emphases added). That makes sense: As explained below, Dr. Shafiq never worked at, or spoke to anyone who worked at, Google or Meta, Ex. 2 at 30:16-21:8; *id.* at 33:9-19, and there is no other relevant evidence in the record, so he would have had no basis to opine on what those companies *actually* did. Nor did either company produce any documents which would have shed light on that issue either: Google produced no documents in response to Plaintiffs' subpoena, and the only document produced by Meta shows that it did *not* link either Plaintiff to any activity on

PPFA's Website in the Class Period.[1] *See also* Ex. 2 at 29:7-2 (admitting he never spoke to Plaintiffs).

Plaintiffs should not be permitted to introduce Dr. Shafiq's new, undisclosed opinion at summary judgment or class certification, to rely on it at trial, or use it for any other purpose.

### B. Dr. Shafiq's Opinion That Google And Meta *Actually* Linked Visitors' Activities On PPFA's Website To Their Identities Would Be Inadmissible Even If It Had Been Timely Disclosed.

#### 1. Dr. Shafiq's opinion is inadmissible because it is unreliable.

Dr. Shafiq's untimely new opinion is separately inadmissible because it is not "the product of reliable principles and methods," as Federal Rule of Evidence 702(c) requires. At a minimum, Rule 702(c)'s reliability requirement demands that the expert opinion must "be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). Accordingly, where an expert simply offers an opinion with an utter "lack of independent verification" of his conclusion, that "render[s] [his] opinion unreliable" and hence inadmissible. *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014). Dr. Shafiq performed no such validation. Indeed, his opinion is not only unsupported by the document he relies on, but actively contradicted by other evidence in the record, which he entirely failed to consider. It is thus exactly the kind of opinion that Rule 702(c) and *Daubert* were meant to exclude.

Dr. Shafiq mentioned his new opinion for the first time at his deposition. Ex. 2 at 122:25–123:16. There, he testified that it was based solely on a publicly available document from Meta that, he said, contained "a description of how Facebook uses their user data that is shared by websites such as Planned Parenthood with it." *Id.* at 208:20–209:2. Dr. Shafiq did not speak to anyone at Meta or Google in arriving at his opinion. *Id.*at 33:9–19. Nor has Dr. Shafiq himself worked at either of

---

1 [redacted]

those companies. *Id.* at 30:16–31:8; Ex. 1 at 96 (Dr. Shafiq's CV). And although he was given many opportunities to do so, Dr. Shafiq was unable to identify any other basis, other than that publicly available document, for his untimely opinion. *See, e.g.*, Ex. 2 at 215:15–216:2 (Q. "What proof do you have that they actually do it other than the fact that they say it in this document?" A. "You keep changing the goalposts here. You're asking me is there any evidence. And now you're asking me to set aside the exact piece of evidence that we have been discussing for the last 10, 15 minutes?").[2] As Dr. Shafiq himself put it, his "proof" that Meta "actually does" link all PPFA Website visitors, and their activities, to their real-world identities is that (according to him, *but see infra*) the document from Meta "says it." *Id.* at 215:12–14.

In reality, however, the document says no such thing—not even close. Indeed, it is not clear what part of the document Dr. Shafiq thinks even arguably supports his point. In his deposition, he was unable to point to any, but instead just vaguely asserted that the document did so. *See* Ex. 2 at 209:22–210:12 (Dr. Shafiq: "[I]n my expert opinion, … [in] this document, Meta is explaining this is what we do, which is that Meta uses these identifiers for matching purposes to match information to Facebook users. So this is what Facebook did.").

As an initial matter, though, as Dr. Shafiq acknowledged, the document that he pointed to ***was not*** even from—and did not purport to describe the functioning of any Meta technology during—the Class Period (*i.e.*, September 1, 2022 to July 6, 2023). *See* Ex. 2 at 213:17–22. Rather, it described the function of certain technical fields as of ***2025***. *See* Ex. 5 (Shafiq Dep. Ex. 7); Ex. 1 at ¶ 117, n.176 (citing document), p. 93 (reflecting Sept. 19, 2025 date of report). And as Dr. Shafiq

---

[2] *See also, e.g.*, Ex. 2 at 217:1–20 (Dr. Shafiq pointing back to the same "document that we are looking [at]," when asked if he had any evidence "that in 2023, Meta used the fpb [sic] cookie in order to match visitors to PPFA's website in 2023 to actual individuals"); *Id.*at 211:1–16 (Dr. Shafiq pointing again to the same when asked for "evidence that [he was] aware of that Meta did [match to individuals] in this case … to information that was in fact—that may have been collected from PPFA's website"). Dr. Shafiq also pointed back to the "section in [his] report where [he was] discussing the issue of identification and identity resolution," *id.* at 217:24–218:1, but that section speaks only of capabilities and theoretical identifiability of information, not any actual identification of any person. *See* Ex. at ¶¶ 71–135.

himself admitted, he was "not a hundred percent sure" that the same would have been true years ago, during the Class Period. *See* Ex. 2 at 213:17–22. For this reason alone, Dr. Shafiq has failed to demonstrate that the sole source he relied upon for his opinion actually supported it.

