Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>*Defendant*. | Case No.: 3:23-cv-04529-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DR. ZUBAIR SHAFIQ**<br><br>Date: April 2, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

## TABLE OF CONTENTS


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 2

I. Dr. Shafiq's Linkage Opinion Is Squarely Within the Scope of His Expert Report.....2

A. Dr. Shafiq's Opinion that Meta and Google Linked Website Users' Online Actions to their Identities is Developed Comprehensively in the Report........................2

B. Dr. Shafiq's Deposition Testimony on Actual Linkage Was a Permissible Elaboration of the Opinions in his Report................................................4

II. Even if This Court Were to Hold That Dr. Shafiq's Opinion Was Not Previously Disclosed, Rule 37 Exclusion Is Not Warranted Because There Is No Prejudice and Any Concern Is Curable..................................................................6

III. The Linkage Opinion Is Reliable and Helpful to Jurors....................................7

A. The Methodology is Reliable Because it is Consistent With Accepted Web-Tracking Analysis.............................................................8

1. Rule 702 Does Not Require Proprietary Third-Party Back-End Logs to Support Identity Linkage...........................................................9

B. Dr. Shafiq Relies on Technical, Publicly Available Documents that are the Type of Documents Reasonably Relied on by Computer Science Experts..............................................................................9

1. Dr. Shafiq's Interpretation of the Documents is Not Lay Testimony........11

2. Dr. Shafiq's Opinion Does Not Mischaracterize Evidence...................12

C. PPFA's Objections Are Classic Weight Arguments....................................12

CONCLUSION..........................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Alaska Rent- A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013)........................14

*Ask Chemicals, LP v. Computer Packages, Inc*., 593 F. App'x 506 (6th Cir. 2014)......................11

*Banks v. McIntosh County,* 2020 WL 6873607 (S.D. Ga. Nov. 23, 2020) ......................................4

*Brown v. Google*, No., 2022 WL 17961497 (N.D. Cal., Dec. 12, 2022) ............................11, 12, 13

*Carnegie Mellon University v. Hoffmann-LaRoche, Inc*., 55 F. Supp. 2d 1024 (N.D. Cal. 1999) ..12

*City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036 (9th Cir. 2014)...................................14, 15

*Claar v. Burlington N. R. Co.*, 29 F.3d 499 (9th Cir. 1994)..........................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993) ..............................4, 8, 10, 15

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) .............................................9

*Dey, L.P. v. Ivax Pharms., Inc.,* 233 F.R.D. 567 (C.D. Cal. 2005) ................................................11

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2017)..................................................8, 10

*Erhart v. BofI Holdings, Inc*. 445 F. Supp. 3d 831 (S.D. Cal. 2020) ............................................11

*Est. of Elkins v. Pelayo*, 2022 WL 1123117 (E.D. Cal. Apr. 14, 2022).............................1, 5, 7, 14

*Gallegos v. Seeley*, 2021 WL 4295290 (S.D. Cal. 2021) ..................................................................5

*Gay v. Stonebridge Life Ins. Co.* 660 F.3d 58 (1st Cir. 2011)..........................................................5

*Griffith v. TikTok, Inc.,* 2024 WL 5279224 (C.D. Cal. Dec. 2024)..................................................9

*Hall v. City of Fairfield,* 2012 WL 1155666 (E.D. Cal. 2012) ........................................................5

*In re Terrorist Attacks on September 11, 2001*, 2023 WL 3116763 (S.D.N.Y. 2023) ...................13

*Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185 (9th Cir. 2022)...........................................................7

*Mariscal v. Graco*, Inc., 52 F.Supp.3d 973 (N.D. Cal., June 26, 2014)............................................5

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160 (D.C. Cir. 2007) ...................5

*Primiano v. Cook* 598 F.3d 558 (9th Cir. 2010).................................................................................9

*Pyramid Techs. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014) .......................................14

*Ramirez v. City of Gilroy*, 2020 WL 1492704 (N.D. Cal. Mar. 27, 2020)........................................6

*Rodriguez v. Google LLC,* 2025 WL 1569361 (N.D. Cal. June 2, 2025) ...............11, 12, 13, 14, 15

