JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,

Defendant.

Case No. 3:23-cv-04529-JD

**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Date: April 2, 2026
Time: 11:00 a.m.

Judge: Hon. James Donato

# TABLE OF CONTENTS

Page


I. LEGAL ARGUMENT ........ 1

A. The Undisputed Evidence Makes Clear That Plaintiffs Have Not Suffered A Legally Cognizable Injury ........ 2

1. Plaintiffs Must Prove That Meta *Actually* Linked Their Activities On PPFA's Website With Their Real-World Identities To Establish The Requisite Injury-In-Fact ........ 2

2. Plaintiffs Have No Evidence That Their Activities On PPFA's Website Were Ever Associated With Their Identities ........ 5

B. Plaintiffs Fail To Raise A Material Dispute Of Fact As To Whether Meta Intercepted Their Communications In Real Time ........ 6

C. Plaintiffs Fail To Raise A Material Dispute Of Fact Regarding Their Admitted Consent To PPFA Sharing Data With Meta ........ 10

D. Plaintiffs Cannot Carry Their Burden of Proof as to Other Third Parties ........ 13

E. Plaintiffs Cannot Establish Any Entitlement To Injunctive Relief ........ 14

II. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atay v. County of Maui*,
842 F.3d 688 (9th Cir. 2016) .......... 14

*B.D. v. Blizzard Entertainment, Inc.*,
76 Cal. App. 5th 931 (2022) .......... 11

*Bastidas v. Good Samaritan Hospital LP*,
2016 WL 6834139 (N.D. Cal. 2016) .......... 1

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 4

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) .......... 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 1

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. 2025) .......... 9

*Frank v. Gaos*,
586 U.S. 485 (2019) .......... 3

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 4

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. 2025) .......... 3

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 12

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. 2025) .......... 3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 7, 10

*Lanovaz v. Twinings North America, Inc.*,
2016 WL 4585819 (N.D. Cal. 2016) .......... 15

*Lefkowtiz v. Scytl USA*,
2016 WL 537952 (N.D. Cal. 2016) .......... 2, 13

*Lloyd v. Meta Platforms, Inc.*,
659 F. Supp. 3d 1063 (N.D. Cal. 2023) ........ 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 3

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. 2024) ........ 3

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. 2025) ........ 3

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025) ........ 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 4

*Price v. Converse, Inc.*,
805 F.Supp.3d 1102 (C.D. Cal. 2025) ........ 4

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 10, 12

*SourceAmerica v. SourceAmerca*,
2018 WL 2193261 (S.D. Cal. 2018) ........ 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5

*United States v. Smith*,
155 F.3d 1051 (9th Cir. 1998) ........ 10

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. 2024) ........ 11

**Statutes**

California Penal Code § 631 ........ 7, 9, 10

**Other Authorities**

*Advertising*, https://policies.google.com/technologies/ads ........ 13

Supplemental Brief of the United States, *Frank v. Gaos*, No. 17-961 ........ 3

**Rules**

Federal Rule of Civil Procedure 56 ........ 14

**Treatises**

4 W. Blackstone, Commentaries on the Laws of England ........ 3

Plaintiffs Heather Shipley and Shirley Hinton's Opposition ("Opp."), ECF No. 122, ducks—rather than engages with—the arguments Defendant Planned Parenthood Federation of America, Inc. ("PPFA") raised in its Motion for Summary Judgment ("Motion" or "Mot."), ECF No. 115. PPFA's Motion establishes the myriad ways Plaintiffs would be unable to carry their burden of proof at trial, each of which is independently sufficient to support a grant of summary judgment in PPFA's favor. PPFA has satisfied its own summary judgment burden by showing a complete absence of evidence supporting Plaintiffs' claim and the Opposition does not fill that void. At bottom, Plaintiffs have failed to adduce any evidence establishing an injury-in-fact or violation of California's Invasion of Privacy Act ("CIPA"). Crucially, the record is devoid of evidence that Plaintiffs even visited PPFA's website; that Meta or any other third party read or attempted to read the contents of any purported communication that Plaintiffs might have had with PPFA's website; that any data-sharing by PPFA was without Plaintiffs' consent; or that Plaintiffs suffered any recognized injury that would establish Article III standing. Having brought this lawsuit, Plaintiffs solely bear the burden of proof on each element of their claims, but after extensive discovery, they still cannot do so.

