JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. ZUBAIR SHAFIQ**<br><br>Date: April 2, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

PPFA's Motion demonstrated how Plaintiff's proposed use of Dr. Zubair Shafiq's testimony has shifted: In his expert report, Dr. Shafiq opined that "third parties" like Meta and Google "***can*** link or associate" activities on a website "with a particular individual or household." Ex. 1 ¶ 16 (emphasis added); *id.* ¶ 3. But Plaintiffs now seek to have Dr. Shafiq tell the jury (and the Court) not just that Meta ***could*** identify individuals in that way, but that it "***actually***" did with respect to ***every*** putative class member, including Plaintiffs themselves. Plaintiffs' Opposition to PPFA's Motion to Exclude, ECF No. 121 ("Opp.") at 4.

In an attempt to save that belated (and untrue) opinion, Plaintiffs retreat from the opinion they seek to have Dr. Shafiq actually offer (as reflected in their Class Certification Motion), and instead defend yet a third opinion in the *body* of their Opposition—with similar-seeming wording, but vastly divergent meaning. Whereas Plaintiffs say at the outset of their Opposition they seek to have Dr. Shafiq opine that "Meta and Google actually linked ***class members'*** PPFA Website searches and page views to their specific identities," Opp. 1 (emphasis added), what they defend *in the body* of their brief is an "opinion that Meta and Google not only can *but do* link online activities to specific identities," Opp. 2 (emphasis added)—with no mention of these particular Plaintiffs or class members.

That difference is critical. PPFA is not seeking to exclude an opinion about whether Meta (or Google) has ever linked ***anyone's*** online activities to their real-world identities. Instead, the operative question here is whether Meta did so with these particular Plaintiffs, and with each and every one of these particular putative class members. That is why Plaintiffs ultimately seek to have Dr. Shafiq testify as to the latter—*i.e.*, that "Meta and Google actually linked ***class members'*** PPFA Website searches and page views to their specific identities"—even as they structure their defense in their Opposition around the former. Opp. 1 (emphasis added).

But once that basic element of deception is cleared away, Plaintiffs' arguments in support of Dr. Shafiq's testimony quickly fall apart. Plaintiffs insist, for instance, that Dr. Shafiq's opinion does not run afoul of Rule 26, because his "opinion that Meta and Google not only can but do link online

activities to specific identities is at the foundation of his Report." Opp. 2. That careful wording—which scrupulously avoids representing that Dr. Shafiq offered any opinions about whether Meta or Google did any linkage as to these Plaintiffs or class members in particular—is no accident. To the contrary, Plaintiffs repeat this same point (with slightly different, but always similarly artful, wording) multiple times. Opp. 2 (arguing that Dr. Shafiq's report disclosed opinion that "Meta and Google connect website users to their online activities is well developed in the Report"); Opp. 2 (arguing that Dr. Shafiq's report disclosed opinion that "Meta and Google match online activity to users and track users across different websites"); Opp. 4 (arguing that Dr. Shafiq's report disclosed opinion that "Meta designed and represents its tools as performing account matching"). Once again, though, PPFA's Motion does not seek to prevent Dr. Shafiq from testifying at the generalized level discussed in his Report that Meta and Google *ever* associate people's online activities with their identities (or that they might have the capability of doing so); rather PPFA's Motion seeks to exclude his new opinion that Meta and Google actually did so for every putative class member, including Plaintiffs, here.[1] Plaintiffs are thus opposing a straw-man request.

At its core, Plaintiffs' defense of Dr. Shafiq's reliability likewise rests on more sleight of hand. Plaintiffs assert, for instance, that Dr. Shafiq employed a "standard methodology" to arrive at his opinion. But that methodology—even on Plaintiffs' own telling—relates exclusively to the information that was *transmitted* by PPFA's Website to Meta and Google; it has nothing to do with

---

[1] Plaintiffs fare no better with their fallback argument (to which they devote more of their brief than their primary argument) that even if Dr. Shafiq's opinion did not appear in his report, he should be able to offer it anyway because PPFA asked him about it as his deposition. Opp. 4–7. Plaintiffs' own caselaw is clear that "[a] party may not cure a failure to disclose an expert opinion in a written report by supplementing the expert's disclosure with later deposition testimony." *Ramirez v. City of Gilroy*, 2020 WL 1492704, at *6 (N.D. Cal. 2020), *cited at* Opp. 5. And in any event, contrary to Plaintiffs' assertion, PPFA did not "solicit the very opinion that it now seeks to suppress." Opp. 5. Rather, Dr. Shafiq affirmatively offered the opinion himself, as part of a lengthy and evasive response to an entirely unrelated question from PPFA. Daubert Reply Ex. 1 (Shafiq Dep. Tr.) at 118:18–119:15 (Q. "Does [the cookie] identify a user by name?" A. "…[W]hen [Meta and Google] receive this cookie, they match this cookie to the list of identifiers that they have associated with different account holders."). The exchange that Plaintiffs excerpt in their brief (at Opp. 5) simply reflects PPFA's counsel following up on this unsolicited new opinion from Dr. Shafiq.

