Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., <br><br> *Defendant.* | Case No.: 3:23-cv-04529-JD <br><br> **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: June 11, 2026 <br> Time: 10:00 AM <br> Location: Courtroom 11, 19th Floor <br> Judge: Honorable James Donato |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 11, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, Plaintiffs, Shirley Hinton and Heather Shipley, will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order entering partial summary judgment in Plaintiffs favor on Plaintiffs' First Amended Complaint.

This Motion is based on this Notice of Motion and Motion for Partial Summary Judgment; the accompanying Memorandum of Points and Authorities; the Declaration of Jamie A. Robinson, and exhibits attached thereto; as well as the pleadings, records, and files in this case, any matter as to which the Court takes judicial notice, and upon such other, further oral and documentary evidence that may be presented at or before hearing on this matter.

DATED: March 30, 2026                     Respectfully Submitted,

                                          The Bruno Firm, LLC

                                          By:_____/s/ Jamie A. Robinson_____

                                          One of the Attorneys for Plaintiffs and
                                                 the Proposed Class

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND .................................................................................................................2

LEGAL STANDARD ..........................................................................................................4

ARGUMENT......................................................................................................................4

    I.       PPFA's Website, as Configured During the Class Period, Transmitted the Contents of User Communications to Third-Party Trackers Google and Meta……………………………………………….5

    II.      Google and Meta Intercepted Plaintiffs' Sensitive Communications with PPFA's Website Without Their Consent…………………………………..8

        A. Plaintiffs Never Had Actual Notice of PPFA's Privacy Policy or Its Terms. ………………………………………………………….9

        B. Plaintiffs Were Not on Inquiry or Constructive Notice of PPFA's Privacy Policy Because the Terms Are Contained in an Unenforceable Browsewrap Agreement and the Hyperlink to Access the Policy was Inconspicuous. ………………………………...10

    III.     PPFA's Installation and Configuration of Google Analytics and Meta Pixel Constituted Affirmative Conduct that Establishes Section 631(a)'s Aid, Permit, or Cause Element..........................................14

    IV.     The Court Should Defer Ruling on Plaintiffs' Motion for Partial Summary Judgment Until After Class Certification Has Been Decided…15

CONCLUSION ..................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) ........................................... 16

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ............ 10, 12, 13

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023) ........................... 6

*Doe v. Eating Recovery Center, LLC*, 806 F.Supp.3d 1109 (N.D. Cal. Oct. 17, 2025).... 6

*Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) ........................................... 13

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020) ............. 6, 8

*In re Meta Pixel Healthcare Litigation*, 647 F.Supp.3d 778 (N.D. Cal. Dec. 22, 2022) . 6

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .................................................. 6

*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891 (N.D. Cal. 2023)............................ 5, 8

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014)................. 10, 11, 12, 14

*S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) .............................. 4

*Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1 (Cal. App. 2021) ................................ 12

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) ................................. 4

*Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017 (N.D. Cal. 2014)..... 16

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) ......................................... 11, 12

**Statutes**

Cal. Penal Code § 631............................................................................................ passim

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 4

# INTRODUCTION

Planned Parenthood Federation of America, Inc. ("PPFA" or "Defendant") operates the website www.plannedparenthood.org (the "Website"), where Website users can search for sexual and reproductive healthcare services and information. Plaintiffs Heather Shipley and Shirley Hinton (collectively, "Plaintiffs") used the PPFA Website ███████████████████████████████████████████████████ ████████████████ Plaintiffs did not know and could not have known that Defendant had installed and configured Google Analytics and the Meta Pixel on its Website to share the contents of their searches and other Website communications with tech giants Google and Meta without their consent and in violation of the California Invasion of Privacy Act ("CIPA").

CIPA Section 631(a) prohibits any person from willfully reading, or attempting to read, or to learn the contents or meaning of any communication while it is in transit within California without the consent of all parties. Cal. Penal Code § 631. Section 631(a) also makes it unlawful for any person to aid, permit or cause such unlawful interception of the contents of a communication. *Id.* This case is about Defendant's violation of § 631(a) by aiding, permitting and causing Google's and Meta's unlawful interception of Plaintiffs' private communications on the PPFA Website. Without Defendant's affirmative act of installing Google Analytics and the Meta Pixel on its Website and configuring those tracking technologies to capture full-string URLs reflecting Website users' search terms and page views, no CIPA violation would have been possible.

