Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>*Defendant*. | Case No.: 3:23-cv-04529-JD<br><br>**PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF IAN COHEN**<br><br>Date: June 11, 2026<br>Time: 10:00 AM<br>Location: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 11, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, Plaintiffs Shirley Hinton and Heather Shipley will and hereby do move this Court for an order excluding certain testimony of Defendant's expert witness Ian Cohen.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Jamie A. Robinson, and exhibits attached thereto; as well as the pleadings, records and files in this case, any matter to which the Court takes judicial notice, and upon such other further oral and documentary evidence that may be presented at or before hearing on this matter.

DATED: March 30, 2026

Respectfully Submitted,

By: /s/ *Jamie A. Robinson*

*Attorney for Plaintiffs and the Proposed Class*

## TABLE OF CONTENTS

INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 2

I. Mr. Cohen is Not Qualified to Offer Expert Opinions on Entropy, Information Theory or the Mathematical Basis of Identifiability Thresholds ........ 3

II. Even if Cohen Were Qualified to Render Opinions on Entropy Theory, His Entropy Opinions Are Not the Product of a Reliable Method ........ 4

III. Cohen's Broad Statements Either Lack Citations or Cite Sources Which Do Not Support the Propositions for Which He Cites Them ........ 6

IV. These Defects Go to Admissibility, Not Mere Weight ........ 8

CONCLUSION ........ 8

## TABLE OF AUTHORITIES

**Cases**

*Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998) ........ 2

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ........ 2

*Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.Supp. 1353 (D. Ariz. 1996) ........ 4

*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) ........ passim

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988) ........ 2

*U.S. v. 99.66 Acres of Land*, 970 F.2d 651 (9th Cir. 1992) ........ 2

*United States v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020) ........ 2, 4, 7

**Rules**

Fed. R. Evid. 702 ........ passim

## INTRODUCTION

Pursuant to Rule 702 of the Federal Rules of Evidence, Plaintiffs seek to exclude certain unreliable testimony of Ian Cohen submitted by Defendant to rebut the report of Plaintiffs' expert, Dr. Zubair Shafiq. Plaintiffs' expert Dr. Shafiq opines that combinations of identifiers such as IP address, user-agent data, and cookie-based identifiers can exceed the 32-bit entropy threshold associated with identifiability and reidentification risk. Ian Cohen attacks that opinion in paragraph 10 of his report and again in paragraphs 139 through 146, where he asserts that entropy theory is merely theoretical, that it has no practical meaning here, that it would require Google or Meta to make "several mistakes," and that Dr. Shafiq's use of a 32-bit threshold is "technically unrealistic." Ex. 1, Cohen Report at ¶¶ 10, 139-146.

Those opinions should be excluded for two independent reasons. First, Cohen is not qualified to offer expert opinions on information theory, entropy, or the mathematical basis of identifiability thresholds. Second, even putting qualifications aside, the opinions are not the product of any reliable methodology. They rest on *ipse dixit*, are untethered to any test or analysis Cohen performed, and are not supported by the very materials he cites.

## LEGAL STANDARD

Under the 2023 amendments to Federal Rule of Evidence 702, the proponent of expert testimony must establish by a preponderance of the evidence that the witness is qualified, that the testimony is based on sufficient facts or data, that it is the product of reliable principles and methods, and that the opinion reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702(a)-(d); Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 589-93 (1993); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049-50 (9th Cir. 2025).

Rule 702 requires more than credentials and more than a dispute dressed up as expertise. The Court must determine whether the witness is actually qualified to offer the opinion at issue, and whether the opinion is relevant and rests on a reliable basis. *See, e.g., United States v. Valencia-Lopez*, 971 F.3d 891, 897 (9th Cir. 2020); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Courts properly exclude expert testimony where there is no reliable basis for the opinion. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (upholding exclusion of expert testimony that rested on unsupported assumptions, ignored crucial distinctions, and had scant basis in the record); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (striking opinion based on undocumented information as the antithesis of reliable expert testimony). Where a witness relies on experience rather than formal scientific testing, he still must explain how that experience leads to the conclusion reached, why it supplies a sufficient basis for the opinion, and how it has been reliably applied to the facts. FED. R. EVID. 702 advisory committee's note to 2000 amendment; *Valencia-Lopez*, 971 F.3d at 898.

