JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing deferred pending resolution of Plaintiffs' motion for class certification, per the Court's order of Mar. 31, 2026, *see* ECF No. 136 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Like Thousands Of Websites, PPFA Uses Analytics Technologies To Provide Information On Website Use And Security. ........ 3

B. Plaintiffs Have No Evidence That Private Information About Their Purported Visits To PPFA's Website Was Transmitted To Meta Without Their Consent. ........ 4

1. There is no evidence that Plaintiffs visited the PPFA Website in a way that resulted in the transmission of any URL to Meta. ........ 5

2. There is no evidence that any of the data collection occurred without Plaintiffs' consent. ........ 8

III. LEGAL STANDARD ........ 9

IV. ARGUMENT ........ 9

A. Plaintiffs Are Not Entitled To Summary Judgment That All URLs In Their Class Definition Qualify As The "Contents" Of A Communication. ........ 9

B. Plaintiffs Are Not Entitled To Summary Judgment AsTo The Consent Element Of Their CIPA Claim. ........ 13

C. Plaintiffs Are Not Entitled To Summary Judgment On The Question Of Whether PPFA Aided, Permitted, Or Caused A CIPA Violation. ........ 14

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page

**Cases**

*Bastidas v. Good Samaritan Hospital LP*,
2016 WL 6834139 (N.D. Cal. 2016) ........ 9

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. 2025) ........ 5

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 14

*Harril v. Emanuel Medical Center*,
2025 WL 1635428 (E.D. Cal. 2025) ........ 12

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F. 3d 589 (9th Cir. 2020) ........ 10

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 10

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ........ 9, 10

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. 2025) ........ 12

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. 2022) ........ 13

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. 2024) ........ 13

*People v. Perez*,
35 Cal. 4th 1219 (2005) ........ 14, 15

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 14, 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 2

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ........ 14

**Rules**

Federal Rule of Civil Procedure 56 ........ 9, 11, 13

# I. INTRODUCTION

Plaintiffs *claim* that they visited a website owned and operated by Planned Parenthood Federation of America, Inc. ("PPFA"), and that information about those visits was transmitted to Meta,[1] read in real-time without their consent, and associated with their real-world identities. *See* First Amended Complaint ("FAC"), ECF No. 48 ¶ 4. However, as PPFA demonstrated in its summary judgment motion, Plaintiffs have *no evidence* to support those claims. *See* ECF No. 115. Indeed, the record affirmatively establishes exactly the opposite on each of those scores. Plaintiffs—remarkably—do not contest any of that in their motion for partial summary judgment. ECF No. 132 ("Mot."). Rather, Plaintiffs are able to identify only three narrow issues on which they believe they have enough evidence to create a colorable case for partial summary judgment. Opp. 1–2. But even those extremely limited arguments are fundamentally misguided and fail to demonstrate Plaintiffs' entitlement to summary judgment on any issue.

*First*, Plaintiffs argue that "[t]he Court should find that the[] full-string URLs" that PPFA's website supposedly transmitted to Meta qualify as "the contents of a communication within the meaning of CIPA § 631(a)." Opp. 1–2. But the majority of URLs that Plaintiffs ask this Court to rule on are not, in fact, "full-string URLs," and so do not qualify as a communication's "contents" even under Plaintiffs' own argument. What is more, the few URLs that Plaintiffs identify that actually are "full-string" are entirely irrelevant to this action, as Plaintiffs have no evidence at all—much less sufficient to put the matter beyond a genuine dispute—that those URLs were ever transmitted to Meta while Plaintiffs were visiting PPFA's website.

---

[1] Plaintiffs also made similar allegations as to Google, FAC ¶ 87, but have since admitted that they have no evidence to sustain those allegations, *see* Declaration of Jamie A. Robinson, Dkt. No. 93-7 ("Robinson Decl.") ¶ 16 (noting that Google responded to a Rule 45 subpoena by informing Plaintiffs that it does not have "the requested PPFA website user event data from the class period"—meaning that Plaintiffs have no evidence that Google identified Plaintiffs or any other visitors to PPFA's website, much less that it did so by reading communications as they were in transit). Plaintiffs' allegations vis-a-vis Google are therefore irrelevant for purposes of Plaintiffs' motion. Plaintiffs have no basis whatsoever, nor do they offer any evidence in support of their motion, for summary judgment on any issue relating to Google.

