JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Planned Parenthood Federation of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 3:23-cv-04529-JD<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF MR. IAN COHEN**<br><br>Date: June 11, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

## TABLE OF AUTHORITIES

**Cases**

*Coquina Investments v. Rothstein*,
2011 WL 4949191 (S.D. Fla. 2011) ..... 3

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ..... 1, 4

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ..... 1

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*,
978 F. Supp. 2d 1053 (C.D. Cal. 2013) ..... 3

*Laatz v. Zazzle, Inc.*,
2025 WL 3205586 (N.D. Cal. 2025) ..... 2, 3

*Macaraeg v. Dignity Health*,
2025 WL 1564278 (D. Ariz. 2025) ..... 3

*United States v. Nelson*,
2021 WL 75757 (N.D. Cal. 2021) ..... 4

*Zucchella v. Olympusat, Inc.*,
2023 WL 2628107 (C.D. Cal. 2023) ..... 3, 4

## I. INTRODUCTION

Plaintiffs' *Daubert* motion is nothing but an attempt to distract from the obvious failings in their own expert's analysis. Plaintiffs enlisted Dr. Zubair Shafiq to offer the opinion—which Plaintiffs would use to justify class certification—that no more than "32 bits of entropy" is required to "identify [any] user" of PPFA's website. ECF No. 93 at 4. Although Plaintiffs conspicuously avoided saying what that technical jargon was supposed to mean, Planned Parenthood Federation of America, Inc. ("PPFA") explained that Dr. Shafiq's own report revealed it to be nothing but a mathematical abstraction. ECF 104 at 20–22. Specifically, it referred to the idea that 32 "bits"—*i.e.*, "binary digits"—could be used to represent about 4 billion different numbers (4,294,967,296, to be precise). *See* Ex. 1[1] (Shafiq Rep.) ¶ 125. Because there also happen to be about 4 billion internet users on Earth, "32 bits" is all that is required to (in theory) have one number for every internet user without needing to repeat. *Id.* Thus, in a purely mathematical sense—and only in that sense—32 bits of data can be said "to be identifiable," because 32 bits of data could in theory be used to count the total number of internet users. *Id.* ¶ 127.

Plaintiffs' reluctance to state outright what Dr. Shafiq meant was no accident. To the contrary, it was designed to obscure the fact that Judge Blumenfeld recently admonished Dr. Shafiq for offering exactly this same opinion in a different case. *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *2 (C.D. Cal. Sept. 9, 2024). Indeed, Judge Blumenfeld exposed "numerous serious problems" with Dr. Shafiq's initial report such that the *Griffith* plaintiffs ended up "disclaim[ing]" it altogether. *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *3 (C.D. Cal. Dec. 24, 2024) (noting several "errors in the opinions of Plaintiffs' principal expert, Dr. Zubair Shafiq").

However, rather than confessing error as the plaintiffs in *Griffith* did, Plaintiffs double down on Dr. Shafiq's flawed opinion. To that end, they seek to exclude testimony from PPFA's expert Ian Cohen, which points out exactly the errors in Dr. Shafiq's testimony laid out above, explaining that:

---

[1] All exhibit references herein shall refer to exhibits to the Declaration of Jacob M. Heath filed concurrently with this Opposition.

> Dr. Shafiq's reliance on "entropy" theory "to quantify the risk of identifiability" in the context of this case (see Shafiq Report ¶ 183) is misplaced. At best, the "entropy" argument describes a theoretical possibility that a person could be singled out or matched across different datasets using data that is not personally identifying on its own. It does not show that any such matching could realistically occur here, nor that any information received by Meta or Google from the PPFA Website actually was used to determine the identity of a specific visitor. Rather, Dr. Shafiq's theory merely suggests that if a data point were unique enough—roughly one in four billion—it could, in theory, be used to recognize the same user across two separate data sources. Even if that concept were relevant to this case, applying it meaningfully would require extensive evidence and correlated data points that do not exist in this case, making Dr. Shafiq's application and reliance on this theory here unreliable at best and, at worst, incorrect.

Mot. 2–3 (quoting Ex. 2 (Cohen Rep.) ¶ 10). Specifically, Plaintiffs claim that Mr. Cohen's (obviously correct) opinion (1) was not rendered with the requisite expertise; (2) is not the result of a reliable method; and (3) lacks support in citations. Plaintiffs' challenges are both meritless and irrelevant; their motion should be denied in its entirety.

