Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO FIRM, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (312) 321-6481
kb@brunolawus.com
msilverman@brunolawus.com
jr@brunolawus.com
af@brunolawus.com

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SHIRLEY HINTON and HEATHER SHIPLEY, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,

*Defendant*.

Case No.: 3:23-cv-04529-JD

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hearing deferred pending resolution of Plaintiffs' motion for class certification per the Court's Order of March 31, 2026, ECF No. 136
Location: Courtroom 11, 19th Floor
Judge: Honorable James Donato

## INTRODUCTION

Planned Parenthood Federation of America, Inc. ("PPFA") does not meaningfully dispute the core record on which Plaintiffs' motion for partial summary judgment is based: PPFA installed and configured the Meta Pixel and Google Analytics on the PPFA website ("Website") and knowingly caused those tools to transmit URLs that reflect users' search terms and their visits to Website pages to "get care" for sexual and reproductive health. Based on that record, Plaintiffs moved for summary judgment on three discrete elements of their claims that turn on the conduct of Meta, Google and Defendant, irrespective of what Plaintiffs did: whether the URLs that PPFA transmitted qualify as the contents of communications under Section 631(a) of the California Invasion of Privacy Act ("CIPA"); whether the applicable privacy policies were adequate to secure users' consent; and whether PPFA's knowing installation and configuration of the Meta Pixel and Google Analytics satisfies Section 631(a)'s fourth-prong aiding requirement. PPFA's opposition attempts to reframe the motion into questions it does not present. Plaintiffs are entitled to summary judgment on the discrete questions presented. Plaintiffs' motion should be granted.

### I. Plaintiffs Are Entitled to Summary Judgment on Plaintiffs' Claim That PPFA Shared the "Contents" of Communications.

This case is about PPFA's configuration of the Meta Pixel and Google Analytics to share two types of full-string URLs. The first set of URLs subject to this dispute contain Website user-supplied search terms, for example: https://www.plannedparenthood.org/search?q=std+testing. ECF No. 132 at 7. The second set of URLs at issue reveals that a user visited a Website page to "get care" for a certain health condition, for example: https://www.plannedparenthood.org/get-care/our-services/emergency-contraception. *Id.* at 6. Plaintiffs have moved for partial summary judgment on the narrow question of whether these URLs—whose transmission by Defendant via tracking pixels is undisputed—constitute the contents of a communication under CIPA § 631(a). *Id.* at 5-8.

Defendant's first response is that the "get care" URLs subject to this dispute do not contain a "?q=" query string and therefore supposedly cannot qualify as contents of a communication. ECF No. 139 at 9-12. Defendant contends that full-string URLs without the query string ("?q=") are "nothing but addresses" that do not reveal content. *Id.* at 10-11. That is not factually or legally

correct. Content does not turn on the presence of a particular phrase in the URL; it turns on whether the URL reveals the substance of what the user communicated. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106, 1108-09 (9th Cir. 2014). Defendant's suggestion that a URL that contains "get care" and "emergency contraception" is somehow less indicative of a user communication than one that contains "?q=" and "emergency contraception" defies common sense. Defendant's suggestion is also directly contradicted by the cases it invokes. Defendant relies on *In re Meta Pixel Healthcare Litigation* (ECF No. 139 at 10), but that case directly supports *Plaintiffs'* position that a URL does not have to contain the phrase "?q=" or user-entered search terms to reveal protected healthcare "content." 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022) (finding the full-string URLs such as *hardfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis* to be content "because they concern the substance of a communication"). This court's determination that a healthcare URL containing the phrase "conditions we treat" constitutes content cannot be squared with Defendant's position that a URL containing the phrase "get care" is merely address information and not content of the communication.

If *In re Meta Pixel* left any doubt that the "get care" URLs constitute content, this Court's decision in *St. Aubin v. Carbon Health Techs., Inc.* 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) dispelled it. *St. Aubin* is directly on point. In *St. Aubin*, this Court again specifically addressed healthcare URLs containing the exact phrase "get care" that Defendant dismisses as mere address information, concluding that they contain "communication content" because they reveal the reason for a medical appointment. *Id.* at *5 (finding that the URL *carbonhealth.com/get-care/pap-smear* satisfies CIPA's contents of the communication requirement). Therefore, Defendant is wrong that PPFA's transmission of the "get care" URLs conveys mere addressing information. It is content as a matter of law.

As for the URLs PPFA conveyed to Meta and Google containing user-supplied search terms (e.g., https://www.plannedparenthood.org/search?q=std+testing), Defendant does not dispute that they reveal the substance of what the user communicated. *Id.* at 11. Accordingly, *all* the URLs at issue in this case reveal the contents of users' communications within the meaning of Section 631(a).

