United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY HINTON, et al.,

Plaintiffs,

v.

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,

Defendant.

Case No. 23-cv-04529-JD

**ORDER RE CLASS CERTIFICATION**

After a partial dismissal of the prior complaint, Dkt. No. 34, the amended complaint in this case alleges a single claim under the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631, on an aiding-and-abetting theory only. *See id*. at 3; Dkt. No. 48 (first amended complaint or FAC) ¶¶ 197-217.

The factual basis of the claim is that defendant Planned Parenthood Federation of America, Inc. (Planned Parenthood or PPFA) embedded "tracking codes" on its website supplied by third parties such as Google, Meta, and the like. Dkt. No. 48 ¶¶ 4-5. This is said to have allowed the third parties to intercept and acquire "confidential and private healthcare information and other sensitive personally identifiable information ('PII')" of visitors to Planned Parenthood's website. *Id*. ¶ 1. Plaintiffs allege that the "unlawfully disclosed" information "reveals to undisclosed third parties the exact identity of [Planned Parenthood's] website users and information regarding their inherently private and personal sexual and reproductive healthcare." *Id*.

Named plaintiffs Shirley Hinton and Heather Shipley request class certification under Federal Rule of Civil Procedure 23. Dkt. No. 93. They propose certification of two classes -- a "Damages Class" and an "Injunctive Relief Class" -- with the same class definition:

> All persons who, between September 1, 2022, and July 6, 2023, while in California, (1) searched for any of the following healthcare topics using the plannedparenthood.org website search bar: abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception; or (2) visited any of the following plannedparenthood.org healthcare webpages for services relating to abortion, STD testing, birth control, pregnancy testing, hormone therapy or emergency contraception:
>
> https://www.plannedparenthood.org/abortion-access
>
> https://www.plannedparenthood.org/get-care/our-services/stdtesting-treatment-vaccines
>
> https://www.plannedparenthood.org/get-care/our-services/birthcontrol
>
> https://www.plannedparenthood.org/get-care/ourservices/abortion-services
>
> https://www.plannedparenthood.org/get-care/ourservices/pregnancy-testing-services
>
> https://www.plannedparenthood.org/get-care/ourservices/transgender-hormone-therapy
>
> https://www.plannedparenthood.org/get-care/ourservices/emergency-contraceptive

*Id.*, Notice of Motion at i.

The parties' familiarity with the facts and the record is assumed, and certification is denied.

## DISCUSSION

To certify a class under Rule 23, plaintiffs bear the burden of proving by a preponderance of the evidence that the proposed classes satisfy all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 424 (2022). Plaintiffs ask to certify the Damages Class under Federal Rule of Civil Procedure 23(b)(3), and the Injunctive Relief Class under Federal Rule of Civil Procedure 23(b)(2). Dkt. No. 93 at 8, 18.

Although the Court would typically march through the prerequisites of Rule 23(a) in their order and then address the Rule 23(b) questions, this case does not require that approach. That is because plaintiffs have manifestly failed to meet their burden under Rule 23(b). This alone warranted denial of certification.

## I. DAMAGES CLASS

For the proposed Damages Class, Rule 23(b)(3) permits class certification when "questions of law or fact common to class members predominate over any questions affecting only individual



United States District Court
Northern District of California

United States District Court
Northern District of California

members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry focuses on "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). The "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Certification is permitted when "one or more of the central issues in the action are common to the class and can be said to predominate," even if "other important matters will have to be tried separately, such as damages or some affirmative defenses particular to some individual class members." *Tyson Foods*, 577 U.S. at 453 (internal quotations omitted).

In assessing the suitability of Rule 23(b)(3) certification, individualized issues "weigh heavy in the predominance balancing" if "the discovery and trial process must assess thousands of claims one claim at a time." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 n.11 (9th Cir. 2023). Class certification is improper plaintiffs are unable to prove that class issues predominate, and the "individualized issues" in the case will necessitate "individualized mini-trials." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469-70 (9th Cir. 2023) (quotation marks omitted).

That is the situation here. Plaintiffs are, of course, "the master[s] of [their] complaint," *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021), and must demonstrate in a certification request that the claims they have alleged can be tried on a class basis. *See Comcast*, 569 U.S. at 33. Consequently, close attention is given to the way plaintiffs have framed their case and the evidence they have offered up to show they can proceed on their claims as a class.

Plaintiffs say their case is about "tracking technologies such as Google Analytics and Meta Pixel" that "intercept website user browsing activity and identifiers to link user online activity to a particular person." Dkt. No. 93 at 2. They say that "Meta can match PPFA website users whose private communications were intercepted by Meta with known Meta account holders." *Id.* at 20. What's more, in the request for certification, they expressly state that they "will prove with

common evidence that Meta and Google *actually* linked class members' PPFA Website searches and page views concerning private healthcare concerns like birth control, emergency contraception or STD testing to their specific identities, including their name, email address and other information provided to Google or Meta when creating an account." Dkt. No. 107 at 5 (emphasis in original).[1]

The record demonstrates otherwise. The "common evidence" plaintiffs identified falls well short of delivering on the promise of classwide proof at trial. That is so because plaintiffs mainly proffer speculation and conjecture in lieu of facts. Plaintiffs say that Meta and Google must have "actually linked content shared by PPFA to [class members'] identities" because "[t]he whole purpose of tracking technologies is, in Meta's words, 'to personalize content' or, as Google explains, to 'understand how your customers interact' and 'anticipate future customer actions.'" Dkt. No. 107 at 5-6. In plaintiffs' view, "[i]t is preposterous to assert that Meta and Google deliver on their business promise of personalizing content for their customers without first matching online actions to actors." *Id*. at 6-7.