What is more, even a cursory review of the document that Dr. Shafiq relies on reveals that—even if it were an accurate description of Meta's technology during the Class Period—Dr. Shafiq's characterization of it is simply untrue. The document, entitled "Customer Information Parameters" (and submitted in its entirety at Ex. 5), simply enumerates the set of data types that a website owner "can send" to Facebook via its Conversions API tool, a feature distinct from the Meta Pixel technology alleged to be at issue here. Ex. 5. It includes a short introduction, which states that "customer information parameters are a set of user identifiers [a website operator] share[s] alongside [its] event" via the Conversions API. *Id.* at 1. And then it lists the various data types that a website operator "can send," while noting that "some" of those data types "are sent automatically as part of how the internet works," and that "at least one" of some other data types "must" be sent "with the correct formatting" if the website operator is making a particular type of request. *Id.* at 1–2. The rest of the document exclusively consists of a listing of those data fields—with no statement anywhere even remotely resembling a representation that Meta (much less Google) *actually* associates a particular person with activity on a website (much less that it always does so or did so for information received from PPFA's Website specifically). *Id.* at 2–10. Dr. Shafiq's previously undisclosed opinion is thus (at best) nothing but a "mischaracteriz[ation]" of the evidence he purports to rely on, which alone is reason to exclude it as unreliable. *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 3116763, at *16 (S.D.N.Y. 2023) (quoting *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2019 WL 3554211, at *2 (E.D. La. 2019)).[3]

---

[3] Perhaps realizing that Dr. Shafiq's new opinion was unsupported by the evidence he cited, Plaintiffs tried to offer their own evidence in their reply in support of their motion for class certification. ECF No. 107 at 6–9, nn.3–15. But Plaintiffs' new evidence—even if it could be considered, *but see* ECF No. 110 (explaining that Plaintiffs' evidence was improperly introduced too late); *supra* § II.A—suffers from both of the same problems as Dr. Shafiq's assertion. First, all of it significantly post-dates the relevant time period, *see* ECF No. 107 at 6–9, nn.3–15 (exclusively citing websites as of late 2025). And second, just as important, it does not say (or support) what Dr. Shafiq and Plaintiffs

[redacted] this reason too, Dr. Shafiq's opinion that Meta actually did identify Plaintiffs with their activity on PPFA's website is unreliable and inadmissible.

Worse still, Dr. Shafiq did not even consider any of this contrary evidence. As noted above, he simply relied on a single online document, with no effort to validate it against other evidence in the case or otherwise test to see if his understanding of it was correct. That failure to perform any testing is particularly troubling where, as here, Dr. Shafiq's opinions "clearly lend themselves to testing and substantiation." *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996); *see also Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127, 1137 (N.D. Ill. 2014) (where opinions "lend themselves to hands-on testing and empirical study … conclusions based only on personal opinion and experience do not suffice" (internal quotation marks and citation omitted)).

---

say it does. Instead, it establishes only that Google and Meta offer their technology "to personalize content" and advertisements, and have found it lucrative to do so. *See id.* Plaintiffs speculate that because "Meta's and Google's targeted advertising businesses are commonly understood to be among the most successful in the U.S., if not on the planet," it would be "preposterous to assert that Meta and Google" are not actually identifying every visitor to PPFA's website. *Id.* at 6–7. But of course, companies can be good at—and make money from—all kinds of services, without applying them to literally every person on the planet. Plaintiffs' strained logic thus does nothing to support Dr. Shafiq's conclusion.

Dr. Shafiq's failure to "conduct[] any tests or calculations to support his opinion" thus renders it further inadmissible. *Black v. M & W Gear Co.*, 269 F.3d 1220, 1236–38 (10th Cir. 2001); *see also*, *e.g.*, *Ask Chems., LP*, 593 F. App'x at 510 ("[A] lack of independent verification … render[s] [an] opinion unreliable.").

**2. Dr. Shafiq's opinion is inadmissible because he has failed to establish that experts in the field rely upon the type of document that Dr. Shafiq did.**

An expert may rely upon hearsay evidence only "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. If the expert's opinion "is not based on 'pre-litigation' research" or "has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field." *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1030 (N.D. Cal. 1999). The party seeking to introduce the expert's testimony bears the burden of proving that it meets that standard by a preponderance of the evidence. *Id.*

A classic example of a method that does not meet that standard is "wholesale adoption" of hearsay evidence without "evaluating the bases for" that evidence. *Ask Chemicals, LP*, 593 F. App'x at 510. That is because no scientific expert—in any field—simply accepts "unexamined assumptions" and "cloak[s] [them] in the authority of expert analysis." *Id.* "[R]einterpret[ing]" hearsay "is not scientific" at all—indeed, it is the antithesis of the scientific method. *Carnegie Mellon Univ.*, 55 F. Supp. 2d at 1034. "[S]imply 'repeating hearsay evidence without applying any expertise whatsoever'" is exactly what the "rules prohibiting hearsay" are meant to avoid. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (citation omitted) (affirming exclusion under Rule 703 where testimony "merely repeat[ed] information [the expert] had read or heard").