*SAS Institute, Inc. v. World Programming Ltd*., 125 F. Supp. 3d 579 (E.D.N.C. 2015)................. 12

*Speaks v. Mazda Motor Corp*., 118 F. Supp. 3d 1212 (D. Mont. 2015) .......................................... 4

*Tan v. City & Cnty. of S.F.*, 2010 WL 726985 (N.D. Cal. 2010)..................................................... 8

*Thomsen v. Naphcare, Inc.,* 2023 WL 8701971 (D. Or. 2023)...................................................... 10

*United States v. Gomez*, 725 F.3d 1121 (9th Cir. 2013)................................................................ 11

*United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009) ................................................................ 11

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006).................................................. 9

**Rules**

FED. R. CIV. P 26(a)(2)(B)................................................................................................................ 5

Fed. R. Civ. P. 37(c)(1) ............................................................................................................. 1, 6

FED. R. EVID. 702 ......................................................................................... 1, 4, 8, 9, 10, 12, 15

FED. R. EVID. 703 ...................................................................................................................... 10, 15

**INTRODUCTION**

Defendant Planned Parenthood Federation of America, Inc. ("PPFA" or "Defendant") asks this Court to exclude Dr. Zubair Shafiq's opinion that Meta and Google *actually linked* class members' PPFA Website searches and page views to their specific identities contending nondisclosure and unreliability. The motion should be denied in its entirety.

First, the challenged opinion was disclosed. Dr. Shafiq's 95-page report explicitly states that Meta and Google use identifiers "to track users on and across different websites" (Ex. 1, Shafiq Report ("Report") at ¶¶39-40) and devotes more than 25 paragraphs to explaining *how* cookies, IP addresses, and user-agent information transmitted by PPFA's website enable Meta and Google to link browsing activity to specific user accounts. *Id.* at ¶¶113-135. It also explains that Meta's own documentation confirms these identifiers are used "for matching purposes." *Id.* at ¶117. Dr. Shafiq's deposition testimony about actual linkage was permissible elaboration of the opinions in his report and was solicited by PPFA's counsel.

Even if this Court were to conclude that Dr. Shafiq's opinion was not previously disclosed, exclusion of the opinion under Rule 37(c)(1) is unwarranted. PPFA has known since the Report was served that Dr. Shafiq opined on the full matching pipeline—from identifier transmission to identity resolution—and PPFA explored every dimension of the opinion during a full day of deposition. There is no surprise or prejudice, and any residual concern is curable by a limiting instruction rather than wholesale exclusion. *See* FED. R. CIV. P. 37(c)(1); *Est. of Elkins v. Pelayo*, 2022 WL 1123117, at *19-20 (E.D. Cal. Apr. 14, 2022) (Rule 37(c)(1)'s harmlessness safe harbor mitigates against exclusion "when an opinion and the bases therefor are disclosed through other discovery tools" if not in the four-corners of the report).

Second, the opinion is reliable and helpful under Rule 702. Dr. Shafiq is a tenured UC Davis professor of computer science specializing in online privacy and tracking, with extensive peer-reviewed publications on the exact data-flow questions at issue. *Id*. at ¶¶5-15; Appendix A (Shafiq's CV). His methodology of analyzing tag-manager configurations, live network traffic, source-code archives, and analytics logs is the standard approach in his field. Dr. Shafiq relied on evidence that is relied on by other experts in his field, including Meta's publicly available documentation

describing how its systems process identifiers and applied his expertise to interpret that evidence. PPFA's challenge to the *correctness* of Dr. Shafiq's conclusions—as distinct from the soundness of his methodology—is not grounds for exclusion.

## ARGUMENT

### I. Dr. Shafiq's Linkage Opinion Is Squarely Within the Scope of His Expert Report.

Dr. Shafiq's opinion that Meta and Google not only can but *do* link online activities to specific identities is at the foundation of his Report. Defendant seizes upon Dr. Shafiq's opinion that third parties "can" link information to a particular person (Mot. at 3–4) to distract from his comprehensive discussion of all the ways Meta and Google *do* accomplish linkage. Defendant's attempt to exclude Dr. Shafiq's opinion that Meta and Google identify website users fails for two reasons. First, the Report must be read in its entirety—including the fulsome explanations of how Meta and Google affirmatively identify website users. Second, to the extent the Report leaves any doubt that Dr. Shafiq holds the opinion that Meta and Google affirmatively *do* the linking, he clearly articulated that opinion in his deposition, as the law permits him to do.