Plaintiffs' Opposition nitpicks and distracts but leaves virtually every argument raised in PPFA's Motion unchallenged. Thus, for all the reasons the PPFA has already given—which Plaintiffs have now failed to meaningfully rebut—no reasonable jury could find for Plaintiffs in light of the undisputed evidence (or lack thereof). The question at this stage is not what *could* have happened or what was *possible*, but what Plaintiffs *can actually prove*. Because Plaintiffs simply cannot prove their case, PPFA is entitled to a grant of summary judgment.

## I. LEGAL ARGUMENT

Where, as here, a motion for summary judgment is based on an absence of evidence in the record sufficient to carry Plaintiffs' burden of proof on the merits, Plaintiffs can avoid summary judgment only by going "beyond the pleadings and ... designat[ing] 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court thus must grant PPFA's motion unless Plaintiffs identify sufficient evidence to demonstrate a genuine issue of material fact as to each element of their claim. *Bastidas v. Good Samaritan Hosp. LP*, 2016 WL 6834139, at *3 (N.D. Cal. 2016). Plaintiffs' Opposition makes clear that Plaintiffs cannot meet this

burden as to several dispositive elements of their claim.

### A. The Undisputed Evidence Makes Clear That Plaintiffs Have Not Suffered A Legally Cognizable Injury.

The undisputed evidence shows that Plaintiffs have not suffered a legally cognizable injury. Mot. 10-14. Lacking evidence that third parties actually associated Plaintiffs' website activities with their specific identities, Plaintiffs pivot: (i) backtracking on their prior admissions regarding standing; and (ii) relying on the baseless generalization that because Meta has the technical means to identify some users, it necessarily identified these Plaintiffs. Both arguments fail.

#### 1. Plaintiffs Must Prove That Meta *Actually* Linked Their Activities On PPFA's Website With Their Real-World Identities To Establish The Requisite Injury-In-Fact.

At the class certification stage, Plaintiffs effectively conceded that there is no standing unless the data collected about them is *actually* associated with their real-world identities. *Compare* PPFA's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 104, at 15–16 (making this point); *with* Plaintiffs' Reply in Support of Class Certification, ECF No. 107, at 5 (failing to contest this point); *see also Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. 2016) (finding that where a plaintiff fails to respond to an argument, they "concede[] it through silence"). Now, however, Plaintiffs take the opposite position, insisting they "are not even required to show that they were actually identified in order to have standing." Opp. 3. Plaintiffs had it right the first time.

The law is clear that in a case like this—where a plaintiff claims to have been wronged by the collection of information regarding her internet activities—standing under both Article III and Cal. Penal Code § 637.2 (which Plaintiffs neglect to address in their Opposition at all) exists only if the plaintiff can show that the information was actually associated with her. *See* Mot. 11 (collecting cases). Plaintiffs' attempt to distinguish these cases fall short. For instance, Plaintiffs insist that *Mitchener v. Talkspace Network LLC*—in which the court expressly held that the mere fact that a party "*may be* capable" of linking a person is insufficient, 2025 WL 1822801, at *7 (C.D. Cal. 2025)—is somehow distinguishable because the plaintiff there "failed to allege 'the collection or disclosure of any of her personal information that would violate a protectable privacy interest.'" Opp. 4 (quoting 2025 WL 1822801, at *8). But Plaintiffs ignore that the reason *Mitchener* found no

privacy violation was because the plaintiff had failed to establish that "any such information [collected] was likely to identify" her. 2025 WL 1822801 at *6–*8. Nor is it relevant that some of those cases may have involved additional pleading defects; each decision cited in PPFA's brief specifically rested its finding of no cognizable privacy injury on the failure to show *actual* identification. *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. 2025); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). The same result should follow here.

In any event, the cases that PPFA cited in its opening brief are not outliers as numerous other courts have rejected theories just like those advanced by Plaintiffs here. *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (explaining that the "collection and storage of non-individually identifiable" information does not constitute "an actual injury"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. 2025) (no standing from merely showing that TikTok, via its pixel, "*could* gain 'additional information about a visitor such as name, date of birth and address," and thereby "*could* intrude on Plaintiff's right to privacy"); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. 2025) (same); *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. 2024) (collecting cases and explaining that there is no "reasonable expectation of privacy over [the capture of] anonymized data"). Indeed, since Blackstone the law has been clear that "eaves-dropp[ing]" gives rise to an actionable injury only if the defendant performed his "listen[ing]" in order "to frame slanderous and mischievous tales" about the victim—*i.e.*, only if he knew the victim's identity and sought to use the ill-gotten knowledge against her. 4 W. Blackstone, Commentaries on the Laws of England *168. As the U.S. Solicitor General has put it: The mere fact "that a website operator would be able to determine that *someone* conducted the searches [Plaintiffs] allege" does not constitute the "'highly offensive …' harm contemplated by the common law." Supplemental Brief of the United States, *Frank v. Gaos*, No. 17-961 at 17 (U.S. filed Nov. 30, 2018); *see also Frank*, 586 U.S. 485 (2019).