the opinion that Plaintiffs seek to have Dr. Shafiq offer here, about what Meta and Google *actually did* with that information once they received it. Plaintiffs emphasize, for instance, that Dr. Shafiq performed various analyses to "identif[y] *which* identifiers Defendant's website transmitted (account-level cookies, device-level cookies, IP addresses, and user-agents), demonstrate[] how those identifiers reached Meta and Google, and explain[] why those identifiers are sufficient for identity resolution." Opp. 8 (emphasis in original); *see also* Opp. 9 ("Dr. Shafiq describes the identifiers transmitted, confirms that Meta's own documentation describes how those identifiers are used for matching, and demonstrates that the identifiers carry sufficient entropy for unique identification."). To be clear, though, this last piece—"explain[ing] why those identifiers are sufficient for identity resolution," Opp. 8—is actually not supported by his methodology either (as described in either Dr. Shafiq's report or Plaintiffs' Opposition). And in fact, it is the same opinion that Judge Blumenfeld already so severely criticized Dr. Shafiq for offering, in light of its "numerous serious problems," that the plaintiffs who sought to introduce it elsewhere ended up "disclaim[ing]" it altogether. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *3 (C.D. Cal. Dec. 2024) (noting "difficulty that arises" when a party uses "experts to indirectly establish the relevant facts," a problem compounded in that case "by errors in the opinions of Plaintiffs' principal expert, Dr. Zubair Shafiq"). In any event, even on Plaintiffs' own telling, Dr. Shafiq's analysis—which merely shows that Meta received information from PPFA's Website that he considers sufficient to enable identity resolution—says absolutely nothing about the crucial issue here of whether Meta actually used that information to identify Plaintiffs, let alone every other member of Plaintiffs' putative class.

Plaintiffs' more granular arguments are easily dispensed with. Plaintiffs insist, for instance, that Dr. Shafiq's "[i]nterpretation" of Meta's publicly available "Customer Information Parameters" document is not "lay testimony," because (in their view) that document "is not directed to the average internet user." Opp. 11. But as PPFA has already demonstrated (at Mot. 7) by walking through the document itself, the document is concise and self-explanatory—and Plaintiffs identify nothing in it that would require technical expertise to understand. Opp. 11.

Equally perfunctory is Plaintiffs' argument that Dr. Shafiq's opinion does not "mischaracterize[] publicly available Meta documentation," because it relies on Dr. Shafiq's "interpretation of what [the document] describes." Opp. 12. Again, PPFA has already shown how Dr. Shafiq's opinion finds no support in the document on which he purports to rely (at Mot. 7–8), and Plaintiffs do not even try to show otherwise.

So, too, with Plaintiffs' insistence that Dr. Shafiq's opinion is not contradicted by other evidence in the case—including Meta's internal data showing no identification of either Plaintiff with activities on PPFA's Website during the class period. Opp. 12. Plaintiffs' only argument on this score is to speculate—citing nothing—that Meta's production might have been deliberately incomplete. *Id.*

* * *

If there is one thing to say for Plaintiffs' Opposition, it is that it helps to significantly narrow the divergence between the parties' positions. PPFA's Motion was narrowly tailored to exclude Dr. Shafiq's opinion regarding what Meta and Google actually did. Plaintiffs use their Opposition to argue in support of a different opinion that is not at issue in the Motion regarding what Meta and Google are capable of and may generally do. But the only dispute before the Court is whether Dr. Shafiq may also opine that identification was actually done as to Plaintiffs and every member of the putative class. Plaintiffs do not even purport to identify the disclosure of that opinion in Dr. Shafiq's report. Nor do they identify any basis that would render such an opinion reliable, even if it had been properly disclosed. Dr. Shafiq should thus be barred from offering this additional, belated, and unreliable opinion.

DATED: March 12, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *<u>/s/ Jacob M. Heath</u>*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.