At the close of discovery, Plaintiffs seek summary judgment on discrete issues established by PPFA's configuration of Google Analytics and the Meta Pixel and PPFA's disclosures, not on every element of Plaintiffs' CIPA section 631(a) claim. First, the undisputed evidence shows that PPFA installed and configured Google Analytics and the Meta Pixel on its Website through Google Tag Manager to transmit full-string URLs containing Website users' search terms, and page-view information to third

parties. Plaintiffs seek to certify a class that is limited to Website users who 1) entered certain highly personal healthcare search terms, such as birth control and STD testing; or 2) viewed Website pages to "get care" for the same highly personal healthcare concerns. The Court should find that these full-string URLs are the contents of a communication within the meaning of CIPA § 631(a) as a matter of law.

Second, the undisputed evidence further shows that PPFA's Website disclosures and privacy policy were insufficient as a matter of law to establish consent. Third, the Court should determine that PPFA's installation and configuration of Google Analytics and the Meta Pixel on its Website establish the element of PPFA's role in "aiding," "permitting" or "causing" Google's and Meta's interception of Plaintiffs' communications, assuming the other elements of Plaintiffs' claims are met. This motion therefore seeks summary adjudication only of those issues that do not require the Court to resolve any plaintiff-specific disputes PPFA contends exist regarding Plaintiffs' Website use, linkage, or interception of any of Plaintiffs' particular Website visits.

Finally, to avoid concerns raised by the one-way intervention rule, Plaintiffs respectfully request that the Court defer ruling on the instant motion for partial summary judgment until the Court issues a decision on Plaintiffs' pending motion for class certification.

## BACKGROUND

During the Class Period, PPFA hosted Google Analytics[1] and the Meta Pixel on its Website. Ex. 1, Shafiq Report at ¶ 52, 55. Defendant affirmatively installed and controlled the configuration of both Google Analytics and Meta Pixel through Google Tag Manager. *Id.*; Ex. 2, Shafiq Decl. at ¶¶ 15-17. PPFA configured Google Analytics

---

[1] PPFA had both Universal Analytics ("UA") and Google Analytics 4 ("GA4") installed during the Class Period. UA was client-side, which allowed PPFA to share website user information with Google, whereas GA4 was server-side and did not share the same information with Google. Therefore, reference to Google Analytics for purposes of this motion will be in reference to UA. See Ex. 1, Shafiq Report at ¶¶ 56, n.113, 62.

and the Meta Pixel to enable Google and Meta to intercept full-string URLs revealing the search terms that PPFA Website users entered in the Website search box. *Id.* at ¶¶ 78, 80, 82, 84, 86. For example, when a Website user entered the term "STD testing" in the search bar, the following full-string URL was conveyed to Google and Meta: https://www.plannedparenthood.org/search?q=std+testing. *Id.* at ¶ 82.

Defendant's Google Analytics and Meta Pixel configuration also allowed Google and Meta to intercept full-string URLs of the pages Website users viewed to "get care" for their healthcare concerns. Ex. 1, Shafiq Report at ¶¶ 66-67, 74, 77, 79, 81, 83. For example, when a Website user viewed a page to get care for emergency contraceptive services, the following full-string URL was conveyed to Google and Meta: https://plannedparenthood.org/get-care/our-services/emergency-contraception. *Id.* at ¶ 79. Google Analytics and the Meta Pixel both intercepted all page views on the PPFA Website, with the sole exception that Meta was blocked from intercepting pages containing the term "abort" and "health center." *Id.* at ¶¶ 55, 57-58. However, Google freely intercepted pages with the term "abort" under PPFA's configuration of Google Analytics. *Id.* at ¶ 55, 87. Further, when a Website user entered her age, date of last menstrual period and city, state and zip code on PPFA's abortion access page, all that information was conveyed to Google. *Id.* at ¶ 87, 102-103.

PPFA's configuration of Google Analytics and the Meta Pixel its Website also shared Website users' identifying information with Google and Meta. PPFA chose not to apply Google's IP address anonymization feature. *Id.* at ¶ 56. Further, PPFA's Website configuration shared Google and Meta first party cookies and non-cookie identifying information such as user agent information and device properties. *Id.* at ¶¶ 107-110. These cookies and other information allowed Google and Meta to match the shared data with a user's real-world identity. *Id.* at ¶¶ 107-124, 128-135.