The Court therefore may not admit an opinion merely because the expert has relevant industry experience in some adjacent area. The witness must be qualified to offer the specific opinion at issue, and the opinion must rest on sufficient factual grounds and a reliable methodology. *U.S. v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992); *Engilis*, 151 F.4th at 1054-55.

## ARGUMENT

### I. Mr. Cohen is Not Qualified to Offer Expert Opinions on Entropy, Information Theory or the Mathematical Basis of Identifiability Thresholds.

In Paragraph 10 of his report, Mr. Cohen criticizes Dr. Shafiq's opinion on entropy and identifiability stating:

> Dr. Shafiq's reliance on "entropy" theory "to quantify the risk of identifiability" in the context of this case (see Shafiq Report ¶ 183) is misplaced. At best, the "entropy" argument describes a *theoretical possibility* that a person could be singled out or matched across different datasets using data that is not personally identifying on its own. It does

> not show that any such matching could realistically occur here, nor that any information received by Meta or Google from the PPFA Website actually was used to determine the identity of a specific visitor. Rather, Dr. Shafiq's theory merely suggests that if a data point were unique enough—roughly one in four billion—it could, *in theory*, be used to recognize the same user across two separate data sources. Even if that concept were relevant to this case, applying it meaningfully would require extensive evidence and correlated data points that do not exist in this case, making Dr. Shafiq's application and reliance on this theory here unreliable at best and, at worst, incorrect.

Ex. 1, Cohen Report at ¶ 10.

Cohen's curriculum vitae ("CV") describes his experience in website privacy compliance, online advertising technology, website auditing, and product leadership. Ex. 2, Curriculum Vitae of Ian Cohen. Nothing in Mr. Cohen's CV shows expertise in mathematics, information theory, computer science, or computer engineering. Mr. Cohen has a B.A. in English literature. *Id.* He studied, but did not obtain a degree in, mathematics. *Id.*; Ex. 3, Excerpts of the Transcript of Ian Cohen ("Cohen Tr.") 19:15-25, 20:1-11, 21:1-10. Mr. Cohen has never published any article or study in entropy theory or identifiability. Ex. 2, Cohen CV, 6-7. Mr. Cohen has provided expert testimony in the form of deposition testimony in one only other case. *Id.* at 7.

Similarly, Mr. Cohen's report demonstrates experience in the functionality of website software tools, consumer online data privacy and compliance with data protection standards. Ex. 1, Cohen Report at ¶¶ 11-16. While Mr. Cohen's background may qualify him to discuss how websites deploy tags, cookies, or analytics tools, the specific opinion he offers here goes well beyond the areas of his experience or expertise. Mr. Cohen does not confine his opinion to his assertion that he has not seen case-specific evidence tying a particular record to a named plaintiff. Instead, he purports to opinion what entropy theory means, whether a 32-bit threshold has practical significance, whether that threshold is misapplied, and whether Dr. Shafiq's use of entropy is technically sound. Ex. 1, Cohen Report at ¶¶ 10, 139-143. Mr. Cohen's opinions about information theory and the mathematics of identifiability are not opinions about website operations or privacy issues raised by those operations.

Mr. Cohen's lack of expertise in mathematics and entropy theory matters because his challenged opinion is expressly framed as a criticism of Dr. Shafiq's use of entropy, a mathematical concept that Cohen himself described as part of a "very dense" body of information-theory literature. Ex. 3, Cohen Tr. 204:17-24. Nor did Mr. Cohen bridge his educational gap through experience. He did not identify any work in which he developed entropy models, published on entropy theory, used information theory to assess identifiability, or designed privacy-budget calculations of the sort he criticizes here. Ex. 2, Cohen CV. To the contrary, when questioned about one of the textbook concepts within the chapter he cited, he could not explain "the entropy ergodic theorem" without reading it from the page. Ex. 3, Cohen Tr. 205:6-18.

Rule 702 does not permit a witness to leverage general experience in one area into technical opinions in another. *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.Supp. 1353, 1356-57 (D. Ariz. 1996). Because Cohen has not shown the specialized knowledge necessary to criticize Dr. Shafiq's entropy analysis, paragraph 10 and paragraphs 139 through 146 of Mr. Cohen's report should be excluded on qualification grounds alone. Fed. R. Evid. 702(a); *Valencia-Lopez*, 971 F.3d at 898; *Diviero*, 919 F.Supp. at 1356-57.