*Second*, Plaintiffs ask the Court to find that "Plaintiffs did not consent" to Meta receiving data about their website visits, on the ground that "PPFA's privacy policy was not reasonably conspicuous and Plaintiffs did not manifest their assent to its terms." Opp. 8. But as PPFA has already explained—in a discussion that Plaintiffs simply overlook—***PPFA's*** privacy policy is not PPFA's basis for establishing Plaintiffs' consent. Plaintiffs admit that they each separately agreed to ***Meta's*** privacy policy, which independently discloses exactly the data collection about which Plaintiffs now complain. Because Plaintiffs' motion offers no argument that ***Meta's*** privacy policy was somehow inadequate to establish consent, their argument trained exclusively on ***PPFA's*** privacy policy gets them nowhere.

*Third*, Plaintiffs ask the Court to hold "that PPFA's installation and configuration of … the Meta Pixel on its Website establish the element of PPFA's role in 'aiding,' 'permitting' or 'causing' … Meta's interception of Plaintiffs' communications, assuming the other elements of Plaintiffs' claims are met." Opp. 2. The law, however, is clear that merely installing and configuring software on a website ***is not*** sufficient to hold a website operator liable for the software provider's violation of § 631. *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (dismissing aiding-and-abetting § 631(a) claim because plaintiff failed to establish that defendant website operator "believed" supplier of software would itself commit "a Section 631 violation"). That is because § 631 permits such vicarious liability only when the website operator has both "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts," and the mere installation of a vendor's software does not show that the website operator "*knew* that [the vendor's] services were based on … illegal interception," much less that the website operator acted for the "purpose" of furthering those acts. *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024).

Plaintiffs' motion for partial summary judgment serves only to underscore that Plaintiffs' theories are devoid of either factual or legal support. Plaintiffs' motion should be denied in its entirety. And for the reasons given in PPFA's pending motion, ECF No. 115, summary judgment should instead be awarded in PPFA's favor.

## II. BACKGROUND

### A. Like Thousands Of Websites, PPFA Uses Analytics Technologies To Provide Information On Website Use And Security.

PPFA is a 501(c)(3) nonprofit corporation and membership organization. PPFA has nearly four dozen members, each of which is an independently incorporated and operated non-profit health care provider. *See* Ex. 1[2] at 1; *see also* Ex. 2 at 13–19. PPFA does not itself provide health care services. Ex. 1 at 1; Ex.3 at 1. Instead, it provides a variety of support services to its local member affiliates, who collectively operate approximately 550 separate health centers across the country, which provide healthcare to more than 2 million people each year. Ex. 1 at 1; Ex. 3 at 1. PPFA's work in support of sexual and reproductive health care includes operating an informational website at www.plannedparenthood.org, where it posts information about various health-related topics. Ex. 1 at 1–2. PPFA's Website—*i.e.*, "www.plannedparenthood.org and its related webpages … wholly owned and operated by [PPFA]," (the "Website") FAC ¶ 2—is distinct from websites associated with the affiliates and their health centers, which (unlike PPFA's Website) are run by the affiliates, not by PPFA. Ex. 1 at 1–2. It is only on affiliates' websites—and not on PPFA's Website itself—that a website visitor can create (and enter the contact information necessary to book) an appointment. Ex. 2 at 13–19.

Like many websites—including the Northern District of California's—PPFA's Website uses analytics technologies to help PPFA understand how visitors to the Website interact with it. *See* Ex. 4 (Vint Report) ¶¶ 30–32. These technologies provide website operators like PPFA (as well as this Court, and innumerable others) with aggregated information—*i.e.*, information about website visitors as a whole, as opposed to information connected to any particular visitor—on topics like (a) website traffic (*e.g.*, number of unique visits to a webpage, how visitors land on the website, number of purchases), (b) marketing campaign efficacy (*e.g.*, percentage of visits that led to purchases), and (c) website security (*e.g.*, classification of visitors as humans rather than bots or malicious attackers).