## II. ARGUMENT

*First*, Plaintiffs' claim that Mr. Cohen lacks "the specialized knowledge necessary to criticize Dr. Shafiq's entropy analysis," Opp. 2–4, is entirely without basis. "Rule 702 'contemplates a ***broad*** conception of expert qualifications,'" *Laatz v. Zazzle, Inc.*, 2025 WL 3205586, at *13 (N.D. Cal. 2025) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004)) (emphasis in original), and the "threshold" for meeting that bar "'is low for purposes of admissibility,'" *id.* (quoting *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 551 (C.D. Cal. 2014)). Here, Plaintiffs acknowledge that Mr. Cohen's CV "describes his expertise in website privacy compliance, online advertising technology, website auditing, and product leadership." Mot. 3. In fact, it also describes expertise in "data privacy … with a technical focus on how web infrastructure, analytics platforms, and third-party integrations collect, process, and protect user data," Ex. __ (Cohen Rep.) at 62—none of which Plaintiffs contest. That is more than sufficient to allow him to criticize Dr. Shafiq's opinion on "entropy"—which Dr. Shafiq himself describes as "a privacy metric." Ex. 1 (Shafiq Rep.) ¶ 123. Plaintiffs' complaint that Mr. Cohen's more "general experience" does not include expertise in "entropy theory" specifically is borderline frivolous. Opp. 3–4. It is

well-established that an expert may not be excluded simply because his "expertise is more generalized than" the particular question at issue. *Laatz*, 2025 WL 3205586, at *13.

*Second*, Plaintiffs fare no better with their contention that Mr. Cohen's critique of Dr. Shafiq is unreliable because it is not the result of "any independent entropy calculation" or "competing data." Mot. 4–5. Courts have been clear that where—as here—an expert offers a "rebuttal" opinion whose "aim is to expose flaws in the methodologies provided by other experts," no such analysis is required. *Macaraeg v. Dignity Health*, 2025 WL 1564278, at *4 (D. Ariz. 2025). Rather, "a rebuttal expert can entirely rely on an opposing expert's report" and "conduct zero independent analysis and still satisfy Rule 702(b)." *Id.*; *see also, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (rebuttal expert may rely merely "on other expert reports" and "point out flaws in their methodologies or conclusions" (citing *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1141 (9th Cir.1999)). Plaintiffs cite no cases to the contrary. Mr. Cohen's critique of the flaws inherent in Dr. Shafiq's misleading entropy opinion is thus exactly the kind of rebuttal testimony that Rule 702 envisions.

*Third*, Plaintiffs make the same error when they critique Mr. Cohen's opinions for "lack[ing] … citations to any source materials in support of his assertions." Opp. 5–6. As just explained, a rebuttal expert like Mr. Cohen can offer his critique of Dr. Shafiq's opinion based solely on his assessment of the errors in Dr. Shafiq's own report. *Macaraeg*, 2025 WL 1564278, at *4; *In re Toyota Motor Corp.*, 978 F. Supp. 2d at 1069; *see also, e.g.*, *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *3 (S.D. Fla. 2011) ("A rebuttal expert can testify as to the flaws that she believes are inherent in another expert's report that implicitly assumes or ignores certain facts."). In any event, as Plaintiffs are ultimately forced to admit, their argument is based on a faulty premise, as Mr. Cohen *did* cite multiple sources in support of his critiques of Dr. Shafiq. Opp. 6–7 (discussing various sources cited by Mr. Cohen); *see also Zucchella v. Olympusat, Inc.*, 2023 WL 2628107, at *3 (C.D. Cal. 2023) (denying *Daubert* motion where, "contrary to [plaintiff's] claims that [an expert] did not cite outside sources for the opinions she rendered," the expert did "in fact rely on and cite to

authoritative sources in her report”). While Plaintiffs *disagree* with the significance that Mr. Cohen placed on those sources, the law is clear that such quibbling with “‘[t]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and must be addressed on cross-examination.’” *Zucchela*, 2023 WL 2628107, at *2 (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004)); *see also*, *e.g.*, *United States v. Nelson*, 2021 WL 75757, at *11 (N.D. Cal. 2021) (arguments about “a witness’s confusion” about a source he relies on “go to credibility rather than threshold reliability under *Daubert*”).

There can be no serious dispute as to the admissibility of Mr. Cohen’s conclusion—*i.e.*, that “entropy alone does not create identifiability,” and that additional “evidence” beyond mere entropy is required to show that some activity on the internet was actually “linked to” a particular “individual,” Opp. 5-6 (quoting Ex. 2 (Cohen Rep.) ¶¶ 140-43)—when it is the same one recently reached by a federal court. Judge Blumenfeld recently offered exactly this same critique of Dr. Shafiq, explaining that while entropy can “tend[] to show that the same person visited” a particular website, “without more, [it] does not disclose who the person is.” *Griffith*, 2024 WL 4308813, at *2. And so without additional evidence that a company “can identify who the person is that generated the data”—which Dr. Shafiq does not have—Dr. Shafiq’s opinion about entropy is impermissibly untethered from the facts of the case. *Id.*

## III. CONCLUSION

It is Dr. Shafiq’s baseless testimony, not Mr. Cohen’s criticism of it, that should be excluded. Plaintiffs’ motion should be denied in its entirety.

DATED: April 13, 2026

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
Jacob M. Heath
Attorneys for Defendant PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.