PPFA also contends that Plaintiffs are not entitled to summary adjudication of the content element of their CIPA claim because there are questions of fact about which URLs the named Plaintiffs visited. ECF No. 139 at 11-13. But that objection raises a separate issue. Plaintiffs' motion expressly seeks resolution of the legal characterization of the identified URLs, "irrespective of plaintiff-specific questions of fact that remain for trial." ECF No. 132 at 8. That is a proper subject for partial summary judgment. Rule 56 permits summary adjudication of a *part* of a claim or defense. Fed. R. Civ. P. 56(a). Whether certain URLs constitute contents under Section 631(a) is severable from disputed questions about whose communications were intercepted and when.

PPFA's citations to cases where pleadings failed because the plaintiffs did not identify what they searched do not alter that point. ECF No. 139 at 12. Those cases addressed whether the plaintiff's allegations were sufficient to state a claim for relief. *Id.* Here, by contrast, Plaintiffs' motion asks the Court to decide only the legal characterization of URLs. Plaintiffs are not moving for summary judgment on their claims, which would require them to prove that the contents of Plaintiffs' communications were intercepted. Defendant has not explained why the cited cases should prevent Plaintiffs from obtaining *partial* summary judgment on a discrete element. PPFA cannot use a fact dispute over one element of Plaintiffs' claims as a reason to withhold summary adjudication of another.

## II. Plaintiffs are Entitled to Summary Judgment that the Applicable Privacy Policies Were Inadequate to Obtain Plaintiffs' Consent.

Defendant's opposition to Plaintiffs' motion says almost nothing about the question at issue: whether *actual* consent was even possible. Plaintiffs' motion argues that PPFA's Website disclosures and privacy policy were insufficient to establish consent as a matter of law. ECF No. 132 at 8-13. PPFA answers that its "basis" for consent is Meta's policies, not PPFA's privacy policy. ECF No. 139 at 13-14. That does not defeat Plaintiffs' motion. It confirms why the motion should be granted. PPFA cannot avoid the legal insufficiency of its own Website disclosures by pointing to another company's general data use terms. Moreover, those general terms cannot constitute Plaintiffs' actual consent to the interception and sharing of sensitive reproductive-health communications on PPFA's Website.

Consent under Section 631 must be actual, prior, and directed to the conduct at issue. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022); *Calhoun v. Google LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). The defendant bears the burden of establishing consent. *Calhoun*, 113 F.4th at 1147.[1] As Plaintiffs explained in opposition to PPFA's motion for summary judgment, PPFA has not met its burden to prove actual consent through Meta's policies. ECF No. 122 at 17-21.

PPFA offers no evidence establishing when Plaintiffs assented to any Meta policy, what version they saw when they created their Facebook accounts, how the policy purportedly obtained their consent or whether they affirmatively assented to later revisions. Defendant offers nothing more than Plaintiffs' inconclusive testimony that they agreed to some unidentified version of Meta's terms at some undefined time. ECF No. 139 at 13. Without record evidence showing how and when the plaintiff agreed to Meta's policies, those policies are insufficient to establish consent as a matter of law. *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (where there was no evidence in record that plaintiffs were required to affirmatively assent to Meta policies before signing up for Facebook account, court held that defendant failed to demonstrate plaintiffs' consent to policies). Defendant's opposition does not cure that evidentiary failure.

Meta's general disclosures would not suffice to establish consent even if assent were proven. *See* ECF No. 132 at 17-19. As Plaintiffs argued in their opposition to Defendant's motion for summary judgment, Meta's general statement that it receives information from advertisers and business partners about a user's activity off Meta products does not explicitly notify a reasonable user that Meta may receive, associate, and exploit the user's sensitive reproductive-health searches and healthcare page visits on PPFA's Website. *Id.* at 18. *In re Meta Pixel* held that this sort of generalized notice does not establish consent to the acquisition of sensitive health information. 647 F. Supp. 3d at 793-94. Consent is ineffective if a user could have plausibly understood the disclosures in question "as *not* disclosing that [the party] would engage in particular conduct."

---

[1] *Valenzuela v. Kroger Co.*, 2024 WL 1336959 (C.D. Cal. 2024), cited by Defendant for the proposition that Plaintiffs bear the burden of establishing lack of consent is not binding and preceded the Ninth Circuit's decision in *Calhoun*.

*Calhoun*, 113 F.4th at 1147 (emphasis in original) (citation omitted). Accordingly, Meta's disclosure that it tracks off-Facebook web activities does not "unambiguously" authorize the capture and sharing of health-related searches on PPFA's website. *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 892 (S.D. Cal. 2025).