This is not evidence. It is an inference based on generalities and speculation. In effect, plaintiffs say where there's smoke, there must be fire. That is not a basis to certify a class under Rule 23.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), demonstrates why. The plaintiffs alleged that Wal-Mart had discriminated against them on the basis of their sex by denying them equal pay or promotions. *Wal-Mart Stores*, 564 U.S. at 343. They sought the certification of a class consisting of "all women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." *Id*. at 346 (cleaned up). To justify this class, plaintiffs offered the testimony of an expert, who, "[r]elying on [a] 'social framework' analysis, . . . testified that Wal-Mart has a 'strong corporate culture,' that makes it 'vulnerable' to 'gender bias.'" *Id*. at 354. The problem for certification was that the expert "could not . . .

[1] Sealing is denied to the extent provisionally sealed materials are quoted in this order.

'determine with any specificity how regularly stereotypes play a meaningful role in employment decisions at Wal-Mart.'" *Id.* The Supreme Court concluded that the plaintiffs relied upon a showing that was "worlds away from '[s]ignificant proof' that Wal-Mart 'operated under a general policy of discrimination.'" *Id.* at 355 (alterations in original).

So too here. Plaintiffs' generalized evidence about Meta and Google's business goals and promises fail to supply the common proof necessary to argue to a jury, on a class basis, that "Meta and Google *actually* linked class members' PPFA Website searches and page views concerning private healthcare concerns . . . to their specific identities." Dkt. No. 107 at 5.

None of the other evidence identified by plaintiffs supports the suggestion that "[w]hether Meta and Google can and do match the content they intercept via their pixels with a specific person is subject to common proof." *Id.* at 8; *see* Dkt. No. 93 at 9-15; Dkt. No. 107 at 4-9. Most of what plaintiffs pointed to is simply a rehash of the same speculation already discussed. Plaintiffs also mentioned "Off Meta Activity reports and data produced by Meta," but they forthrightly acknowledged that these materials cut against their case because they do not establish that Meta tracked and linked plaintiffs' activity on the Planned Parenthood website, as plaintiffs have alleged. *See* Dkt. No. 107 at 8. Plaintiffs tried to brush off this problem by saying that the reports "are not a complete record of online activity Meta linked with Plaintiffs." *Id.* But marginalizing the Off Meta Activity reports, which is one of the scant few items of concrete, potentially classwide evidence plaintiffs cited, is not a step forward in establishing the availability of classwide proof based on common evidence.

Plaintiffs' last stand for certification is their own "testimony that they used the PPFA Website to research their reproductive health concerns during the Class Period." *Id.* But this type of individualized testimony is exactly the opposite of classwide, common proof. Rule 23(b)(3) does not permit certification when class members' claims must be determined "one claim at a time." *Van*, 61 F.4th at 1067 n.11; *see also Bowerman*, 60 F.4th at 469-70.

## II. INJUNCTIVE RELIEF CLASS

Certification of the Injunctive Relief Class is sought under Rule 23(b)(2). Dkt. No. 93 at 18. It too cannot be certified.

Plaintiffs put almost no effort at all into this request. The (b)(2) class proposal was made in barebones fashion in less than one page. *See id*. at 18. In addition, plaintiffs acknowledged that certification under Rule 23(b)(2) requires evidence of a "pattern or practice that is generally applicable to the class as a whole." *Id*. (citation omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (Rule 23(b)(2) calls on courts to determine "whether class members seek uniform relief from a practice applicable to all of them"). As discussed for the Rule 23(b)(3) request, plaintiffs did not demonstrate that such evidence is available to them. It is also not the case that "the primary relief sought" by plaintiffs "is declaratory or injunctive," as Rule 23(b)(2) contemplates. *Rodriguez*, 591 F.3d at 1125 (quoting *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001)). The primary relief sought by plaintiffs' complaint is monetary. *See, e.g.*, Dkt. No. 48 ¶ 216 ("Defendant is liable to Plaintiffs and the Class members for, at a minimum, statutory damages of $5,000 per violation.").

**CONCLUSION**

Class certification is denied. A status conference is set for December 10, 2026. *See* Dkt. No. 154. Prior to the conference, the parties are directed to reengage in their ADR efforts on an individual, non-class basis. The parties are also directed to discuss whether the pending summary judgment and *Daubert* motions should be supplemented or re-briefed in light of the denial of class certification. The pending motions, Dkt. Nos. 115, 116, 132, 133, are administratively terminated pending the status conference.

**IT IS SO ORDERED.**

Dated: September 30, 2026

JAMES DONATO
United States District Judge