That is precisely what Dr. Shafiq's opinion seeks to do here. As noted above, Dr. Shafiq

based his opinion upon reading a single publicly available document—a document that supposedly "says" that Meta and Google actually identify every visitor to PPFA's Website. Ex. 2 at 215:12–14. Dr. Shafiq did not purport to verify the contents of that document. Nor was he able to identify any other source of expertise or evidence that he was drawing on to arrive at his opinion. *See supra* § II.B.1. Instead, his opinion was derived solely from his (mis)understanding of what this single document from Meta supposedly said. But Dr. Shafiq did not even attempt to establish that experts in his field rely on documents like this—much less that they uncritically accept as true whatever those documents say. Nor has Dr. Shafiq shown that any expert in his field would use this document in anything remotely like the way that Dr. Shafiq has—*i.e.*, gesturing vaguely at the document as a whole, while unable to point to any specific statement in it that supported his opinion. *See* Ex. 2 at 209:22–210:12 (Dr. Shafiq: "[I]n my expert opinion, … [in] this document, Meta is explaining this is what we do, which is that Meta uses these identifiers for matching purposes to match information to Facebook users. So this is what Facebook did."). It goes without saying that this kind of handwaving "is not scientific," and Plaintiffs offer "no evidence that [Dr. Shafiq's] method of reinterpretation is practiced by even a minority of scientists in this field." *Carnegie Mellon Univ.*, 55 F. Supp. 2d at 1034. For this reason too, Dr. Shafiq's opinion is inadmissible.

**3. Dr. Shafiq's opinion is inadmissible because it merely offers lay characterization of documents.**

Under Federal Rule of Evidence 702(a), "[e]xpert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help." *Holley v. Gilead Scis., Inc.*, 2023 WL 2469632, at *9 (N.D. Cal. 2023) (citation omitted); *see also, e.g.*, *United States v. Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *2 (N.D. Cal. 2016) (expert opinion should be struck where it is "replete with observations and inferences that jurors are perfectly capable of making for themselves without expert assistance, even where such [opinion is] technical in nature" (internal quotation marks and citation omitted)). A classic example of such improper testimony is where the expert's opinion "amount[s] to nothing more than uncritical acceptance" of

the contents of documents. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. 2017). That kind of supposed "'analysis' would not only fail to improve on the probative value of the evidence" the expert relies upon, "but also actually muddy the uncomplicated facts with [the witness's] facade of expertise." *Id.*. That risk is especially heightened where the expert, after "merely summariz[ing]" other evidence, goes on to then "dra[w] a number of conclusion[s] based solely on speculation." *Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. 2007) (excluding expert testimony for this reason).

As detailed above, Dr. Shafiq's untimely opinion is based on only a single, publicly available document from Meta, which according to Dr. Shafiq "says" exactly what he does. Ex. 2 at 215:12–14. But if Dr. Shafiq is right, and the document simply "says" that Meta "actually does" link all PPFA Website visitors to their real-world identities, then there is no reason for him to offer an "expert" opinion on that point at all. *See* Fed. R. Evid. 702(a) (expert testimony permitted only where it is based on "scientific, technical, or other specialized knowledge"). Indeed, it is forbidden, as allowing Dr. Shafiq to testify as to what he thinks the document says would risk cloaking what is actually a lay opinion in the "facade of expertise." *Waymo*, 2017 WL 5148390, at *6. After all, Dr. Shafiq "admitted that he did not engage in any independent fact-finding to reach his conclusions," such as "interview[ing] anyone at" Meta or Google. *Stein*, 2007 WL 831750, at *11. Instead, the "sole source of his information" is the same document that the jury itself can read, just as well as Dr. Shafiq can. *Id.* For this reason, too, Dr. Shafiq's untimely opinion should be excluded.

## III. CONCLUSION

For the foregoing reasons, PPFA respectfully requests that the Court preclude Plaintiffs from introducing or relying on Dr. Shafiq's opinion that "Meta and Google ***actually*** linked class members' PPFA Website searches and page views … to their specific identities, including their name, e-mail address, and other information provided to Google or Meta when creating an account." ECF No. 107 at 5 (citing Ex. 2 at 118:9–119:23) (emphasis Plaintiffs').

DATED: February 19, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *\/s/ Jacob M. Heath*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.