#### A. Dr. Shafiq's Opinion that Meta and Google Linked Website Users' Online Actions to their Identities is Developed Comprehensively in the Report.

Dr. Shafiq's opinion that Meta and Google connect website users to their online activities is well developed in the Report. The Report describes an end-to-end identity matching architecture, disclosing both the mechanism by which linkage occurs, and the basis for concluding it does occur. Dr. Shafiq's explanation does not speculate about what *might* be possible; it describes specific identifiers that Meta and Google use to accomplish user matching depending on a variety of user circumstances.

At the beginning of the Report, Dr. Shafiq clearly states that Meta and Google match online activity to users and track users across different websites using first-party and third-party cookies:

> Paragraph 40. Meta Pixel uses both first-party and third-party cookies to track users on and across different websites. These cookies store both account and device identifiers.

> Paragraph 39. Google uses both first-party and third-party cookies to track users on and across different websites. These cookies store both account and device identifiers.

Report at ¶¶40, 39. These are straight-forward, unequivocal statements about what Meta and Google *do*—not what they *can* do or what they *might* do.

Tracking users across websites is only possible if online activity has been associated with a particular user. To illustrate how association is possible and how precisely it identifies a specific person, the Report explains that "[a]n account identifier is akin to a person's driver's license number, and device identifier is akin to a vehicle's license plate number." *Id.* at ¶32.

This is the background for Dr. Shafiq's opinions about the various methods Meta and Google "can" use to identify users. "Can" is the appropriate word because not all methods work for all website users. Google and Meta have one method for linking Planned Parenthood website users to their identities when they are logged into a Google or Meta account:

> Thus, when a Google account holder who is logged-in to their Google account visits Planned Parenthood Website, Google can link the Google account identifier it receives in the SID cookies from Planned Parenthood website. *Id.* at ¶115.
>
> Thus, when a Meta account holder who is logged-in to their Meta account visits Planned Parenthood Website, Meta can trivially link the Meta account identifier it receives in the c_user cookie from Planned Parenthood Website. *Id.* at ¶116.

For Google and Meta account holders who are not logged in to their accounts, there is another way to link PPFA website user activity to a person: "third-parties can use the aforementioned identifiers such as IP address, user agent, and cookies that are shared regardless of login status to match website visitors to their account holders." *Id.* at ¶117.

Finally, a third way exists for Meta and Google to identify PPFA website users even if they do not have a Google or Meta account by "relying on their own or other identity services that leverage deterministic or probabilistic matching to identify a person or household." *Id.* at ¶118.

The Report describes all three methods that Meta and Google can use, depending on each user's account and login status. The word "can," in this context, does not, as Defendant contends, suggest that linking is a mere possibility. It reflects that there are multiple methods for Meta and Google to identify website users, depending on the circumstances.

In additional support of the opinion that linking occurs, the Report quotes Meta's description of its Pixel: "Facebook cookies . . . *enable us to match* your website visitors to their respective Facebook User accounts." Report at ¶40 (emphasis added). This representation is further evidence that Meta designed and represents its tools as performing account matching (not merely that matching is theoretically possible).

Defendant's piecemeal reading of Plaintiffs' expert's opinions contradicts the body of the Report. Expert reports should be read and judged as a whole, not in isolated parts. *See, e.g., Speaks v. Mazda Motor Corp*., 118 F. Supp. 3d 1212, 1219-20 (D. Mont. 2015) (rejecting defendant's attempt to analyze "each conclusion in a vacuum, without reference to the rest of the report" because "[the expert]'s report must be read in its entirety in order to assess the reliability and admissibility of the opinions under Rule 702."); *Banks v. McIntosh County,* No. 2:16-CV-53, 2020 WL 6873607, at *8 (S.D. Ga. Nov. 23, 2020) ("The *Daubert* standard does not require each line of an expert's opinion to read in a vacuum and assessed for relevancy."). Read as a whole, the Report contains the opinion that Meta and Google actually linked website user activity to their identities.