Plaintiffs rest their contrary argument on only two cases—*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023), and *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025). *See* Opp. 3-4. However, neither *Brown* nor *Frasco* stands for the proposition Plaintiffs attribute to them. Indeed, *Brown* could not have held that no actual identification is required to give rise to

Article III standing because plaintiffs in that case (unlike Plaintiffs here) adduced actual "evidence that Google *does* store their data with unique identifiers." 685 F. Supp. 3d at 925 (emphasis added). *Frasco,* likewise, did not consider—much less find—that standing exists in the absence of actual identification; instead, it ruled only that once a privacy injury is inflicted by the collection of personally identifying data, that injury cannot later be "cure[d] or wash[ed] away" by subsequently "stripping it" of its identifying information. 349 F.R.D. at 579.

Equally important, even if *Brown* or *Frasco* had reached the conclusions Plaintiffs cite them for, the Ninth Circuit has since made clear that those holdings would no longer be good law. *Brown*, for instance, followed a theory (then popular amongst some district courts) that a plaintiff could establish standing simply by showing "that the defendant had collected their data 'without consent,'" because that represented a violation of "statutes like the Wiretap Act and CIPA protect, 'regardless of how the collected data was later used.'" 685 F. Supp. 3d at 924. The Ninth Circuit, however, has since squarely rejected the contention that a plaintiff can establish Article III standing merely by showing that the defendant violated "a statute protecting a substantive privacy right." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). Likewise, *Frasco* relied on *In re Facebook, Inc. Internet Tracking Litig. (In re Facebook)*, 956 F.3d 589, 599 (9th Cir. 2020), for the proposition that merely showing a "loss of control over one's personal information" is sufficient to show a "concrete harm" for purposes of Article III. 349 F.R.D. at 580. *Popa* repudiated that rule too, as well as the relevant portion of *In re Facebook* itself. 153 F.4th at 794–95. Following *Popa*, courts now consistently reject this exact argument that mere collection of information is a sufficient injury to establish standing. *See, e.g.*, *Price v. Converse, Inc.*, 805 F.Supp.3d 1102, 1104 (C.D. Cal. 2025) (discussing *Popa* and dismissing similar claim for lack of particularized "concrete injury").

Plaintiffs' late-breaking insistence they "are not even required to show that they were actually identified in order to have standing" (Opp. at 3) is inconsistent not only with their own prior position in this case, but also established case law, including from the Ninth Circuit. To show standing in a case like this, Plaintiffs must—as they previously recognized—prove that their activities on PPFA's Website were actually associated with their identities. They have not done so.

### 2. Plaintiffs Have No Evidence That Their Activities On PPFA's Website Were Ever Associated With Their Identities.

For all the ink it spills on the topic, Plaintiffs' Opposition points to no evidence even purporting to show that Meta (or anyone else) actually associated these Plaintiffs with their activities on PPFA's website. Instead, Plaintiffs primarily argue—at some length—that Meta can and, therefore, must identify some people, insisting that Meta's entire business model depends on "match[ing] online actions to actors." Opp. 5–6. The Opposition relies almost solely[1] on Plaintiffs' expert Dr. Zubair Shafiq, but his report speaks only of the functionality and capabilities of third parties; he does not opine that Meta can or does link every datum received to a real-world individual, nor that it did so for all PPFA visitors, nor even that it did so for information about Plaintiffs themselves. Plaintiffs' contentions about Meta's "business promise" (Opp. 6) are entirely beside the point. Plaintiffs cannot survive summary judgment by merely suggesting that Meta identifies *some* people; rather, they must show that Meta actually identified the Plaintiffs *themselves*. After all, Article III demands that *each* plaintiff come forth with evidence showing that she personally suffered a "concrete and particularized" injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Because Plaintiffs have not done so, PPFA is—for this reason alone—entitled to summary judgment.

The rest of Plaintiffs' arguments—which merely aim to blunt the force of PPFA's affirmative evidence rather than to marshal any proof of their own, Opp. 6-9—are ultimately irrelevant too. The burden of establishing standing rests solely with Plaintiffs, and they have failed to meet it. Even on their own terms though, Plaintiffs' arguments regarding PPFA's evidence fail. [redacted] Crucially, neither source contains any indication that Meta identified either Plaintiff during the Class Period. Opp. 6–7. Indeed, they indicate the opposite.