Plaintiffs moved for class certification on November 21, 2025. ECF No. 93. Plaintiffs defined the class they seek to certify as:

All persons who, between September 1, 2022, and July 6, 2023, while in California (1) search for any of the following healthcare topics using the plannedparenthood.org website search bar: abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception; or (2) visited any of the following plannedparenthood.org healthcare webpages for services relating to abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception:

https://www.plannedparenthood.org/abortion-access
https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines
https://www.plannedparenthood.org/get-care/our-services/birthcontrol
https://www.plannedparenthood.org/get-care/our-services/abortion-services
https://plannedparenthood.org/get-care/our-services/pregnancy-testing-services
https://plannedparenthood.org/get-care/our-services/transgender-hormone-therapy
https://plannedparenthood.org/get-care/our-services/emergency-contraception

ECF No. 93 at 19.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a party to obtain summary judgment, including partial summary judgment, on any claim, defense, or discrete part thereof where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). When a plaintiff moves for summary judgment, the question is whether the plaintiff's evidence establishes each essential element of the claim such that, if uncontroverted at trial, Plaintiff would be entitled to judgment as a matter of law. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Once the plaintiff makes that showing, the defendant must come forward with specific facts supported by admissible evidence demonstrating a genuine issue for trial; it cannot rely on denials in the pleadings, attorney argument, speculation, or conclusory assertions. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## ARGUMENT

Plaintiffs' claims against PPFA arise under CIPA § 631(a), which declares it unlawful:

where a person "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to

read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [the state of California]" and

where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts of things mentioned above in this section."

*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

At the close of discovery, the Court can determine as a matter of law three discrete elements of Plaintiffs' CIPA § 631(a) claim without resolving plaintiff-specific issues of fact raised by PPFA in its motion for summary judgment. First, the Court can adjudicate that PPFA configured its Website to transmit to Google and Meta full-string URLs containing Website users' personal healthcare search terms and the services they sought and that such transmissions constitute the contents of communications under § 631(a) as a matter of law. Second, the Court can determine that PPFA's Website disclosures and privacy policy were insufficient as a matter of law to establish consent. Third, the Court should decide that PPFA's installation and configuration of tracking tools constituted affirmative conduct that establishes § 631(a)'s "aid," "permit," or "cause" element, assuming the remaining elements of Plaintiffs' claims are otherwise proven.

I.    **PPFA's Website, as Configured During the Class Period, Transmitted the Contents of User Communications to Third-Party Trackers Google and Meta.**

Under CIPA § 631(a), "contents" refers to "the intended message conveyed by the communications" as opposed to record information regarding the characteristics of the message that is generated to effectuate the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The Ninth Circuit distinguishes URLs that include "search term[s] or similar communication[s]," which can constitute the contents of a communication, from those that include only basic identification and address information. *Id.* at 108-09. Full-string detailed URLs can divulge a user's personal

interests, queries and constitute "contents" of a "communication" within the context of invasion of privacy under the California Constitution. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 605 (9th Cir. 2020); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. Aug. 7, 2023) (same).

A URL that transmits both the "path" and the "query string" are contents because they concern the substance of the communication. *In re Meta Pixel Healthcare Litigation*, 647 F.Supp.3d 778, 795-96 (N.D. Cal. Dec. 22, 2022) (finding full-string URLs such as *hartfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowl-disorders/ulcerative-colitis* to constitute the contents of a communication). URLs containing specific healthcare search terms entered by a Website user or revealing that a user sought care for a specific healthcare concern go beyond divulging mere personal interests. Such URLs are contents as a matter of law when they are sufficient to convey "a significant possibility" that the website user had a particular health condition at the time she visited the website. *Doe v. Eating Recovery Center, LLC*, 806 F.Supp.3d 1109, 1116 (N.D. Cal. Oct. 17, 2025).