## II. Even if Cohen Were Qualified to Render Opinions on Entropy Theory, his Entropy Opinions Are Not the Product of a Reliable Method.

Mr. Cohen's entropy criticism also fails the separate reliability requirements of Rule 702(b) through (d). He did not perform any independent entropy calculation to refute Dr. Shafiq's analysis. He did not test Dr. Shafiq's threshold with competing data. He did not identify an alternative threshold accepted in the field. And he did not apply any replicable method to show why a 32-bit entropy threshold is invalid, inapplicable, or misleading. Instead, he repeatedly reduced his criticism to the proposition that reidentification is merely possible, not what actually happened, and that proving it would require more linking evidence. Ex. 1, Cohen Report at ¶¶ 140-143. Mr. Cohen's bald assertions do not constitute a methodology. They are advocacy points about Plaintiffs' proof in this case.

A qualified rebuttal expert could have attempted to show, through competing calculations, competing theories or a discernible technical method, that Dr. Shafiq's entropy analysis was wrong. Mr. Cohen did not do that. He instead substituted his own say-so that the theory is "not realistic" and "not relevant to this case." Ex. 1, Cohen Report at ¶¶ 139-143. But Rule 702 requires more than *ipse dixit*. *Engilis*, 151 F.4th at 1054-55. A witness cannot simply invoke experience, declare a technical framework inapplicable, and leave the Court to take his word for it.

Mr. Cohen's deposition testimony makes the methodological gap even clearer. He admitted that his criticism was not really about the existence or use of entropy by website tracking technologies. Mr. Cohen did not disagree with Dr. Shafiq's sources, did not disagree that the World Wide Web Consortium uses entropy to assess fingerprinting risk, did not disagree that Google uses a 32-bit privacy-budget threshold, and did not disagree with the premise that a person can be reidentified under a special set of circumstances at 32 bits of entropy. Ex. 3, Cohen Tr. 192:10-25, 193:1-25, 195:1-25, 196:1-25, 197:1-13, 199:18-24, 200:1-24. His disagreement, by his own account, was only about "the practicality of doing so or the relevance in this case." *Id.* at 200:18-24. That is not a scientific or technical refutation of Dr. Shafiq's entropy analysis. It is an argument that the evidence in this case allegedly falls short. Rule 702 does not permit expert testimony that merely repackages counsel's factual arguments in technical language.

## III. Cohen's Broad Statements Either Lack Citations or Cite Sources Which Do Not Support the Propositions for Which He Cites Them.

The unreliability of Cohen's entropy opinions is further demonstrated by the lack of citations to any source materials in support of his assertions. Mr. Cohen makes the following, wholly unsupported and wildly broad statements:

> 140. Entropy measures the mathematical uncertainty of a variable, not whether data can be tied to a real person. Even if a dataset's combined entropy exceeds 32 bits, it merely means there are many unique combinations—not that any company knows who the person is.…

> 141. . . . [Entropy] is based on the idea that if a data point is unique enough—roughly one in four billion—it could, in theory, be linked to the same individual across two datasets. This argument requires extensive evidence of this linking ability that is not present here.
>
> 142. For the data to be useful in helping to identify an individual, it requires the party creating an ID, in this case Google or Meta, to make several mistakes, both in how they randomly generate the code as well as how they might inadvertently connect it to other identifiers without knowing it.
>
> 143. … Google Analytics identifiers are 64-bit pseudonyms designed to prevent linkage to individuals, and entropy alone does not create identifiability. IP addresses, user-agents, and GA Client IDs are interdependent, often anonymized, and do not reveal a person's identity without external datasets….

Ex. 1, Cohen Report at ¶¶ 140-143. Mr. Cohen cites to nothing in support of his overly broad assertions of how entropy does not allow a company to identify a website user, that linking requires "extensive evidence" "not present here", that Google and Meta would have to make "several mistakes" in order to connect data to an individual and that "Google Analytics identifiers are 64-bit pseudonyms designed to prevent linkage to individuals…" Mr. Cohen's complete lack of support for these broad categorical statements requires that they be stricken.