---

[2] All exhibit references herein shall refer to exhibits to the Declaration of Jacob M. Heath filed concurrently with this Opposition.

*See id.* ¶ 32.

**B. Plaintiffs Have No Evidence That Private Information About Their Purported Visits To PPFA's Website Was Transmitted To Meta Without Their Consent.**

Plaintiffs claim that when they visited PPFA's Website during the Class Period (*i.e.*, September 1, 2022 to July 6, 2023), a particular analytics technology employed there—the Meta Pixel—automatically transmitted information to Meta, including information that "Meta use[d]" to "identify" Plaintiffs "and their actions on [PPFA's] Website." *See, e.g.*, FAC ¶ 73. Plaintiffs allege that because this transmission supposedly occurred and allowed for communications to be read by Meta without their consent and in real time, it constituted a violation of CIPA's prohibition on illegal wiretapping. FAC ¶ 208. On that basis, Plaintiffs seek to represent a class of individuals who visited PPFA's Website and had any of the following URLs transmitted to Meta:

https://www.plannedparenthood.org/abortion-access[3]

https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines

https://www.plannedparenthood.org/get-care/our-services/birthcontrol

https://www.plannedparenthood.org/get-care/our-services/abortion-services

https://plannedparenthood.org/get-care/our-services/pregnancy-testing-services

https://plannedparenthood.org/get-care/our-services/transgender-hormone-therapy

https://plannedparenthood.org/get-care/our-services/emergency-contraception

https://www.plannedparenthood.org/search?q=birth+control

https://www.plannedparenthood.org/search?q=emergency+contraception

https://www.plannedparenthood.org/search?q=std+testing

https://www.plannedparenthood.org/search?q=pregnancy+test

---

[3] [redacted]

https://www.plannedparenthood.org/search?q=hormone+therapy

*See* ECF No. 93 at 19; Mot. 3–4, 7.

After nearly a year of extensive discovery, however, Plaintiffs simply cannot prove those claims. Plaintiffs have adduced evidence (not necessarily conclusive, or even credible, evidence, but evidence nonetheless) that when a person navigated to PPFA's Website, the Meta Pixel would transmit the "URL of the [visited] page" to Meta. Ex. 5 (Shafiq Rep) ¶ 77. But they have no evidence that *they* ever visited PPFA's Website in a way that caused any of the above URLs to be so conveyed. Nor do Plaintiffs have any evidence that any data was transmitted to Meta without their consent; to the contrary, Plaintiffs both admit that they affirmatively agreed to Meta's privacy policy, which discloses exactly this data collection and transmission. Still more, although not of particular relevance for this motion, Plaintiffs have no evidence that Meta read any information in real time; in fact, Judge Chhabria recently found as a matter of fact that Meta ***does not*** read information transmitted by the Pixel in real time. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. 2025).

**1. There is no evidence that Plaintiffs visited the PPFA Website in a way that resulted in the transmission of any URL to Meta.**

As a threshold matter, the evidence reveals that Plaintiffs do not know whether they actually visited PPFA's Website and have no corroborating evidence that they did. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

But it is not just Plaintiffs' statements that cast doubt on their claims that they visited PPFA's Website; their own documents betray them. [redacted]

[redacted] That makes sense, as it is actually ***impossible*** to use PPFA's Website to schedule the kinds of appointments that Plaintiffs claim to have booked. Ex. 2 at 19 (Third Supp. Resp. to Rog. 3); *see also* Ex. 10 (PPFA-Hinton_000026343) (PPOSBC home page instructing "Call Us" to make appointments).