The principle that disclosure must be unambiguous is especially important here because the communications reveal sensitive healthcare information. PPFA's Website concerns contraception, pregnancy testing, emergency contraception, abortion, hormone therapy, and STD testing. ECF No. 132 at 2-4. The challenged URLs disclose exactly those subjects. *Id*. A reasonable user would not understand Meta's boilerplate policy language to authorize PPFA to transmit those reproductive health communications to Meta for tracking. The policies governing Meta's own business tools further cut against informed consent. Meta's Business Tools Terms prohibit website operators from sending information they know or reasonably should know includes health or other sensitive information and require the website operator to possess a lawful basis and necessary permissions for disclosure. See ECF No. 132 at 18-19. That undercuts any assertion that Meta's policies supplied carte blanche consent for the transmission of sensitive health data.

PPFA's reliance on *Lloyd v. Facebook, Inc.* is misplaced, as Plaintiffs explained in opposing PPFA's summary judgment motion. ECF No. 122 at 20. *Lloyd* did not hold that by having a Facebook account, a user automatically consents to any healthcare provider that employs the Meta Pixel to share sensitive reproductive-health information with Meta. Defendant cites *Lloyd* for the proposition that "those who agree to Meta's privacy policy have 'no reasonable expectation of privacy' that the data they generate via their visits to other websites will not be shared with Meta" (ECF No. 139 at 13), but neglects to mention that the court also noted that Meta's data policy expressly stated that Facebook requires website developers who use the pixel "***to have lawful rights to collect, use and share your data before providing any data to us***." *Id*. at *10 (emphases added) 2022 WL 4913347, at *9-10 (N.D. Cal. Oct. 3, 2022).

In this case, there is no evidence that PPFA obtained consent from website users before sharing the contents of their sensitive health and medical communications with Meta. Plaintiffs' motion for summary adjudication of the consent issue falls squarely within the scope of a partial

summary judgment motion, contrary to Defendant's protestations to the contrary. ECF No. 139 at 14. Defendant's citation to *Wagnon v. Rocklin Unified School District*, 2023 WL 4352623 (E.D. Cal. 2023) confirms rather than negates the propriety of Plaintiffs' motion. *Wagnon* disallowed a motion for partial summary adjudication of the type of damages sought by the plaintiff because the issue was "not part of either parties' claims or defenses." *Id.* at *14. Not so here. Plaintiffs seek a ruling that PPFA's Website disclosures and privacy policy were insufficient to establish consent—which clearly falls within the parties' claims and defenses. PPFA effectively concedes the insufficiency of its disclosures by abandoning them and relying instead on Meta's separate policies. But Meta's policies also fail to establish consent, as Plaintiffs demonstrate in their opposition to PPFA's summary judgment motion. The Court should therefore hold that PPFA has not established consent as a matter of law.

### III. Plaintiffs are Entitled to Summary Judgment that PPFA Aided, Agreed with, Employed, and/or Conspired with Meta and Google to Unlawfully Intercept the Contents of Communications.

Defendant's final objection is that Plaintiffs cannot obtain summary adjudication on Section 631(a)'s fourth prong because, in PPFA's view, the statute requires common law aiding-and-abetting *mens rea* and installation of a tracking technologies is insufficient. ECF No. 139 at 14-15. Defendant's objection overstates the standard imposed by CIPA and minimizes the evidence in the record demonstrating that PPFA's conduct meets even the heightened standard urged by Defendant.

First, the language of the statute does not support Defendant's imposition of criminal intent. Section 631(a) imposes liability on a person who "aids, agrees with, employs, or conspires with" another person "to unlawfully do, or permit, or cause to be done" the acts prohibited in the preceding clauses. Cal. Pen. Code § 631(a). The text does not say "aids and abets," and it does not contain an express scienter requirement. *Id.* While some courts have imported aiding-and-abetting standards, that interpretation fails to give effect to the full phrase "aids, agrees with, employs, or conspires with." *St. Aubin*, 2024 WL 4369675, at *8; *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). PPFA's affirmative conduct in choosing, deploying, and configuring the trackers on its Website clearly is covered by the plain meaning of Section 631(a)'s prong four descriptors.

However, even if the Court were to apply the common law substantial assistance framework PPFA claims applies (ECF No. 139 at 15, defining the standard as "knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends"), Plaintiffs' motion still should be granted. As Plaintiffs argue in their opening brief, the undisputed record shows that PPFA affirmatively installed Google Analytics and Meta Pixel on its Website and configured them through Google Tag Manager to transmit the search-term and "get care" URLs at issue, chose not to anonymize IP addresses, and understood the nature of the information it was transmitting because it had access to the resulting data. ECF No. 132 at 2-4, 14-15. Plaintiffs further show that PPFA possessed hundreds of thousands of examples of sensitive full-string URLs in its own analytics data and that PPFA reviewed the data points being intercepted by the trackers in response to public reporting in June 2022 of sensitive information captured on the PPFA Website. *Id.* That evidence is far beyond but-for causation. It shows knowledge of the protected nature of the data being transmitted and substantial assistance in bringing about the interception.