**B. Dr. Shafiq's Deposition Testimony on Actual Linkage Was a Permissible Elaboration of the Opinions in his Report.**

Even if Dr. Shafiq's opinion that Meta and Google actually linked users' PPFA website activity to their identities is extrapolated from his Report, it should not be excluded. Expert reports serve as disclosure documents rather than testimonial limits. Federal Rule of Civil Procedure 26(a)(2)(B) "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160 (D.C. Cir. 2007) (quoting *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2006); *Gay v. Stonebridge Life Ins. Co.* 660 F.3d 58, 64 (1st Cir. 2011) (same); *Est. of Elkins*, 2022 WL 1123117, at *19 (same). The expert disclosure rule does not "limit an expert's testimony simply to reading his report." *Hall v. City of Fairfield,* 2012 WL 1155666, *4 (E.D. Cal. 2012) (quoting *Muldrow*, 493 F.3d at 167); *Gallegos v. Seeley*, 2021 WL 4295290, *5 (S.D. Cal. 2021) (same).

The important distinction is between permissible supplementation that explains or elaborates versus impermissible expansion into new substantive opinions. *Mariscal v. Graco*, *Inc.*, 52

F.Supp.3d 973, 981-83 (N.D. Cal., June 26, 2014). Here, Dr. Shafiq's Report opined in elaborate detail that Meta and Google match identifiers to Defendant's website users and explains how they do it.

Further, Dr. Shafiq's linkage opinion should stand because Defendant solicited the very opinion that it now seeks to suppress. *See Ramirez v. City of Gilroy*, 2020 WL 1492704, at *6 (N.D. Cal. Mar. 27, 2020) (experts may testify to opinions solicited by the opposing party at deposition).

> Q: Dr. Shafiq, that's not – that – that's actually not the question I asked. Do you have evidence that Google did it in this case with respect to the information that's reflected in the Google Analytic [sic] log files, yes or no? It's really simple.
>
> A: The technology – tracking technologies uniformly work. The documentation provided by Google and Meta and other industry documents that I cite, they explain how these techno – tracking technologies are designed to work, and they work the exact same way on various websites, in this case, including Planned Parenthood's website.
>
> Q: Did you do any analysis to confirm that Google in fact did this, was able to link a user to a ghostwritten cookie in this context, as you've described: Did you do any analysis in this case?
>
> A: The report that I produced in this case explains my understanding of how Google and Meta linked the information to users in this case.
>
> Q: What if you're wrong? That's what I'm asking. Like, did you actually confirm that that happened in this case, yes or no?
>
> A: And I'm telling you that the information that I'm citing in that section of my report explains how they actually do it, and the tracking technologies are designed to work in a uniform fashion –
>
> Q: Do you know whether it happened in this case?
>
> A: Yes. It's like putting one plus one together. The tracking technologies shared – they were configured to share certain identifiers by Planned Parenthood with third-party companies, such as Google and Meta, and then Google and Meta's documentation and all the industry documentation and other research that I'm describing in my report explain how those identifiers are then used by these companies to identify users.

Ex. 2, Shafiq Tr., 123:17-125:13. Dr. Shafiq's unequivocal testimony that Meta and Google "actually" perform identity linkage is the self-evident conclusion from the Report's extensive

analysis to which he referred repeatedly throughout his deposition. Therefore, even if Plaintiffs' expert report did not contain the exact phrasing that Defendant claims is required for disclosure, Defendant cannot now move to exclude the very opinion it solicited.

### II. Even if This Court Were to Hold That Dr. Shafiq's Opinion Was Not Previously Disclosed, Rule 37 Exclusion Is Not Warranted Because There Is No Prejudice and Any Concern Is Curable.