[1] Plaintiffs also rely on a declaration submitted by a Meta engineer in another litigation, deceptively asserting that it shows that "Meta matches the event data to Meta users" when the Meta Pixel is triggered. Opp. 6. The declaration actually states that "Meta *attempts* to match the Events it receives to Meta users (Meta cannot match non-Meta users)," Opp. Ex. 5 (emphasis added), with no indication of how often that attempt occurs nor how often it is successful.

Plaintiffs therefore insist that those records should not be taken as "conclusive" because they must be "incomplete." *Id.* at 7. Specifically, Plaintiffs assert (misrepresenting testimony from PPFA's experts) that the Off Meta Activity Reports merely "reveal[] a fraction of a Facebook user's online activities." *Id.* But that is exactly the point. As PPFA's experts explained (and Plaintiffs omit) the Off Meta Activity Reports reveal only the "fraction" of online activity that Meta was actually associated with that Facebook user. MSJ Reply Ex. 1 (Cohen Dep. Tr.) at 218:22–219:3 (explaining that "if [Meta] cannot link your visit to a Meta account," then that visit will not appear in "an Off Meta Activity Report for you"). [redacted] "fraction of [their] online activities," Opp. 7, that Meta was able to link to them.

[redacted] Plaintiffs' only response is to insist—citing nothing—that those records must be "incomplete," without attempting to explain why they believe as much. Such an unsupported assertion is entitled to no weight on summary judgment, which requires Plaintiffs to support their case with evidence.[2] Ultimately, the completeness of the Off Meta Activity Reports and Meta's production is inconsequential and does not "create disputed issues for the jury." *Contra* Opp. 7. Whether those records affirmatively prove that Meta did not connect Plaintiffs to PPFA's website or are arguably inconclusive on the matter, the fact remains that Plaintiffs have zero evidence in the record that Meta made any such connection. Plaintiffs cannot meet their burden of proof.

**B. Plaintiffs Fail To Raise A Material Dispute Of Fact As To Whether Meta Intercepted Their Communications In Real Time.**

PPFA's Motion explained that Plaintiffs have failed to adduce any evidence that could satisfy a key requirement of California Penal Code § 631(a): interception of a communication must occur

[2] Plaintiffs' speculative arguments concerning the various "reasons" for "why" Meta did not associate Plaintiffs with their activities on PPFA's Website are further afield and may be disregarded. As PPFA explained and Plaintiffs do not dispute (*see* Opp. 7-9), "it does not matter *why* Meta did not identify Plaintiffs with their purported activities on PPFA's Website." Mot. 14. Whatever the reason, the evidence is clear that Meta did not identify Plaintiffs by any means (including by either the c_user cookie or the _fbp cookie discussed in Plaintiffs' Opposition), which is the only material issue at this stage.

while that communication is "in transit" to its "intended recipient." Mot. 14 (quoting *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. 2025)). Plaintiffs' primary response is to rewrite the statute. In Plaintiffs' reimagining, § 631(a) applies to the collection of data "regardless of whether" it occurs "before or after delivery of the communication." Opp. 11. That standard is incoherent even on its own terms and irreconcilable with § 631(a)'s straightforward text.

As relevant here, the statute applies when someone other than the parties to a communication impermissibly "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication ***while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state***." Cal. Penal Code § 631(a) (emphasis added); *see* Opp. 10. All of that boils down to the same timeframe: after the sender begins to send the communication and before the intended recipient has finished receiving it. That is the window when a communication is "in transit" (moving from sender to recipient), when the communication would be "passing over any wire, line, or cable" (should that technology be the link between sender and recipient), and between the communication "being sent" and being "received."

This is why everyone—legislators, judges, even Plaintiffs—describes the conduct that § 631(a) proscribes as the "***interception***" of a communication. *E.g.*, Opp. 10 (emphasis added). Section 631(a)'s in-transit requirement is "consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt ***in progress or course before arrival***.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)) (emphasis added). Simply put, an electronic communication cannot be intercepted before it is sent or after it is received, just as a quarterback's pass cannot be intercepted before it is thrown or after it is caught. Strangely, Plaintiffs assert that *Konop* somehow "strongly suggests" that § 631(a) applies "regardless of whether" data is collected "before or after delivery of the communication." Opp. 11. But that is precisely the overbroad reading that *Konop* rejected. 302 F.3d at 876 (rejecting idea that interception occurs "regardless of when or under what circumstances"). And it is a simple fact of internet transmission—not a question of any particular jurisdiction's "law," Opp. 10—that a website user's communication typically takes "milli-seconds" to arrive at the website. Mot. 14 (quoting *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014)).