On PPFA's Website, Google Analytics and the Meta Pixel intercepted full-string URLs revealing not only that a user visited PPFA's Website, but also the specific healthcare services that the user viewed. Ex. 1, Shafiq Report at ¶¶ 66-67, 74. Further, these URLs contain the phrases "get-care" and "our-services," which convey a significant possibility that the Website user had the health condition reflected in the URL at the time she visited the PPFA Website. For example, Google Analytics and the Meta Pixel were configured on the PPFA Website to intercept the full-string URLs revealing these specific PPFA services the user viewed:

- https://www.plannedparenthood.org/get-care/our-services/transgender-hormone-therapy (*id.* at ¶¶ 66-67);
- https://www.plannedparenthood.org/get-care/our-services/birth-control (*id.* at ¶ 77);
- https://www.plannedparenthood.org/get-care/our-services/emergency-contraception (*id.* at ¶ 79);

- https://www.plannedparenthood.org/get-care/our-services/std-testing-and-treatment (*id.* at ¶ 81);
- https://www.plannedparenthood.org/get-care/our-services/pregnancy-testing-services (*id.* at ¶ 83).

PPFA also configured Google Analytics and the Meta Pixel to intercept full-string URLs revealing the search terms Website users entered to research specific conditions. For example:

- https://www.plannedparenthood.org/search?q=birth+control (*id.* at ¶ 78);
- https://www.plannedparenthood.org/search?q=emergency+contraception (*id.* at ¶ 80)
- https://www.plannedparenthood.org/search?q=std+testing (*id.* at ¶ 82);
- https://www.plannedparenthood.org/search?q=pregnancy+test (*id.* at ¶ 84);
- https://www.plannedparenthood.org/search?q=hormone+therapy (*id.* at ¶ 86).

For Website visitors who entered personal information on PPFA's abortion services page, a full-string URL was shared directly with Google revealing that the user loaded the abortion access page of the Website, as well as the user's age, the date of the user's last menstrual period and the user's zip code. *Id.* at ¶¶ 69, 87, 102-103. Although PPFA configured the Meta Pixel to block the transmission of page views containing the word "abort" to Meta, those page views were nonetheless transmitted to Meta in the referrer URL as soon as a Website user navigated to another page on the Website. *Id.* at ¶¶ 69, 88.

This evidence is not disputed. It establishes that PPFA's Website, as configured during the Class Period, transmitted full-string URLs revealing the substance of users' communications, including the pages they viewed, the services they sought care for, and the search terms they entered. The Court should decide that these full-string URLs constitute the "contents" of a communication as a matter of law because they raise a significant possibility that the Website user had the specific health condition identified in the transmitted URL. Further, Plaintiffs seek to certify a class consisting only of Website visitors who entered a defined set of particularly sensitive search terms or

viewed "get-care" pages for those same sensitive healthcare conditions (e.g., birth control, STD testing, emergency contraception). *See* Plaintiffs' Motion for Class Certification, ECF No. 93 at 19. PPFA's transmission of these URLs warrants summary adjudication on the content element of Plaintiffs' CIPA claims, irrespective of plaintiff-specific questions of fact that remain for trial.

## II.    Google and Meta Intercepted Plaintiffs' Sensitive Communications with PPFA's Website Without Their Consent.

CIPA Section 631 "prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (quoting Cal. Pen. Code § 631(a)). For there to be effective consent, Section 631 requires "prior consent of all parties to a communication" before any interception occurs. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). Further, consent "is only effective if the person alleging harm consented to the particular conduct, or substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent." *Calhoun v. Google LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

Plaintiffs did not consent to Google's and Meta's interception of the contents of their private and sensitive communications when interacting with PPFA's Website. While PPFA maintained a privacy policy during the Class Period that generally described the Website's use of pixels to collect certain information, Plaintiffs never had any actual or constructive notice of the privacy policy because its terms were contained in an unenforceable browsewrap agreement and the hyperlink to access the policy was intentionally buried at the bottom of the webpage in an inconspicuous manner. As the evidence demonstrates that PPFA's privacy policy was not reasonably conspicuous and Plaintiffs did not manifest their assent to its terms, the privacy policy cannot establish the consent required under CIPA § 631(a).

### A.   Plaintiffs Never Had Actual Notice of PPFA's Privacy Policy or Its Terms.

Partial summary judgment on the issue of lack of consent is warranted because the evidence clearly shows that PPFA failed to obtain consent from Plaintiffs to disclose their private communications with the Website with any third parties. Both Heather Shipley and Shirley Hinton ████████████████████████████ ████████████████████████████ Ex. 3, Shipley Tr. 38:4-7; 38:18-22; Ex. 4, Hinton Tr. 74:9-19. Plaintiff Shipley used the PPFA Website to ████████████ ████████████████████████████. Ex. 3, Shipley Tr. 67:18-68:8; 76:22-77:15; 78:14-19; 80:2-15. Plaintiff Hinton ████████████ ████████████████████████████. Ex. 4, Hinton Tr. 97:16-98:7. Both Plaintiffs entered search terms into the PPFA Website when researching for private healthcare services and information. Ex. 3, Shipley Tr. 68:22-69:14; Ex. 4, Hinton Tr. 80:24-81:2. Critically, neither Plaintiff was aware of a privacy policy on the PPFA Website or read its contents. Ex. 3, Shipley Tr. 117:15-118:20, 140:6-12; Ex. 4, Hinton Tr. 172:1-7.