The scant sources Mr. Cohen does cite do not support his statements or opinion. First, in support of his statement that "[t]he '32-bit entropy' argument describes a theoretical possibility, not an established likelihood, or re-identification," Mr. Cohen cites Arvind Narayanan's "33 Bits of Entropy: Myths and Fallacies of Personally Identifiable Information". Ex. 1, Cohen Report at ¶ 141, n.129. But at his deposition, Mr. Cohen admitted that he cited only an abstract of a larger work, and that the abstract itself states: "Anonymization of rich consumer data is infeasible. People are unique, and any piece of data can help reidentify. 33 bits of entropy will do." Ex. 3, Cohen Tr. 199:7-25, 200:1-24. He then acknowledged that he was "not disagreeing with the premise that you can reidentify someone under a special set of circumstances at 32 bits." *Id.* at 200:18-24. A source saying that 33 bits of entropy "will do" does not support

Cohen's assertion that entropy-based identifiability is theoretical and not an established likelihood. The abstract suggests just the opposite.

Second, in support of his statement that "the claim that PPFA's data 'exceeds a 32-bit entropy threshold' and is therefore personally identifiable is theoretically overstated and technically unrealistic," Mr. Cohen cites pages 41 through 67 of a lengthy information-theory text. Yet when asked whether those cited pages say that 32 bits of entropy is not enough to identify a person, Cohen admitted: "I don't believe it does." Ex. 3, Cohen Tr. 205:1-10. He explained that he cited the chapter only because it provided general background about information theory and entropy. *Id.* at 204:17-24, 205:1-18. Mr. Cohen could not explain what the title of the chapter he cited, Entropy Ergodic Theorem, actually meant. *Id.* at 205:16-20. In fact, Mr. Cohen acknowledged that he "would exclude that theorem from [his] citation if [he] could go back and do it again…" *Id.* at 205:16-206:8. Even if this source is appropriate to provide general background material about entropy theory, it certainly does not support the far more specific conclusion Mr. Cohen drew from it in his report.

Third, Cohen's remaining cited material concerning Google Analytics and IP addresses likewise does not supply a reliable basis for the broad propositions in paragraphs 143 through 146. At most, those materials address how Google Analytics handles certain data and how IP addresses function in ordinary network transport. They do not establish that entropy "has no practical meaning," that identifiability would require Google or Meta to make "several mistakes," or that Dr. Shafiq's threshold analysis is technically unsound. Cohen provides no analytical bridge from those materials to the conclusions he reaches. Rule 702 requires that bridge. *Valencia-Lopez*, 971 F.3d at 900.

This is precisely the kind of unsupported leap that Rule 702 forbids. Where the cited materials do not support the stated conclusion, and the expert supplies no tested or reasoned methodology to fill the gap, exclusion is warranted. *Engilis*, 151 F.4th at 1054-55.

## IV. These Defects Go to Admissibility, Not Mere Weight.

Defendant may attempt to argue that any purported defects in Mr. Cohen's opinions go weight not admissibility, but the opposite is true. Cohen is not offering a competing interpretation of the same technical literature. He is offering a set of purportedly technical opinions that he is not qualified to give and that he did not reach through a reliable method or research. Cross-examination cannot cure the absence of qualification or methodology. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-93; *Engilis*, 151 F.4th at 1049-50.

At a minimum, the Court should exclude paragraph 10 of Cohen's report and paragraphs 139 through 146, and bar Cohen from testifying that Dr. Shafiq's reliance on a 32-bit entropy threshold is technically unrealistic, merely theoretical, dependent on unspecified "mistakes," or otherwise unsound. This does not prohibit Mr. Cohen from offering his case-specific opinion that he did not see evidence tying a particular PPFA record to a named plaintiff, but he should not be permitted to cloak that factual argument in unsupported testimony about entropy and information theory.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court exclude Cohen's opinions criticizing Dr. Shafiq's 32-bit entropy analysis, including paragraph 10 and paragraphs 139 through 146 of Cohen's report, and preclude Cohen from offering any testimony that Dr. Shafiq's entropy-based identifiability analysis is technically unsound, unrealistic, or unsupported by the relevant literature.

Dated: March 30, 2026

Respectfully submitted,

By: */s/ Jamie A. Robinson*

Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**

By: /s/ *Bradley A. Benbrook*

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was filed this 30th day of March 2026 via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

*/s/ Jamie A. Robinson*
Jamie A. Robinson