Plaintiffs' other documentary evidence—scant as it is—is much the same, as it too includes no reference to the PPFA Website that Plaintiffs claim to have visited, and instead refers only to the [redacted] *See* Exs. 11-13. In fact, Plaintiffs have produced *no* evidence of *any* visit to PPFA's Website. PPFA sought discovery from Plaintiffs including a forensic investigation of Plaintiffs' devices, their browser histories, and any other evidence that may exist that would reflect such a visit. ECF No. 60. Plaintiffs told PPFA and this Court that they had no such evidence from the Class Period and their searches of their devices "yielded nothing" regarding visits to PPFA's Website. ECF No. 63 at 1. The Court took them at their word and denied PPFA's request for forensic examination of those devices, but reminded Plaintiffs that they "bear the burden of proof and production of evidence for their claims, and will be held to that representation." ECF No. 64. That is a burden that Plaintiffs cannot carry.

Nor does PPFA itself have any record of Plaintiffs visiting its Website. Experts for PPFA and Plaintiffs alike both examined the data contained in the export of visit-related information from PPFA's analytics data repository, and were unable to match any information there to either Plaintiff. Ex. 14 (Cohen Report) ¶ 130; Ex. 15 (Shafiq Dep. Tr.) at 99:14–100:4 (testifying that he did not find any "specific transmissions" associated with Plaintiffs "in the Google Analytics log files").

Even if Plaintiffs could show that they visited PPFA's Website—and they cannot—they have no evidence that they searched particular terms, or visited particular URLs as required to result in the transmission of any of the URLs in their class definition. Put simply, neither Plaintiff even claims to have visited any of the URLs enumerated in their class definition. *See* ECF 93 at 7-8; *see also* Ex. 12 at 5; Ex. 13 at 5. And while both Plaintiffs claim to have "entered search terms into [what they believed to be] the PPFA Website," *see* ECF 93 at 7, neither was able to remember what exactly those terms were—much less to establish that they matched the limited set of terms required to be a member of the class, as Plaintiffs have defined it. Plaintiff Hinton admitted that she [redacted] Ex. 6 at 92:6-8. And Plaintiff Shipley merely testified that she [redacted] (*see* Ex. 7 at 77:5-15)—none of which is a match for the terms identified in Plaintiffs' own class definition, [redacted].

**2. There is no evidence that any of the data collection occurred without Plaintiffs' consent.**

In any event, the evidence also makes clear that Plaintiffs consented to exactly the data collection that they complain about here, by agreeing to Meta's privacy policy, which specifically discloses both that Meta receives "information that advertisers, businesses and other partners provide us about [users'] activity off Meta Company Products," "whether or not [the user is] logged in or ha[s] an account on our Products," and that Meta can "associate[]" that information with users," Ex. 16; Ex. 17 (Facebook Privacy Policy). [redacted]

[redacted] Thus, even if Plaintiffs had visited PPFA's Website in a way that resulted in transmission of information (including URLs) to Meta, Plaintiffs would still have no viable claim as they already gave permission, by accepting Meta's privacy policy, for exactly that to occur.

## III. LEGAL STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its "initial burden" the moving party must "demonstrat[e] the absence of a genuine issue of material fact." *Bastidas v. Good Samaritan Hosp. LP*, 2016 WL 6834139, at *3 (N.D. Cal. 2016) (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). Even if its meets that burden, however, the moving party is still not entitled to summary judgment if the non-moving party "'set[s] forth … specific facts showing that there is a genuine issue for trial.'" *Id.*

## IV. ARGUMENT

### A. Plaintiffs Are Not Entitled To Summary Judgment That All URLs In Their Class Definition Qualify As The "Contents" Of A Communication.

As Plaintiffs recognize, information qualifies as the "contents" of a communication under Section 631 only if it constitutes "the intended message conveyed by [a] communication," rather than mere "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). URLs, the Ninth Circuit has explained, generally will not qualify, because they convey nothing more than the "address of the … webpage the user was viewing." *Id.* at 1108. URLs are thus similar to physical addresses on the "outside of an envelope," which are (and have long been held to be) distinct from

the "contents [of the] mail" inside. *Id.* (citing *United States v. Jacobsen*, 466 U.S. 109, 114 (1984)). This "same reasoning" is why courts have long allowed "the warrantless collection of email and IP addresses," because such data types—like URLs and physical addresses—likewise "'constitute[s] addressing information'" and not "'the underlying contents of communication.'" *In re Zynga*, 750 F.3d at 1108. (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)).