PPFA's cited authorities do not compel a contrary result. In *Valenzuela v. Kroger*, the court dismissed the plaintiff's claims where the allegations showed only that the website operator allowed software to be embedded and knew it "capture[d]" communications, but nothing more. 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024). The court reasoned that if Kroger believed that embedded software acted as a tape recorder to archive conversations, there would be no Section 631(a) violation. *Id.* Here, Defendant cannot claim that it believed the Meta Pixel and Google Analytics functioned as mere tape recorders archiving conversations. Likewise, in *Rodriguez v. Ford Motor Co.*, 722F.Supp.3d 1104 (S.D. Cal. 2024) and *Esparza v. UAG Escondido AI Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2014), the court simply rejected liability at the motion to dismiss stage where the plaintiffs failed to show the defendants knew the vendor's services were being used unlawfully.

Here, Plaintiffs have demonstrated that PPFA knew or should have known that Meta and Google's interceptions were unlawful. PPFA has been on notice of the risk of unlawful interceptions on its Website since at least June 2022 when a Washington Post article reported sensitive information captured by tracking technologies on the Website. ECF No. 132-9, Kim. Tr. 133:9-135:16. Notably, PPFA responded to the article by "scaling back when and where specifically marketing pixels could

fire on plannedparenthood.org." *Id.* at 135:3-16. Despite that "scaling back," PPFA still allows the interception of full-string URLs containing sensitive user search terms and "get care" page visits. ECF No. 132 at 6-7.

Meta's policies governing the use of its tracking pixel clearly state that website developers are forbidden from sending Meta the exact type of user health information PPFA shared. Meta's Business Tool Terms, which a website developer must agree to before creating and using a Meta Pixel ID, expressly prohibit website developers from sending user data to Meta that they "know or reasonably should know . . . includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 788, 794 n.9; ECF No. 132-17, Meta Business Tools Terms. Moreover, Meta's policies require that website developers—like PPFA—"have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use" of user data. *Id.* at 794; ECF No. 132-17, Meta Business Tools Terms. Defendant knew that it had not secured the necessary rights and permissions to disclose Website users' health-related communications but enabled Meta to intercept those communications anyway.

That is more than but-for causation. PPFA's decisions to install, configure, and deploy Google Analytics and Meta Pixel in the manner shown by the record constitute the affirmative aid required by Section 631(a)'s fourth prong, even under the aiding and abetting standard that Defendant urges. PPFA was not the hypothetical "cashier who left the door open without any knowledge of the impending burglary" in PPFA's opposition (ECF No. 139 at 14). PPFA affirmatively caused the interception of the healthcare URLs without having obtained consent; it shirked its responsibilities to safeguard protected communications under Meta's policies; it had direct access to the data it was transmitting, notice that protected information was being shared and the ability to change its configurations. On this record, Defendant is no unwitting cashier who left the door open. PPFA opened the door for the burglar, led him to the cash register, selected the bills the burglar should take and retained at its disposal a record of everything the burglar took.

Finally, PPFA's argument that the Court cannot decide the aiding element of Plaintiffs' claims without first resolving all remaining elements misses the point. Plaintiffs expressly seek summary adjudication on the fourth element "assuming the remaining elements of the claim are otherwise proven." ECF No. 132 at 15. Rule 56 permits the Court to resolve that discrete issue now. Whether Plaintiffs later prove class membership, interception as to each Plaintiff, or damages does not change the legal significance of PPFA's own undisputed conduct in installing and configuring the trackers.

## CONCLUSION

For the foregoing reasons, and the reasons set out in Plaintiffs' opening motion, the Court should grant Plaintiffs' motion for partial summary judgment and hold that: (1) the search-term and "get care" URLs identified in the motion constitute the contents of communications under Section 631(a); (2) PPFA's Website disclosures, privacy policy, and reliance on Meta's generalized policies do not establish consent as a matter of law; and (3) PPFA's installation and configuration of Google Analytics and Meta Pixel satisfies Section 631(a)'s fourth-prong aiding requirement.

Dated: April 20, 2026

Respectfully submitted,

By: *__/s/ Jamie A. Robinson__*

Klint L. Bruno (admitted pro hac vice)
Michael L. Silverman (admitted pro hac vice)
Jamie A. Robinson (admitted pro hac vice)
Adam J. Feuer (admitted pro hac vice)
**THE BRUNO LAW FIRM, LLC**

By: *__/s/ Bradley A. Benbrook__*

Bradley A. Benbrook
Stephen M. Duvernay
**BENBROOK LAW GROUP, PC**

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was filed this 20th day of April 2026 via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

*/s/ Jamie A. Robinson*
Jamie A. Robinson