Even if the linkage opinion was not adequately disclosed in the Report, exclusion would be inappropriate because any tardiness in the disclosure was harmless. Exclusion under Rule 37(c)(1) is reserved for true ambush and prejudice and will not occur if the disclosing party demonstrates "harmlessness or substantial justification." FED. R. CIV. P. 37(c)(1); *Est. of Elkins*, 2022 WL 1123117, at *19. Courts consider the following factors to determine whether substantial justification or harmlessness exist: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence. *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191-92 (9th Cir. 2022).

*First*, there was no prejudice or surprise to Defendant because it has known since it received Dr. Shafiq's Report in September 2025 that Opinion #2 addresses the entire identity-resolution pipeline: identifier transmission, matching mechanisms, deterministic and probabilistic resolution techniques, and entropy sufficiency. Report at ¶¶113–135. PPFA had a full day of deposition to explore every dimension of the opinion and, by its own account, did so extensively. Mot. at 5–6. PPFA also retained its own rebuttal experts. Significantly, PPFA does not claim it was surprised to learn that Meta and Google use the matching technology they built *for the purpose* of matching.

*Second*, because there can be no dispute that Dr. Shafiq clearly stated his actual linkage opinion at deposition and Defendant's counsel exhaustively questioned him about it (Ex. 2, Shafiq Tr., 116-125), Defendant already had the opportunity to cure any prejudice.

*Third*, at this stage of the litigation, more than five months before the scheduled trial date in August 2026, there is no likelihood of disruption of trial. *Fourth*, there is no evidence of any bad faith or willfulness in any delayed disclosure. All the factors weigh against the exclusion of an expert

opinion that was at the very least implicit in Plaintiffs' expert Report, plainly stated by Plaintiffs' expert in his deposition testimony and thoroughly cross-examined by Defendant's counsel.

Finally, if the Court finds that the phrase "actually linked" is not supported by Dr. Shafiq's investigation and analysis, the appropriate remedy is a narrow limitation, not wholesale exclusion. Courts in this district routinely fashion tailored restrictions rather than excluding expert testimony entirely. *See Tan v. City & Cnty. of S.F.*, 2010 WL 726985, at *4 (N.D. Cal. 2010) (excluding expert opinions not contained in reports but ruling "experts may elaborate on their reports while testifying and are not limited to the words contained in their reports.").

The Court could, for example, permit Dr. Shafiq to testify that: (1) PPFA's website transmitted specific identifiers—including cookies, IP addresses, and user agents—to Meta and Google; (2) those identifiers are designed and used by Meta and Google for the purpose of matching browsing activity to specific user accounts; (3) Meta's own documentation confirms that it uses those identifiers for matching purposes; (4) the identifiers carry sufficient information entropy for unique identification; and (5) based on these facts, it is his expert opinion that Meta and Google linked, or had the technical means and purpose to link, PPFA website users' browsing activity to their specific identities. This formulation would preserve the substance of the opinion while addressing any concern about definitiveness.

### III. The Linkage Opinion Is Reliable and Helpful to Jurors.

Contrary to Defendant's contention, Dr. Shafiq's opinion that Meta and Google actually linked users' PPFA website activities to their identities is reliable and helpful to jurors. Rule 702 requires that expert testimony be based on "sufficient facts or data," be "the product of reliable principles and methods," and that the expert have "reliably applied the relevant principles and methods to the facts of the case." FED. R. EVID. 702; *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2017). The court's task is to assess the "soundness of [the expert's] methodology," not "the correctness of the expert's conclusions." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (*Daubert II*). The court is "a gatekeeper, not a fact finder." *Primiano v.*

*Cook* 598 F.3d 558, 568 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 653 (9th Cir. 2006)). Dr. Shafiq's opinion satisfies this threshold.

### A. The Methodology is Reliable Because it is Consistent With Accepted Web-Tracking Analysis.

Dr. Shafiq employed the standard methodology used by computer science researchers who study online tracking. Indeed, Dr. Shafiq has been accepted as an expert in 27 cases over the course of the last 8 years. Ex. 1, Shafiq Report, Appendix A (Shafiq CV); Ex. 3, Declaration of Dr. Zubair Shafiq ("Shafiq Decl.") ¶4. In all but three of those cases, Dr. Shafiq opined on the identifiability of information collected by tracking technologies. Ex. 3, Shafiq Decl., ¶3 In all those cases, Dr. Shafiq was accepted as an expert in tracking technologies.[1] *Id*. at ¶4.