Plaintiffs strain to rewrite § 631(a) because they have adduced no evidence that could satisfy the actual "in transit" requirement. Plaintiffs rely exclusively on Dr. Shafiq's expert report and subsequent declaration in support of class certification. Opp. 11. But Dr. Shafiq's report said nothing about the ***timing*** of transmission to third parties, including whether it occurs before or after user communications reach PPFA's website. The paragraphs of that report that Plaintiffs cite purport to describe only the range of data collected and the path that transmissions to third parties must travel; they are wholly silent as to timing. *See* MSJ Ex. 17 (Shafiq Rep.) ¶¶ 35, 43, 44, 63.

That leaves Dr. Shafiq's declaration, which belatedly ***does*** address timing—but in a way that dooms Plaintiffs' case. The declaration asserts that "Google Analytics and Meta Pixel run as JavaScript source code embedded in the webpages themselves, placed in the <head> section of the HTML so that they execute immediately ***when the page begins loading***." Opp. Ex. 13 ("Shafiq Decl.") ¶ 12 (emphasis added). In other words, a website user first sends a webpage request to PPFA's website; the website then receives the request and "begins loading" the desired "page;" and ***only then*** do third-party tracking technologies begin to "execute." *Id.* That is not interception under § 631(a) because it occurs ***after***, not before, the website user's purported communication reaches PPFA. Dr. Shafiq attempted to distract from that dispositive order of operations by asserting that the third-party tracking technologies execute "before the page finishes loading." *Id.* But interception must occur before the ***user's*** communication reaches PPFA—not before ***PPFA*** completes its response to the communication it already received. However strenuously Dr. Shafiq and Plaintiffs insist that these asserted facts show "contemporaneous" interception, *id.* ¶ 13; Opp. 11, they do not satisfy § 631(a)'s "in transit" requirement.[3]

Although the Court could stop there, Plaintiffs have also failed to establish interception under § 631(a) for a second, independent reason. Plaintiffs attempt to show unlawful interception exclusively by pointing to tracking technologies' purported transmission of data to third parties. Even setting aside that those transmissions took place too late, there is no evidence that any third

[3] Plaintiffs get nowhere pointing to decisions ***at the pleading stage*** that a complaint adequately alleged in-transit interception. *See* Opp. 12–13. Those decisions gave plaintiffs the opportunity to adduce evidence establishing in-transit interception, which Plaintiffs have failed to do here.

party "read[ ], or attempt[ed] to read, or to learn the contents or meaning of" the data while it traveled to the third party, as the statute separately demands. Cal. Penal Code § 631(a). That is because Plaintiffs have offered no proof whatsoever that Meta (or any other third party) attempted to ***understand the meaning*** of data as it traveled from tracking technologies. Mot. 15–16.

Plaintiffs do not dispute that Meta ***did not read*** the data collected by the Meta Pixel while it was in transit. They contend only that Meta ***attempted*** to read it simply by collecting it (which they cannot prove occurred). But Plaintiffs' argument again rests on a legally flawed construction of § 631(a)—one that this District has squarely rejected. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117–18 (N.D. Cal. 2025). Plaintiffs argue that when the Meta Pixel transmitted data to Meta (even if it was "encrypted" and indecipherable), that qualified as an attempt by Meta to read the data solely because it was a "substantial step" toward Meta ***later*** "learning its content" after storing the data. Opp. 13. That makes no sense and would again require a rewriting of the statute. Learning the meaning of electronic communications after they have been transmitted is not unlawful under § 631(a). So even if transmitting the data in encrypted form were a "substantial step" in that direction, it would not be a step toward "criminal conduct"—the definition of "attempt" that Plaintiffs invoke. Opp. 13 (quoting *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107 (9th Cir. 2009)). That is why *Doe* rejected exactly this misreading of the word "attempt" in § 631(a). *See* 806 F. Supp. 3d at 1117–18 (it is not "enough to intercept the communication with the intent to learn its contents later"). Although Plaintiffs try to frame this dispute as a factual issue for the jury, it is nothing more than a question of statutory meaning for the Court to decide (just as *Doe* did at the summary judgment stage).