Actual notice of a website's terms exists if the user "was required to affirmatively acknowledge" the terms before the transaction or alleged misconduct occurred. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Plaintiffs did not take any action that "unambiguously manifested" their assent to be bound by the terms set forth in PPFA's privacy policy. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). During the Class Period, PPFA merely provided a hyperlink to its privacy policy that was located at the bottom of PPFA's Website. Ex. 5, PPFA Responses and Objections to Plaintiffs' Second Set of Interrogatories, Response No. 13; Ex. 6, PPFA-Hinton_000039150 (March 14, 2023 screenshot of PPFA Website). There is no evidence, however, that PPFA took any affirmative steps to present the privacy policy or its terms to Plaintiffs. Ex. 7, 9/3/25 Williams 30(b)(6) Tr. 21:14-22:5; 23:7-24. PPFA's corporate representative confirmed that during the Class Period, there was

nothing on the Website that required a user to click on or affirmatively manifest his or her consent to the privacy policy in order to use the Website's online services. *Id.* at 23:7-24. Moreover, while PPFA eventually added a cookie banner to the PPFA Website advising Website users that third parties use cookies and other tools to collect information about users' interactions with the Website, that was not done until March 2024, long after the Class Period had ended. Ex. 5, PPFA Responses and Objections to Plaintiffs' Second Set of Interrogatories, Response No. 13. Thus, the cookie banner cannot establish consent in connection with Plaintiffs' CIPA claims that accrued during the Class Period.

Accordingly, the undisputed evidence indicates Plaintiffs did not have actual notice of PPFA's privacy policy or its terms. Consequently, there is no issue of fact as to whether Plaintiffs consented to the interception and transmission of their private healthcare communications on the PPFA Website with third parties such as Google and Meta.

**B.   Plaintiffs Were Not on Inquiry or Constructive Notice of PPFA's Privacy Policy Because the Terms Are Contained in an Unenforceable Browsewrap Agreement and the Hyperlink to Access the Policy was Inconspicuous.**

Where there is no evidence that a plaintiff had actual knowledge of purported terms contained in a website's policy—like here—their enforceability "turns on whether the [website] puts a reasonably prudent user on inquiry notice of the terms of the [policy]." *Nguyen*, 763 F.3d at 1177. Plaintiffs never had inquiry or constructive notice of PPFA's privacy policy because its terms were contained in an unenforceable browsewrap agreement and the hyperlink to access the policy was intentionally buried at the bottom of the webpage in an inconspicuous manner.

Contracts formed on the Internet are generally classified as two different types. *Id.* at 1175.  A "clickwrap" agreement is one in which website users are required to affirmatively click on an "I agree" box or similar device after being presented with a list of terms and conditions. *Id.* 1175-76. On the other hand, a "browsewrap" agreement

is where a website's terms and conditions of use are typically posted on the website via a hyperlink at the bottom of the screen. *Id.* at 1176. Importantly, "[u]nlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly"; rather, "[a] party instead gives his assent simply by using the website." *Id.* (citation omitted).

The defining feature of a browsewrap agreement is that the user can continue to use the website or its services without accessing the page hosting the browsewrap agreement or even knowing that such a webpage exists. *Id.* (citation omitted). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap agreement depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* (citation omitted).

PPFA's privacy policy plainly qualifies as a browsewrap agreement. As Plaintiffs were not required to click on PPFA's privacy policy hyperlink or otherwise affirmatively assent to it terms before using the Website or its online services (Ex. 7, 9/3/25 Williams 30(b)(6) Tr. 23:7-24), the policy is therefore not a clickwrap agreement. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). PPFA's privacy policy's terms can only be accessed by clicking on a hyperlink buried at the bottom of the webpage. Ex. 6, PPFA-Hinton_000039150 (March 14, 2023 screenshot of PPFA Website). There is no evidence that Plaintiffs had any reason to scroll to the bottom of the webpage when using PPFA's Website.