That said, the Ninth Circuit has acknowledged that some unusual URLs nevertheless "could constitute" the contents of a communication if they disclose a "search term or similar communication made by the user." *In re Zynga*, 750 F.3d at 1108. But that exception is a narrow one. As Plaintiffs themselves acknowledge, it is limited to so-called "[f]ull-string" URLs that "transmit both [a] 'path' and [a] 'query string.'" Opp. 5–6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 605 (9th Cir. 2020); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 795–96 (N.D. Cal. 2022)).

The terminology here is important. As indicated in the above quotation, courts have defined "full-string" URL in this context to mean a URL that "transmit[s] both [a] 'path' and [a] 'query string.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 605 (9th Cir. 2020). A "path" simply identifies where "a file or resource can be found on a website." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022). The URL "https://www.medstarhealth.org/doctors/paul-a-sack-md," for instance, includes only "path" information, which directs the user's browser to a particular page ("doctors/paul-a-sack-md") of the www.medstarhealth.org website. *Id.* at 795–96 & n.10. URLs of that form truly are nothing but addresses, and so (like all other addresses—physical, email, and IP) do not qualify as the "contents" of a communication. *Id.* A "query string," by contrast, "provides a list of parameters," such as search terms entered by the user. For instance, the URL "https://www.medstarhealth.org/sxa/search/results/?q=diabetes" includes not just path information directing the browser to a particular page ("sxa/search/results") of the medstarhealth.org website, but also a "query string" starting with "?q=" ("?q=diabetes") that conveys that "a search was done at the MedStar Health website for information about diabetes." *Id.* This URL thus goes beyond mere

addressing information, to also reveal the user's substantive input to the website, and thus could qualify as communication "contents." *Id.*

Plaintiffs, however, not only ignore those crucial definitions, they actively seek to mislead the Court about them. Plaintiffs, for instance, repeatedly rely on their expert's characterization of various web addresses as "full-string URL[s]." *E.g.*, Opp. 3 (citing Ex. 5 (Shafiq Rep.) ¶ 79); Opp. 6–7 (citing Ex. 5 (Shafiq Rep.) ¶¶ 66–67, 77 ,79, 81, 83). But their expert ***was not*** applying the definition of "full-string" from the caselaw discussed above. Instead, he applied a very different definition, which encompasses any "web address that identifies the exact location of a resource on the internet"—with no requirement that the URL contain any query string. Ex. 5 (Shafiq Rep.) ¶ 36. Plaintiffs' motion replicates that same sleight-of-hand, and likewise characterizes more than half of the URLs in their brief as "full string," despite them containing no "search query" information at all:

https://www.plannedparenthood.org/abortion-access

https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines

https://www.plannedparenthood.org/get-care/our-services/birthcontrol

https://www.plannedparenthood.org/get-care/our-services/abortion-services

https://plannedparenthood.org/get-care/our-services/pregnancy-testing-services

https://plannedparenthood.org/get-care/our-services/transgender-hormone-therapy

https://plannedparenthood.org/get-care/our-services/emergency-contraception

Opp. 4, 6. As can be seen from the URLs themselves, all of the above contain only "path" information, and no separate "?q="-demarcated "search query" information, and therefore do not "transmit[] ***both*** the 'path' and the 'query string.'" Thus (under Plaintiffs' own test) these URLs do not qualify as the "contents" of a communication. At the very least, Plaintiffs' motion for summary judgment should be denied as to these URLs.