In this case, Dr. Shafiq performed five independent analyses: (1) analysis of Defendant's Google Tag Manager container configuration files; (2) forensic examination of network traffic to and from Defendant's website; (3) analysis of archived source code from the Internet Archive's Wayback Machine; (4) analysis of Defendant's Google Analytics logs; and (5) review of interrogatory responses, deposition testimony, and other discovery materials. Report at ¶¶2, 20-26. From these analyses, Dr. Shafiq traced the complete data flow: he identified *which* identifiers Defendant's website transmitted (account-level cookies, device-level cookies, IP addresses, and user-agents), demonstrated *how* those identifiers reached Meta and Google, and explained *why* those identifiers are sufficient for identity resolution—citing both the companies' own documentation and independently validated identity-resolution frameworks based on peer-reviewed research. Report at ¶¶113-135. This empirical approach is testable and reproducible–another qualified expert can evaluate the same types of artifacts to confirm the presence and role of account- and device-level identifiers. Defendant's own experts did so, and Defendant does not challenge any step in this methodology.

---

[1] Defendant again cites to *Griffith v. TikTok, Inc.,* 2024 WL 5279224 (C.D. Cal. Dec. 2024) in a general attempt to impugn Dr. Shafiq's opinion on identifiability. Mot. at 1. But in that case, the court's criticisms were based on Dr. Shafiq's calculations of the probability that sensitive URLs were collected from average non-TikTok users, and the absence of sampled data suggesting that plaintiff was such a user, not his opinions about identifiability. *Id.* at fn.9.

**1. Rule 702 Does Not Require Proprietary Third-Party Back-End Logs to Support Identity Linkage.**

Defendant objects that Plaintiffs' expert never worked at Meta or Google, never spoke with anyone at Meta or Google and that his testimony is "based solely on a publicly available document from Meta…" Mot. at 5-6. Defendant appears to argue that without first-hand knowledge about Meta or Google's internal systems, Dr. Shafiq is not permitted to opine on what Meta and Google actually did with website users' identifiers. First, as described *supra*, Dr. Shafiq's opinion is based on far more than just a single Meta publication. More importantly, the "sufficient facts or data" requirement for reliability under Rule 702 demands only "foundation, not corroboration." *Elosu*, 26 F.4th at 1025; *see also Thomsen v. Naphcare, Inc.,* 2023 WL 8701971, *3-5 (D. Or. Dec. 15, 2023) (denying motion to exclude where there was some evidence in the record upon which certain experts could opine that arrestee in custody was suffering from alcohol withdrawal). An expert may draw inferences from available data using reliable methodology without eyewitness confirmation of the ultimate conclusion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 592-93 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Dr. Shafiq describes the identifiers transmitted, confirms that Meta's own documentation describes how those identifiers are used for matching, and demonstrates that the identifiers carry sufficient entropy for unique identification.

**B. Dr. Shafiq Relies on Technical, Publicly Available Documents that are the Type of Documents Reasonably Relied on by Computer Science Experts.**

Rule 703 permits an expert to base an opinion on otherwise inadmissible facts or data "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FED. R. EVID. 703. The critical distinction is between an expert who merely "act[s] as a transmitter for testimonial hearsay" and one who is "applying [his] training and experience to the sources before [him] and reaching an independent judgment." *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)); *see also Erhart v. Bofl Holdings, Inc*. 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020) (Rule 703 "relaxes, for experts, the requirement that witnesses have personal knowledge of the

matter to which they testify") (citing *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994))).

It is well-established that technical experts routinely rely on publicly available documentation. *See Dey, L.P. v. Ivax Pharms., Inc.,* 233 F.R.D. 567, 572-73 (C.D. Cal. 2005) ("To the extent any of the witnesses attempt to testify at trial based on technical and scientific information that is publicly available to all experts in the field, their testimony is admissible as expert testimony pursuant to Federal Rules of Evidence 702 and 703."). That principle holds true in privacy cases, where computer science experts are permitted to rely on such documents. *See Rodriguez v. Google LLC,* 2025 WL 1569361, *5 (N.D. Cal. June 2, 2025) (permitting expert testimony that interpreted Google's disclosures about its data collection practices).