Contrary to Plaintiffs' warnings, rejecting their flawed construction does not leave "attempt" with "no meaning." Opp. 15. That word ensures that defendants may be held liable under § 631(a) for ***trying*** to decipher the substantive meaning of a communication while it was in transit, even if the effort failed (say, because of a software glitch or an inability to understand a foreign language). Rejecting Plaintiffs' construction also does not "conflict[ ] with federal wiretapping law." Opp. 14. Plaintiffs note that under the federal Wiretap Act (which they treat as parallel to § 631(a)), "[a]n 'acquisition' occurs when the contents of a ***wire*** communication are 'captured or redirected in any

way.'" *Id.* (quoting *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009)) (emphasis added). That is true as far it goes: The Ninth Circuit has adopted "a broad definition of the term 'intercept' with respect to wire communications, one that include[s] acquisition of a communication subsequent to transmission." *Konop*, 302 F.3d at 877 (citing *United States v. Smith*, 155 F.3d 1051, 1055 (9th Cir. 1998)). A wire communication is one made "through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection," like a telephone call or "voicemail message." *Smith*, 155 F.3d at 1055–56 (quoting 18 U.S.C. § 2510(1)). But the law works differently for ***electronic*** communications like those at issue here, which "transfer … signs, signals, writing, images, sounds, data, or intelligence" without a telephone line. *Id.* at 1057 (quoting 18 U.S.C. § 2510(12)) (emphasis removed). The Ninth Circuit has ruled that electronic communications, unlike wire communications, must be "acquired during transmission," not after. *Konop*, 302 F.3d at 878; *see also* Cal. Pen. Code 631(a) (prohibiting "tap[ping]" of and "unauthorized connection" to "any telegraph or telephone wire, line, cable, or instrument"). Plaintiffs' reliance on the distinct, broader standard for wire communications simply confirms that they cannot satisfy § 631(a)'s requirements for electronic communications.

**C. Plaintiffs Fail To Raise A Material Dispute Of Fact Regarding Their Admitted Consent To PPFA Sharing Data With Meta.**

The undisputed evidence establishes that Plaintiffs consented to the very data collection they now challenge. To avoid the consequences of that consent, the Opposition relies on three arguments—that PPFA's privacy policy is an unenforceable "browsewrap" agreement, that Plaintiffs did not effectively assent to Meta's terms, and that any such consent did not extend to "sensitive" information. Each of these contentions is either a diversion or contradicted by the record.

*First*, Plaintiffs' focus on the enforceability of PPFA's privacy policy is a distraction from the actual dispute. PPFA does not contend in its Motion that its own policy formed the basis for Plaintiffs' consent. *See* Mot. at 16–18. While PPFA maintains its policy is valid and enforceable, the Court need not resolve that issue; here, consent is grounded in the disclosures within Meta's policies.

[redacted]

[redacted]

Plaintiffs' suggestion that PPFA must prove affirmative assent to every specific revision of Meta's policies is unsupported. Indeed, by signing up for a Facebook account, [redacted] As the court explained in *B.D. v. Blizzard Entertainment, Inc.*, when a consumer signs up for an ongoing account, it is "reasonable to expect that the typical consumer . . . contemplates entering into a continuing, forward-looking relationship governed by terms and conditions." 76 Cal. App. 5th 931, 951 (2022). Beyond arguing that the cases cited by PPFA did not involve "sensitive health information" (yet another distraction, as discussed further below), Plaintiffs fail to engage with the authority cited by PPFA (Mot. at 18) establishing that "sign-in wrap" presentations—like the one used by Meta—routinely put reasonable consumers on notice of a platform's terms. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014–1016 (9th Cir. 2024).[4] And, crucially, Plaintiffs testified [redacted], *see* MSJ Reply Ex. 2 at 116:2–117:4, MSJ Ex. 3 at 174:13–16, 176:1–11, which is dispositive as to the application of those Terms to them.

[4] Plaintiffs' reliance on *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. 2024), is misplaced. In *Yoon*, the court found on a motion to dismiss that the record lacked evidence that the plaintiffs were required to acknowledge Meta's policies. *Id.* at *4. Crucially, however, that consent could be established "simply by using the website" if the defendant showed actual or constructive knowledge of the policies. *Id.* Here, that evidence exists: [redacted] Unlike the pleading record in *Yoon*, there is no doubt here that Meta's policies were presented "in a manner that made it apparent [Plaintiffs were] assenting to those very terms" by continuing to use their accounts (and they concede as much). *Blizzard*, 76 Cal. App. 5th at 944.