When a hyperlink to a website's terms (i.e., PPFA's privacy policy) is "buried at the bottom of the page or tucked away in obscure corners of the website[,]" the Ninth Circuit has repeatedly held that website users are not on constructive notice of the terms and have refused to enforce such browsewrap agreements. *Nguyen*, 763 F.3d at 1177; *see also Wilson*, 944 F.3d at 1220-21. The placement of a mere hyperlink at the bottom of PPFA's Website does not constitute notice or acceptance to its terms. *Nguyen*, 763 F.3d at 1178-79. Accordingly, as PPFA's privacy policy constitutes an

unenforceable browsewrap agreement that was buried at the bottom of webpage, Plaintiffs were not on inquiry or constructive notice of its terms, and thus, have not consented to them. *Id*.

Additionally, Plaintiffs were not put on inquiry or constructive notice of the privacy policy because the hyperlink to access the policy was inconspicuous. To be conspicuous, a hyperlink must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it. *Berman*, 30 F.4th at 856 (citing *Nguyen*, 763 F.3d at 1177)). As online providers have "complete control over the design of their websites,"[2] "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*, 763 F.3d at 1179. The design of PPFA's Website during the Class Period failed to sufficiently notify users of the existence and terms of its privacy policy.

The placement and text disclosing the existence of PPFA's privacy policy is the opposite of conspicuous. When determining whether a website user had inquiry notice of terms, courts consider a hyperlink's location, size, color and font. *Godun v. JustAnswer LLC*, 135 F.4th 699, 709-10 (9th Cir. 2025) (citations omitted). The hyperlink to PPFA's privacy policy is located at the bottom of the webpage amongst 20 hyperlinks, without any noticeable attributes. Ex. 8, PPFA-Hinton_000036173-75 (November 5, 2022 screenshot of PPFA website).

---

[2] *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 16 (Cal. App. 2021).

As shown above, PPFA's privacy policy hyperlink is in the same color, font and size used in the surrounding hyperlinks. *Id*. However, a hyperlink must be "readily apparent" as to sufficiently "alert a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 857. PPFA's privacy policy hyperlink is far from readily apparent and is not set apart from other website components in any noticeable way—such as the white text and capital letters that PPFA used for hyperlink categories. Ex. 8, PPFA-Hinton_000036173-75 (November 5, 2022 screenshot of PPFA website).

Thus, Plaintiffs' attention was not called to the existence of the hyperlink to access PPFA's privacy policy. Ex. 3, Shipley Tr. 140:6-13; Ex. 4, Hinton Tr. 172:1-7. No reasonably prudent Website user would have had inquiry notice of PPFA's privacy policy. Moreover, no statement appeared on any webpage warning Plaintiffs that merely using the Website would somehow constitute notice of or an agreement to the terms contained in PPFA's privacy policy. Consequently, partial summary judgment is appropriate on the issue of lack of consent because PPFA's privacy policy hyperlink was insufficient to give rise to inquiry or constructive notice of its terms. *Nguyen*, 763 F.3d at 1179.

III.    **PPFA's Installation and Configuration of Google Analytics and Meta Pixel Constituted Affirmative Conduct that Establishes Section 631(a)'s Aid, Permit, or Cause Element.**

CIPA § 631(a) reaches a defendant that aids, permits, or causes an unlawful interception as well as the interceptor itself. Cal. Penal Code § 631. The undisputed evidence establishes that PPFA was no passive host of a Website on which third-party tools happened to operate without the host's knowledge. Just the opposite. PPFA affirmatively installed Google Analytics and the Meta Pixel through Google Tag Manager and configured those tools to collect and transmit the full-string URLs at issue in this case.