There is no basis for partial summary judgment even as to the listed URLs that do contain both path and query string information (*e.g.*, https://www.plannedparenthood.org/search?q=birth+control), Opp. 7. Indeed, Plaintiffs cite no evidence at all that they actually visited any of those URLs, much less evidence showing that they

did so beyond any "genuine dispute." That is unsurprising (if unhelpful to their case), as the evidence that does exist actively refutes any suggestion that they ever visited PPFA's Website in a way that would have resulted in the transmission of any of these URLs. At their depositions, neither Plaintiff was able to remember exactly what search terms each supposedly entered in PPFA's Website—much less to establish that they matched the limited set of terms required to be a member of the class, as Plaintiffs have defined it. Plaintiff Hinton [redacted] Ex. 6 (Hinton Dep. Tr.) at 92:6–8. And Plaintiff Shipley merely testified that she [redacted] (*see* Ex. 7 at 77:5–15)—none of which is a match for the terms identified in Plaintiffs' own class definition (and so none of which would have generated any of the URLs that Plaintiffs list), even if [redacted]

Plaintiffs seem to recognize that this problem prevents them from being entitled to summary judgment outright, but they attempt to simply sweep it under the rug, suggesting that "transmission of these URLs warrants summary adjudication … irrespective of plaintiff-specific questions of fact that remain for trial." Opp. 8. That gets the analysis exactly backwards. As courts have recognized, a plaintiff fails to establish "'that the "contents" of her communications were intercepted,'" where she fails to show that "'she conducted the searches … provided in [her] examples.'" *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. 2025) (quoting *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. 2025)). Said otherwise, unless and until Plaintiffs establish "what these Plaintiffs searched," they have necessarily failed to show that anyone "intercepted the contents of their communications." *Id.*; *see also, e.g.*, *Harril v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *10 (E.D. Cal. 2025) (ruling that plaintiff had not stated cognizable CIPA claim where, inter alia, "Plaintiff's complaint [did] not specify or describe the searches Plaintiff conducted on the Website").

Plaintiffs are thus not entitled to partial summary judgment as to any of the URLs enumerated in their motion. The majority of those URLs do not contain a "query string," and hence do not qualify

as message "contents" even under Plaintiffs' own rule. And Plaintiffs have not even attempted to show that any of the other URLs was ever transmitted while either of them visited PPFA's Website. Accordingly, Plaintiffs' first request for summary adjudication should be denied.

### B. Plaintiffs Are Not Entitled To Summary Judgment AsTo The Consent Element Of Their CIPA Claim.

Plaintiffs claim to seek partial summary judgment on the issue of "whether Plaintiffs consented to the interception and transmission of their private healthcare communications on the PPFA Website," Mot. 10—an "element" of their CIPA claim "on which Plaintiff[s] bear the burden." *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *3 (C.D. Cal. 2024). Plaintiffs, however, do not even attempt to address the argument (raised in PPFA's summary judgment motion) that Plaintiffs consented to the very data collection and transmission about which they now complain through their (acknowledged) agreement to ***Meta's*** privacy policy. *See* ECF No. 115 at 16-18; *see also* [redacted]; *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. 2022) (holding that those who agree to Meta's privacy policy have "no reasonable expectation of privacy" that data they generate via their visits to other websites will not be shared with Meta); *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. 2024) (agreeing that there was no "reasonable expectation of privacy" where "Facebook's data policy gave clear notice that third party partners may share data with Facebook"). And they certainly fail to show that there is no "genuine dispute" of fact about whether Plaintiffs' admitted agreement to that privacy policy constitutes consent to the data collection they challenge here. Fed. R. Civ. P. 56.

Instead, Plaintiffs' motion argues only that "Plaintiffs did not consent" by "manifest[ing] their assent" to "***PPFA's*** privacy policy." Mot. 8–13 (emphasis added). But that myopic focus on *one* particular means of consent to the exclusion of all others—including the one that is the focus of PPFA's primary consent argument—falls well short of establishing that it is beyond dispute that "Plaintiffs did not consent" by *any* means (the judgment they ask for here). Mot. 8; *see also* ECF