Similarly in *Brown v. Google*, Google moved to exclude expert opinions as mere "biased summaries of Google documents." 2022 WL 17961497, at *12 (N.D. Cal., Dec. 12, 2022). The court disagreed, finding that the expert "does more than summarize Google's documents" because he "synthesize[d] information from a variety of different sources, including both Google's internal documents and public documents," and provided "interpretation and meaning" based on his expertise. *Id.* at *12.[2]

Defendant's reliance on *Ask Chemicals, LP v. Computer Packages, Inc*., 593 F. App'x 506, 510 (6th Cir. 2014) is misplaced. There, the expert's entire damages calculation rested on his client's own speculative revenue projections for a market (Japan) in which the client had no meaningful sales history. The expert performed no independent analysis and instead simply dressed up his client's "educated guesses" as his own. *Id.* at 516-17. Similarly, in *Carnegie Mellon University v. Hoffmann-LaRoche, Inc*., 55 F. Supp. 2d 1024 (N.D. Cal. 1999), the expert performed no independent laboratory testing, took data from published studies whose authors had reached the opposite conclusion, cherry-picked subsets of results, ignored contrary findings, and "reinterpreted" those studies in a manner no scientist in the field practiced. *Id.* at 1034-40.

[2] While the *Brown* court did exclude certain of the expert's opinions about consumer expectations and Google's intent, it did so for reasons that are not applicable here.

Here, Dr. Shafiq permissibly relies on publicly available technical documents and information, but he also applies his expertise to aid the factfinder in understanding that evidence. Just as in *Brown* and *Rodriguez,* Dr. Shafiq synthesizes information from different sources, including Meta's and Google's publicly available technical documentation, tag-manager container configuration files, network traffic forensics and source-code analysis. His Report and testimony interpret and give meaning to this information to reach an expert conclusion about how Meta's and Google's systems function.

**1. Dr. Shafiq's Interpretation of the Documents is Not Lay Testimony.**

Defendant incorrectly asserts that Dr. Shafiq's testimony constitutes lay testimony about a document that does not require explanation. Mot. at 10-11. Meta's Customer Information Parameters is not directed to the average internet user; rather, it is directed to companies that implement Meta's tracking technologies. It is a technical document that is but one piece of evidence Dr. Shafiq cites to explain how tracking technologies work. Report at ¶¶113-135.

In addition to ensuring the reliability of expert testimony, Rule 702 also requires expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. "[A]n expert may be used to educate the jury, which ordinarily is unfamiliar with the subject matter of the expert's testimony." *SAS Institute, Inc. v. World Programming Ltd*., 125 F. Supp. 3d 579, 587 (E.D.N.C. 2015) (citing FED. R. EVID. 702, advisory committee notes (2000)).

The implementation and use of tracking technologies are "matters that the average juror is not capable of understanding" on their own. *In re Terrorist Attacks on September 11, 2001*, 2023 WL 3116763, *3 (S.D.N.Y. 2023). Dr. Shafiq's explanation of how Meta does what it says it does is precisely the gap that expert testimony exists to fill. FED. R. EVID. 702(a); *Rodriguez,* 2025 WL 1569361, at *2 (the court's task is to determine "whether his testimony has substance such that it would be helpful to a jury"); *Brown*, 2022 WL 17961497, at *12 (rejecting argument that expert's technical opinions were mere summaries of documents because they "synthesiz[ed] information from a variety of different sources" and provid[ed] "interpretation and meaning"). Defendant's attempt to recast Dr. Shafiq's nuanced, technically detailed opinion as merely a lay reading of a document should be rejected.