*Finally*, [redacted] by claiming that Meta's disclosures were too "generalized" to cover the alleged sensitive health data at issue. Plaintiffs primarily rely on *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022). In that case, however, health care providers shared "patient status" and communications transmitted from secure, HIPAA-protected patient portals. *Id.* at 792 (explaining protected health care information is "individually identifiable" information that is "created or received by a health care provider"). While the court there determined that plaintiffs did not necessarily consent to the collection of "protected health information from a medical provider," it acknowledged that a reasonable user who viewed Meta's policies would have understood that Meta was collecting internet browsing information as a general matter. *Id.* at 793-794. Similar "protected" health information is not at issue here. By contrast, and as explained in its Motion, PPFA does not itself provide health care services, and its Website is not a "patient portal." Indeed, its Website is distinct from the websites associated with the affiliates and their health centers, and it is via affiliates' websites that a website visitor can create (and enter the contact information necessary to book) an appointment for health care services. Mot. at 3–4.

Because this case involves a website that provides health-related information to the public, it falls squarely within the reasoning of *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). In *Smith*, the court held that sharing URLs and searches related to treatment options (*e.g.*, "intestine transplant"), specific doctors, or diagnoses, along with "other publicly available medical information" did not constitute the transmission of "protected health information" relating to a specific individual's clinical condition. *Id.* at 954–55. Indeed, the *In re Meta Pixel* court specifically distinguished *Smith* because the pixel at issue in *In re Meta Pixel* actually captured "information that connect[ed] a particular user to a particular healthcare provider." 647 F. Supp. 3d at 793. Ultimately, the fact that Meta's notice may be "broad" or "general" is irrelevant; the *Smith* court rejected this precise argument. *Smith*, 262 F. Supp. 3d at 954 (noting several courts held similar "broad" disclosures constitute "adequate notice of tracking activity").[5]

[5] Plaintiffs' attempts to distinguish other on-point authority—including *Silver v. Stripe, Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021), and *Lloyd v. Meta Platforms, Inc.*, 2022 WL 4913347, at *9-10 (N.D. Cal. Oct. 3, 2022)—on the ground that those cases did not involve "private health information" are equally unavailing for the reasons already stated. Neither does this case.

Plaintiffs' reliance on Meta's Business Tools Terms is another diversion. Those Terms represent a purported separate agreement between Meta and third-party developers; it does not nullify the express consent established between Meta and its users [redacted] *See Lloyd*, 2022 WL 4913347, at *9–*10. Because Meta's disclosures established that off-site activity would be collected, Plaintiffs did not have a "reasonable expectation" that their browsing data would remain private from Meta. *See* Mot. at 16–18.

**D. Plaintiffs Cannot Carry Their Burden of Proof as to Other Third Parties.**

Plaintiffs concede via omission that they have no evidence in support of the claims in the First Amended Complaint regarding Yahoo! or Bing, as they do not even mention those tools in their Opposition. *Lefkowtiz*, 2016 WL 537952, at *3. Similarly, they point to no evidence regarding any of the other third-party tools that their expert mentions in passing in his report. As to those entities, then, it is undisputed that PPFA is entitled to summary judgment.

Plaintiffs contend that there is sufficient evidence to present their claims regarding Google to a jury, but their efforts fall short. They rely solely on (1) their expert's description of how Google cookies generally work and of the concept of "fingerprinting" and (2) inadmissible hearsay documents they found on the Internet that supposedly establish that Google uses data for marketing.[6] PPFA is therefore entitled to summary judgment as to every third-party tool other than Meta (as well as to Meta for the reasons discussed above).

As discussed above with regard to Meta, Dr. Shafiq describes only how third-party tools generally work and what the third parties generally do with the information collected. Similarly, he describes the concept of "fingerprinting"—*i.e.*, uniquely identifying a browser-device combination—but offers no opinion and has no knowledge regarding what Google actually did with data actually collected from PPFA or what Google actually did with regard to Plaintiffs. *See* Opp. at 21–22. The mere possibility of linkage or even the fact of linkage by Google in some cases is not

[6] While those documents are inadmissible hearsay and should not be considered, they also do not prove that Google connected any data collected via PPFA's implementation of Google Analytics to any specific individual, let alone that it did so for either Plaintiff. *See, e.g.*, *Advertising*, https://policies.google.com/technologies/ads (last visited Mar. 7, 2026) (cookies "*may* uniquely identify your browser or, if you are signed-in, [] *may* uniquely identify you" and that "various cookies *may* be sent to your browser" on a website with Google Analytics) (emphasis added).

evidence that Google actually made any such linkage for either Plaintiff here. Plaintiffs cannot carry their burden of proof with possibilities and capabilities—they need evidence and they have none.