Defendant's installation of Google Analytics and the Meta Pixel on the PPFA Website is not in dispute. Defendant does not deny it, and discovery unequivocally confirms it. PPFA's Google Tag Manager files demonstrate that PPFA installed both Google Analytics and Meta Pixel on its Website. Ex. 1, Shafiq Report at ¶¶ 52, 55. PPFA configured Google Analytics to share the pages viewed by PPFA website users directly with Google. *Id.* at ¶¶ 55-56. Similarly, PPFA installed and configured Meta Pixel to share directly with Meta the pages viewed by PPFA website users, blocking only the interception of pages containing the term "abort" and "health center." *Id.* at ¶¶ 55, 57-58. Through PPFA's installation of Google Analytics and Meta Pixel, PPFA Website users' search terms and views of pages to "get care" for emergency contraception, birth control services, STD testing, pregnancy testing, transgender hormone therapy, and birth control were intercepted in real time by Google and Meta. *Id.* at ¶¶ 66-69, 77-87, 93-97, 102-103, 105. The only reason Google and Meta were able to intercept these communications was that PPFA took the affirmative step of installing their tracking technologies on its Website. Without PPFA's cooperation, no CIPA violation would have been possible.

It is also indisputable that Defendant understood the private nature of the information it was enabling Google and Meta to intercept. Defendant's own Google Analytics data, produced to Plaintiffs in discovery, contain hundreds of thousands of examples of full string URLs, like the ones at issue in this case, revealing sensitive Website user searches. *Id.* at ¶¶ 98-105.

This data was within Defendant's control. Defendant cannot claim that PPFA did not know that its installation of Google and Meta tracking technologies enabled the interception of the contents of communications when it had reams of evidence at its disposal of the data Google and Meta actually intercepted. Further, even if Defendant could claim that it did not know what data Google and Meta captured through PPFA's installation of Google Analytics and the Meta Pixel, it cannot deny that it *should have known* what data was being conveyed. PPFA's Director of Digital Analytics Brian Kim testified that PPFA reviewed the data points that were intercepted by the third-party tracking technologies on the PPFA Website in response to a Washington Post article in June of 2022 that reported sensitive information captured by tracking technologies on the PPFA Website at that time. Ex. 9, Kim Tr. 133:9-135:16. Accordingly, Defendant cannot deny that it had both the ability to review the data points it permitted Google and Meta to intercept and reason to know that sensitive data was implicated.

At a minimum, the Court should grant summary adjudication that PPFA's installation and configuration of Google Analytics and the Meta Pixel constituted affirmative conduct establishing § 631(a)'s aid, permit, or cause element, assuming the remaining elements of the claim are otherwise proven. That is so because the challenged transmissions depended on PPFA's own decisions to install, configure, and deploy the tracking tools in the manner shown by the undisputed record.

## IV. The Court Should Defer Ruling on Plaintiffs' Motion for Partial Summary Judgment Until After Class Certification Has Been Decided.

The one-way intervention rule exists to protect a defendant from unfair "one-way intervention," where the members of a class not yet certified can wait for the court's ruling on summary judgment and either opt into a favorable ruling or avoid being bound by an unfavorable one. *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2014) (citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974)). Plaintiffs' motion for class certification was filed in November 2025, has been fully brief by the parties and is set for hearing on April 2, 2026. ECF

Nos. 93, 104, 107, 114. To avoid the concerns raised by the one-way intervention rule, Plaintiffs respectfully request that the Court defer ruling on the instant motion for partial summary judgment until the Court issues a decision on Plaintiffs' pending motion for class certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court defer consideration of this motion until after ruling on class certification, and upon consideration of this motion, Plaintiffs respectfully request that the Court grant summary judgment on the following discrete issues: (1) Defendant's configuration of Google Analytics and the Meta Pixel transmitted full-string URLs that constituted the contents of users' Website communications; (2) Defendant's Website disclosures and privacy policy were insufficient to establish consent as a matter of law; and (3) Defendant's installation and configuration of Google Analytics and the Meta Pixel was affirmative conduct establishing section 631(a)'s aid, permit, or cause element, assuming the remaining elements of the claim are otherwise proven.

Dated: March 30, 2026                Respectfully submitted,

                                     By:    /s/ Jamie A. Robinson

                                     Klint L. Bruno (admitted pro hac vice)
                                     Michael L. Silverman (admitted pro hac vice)
                                     Jamie A. Robinson (admitted pro hac vice)
                                     Adam J. Feuer (admitted pro hac vice)
                                     **THE BRUNO FIRM, LLC**

                                     By:    /s/ Bradley A. Benbrook

                                     Bradley A. Benbrook
                                     Stephen M. Duvernay
                                     **BENBROOK LAW GROUP, PC**

                                     *Attorneys for Plaintiffs and the Proposed
                                     Class*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was filed this 30th day of March 2026 via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

/s/ *Jamie A. Robinson*
Jamie A. Robinson