No. 127 at 10 (PPFA's summary judgment reply explaining that Plaintiffs' focus on PPFA's privacy policy is nothing but "a distraction," as PPFA's consent argument is based on ***Meta's*** policy, not ***PPFA's***). Nor does it entitle them to even a more limited judgment in their favor. Rule 56 permits a party to seek summary judgment only on a "claim or defense" or a "part of [a] claim or defense." Fed. R. Civ. P. 56(a). What Plaintiffs have presented here is neither. Instead, it is simply a discussion of one set of non-dispositive facts. Accordingly, it falls outside the permissible scope of a partial summary judgment motion. *Wagnon v. Rocklin Unified Sch. Dist.*, 2023 WL 4352623, at *14 (E.D. Cal. 2023) (partial summary judgment inappropriate on question that "is not part of either parties' actual claims or defenses").

Accordingly, Plaintiffs are not entitled to summary judgment on the consent element of their CIPA claim.

### C. Plaintiffs Are Not Entitled To Summary Judgment On The Question Of Whether PPFA Aided, Permitted, Or Caused A CIPA Violation.

Plaintiffs' final argument is that they have, as a matter of law, satisfied § 631(a)'s "aid, permit, or cause element, assuming the remaining elements of the claim are otherwise proven." Mot. 15. Of course, as PPFA's Motion for Summary Judgment explains, Plaintiffs ***cannot*** establish those "remaining elements." Even setting that aside, however, there is no such thing as an "aid, permit, or cause element." Section 631(a) does not extend liability to anyone who merely "permits" or "causes" a direct violation. With good reason: Section 631(a) is a criminal law, and parties cannot be criminally culpable merely because they turn out to be the unwitting cause of someone else's intentional wrongdoing. If a shop is burglarized, for example, the cashier who left the door open without any knowledge of the impending burglary cannot be prosecuted for facilitating the crime.

Instead, § 631(a) does something far narrower; it imposes liability for "aiding and abetting" a direct statutory violation. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024). After defining the acts that constitute direct violations, including intercepting the contents of an in-transit communication, § 631(a) provides that anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts

or things mentioned above." Cal. Penal Code § 631(a). Courts have repeatedly construed this language to incorporate "the common law definition of aiding and abetting." *Rodriguez*, 722 F. Supp. 3d at 1123; *see also Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996)); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024). That common law standard imposes aiding-and-abetting liability only if the defendant acted with "knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends." *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005); *see also Rodriguez*, 722 F. Supp. 3d at 1123 ("a person may be held liable as an aider and abettor if they … know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act").

Plaintiffs do not even attempt to satisfy the applicable aiding-and-abetting standard. They never contend that the record indisputably establishes that PPFA knew Meta was violating § 631(a)—let alone that the evidence definitively shows that PPFA intended to assist Meta in breaking the law. Nor could they. Plaintiffs' only argument is that PPFA was a necessary "cause" of Meta's alleged § 631(a) violation. Mot. 14. They insist that "[t]he only reason … Meta [was] able to intercept [their] communications was that PPFA took the affirmative step of installing [Meta's] tracking technologies on its Website." *Id.* Without that installation, Plaintiffs urge, "no CIPA violation" by Meta "would have been possible." *Id.* That may be true, but it has nothing to do with the test for § 631(a) liability. Plaintiffs are essentially making a but-for causation argument—that Meta could not have used its pixel technology to violate § 631(a) if PPFA had not installed it. Establishing the requisite "aiding and abetting *mens rea*," *Perez*, 35 Cal. 4th at 1225, demands far more. *See Rodriguez*, 2024 WL 1223485, at *4 (dismissing aiding-and-abetting § 631(a) claim because plaintiff failed to establish that defendant website operator "knew" supplier of software was using it unlawfully); *Valenzuela*, 2024 WL 1336959, at *4 (dismissing aiding-and-abetting § 631(a) claim because plaintiff failed to establish that defendant website operator "believed" supplier of software would itself commit "a Section 631 violation").

## V. CONCLUSION

For the foregoing reasons, PPFA respectfully requests that the Court deny Plaintiffs' motion for partial summary judgment.

DATED: April 13, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *\/s\/ Jacob M. Heath*
Jacob M. Heath

Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.