**2. Dr. Shafiq's Opinion Does Not Mischaracterize Evidence.**

Defendant also claims that Dr. Shafiq's opinion must be excluded because it mischaracterizes publicly available Meta documentation. Mot. at 7-9. But Defendant's citation to *In re Terrorist Attacks* for that proposition is unavailing. The expert excluded in that case attributed a verbatim blog comment by an anonymous internet poster to "a former U.S. intelligence officer," and then defended that fabricated attribution under oath. 2023 WL 3116763 at *16. The court excluded his testimony for "intellectual dishonesty" that undermined confidence in his integrity. *Id*. Dr. Shafiq did nothing remotely comparable. He accurately identified Meta's own publicly available technical documentation and offered his expert interpretation of what it describes. Defendant simply disagrees with Dr. Shafiq's interpretation.

Defendant then points to Meta's scant production and the Off Meta Activity Reports as definitive proof that Meta did not link the named Plaintiffs to PPFA website activity. Mot. at 8. First, the sole document produced by Meta reflects what Meta *chose to disclose* in response to a subpoena. The absence of Plaintiffs' records within the class period does not establish that Meta never received their communications or identified them. Second, Defendant's own expert concedes that not all of Plaintiffs' website activities would necessarily appear on their user-facing Off Meta Activity Reports. Ex. 4, Cohen Tr., 206:20-209:12; 212:19-213:21; 217:16-220:5. The fact that one expert interprets the evidence differently from another demonstrates that these are factual disputes "best settled by a battle of the experts before the fact finder, not by judicial fiat." *City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036, 1049 (9th Cir. 2014).

**C. PPFA's Objections Are Classic Weight Arguments.**

Every objection PPFA asserts to the substance of Dr. Shafiq's opinion is a challenge to its *weight*, not its admissibility. The Ninth Circuit has repeatedly held that "[c]hallenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *City of Pomona*, 750 F.3d at 1044; *accord, Alaska Rent- A-Car, Inc. v. Avis Budget Grp., Inc*., 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). "Questions as to the correctness of [the expert's] opinions, or the relative weaknesses or strengths of the factual

underpinnings of [the expert's] opinions, are questions that go to the weight of the opinions, not their admissibility." *Est. of Elkins*, 2022 WL 1123117, at *3 (citing *Pyramid Techs. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813-14 (9th Cir. 2014)). A "shaky" opinion "may be attacked through cross-examination and contrary evidence." *Id.*

Judge Seeborg's decision in *Rodriguez v. Google LLC* is directly on point. There, the court denied a motion to exclude expert testimony regarding Google's data collection and disclosure practices, holding that "[t]he court's task is not to 'decid[e] whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" 2025 WL 1569361, at *2 (quoting *Alaska Rent-A-Car, Inc*. 738 F.3d at 969-70). The court further observed that "[c]ourts may not exclude testimony simply because it is impeachable." *Id.*

Defendant's contentions that Dr. Shafiq lacks access to Meta's and Google's proprietary back-end systems, that the Off Meta Activity Reports undercut his conclusions, and that Meta's technical documentation postdates portions of the class period (Mot. at 7–9) go to the strength of Dr. Shafiq's evidentiary foundation rather than the admissibility of his opinions. Critically, Defendant does not contend Dr. Shafiq's methodology is unreliable or based upon an unrecognized analytical framework. Instead, it asks the Court to weigh the Off Meta Activity Reports against Dr. Shafiq's analysis and conclude that the reports are more persuasive. That is the jury's job, not the Court's. *Rodriguez*, 2025 WL 1569361, at *2; *City of Pomona*, 750 F.3d at 1044. Further, Defendant will have every opportunity to cross-examine Dr. Shafiq regarding his opinions and call its own experts. *See Daubert*, 509 U.S. at 596.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to exclude Dr. Shafiq's testimony in its entirety. The challenged opinion was disclosed in his expert report, is reliable and helpful under Rule 702, rests on sources that Rule 703 permits, and—at most—warrants a narrow limitation rather than exclusion.

Dated: March 5, 2026 Respectfully submitted,

By: *__/s/ Jamie A. Robinson__*

Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO LAW FIRM, LLC**

By: *__/s/ Bradley A. Benbrook__*

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was filed this 5th day of March 2026 via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

*/s/ Jamie A. Robinson*
Jamie A. Robinson