Plaintiffs point to Rule 56 to excuse their failure to obtain evidence in support of their claims. Plaintiffs' appeal to Rule 56(d) fails at the outset because it requires them to "show[] by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition" to PPFA's motion, which Plaintiffs have not done. Additionally, Rule 56(d) is intended to allow a party time to obtain further evidence and Plaintiffs thus bear the burden "to proffer sufficient facts that the evidence sought exists, and that it would prevent summary judgment." *Atay v. Cnty. of Maui*, 842 F.3d 688, 698 (9th Cir. 2016) (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001)). Plaintiffs concede that evidence of any data use by Google does not exist, so they fail this standard. They argue that "Google's self-serving data retention policies should not be used as a weapon" against Plaintiffs. Opp. at 22. That might be a compelling argument if Google were a party here, but Google is not. What Plaintiffs actually ask is that they be excused from their burden of proof against PPFA because a third party no longer possesses evidence that they hope might have supported their claims if it existed (but also might not). That is a fundamentally improper request – this lack of evidence may not be "affirmative proof" that no violation of CIPA occurred, but PPFA does not bear that burden. This case was filed in 2023. If Plaintiffs have been unable to adduce evidence in support of their claims, a barren record does not mean they get to try to convince a jury of what may be possible, it means they lose.

Finally, as with Meta, Plaintiffs again unsuccessfully attempt to sidestep their burden of proving a necessary element of their CIPA claim in connection with Google. As discussed above, in order for there to be a violation of CIPA, among other things, there must be an *interception in transit*. *See* § I.B *supra*. Plaintiffs point only to their expert's report as evidence, but it does not support their argument. Dr. Shafiq discusses only *where* the data flows in a server-side implementation of Google Analytics, but is silent on the crucial question of *when* a purported interception occurs. As such, Plaintiffs cannot prove their CIPA claim in connection with Google.

**A. Plaintiffs Cannot Establish Any Entitlement To Injunctive Relief.**

As established in PPFA's Motion, Plaintiffs have not adduced evidence to support their

request for injunctive relief. Their Opposition fails to demonstrate otherwise and Plaintiffs significantly overstate their claim that PPFA is currently aiding and abetting a CIPA violation by Google. Plaintiffs simply cannot point to "evidence demonstrating that a genuine issue exists as to whether the alleged wrongdoing will occur in the future." *SourceAmerica v. SourceAmerca*, 2018 WL 2193261, at *6 (S.D. Cal. 2018) (granting summary judgment where plaintiff offered "no evidence at all" of threat of future harm); *see also Lanovaz v. Twinings N. Am., Inc.*, 2016 WL 4585819, at *3 (N.D. Cal. 2016) (same, finding "no material dispute of fact as to the threat of future injury"). Indeed, as discussed above in § I.D *supra*, Plaintiffs also cannot prove any violation of CIPA by Google in the past that might be "repeated" in the future.

Plaintiffs' only "evidence" that they can satisfy the injunctive relief standard and establish an "imminent threat of repeated injury" is the fact that PPFA's current Privacy Policy discloses the use of third-party technologies including Google Analytics. Opp. at 23. But there is nothing illegal about using Google Analytics. Plaintiffs ignore the evidence in the record regarding PPFA's server-side implementation of Google Analytics 4 in the summer of 2023[7] and proffer no evidence in their Opposition regarding, among other things, what tools are supposedly gathering what information, whether it is in transit or not, or whether it constitutes a communication under the law.

Plaintiffs admit that PPFA implemented a cookie consent banner and quote the banner language, but assert that they are entitled to injunctive relief unless PPFA can prove various things about that banner.[8] In doing so, Plaintiffs again shirk their burden of proof and accuse *PPFA* of failing to *disprove* their claims. But unless *Plaintiffs* can *prove* them, the Motion must be granted.

## III. CONCLUSION

PPFA therefore respectfully requests that the Court grant summary judgment in its favor.

---

[7] Plaintiffs presumably considered the transition to Google Analytics 4 relevant to the merits of their claim, as they chose to cut off their proposed Class Period upon the date of the transition from client-side Universal Analytics to server-side Google Analytics 4. See Mot. for Class. Cert. 7 (defining class period as Sept. 1, 2022 through July 6, 2023; *see also* MSJ Ex. 17 at ¶¶ 59–60 (discussing date of removal of Universal Analytics).

[8] The citation to PPFA's expert's testimony as somehow calling the sufficiency of the banner into question is unavailing—he testified that cookie banners often "have an issue" causing them to not work exactly as intended. Plaintiffs specifically asked Mr. Cohen whether he had evaluated PPFA's cookie banner and he confirmed he had not. *See* MSJ Reply Ex. 1 at 323:21–324:2.

DATED: March 12, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.